## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVINO WATSON, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. |
| v. ) | |
| ) | **Jury Trial Demanded** |
| JUAN ESTRADA, MICHAEL ORTIZ, ) | |
| TIMOTHY GUNTHER, JOHN DOES 1-8, and ) | |
| the UNITED STATES ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## COMPLAINT

Plaintiff Davino Watson ("Plaintiff" or "Mr. Watson"), by and through his undersigned counsel, hereby alleges as follows for his complaint against Defendants Juan Estrada, Michael Ortiz, Timothy Gunther, John Does 1-8, and the United States (collectively "Defendants").

## STATEMENT OF THE CASE

1.   Plaintiff Davino Watson, a U.S. citizen since 2002, was wrongfully imprisoned by Defendants for 1,273 days (approximately 3.5 years) as they sought to deport Plaintiff from the United States and then left him destitute for 755 days (over 2 years) because they failed to provide him proof of his U.S. citizenshiDap or provide him any other work authorization documentation.

2.   Mr. Watson was born in Jamaica and entered the United States as a lawful permanent resident in 1998. He lawfully derived U.S. citizenship on September 17, 2002 when his father became a naturalized citizen.  BecausUSCe his citizenship was by operation of law under the Child Citizenship Act of 2000 (8 U.S.C. § 1431(a)), Mr. Watson did not need to file any application or paperwork to obtain U.S. citizenship.

3.   In spring 2008, two federal officers with Immigration and Customs Enforcement (ICE) brought Plaintiff into immigration custody without first establishing probable cause that he was a noncitizen.  It is clearly established that ICE does not have legal authority to arrest or detain a U.S. citizen for a civil immigration violation.  Accordingly, the ICE officers were required to but failed to conduct a reasonable investigation into Mr. Watson's U.S. citizenship prior to seeking his detention.  Upon entering immigration custody on May 8, 2008, Mr. Watson affirmatively claimed his U.S. citizenship to various identified and unidentified ICE officers and quickly obtained a copy of his father's certificate of naturalization.  The certificate demonstrated that which should have already been apparent—ICE did not have probable cause of Plaintiff's alienage.  ICE officials never established probable cause of his alienage to justify Plaintiff's detention over the ensuing 3.5 years.

4.   Despite four ICE policy directives prescribing mandatory investigative and reporting steps when confronted with claims to U.S. citizenship (USC directives), ICE officials responsible for Mr. Watson's detention failed to comply with the first three USC directives and only belatedly attempted to comply with the final USC directive, resulting in their discovery that they had been applying the wrong Board of Immigration Appeals' (BIA) precedent to his case and that in fact he had provided probative evidence of his U.S. citizenship.

5.   ICE officials released Mr. Watson on November 2, 2011 without any proof of legal status or work authorization.  Unknown officials with United States Citizenship and Immigration Services (USCIS), who participated in the determination to release Mr. Watson on November 2, 2011, concluded that Plaintiff was a U.S. citizen.  These USCIS officials, nevertheless, did nothing to correct the agency's error and provide Mr. Watson with evidence of his U.S. citizenship, which would have permitted him to prove that he could lawfully work.

2

As a result, Mr. Watson was left unemployed, destitute, and unable to exercise his rights and privileges as a citizen for another two years until Mr. Watson's motion to reopen his N-600 application was granted, and he was issued a certificate of citizenship on November 26, 2013.

6.    Mr. Watson brings this action for damages against various known and unknown Department of Homeland Security (DHS) or ICE officials in their individual capacities for unlawfully detaining him for 1,273 days (approximately 3.5 years) on alleged immigration violations, without probable cause, due process, or other procedural protections afforded to him by the Fourth and Fifth Amendments to the U.S. Constitution. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

7.    Mr. Watson also brings common law tort claims of false imprisonment, malicious prosecution, and negligence against the United States under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, for the acts and omissions of DHS, ICE and USCIS officials that caused Mr. Watson to be detained for 1,273 days and left without proof of his U.S. citizenship or any other legal status for an additional 755 days, leaving him unemployed, destitute, and otherwise not able to exercise his rights and privileges as a U.S. citizen.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Mr. Watson's *Bivens* constitutional claims and FTCA claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1346(b)(1) (FTCA).

9.    On October 30, 2013, Mr. Watson filed an administrative complaint with the DHS,[1] raising the facts giving rise to Plaintiff's claims under the FTCA.  By letter dated October 3, 2014, the government refused to accept responsibility for the misconduct of its

---

[1] Both ICE and USCIS are subdivisions of the Department of Homeland Security.

officers and denied Mr. Watson's claims for administrative relief.  Mr. Watson, therefore, has exhausted his administrative remedies for purposes of his claims against the United States under the FTCA as required by 28 U.S.C. §§ 2401(b) and 2675(a).

10.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(C), because Mr. Watson resides in this judicial district, and this is a civil action in which the United States is a defendant.

## THE PARTIES

11.  Plaintiff Davino Watson resides in Brooklyn, New York (Kings County).  Mr. Watson is, and was at all times relevant to this action, a U.S. citizen.

12.  Defendant Juan Estrada is being sued in his individual capacity.  On information and belief, Defendant Estrada is, and was at all times relevant to this action, a Deportation Officer with ICE.  On information and belief, Defendant Estrada serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons.  On information and belief, Defendant Estrada is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and regulations.  As described in further detail below, Defendant Estrada failed to conduct a reasonable investigation into Plaintiff's U.S. citizenship and accordingly failed to establish probable cause that he was a noncitizen, which caused Mr. Watson to be unlawfully detained by ICE.

13.  Defendant Michael Ortiz is being sued in his individual capacity.  On information and belief, Defendant Ortiz is, and was at all times relevant to this action, a Supervisory

4

Deportation Officer with ICE. On information and belief, Defendant Ortiz serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons. On information and belief, Defendant Ortiz is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and regulations. As described in further detail below, Defendant Ortiz failed to conduct a reasonable investigation into Plaintiff's U.S. citizenship and accordingly failed to establish probable cause that he was a noncitizen before issuing a Notice to Appear and administrative arrest warrant, which caused Mr. Watson to be unlawfully detained and placed in removal proceedings by ICE.

14. Defendant Timothy Gunther is being sued in his individual capacity. On information and belief, Defendant Gunther is, and was at all times relevant to this action, a Deportation Officer with ICE. On information and belief, Defendant Gunther serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons. On information and belief, Defendant Gunther is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and

5

regulations.   As described in further detail below, on information and belief, Defendant Gunther was one of initial officers responsible for Plaintiff's case and one of the ICE officials to whom Mr. Watson claimed U.S. citizenship and provided probative evidence.   In response to Plaintiff's claim and evidence, Defendant Gunther failed to conduct the required investigation and reporting under the first and second agency USC directives dated May 23, 2008 and July 18, 2008, respectively, and possibly the successive agency directives on Nov. 6, 2008 and Nov. 19, 2009.   Defendant Gunther also failed to investigate whether there was probable cause to continue to detain Plaintiff and subject him to removal proceedings in light of the further evidence of his U.S. citizenship.

15.   Defendant John Doe No. 1 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 1 has the surname "DeLong" and is, and was at all times relevant to this action, a Deportation Officer with ICE.   On information and belief, Defendant John Doe No. 1 serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons.   On information and belief, Defendant John Doe No. 1 is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and regulations.  As described in further detail below, on information and belief, Defendant John Doe No. 1 had responsibility and/or substantial contact with Plaintiff regarding his claim to U.S. citizenship and to whom Mr. Watson submitted probative evidence.   In response to Plaintiff's claim and evidence,

Defendant John Doe No. 1 failed to conduct the required investigation and reporting under the first and/or second agency USC directives dated May 23, 2008 and July 18, 2008, respectively, and possibly the successive agency directives on Nov. 6, 2008 and Nov. 19, 2009.  Defendant John Doe No. 1 also failed to investigate whether there was probable cause to continue to detain Plaintiff and subject him to removal proceedings in light of the further evidence of his U.S. citizenship.

16.  Defendant John Doe No. 2 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 2 has the surname "Schneider" and is, and was at all times relevant to this action, a Deportation Officer with ICE.  On information and belief, Defendant John Doe No. 2 serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons.   On information and belief, Defendant John Doe No. 2 is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and regulations.  As described in further detail below, on information and belief, Defendant John Doe No. 2 had responsibility and/or substantial contact with Plaintiff regarding his claim to U.S. citizenship and to whom Mr. Watson submitted probative evidence.   In response to Plaintiff's claim and evidence, Defendant John Doe No. 2 failed to conduct the required investigation and reporting under the first and/or second agency USC directives dated May 23, 2008 and July 18, 2008, respectively, and possibly the successive agency directives on Nov. 6, 2008 and Nov. 19, 2009.  Defendant

John Doe No. 2 also failed to investigate whether there was probable cause to continue to detain Plaintiff and subject him to removal proceedings in light of the further evidence of his U.S. citizenship.

17. Defendant John Doe No. 3 is being sued in his individual capacity. On information and belief, Defendant John Doe No. 3 either preceded or succeeded Defendant Gunther, John Doe No. 1, and/or John Doe No. 2 as the ICE Deportation Officer responsible for Mr. Watson's case during the 3.5 years that Plaintiff was detained by ICE. John Doe No. 3 has the same legal obligations as described for Defendant Gunther, John Doe No. 1, and John Doe No. 2 and was required to take appropriate actions upon learning of Plaintiff's claim to U.S. citizenship.

18. Defendant John Doe No. 4 is being sued in his individual capacity. On information and belief, Defendant John Doe No. 4 is, and was at all times relevant to this action, the ICE Field Office Director (FOD) for the Buffalo Area of Responsibility (AOR). On information and belief, Defendant John Doe No. 4 serves, and was at all times relevant to this action serving, as a law enforcement officer at ICE responsible for formulating, approving, implementing, and/or enforcing ICE customs and policies, including the preparation and issuance of immigration detainers, administrative arrest warrants, the investigation and arrest of persons in violation of the immigration laws, and the subsequent detention and treatment of such persons. On information and belief, Defendant John Doe No. 4 is, and was at all times relevant to this action, responsible for ensuring that ICE's customs, policies, practices, and activities accord with the U.S. Constitution and applicable federal law and regulations. As described in further detail below, Defendant John Doe No. 4 as FOD had responsibility to ensure all the required investigative and reporting steps for each of the four USC directives

8

were completed in Plaintiff's case and to ensure that there was probable cause to detain Plaintiff and continue removal proceedings in light of the evidence of his U.S. citizenship. Defendant John Doe No. 4 failed to perform the requisite supervisory, investigative, and reporting requirements under the four USC directives and also did not ensure that ICE had probable cause to detain Plaintiff and subject him to continued removal proceedings.

19.   Defendant John Doe No. 5 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 5 succeeded John Doe No. 4 as ICE Field Office Director (FOD) for the Buffalo Area of Responsibility (AOR) during the 3.5 years that Plaintiff was detained by ICE.  John Doe No. 5 has the same legal obligations as described for John Doe No. 4 and was required to take appropriate actions upon learning of Plaintiff's claim to U.S. citizenship.

20.   Defendant John Doe No. 6 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 6 is, and was at all times relevant to this action, a Deportation Officer with ICE.  On information and belief, John Doe No. 6 has the same legal obligations as described for Defendants Gunther, John Doe Nos. 1-3 and was required to take appropriate actions upon learning of Plaintiff's claim to U.S. citizenship.  On information and belief, Defendant John Doe No. 6 conducted a Post Order Custody Review (POCR) of Plaintiff on or around February 5, 2009 upon which John Doe No. 6 would have learned of Plaintiff's claim to U.S. citizenship.

21.   Defendant John Doe No. 7 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 7 is, and was at all times relevant to this action, a Deportation Officer with ICE.  On information and belief, John Doe No. 7 has the same legal obligations as described for Defendants Gunther, John Doe Nos. 1-3, 6 and was required to

take appropriate actions upon learning of Plaintiff's claim to U.S. citizenship.  On information and belief, Defendant John Doe No. 7 conducted a Post Order Custody Review (POCR) of Plaintiff on or around April and May 2009, during which John Doe No. 7 would have learned of Plaintiff's claim to U.S. citizenship.

22.  Defendant John Doe No. 8 is being sued in his individual capacity.  On information and belief, Defendant John Doe No. 8 is, and was at all times relevant to this action, a Deportation Officer with ICE.  On information and belief, John Doe No. 8 has the same legal obligations as described for Defendants Gunther, John Doe Nos. 1-3, 6-7 and was required to take appropriate actions upon learning of Plaintiff's claim to U.S. citizenship.  On information and belief, Defendant John Doe No. 8 conducted a Post Order Custody Review (POCR) of Plaintiff in May 2010, during which John Doe No. 8 would have learned of Plaintiff's claim to U.S. citizenship.

23.  Defendant United States is liable under the FTCA for the conduct of Defendants Estrada, Ortiz, Gunther, John Does 1-8, as well as the acts or omissions of unknown DHS, ICE, and USCIS officials, who were employees of the United States and acting within the scope and course of their employment at all times relevant to this action.

## FACTUAL ALLEGATIONS

### Mr. Watson's United States Citizenship

24.  Mr. Watson was born in Jamaica on November 17, 1984 to unmarried parents, whose names both appear on his birth certificate.

25.  On August 4, 1998, Plaintiff entered the United States as a lawful permanent resident (LPR) based on a petition by his father and step-mother.

26.  Plaintiff lived with his father and step-mother in New York after he entered the United States.

27. On September 17, 2002, Plaintiff's father naturalized to U.S. citizenship—the last material condition in order for Plaintiff to derive citizenship automatically under the Child Citizenship Act of 2000 (CCA) (codified at 8 U.S.C. § 1431(a), Immigration and Nationality Act (INA) § 320(a)). *Matter of Rodriguez-Tejedor*, 23 I. & N. Dec. 153, 163 (BIA 2001)(stating "[I]n determining whether an individual derived citizenship by naturalization, the law in effect when the last material condition (naturalization, age, residence) is met is generally controlling."); *Ashton v. Gonzales*, 431 F.3d 95, 97-98 (2d Cir. 2005)(applying the legal principle established in *Rodriguez-Tejedor*); *see Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005)("[D]erivative citizenship is determined under the law in effect at time the critical events giving rise to eligibility occurred.").

28. At the time of Plaintiff's father's naturalization, the binding BIA case law held that Plaintiff was legitimated, because Jamaica had abolished any legal distinctions based on legitimation in 1976. *Matter of Clahar*, 18 I. & N. Dec. 1 (1981).[2] Accordingly, Mr. Watson became a U.S. citizen by operation of law (i.e., no required application or paperwork) through his father's naturalization to U.S. citizenship on September 17, 2002.

29. Plaintiff's Certificate of Citizenship reflects that he became a U.S. citizen on September 17, 2002. **Ex. A**.

30. The Supreme Court has held that the express language of the Fourteenth Amendment does not foresee a "fleeting citizenship, good at the moment it is acquired but subject to destruction by the Government at any time." *Afroyim v. Rusk*, 387 U.S. 253, 262

---

[2] As discussed below, when ICE officials belatedly looked into Mr. Watson's claim to U.S. citizenship, they erroneously applied *Matter of Hines*, 24 I. & N. Dec. 544 (BIA June 4, 2008)—a decision issued 27days after ICE brought Mr. Watson into immigration custody and 2,087 days (over 5.5 years) after Mr. Watson derived U.S. citizenship by operation of law on September 17, 2002.  In effect, ICE claimed that it could retroactively strip Plaintiff of his U.S. citizenship, a process for which there is no provision absent fraud.

(1967). "Once acquired, this Fourteenth Amendment citizenship was not to be shifted, canceled, or diluted at the will of the Federal Government, the States, or any other governmental unit." *Afroyim*, 387 U.S. at 262.

### Defendants Unlawful Detention of Mr. Watson

31. On September 18, 2007, Mr. Watson pleaded guilty to a drug offense and was placed in New York State's "Shock Incarceration Program"—a therapeutic program for young, non-violent offenders.

32. On October 9, 2007, while in state custody, unknown ICE officer interviewed Plaintiff at the Downstate Correctional Facility in Castle Point, New York.

33. Plaintiff informed the ICE officer that Plaintiff was a U.S. citizen and provided the officer with his parents' telephone number.

34. The unknown ICE officer recorded the parents' telephone number and decided not to issue an immigration detainer—the first step toward bringing Plaintiff into immigration custody. **Ex. B**. On information and belief, the unknown ICE officer never called Plaintiff's parents to verify Mr. Watson's claim to U.S. citizenship

35. On or about April 7, 2008, Defendant Estrada conducted a cursory investigation into whether Mr. Watson was a noncitizen and subject to deportation from the United States. Mr. Watson's records, at a minimum, would have shown that he was under 18 years old when he entered the United States in 1998 as a lawful permanent resident to live with his father, Hopeton Watson. *See* **Ex. C**. In short, minimal further investigation was necessary to determine whether Plaintiff's father naturalized before Plaintiff turned 18 years old, which would mean he automatically became a U.S. citizen as of his father's naturalization.

36. Defendant Estrada claimed to have reviewed Plaintiff's father's Alien file and DHS database records. **Ex. D**. He concluded in his investigative report: "His parents are nationals and citizens of Jamaica who have not naturalized. No issue of derivation applies." *Id.* Had Defendant Estrada reasonably reviewed Plaintiff's father's Alien file or DHS's database records, Defendant Estrada would have discovered a copy of the certificate of naturalization belonging to Mr. Watson's father and that DHS's database records; both of which stated that Plaintiff's father naturalized to U.S. citizenship on September 17, 2002. **Ex. E**. With minimal, reasonable investigation Defendant Estrada should have concluded Plaintiff was a U.S. citizen.

37. Instead, without reasonably reviewing the father's Alien file or DHS database records, interviewing Mr. Watson or his parents, or contacting the ICE officer that interviewed Mr. Watson in October 2007, Defendant Estrada issued an immigration detainer requesting that New York state officials detain Plaintiff so that ICE could assume custody. **Ex. F**.

38. On April 10, 2008, Defendant Ortiz issued a Notice to Appear (Form I-862) (NTA), which falsely alleged that Mr. Watson was not a U.S. citizen, and an administrative arrest warrant (Form I-200). **Ex. G**. On information and belief, Defendant Ortiz relied principally on Defendant Estrada's cursory investigation to erroneously conclude that there was probable cause to believe that Plaintiff was a noncitizen and subject to removal.

39. On May 8, 2008, after Mr. Watson successfully completed New York's "Shock Incarceration Program," ICE officials immediately brought Plaintiff into immigration custody. At that time, Defendant Gunther, John Doe No. 1, John Doe No. 2, and/or John Doe No. 3 were responsible for Plaintiff's case and his detention. Immediately upon entering immigration custody, Plaintiff claimed U.S. citizenship to Defendant Gunther, John Doe No. 1, John Doe No. 2, and/or John Doe No. 3. Mr. Watson quickly obtained a copy of his father's certificate

of naturalization. **Ex. H**.  Accordingly, at that time, Defendant Gunther, John Doe No.1, John Doe No. 2, and/or John Doe No. 3 had evidence that Mr. Watson entered the United States as a lawful permanent resident in the custody of his biological father, who subsequently naturalized to U.S. citizenship before Plaintiff turned 18 years old.  In short, Defendant Gunther, John Doe No. 1, John Doe No. 2, and/or John Doe No. 3 had probative evidence of Mr. Watson's U.S. citizenship and lack of probable cause of alienage to keep Mr. Watson detained.

40.  Defendant Gunther, John Doe No. 1, John Doe No.2, and/or John Doe No.3 did nothing to investigate or report Mr. Watson's claims.  They issued Mr. Watson his NTA, alleging he was not a U.S. citizen, but then waited 19 days until May 27, 2008 to file the NTA with the immigration court, commencing removal proceedings. *See* **Ex. G**.  The court did not schedule Plaintiff for a first hearing until June 25, 2008—48 days after his initial transfer into immigration custody. **Ex. I**.  Plaintiff remained *pro se* throughout his administrative proceedings.  He was later appointed counsel on his petition for review to the Second Circuit.

### ICE's Policies Regarding the Arrest and Detention of U.S. Citizens

41.  There is a longstanding precedent that the federal government cannot exert its civil immigration enforcement authority against U.S citizens. *See Woodby v. INS*, 385 U.S. 276 (1966).

42.  On or about May 23, 2008, Gary E. Mead, ICE acting Director for Detention and Removal Operations, issued a memorandum directive to All Field Office Directors and Detention and Removal Operations, entitled "Reporting and Investigation of Claims to United States Citizenship." **Ex. J (**the "May 23 USC directive").

43.  The May 23 USC directive established the following protocols that ICE officers must follow when a detainee makes a claim of U.S. citizenship (emphasis added):

All officers encountering a detainee claiming U.S. citizenship **shall immediately notify the Field Office Director (FOD)** through their chain of command.  The FOD shall make appropriate notification to HQDRO [Headquarters Detention and Removal Operations]. **Each FOD shall ensure that all claims to United States citizenship . . . are appropriately reported and investigated**.

**Interviews with detainees making such claims shall be conducted** by at least a senior Immigration Enforcement Agent (IEA) with 6 months Criminal Alien Program (CAP) experience.  **Interviews will be recorded as a sworn statement** and include all questions on the Form I-213, as well as probative questions that will elicit sufficient information to allow ICE to conduct a thorough investigation.  This investigation may include vital records searches, family interviews, and other appropriate investigative measures.

**If an affirmative claim to United States citizenship is made by a detainee prior to commencement of removal proceedings, the FOD will in consultation with HQDRO and the Office of the Principal Legal Advisor (OPLA), determine whether sufficient evidence exists to place that individual into removal proceedings.  If an affirmative claim to United States citizenship is made by a detainee already in removal proceedings, each FOD, in consultation with HQDRO and OPLA, will determine the most appropriate course of action.**

**If a detainee claim to United States citizenship appears to have merit, the FOD, in consultation with HQDRO and OPLA, may consider alternatives to detention . . . .**

44.  Defendants Gunther, John Doe No. 1, John Doe No. 2, John Doe No. 3 and/or John Doe No. 4 did not comply with any of the protocols detailed in the May 23 USC directive. Had they done so immediately, as required by the directive, there would have been no confusion as to Plaintiff's U.S. citizenship.

45.  On July 18, 2008, Gary E. Mead, ICE acting Director for Detention and Removal Operations issued a superseding memorandum directive to All Field Office Directors, entitled "Superseding Guidance on Reporting and Investigation of Claims to United States Citizenship." **Ex. K** (the "July 18 USC directive").

46.  The July 18 USC directive reiterated the required protocols established in the May 23 USC directive, but emphasized to the FODs that investigations into claims of U.S. citizenship must occur immediately, because ICE does not have authority to detain an individual unless there is probable cause of alienage. *See id*.

47. Defendants Gunther, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, and/or John Doe. No. 5 did not comply with any of the protocols detailed in the July 18 USC directive.

48. On November 6, 2008, James T Hayes, Jr., ICE Director for Detention and Removal Operations issued a superseding memorandum directive to All Field Office Directors, entitled "Superseding Guidance on Reporting and Investigation of Claims to United States Citizenship." **Ex. L** (the "Nov. 6 USC directive").

49. The Nov. 6 USC directive reiterated the required protocols contained in the July 18 USC directive, but now required greater consultation with HQDRO in the final decision regarding detention and continuing removal proceedings.

50. Defendants Gunther, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, and/or John Doe. No. 5 did not comply with any of the protocols detailed in the Nov. 6 USC directive.

51. On or about November 19, 2009, John Morton, the Assistant Secretary of DHS, issued a memorandum to FODs, Special Agents in Charge, and Chief Counsels, entitled "Superseding Guidance on Reporting and Investigating Claims to United States Citizenship." **Ex. M**. (the "Nov. 19 USC directive").

52. Consistent with clearly established law, the Nov. 19 USC directive explained that "[a]s a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a [U.S. citizen (USC)]."

53. The Nov. 19 USC directive established the following new protocols that ICE officers must follow when an individual already in custody makes a claim of U.S. citizenship (emphasis added):

**If an individual already in custody claims to be a USC, an officer must immediately examine the merits of the claim and notify and consult with his or her local [Office of the Chief Counsel (OCC)]**.  If the individual is unrepresented, an officer must immediately provide the individual with the local Executive Office for Immigration Review (EOIR) list of pro bono legal service providers, even if one was previously provided.

**Detention and Removal Operations (DRO) personnel and the Office of the Principal Legal Advisor (OPLA)] must also jointly prepare and submit a memorandum explaining the claim and recommending a course of action** to the HQDRO Assistant Director for Operations at the "USC Claims DRO" e-mail box and to the HQOPLA Director of Field Operations at the "OPLA Field Legal OPS" e-mailbox.  **Absent extraordinary circumstances, this memorandum should be submitted no more than 24 hours from the time the individual made the claim.**  HQDRO and HQOPLA will respond to the field with a decision on the recommendation within 24 hours.  A notation should be made in [Enforce Alien Removal Module (EARM)] and a copy of the memorandum and resulting decision should be placed in the alien's A-file.  The memorandum and resulting decision should also be saved in [General Counsel Electronic Management System (GEMS)] and notated using the designated GEMS barcode.

**If the individual's claim is credible on its face, or if the investigation results in probative evidence that the detained individual is a USC, the individual should be released from detention.**

54.  On information and belief, Defendants Gunther, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe. No. 4, John Doe No. 5, John Doe No. 6 and/or John Doe No. 7 did not comply with any of the protocols detailed in the Nov. 19 USC directive until May 2010.

55.  On information and belief, on or around May 26, 2010—over two years after Plaintiff was brought into immigration custody and the first USC directive was issued, and only after the urging of ICE headquarters—Defendants Gunther, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe. No. 4, John Doe No. 5, John Doe No. 6, John Doe No. 7 and/or John Doe No. 8 made a deeply flawed attempt at comply with the Nov. 19 USC directive. **Ex. N**; **Ex. O** (hereinafter "May 26 memorandum").

56.  In an undated and unsigned May 26 memorandum, the FOD for the Buffalo AOR, (John Doe No. 4 or No. 5), concluded that Mr. Watson was not a U.S. citizen based on *Matter of Hines*, 24 I. & N. Dec. 544 (BIA June 4, 2008)—a decision issued 2,087 days (over 5.5 years) after Mr. Watson derived U.S. citizenship by operation of law on September 17, 2002

17

under the controlling precedent of *Matter of Clahar*, 18 I. & N. Dec. 1 (1981). Under the FOD's flawed reasoning, ICE officials reasoned that they could retroactively strip Plaintiff of his U.S. citizenship, detain him, and seek to deport him. To highlight the absurdity of the May 26 memorandum's analysis, *Matter of Hines* was not even issued at the time Plaintiff was brought into immigration custody and placed into removal proceedings in May 2008. *See supra* ¶¶ 35-40, 42-44.

57. On information and belief, the FOD never submitted the May 26 memorandum to the headquarters DRO Assistant Director for Operations and the headquarters OPLA Director of Field Operations, as required by the Nov. 19 USC directive.

58. On May 31, 2011, the Second Circuit reversed the immigration court's decisions and remanded Plaintiff's case to the Board of Immigration Appeals. *Watson v. Holder*, 643 F.3d 367 (2d Cir. 2011).

59. As the deadline approached for the Government's brief on remand to the BIA, the FOD for the Buffalo AOR (John Doe No. 4 or No. 5) finally consulted with DHS headquarters officials regarding Plaintiff's claim to U.S. citizenship.

60. On or around Nov. 2, 2011, in an undated but signed memorandum, the FOD submitted a revised memorandum pursuant to the Nov. 19 USC directive. **Ex. P**. (hereinafter "Nov. 2 memorandum"). It concluded:

> Pursuant to <u>Clahar</u>, at the time of his father's naturalization, Watson would have met the definition of a child at INA § 101(c)(1) and would have fulfilled the conditions for derivative United States citizenship at INA § 320.

> It is, therefore, possible that Watson is a derivative United States citizen.

<u>CONCLUSION AND RECOMMENDATION</u>

Following further discussion with OPLA HQ, USCIS counsel, and DHS/OGC, it is concluded that Watson has provided probative evidence of United States

18

citizenship based on <u>Clahar</u>.  It is recommended that he be immediately released from DHS custody.

61.  That same day, ICE officials released Plaintiff from immigration custody. **Ex. Q**.

### **Mr. Watson Left Destitute and Without Proof of U.S. Citizenship**

62.  Once ICE officials realized Plaintiff was a U.S. citizen, they immediately released Mr. Watson, but they did not seek termination of removal proceedings or provide him with any proof of legal status or work authorization. *See* **Ex. Q**.

63.  Also, in consultation with the Nov. 2 memorandum, unknown USCIS officials independently concluded that Mr. Watson was a U.S. citizen. **Ex. R**.

64.  On information and belief, the unknown USCIS officials knew or should have known that USCIS had erroneously denied Mr. Watson's N-600 application, seeking a Certificate of U.S. Citizenship as proof of his citizenship, based on *Matter of Hines*. **Ex. S**.

65.  Nevertheless, the unknown USCIS officials did nothing to provide Mr. Watson with proof of his U.S. citizenship for 755 days, leaving him unemployed, destitute, and otherwise not able to exercise his rights and privileges as a U.S. citizen.

66.  Plaintiff's motion to reopen his N-600 application was ultimately granted, and Mr. Watson was issued a Certificate of U.S. Citizenship on November 26, 2013. **Ex. A**.

### <u>COUNT I</u>

*Plaintiff v. Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8*
**(Violation of the Fourth Amendment and Substantive Due Process
under the Fifth Amendment Pursuant to *Bivens*)**

67.  The foregoing allegations are repeated and incorporated as if fully set forth herein.

68.  The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported

by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

69.   The Fifth Amendment to the U.S. Constitution provides: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

70.   Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 could have discovered through minimal investigation that Mr. Watson was a U.S. citizen.

71.   Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 lacked probable cause to believe that Mr. Watson was a noncitizen or that he was otherwise in violation of the immigration laws and subject to arrest, detention, or removal.

72.   Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 detained Mr. Watson, or caused him to be detained, depriving him of his liberty for 1,273 days (approximately 3.5 years), even after he informed them that he was a U.S. citizen, contrary to the four USC directives, 8 U.S.C. §§ 1226(a) and 1357(a)(2), and other clearly established laws and policies.

73.   Mr. Watson's arrest and detention violated his rights under the Fourth Amendment and his substantive due process rights under the Fifth Amendment.

74.   At all relevant times during Mr. Watson's arrest and detention, Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 were aware, or reasonably should have been aware, that they lacked the authority to arrest and detain a U.S. citizen under the governing laws and policies and that their conduct violated Mr. Watson's constitutional rights.

75.   As a proximate and reasonably foreseeable result of the actions of Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8, Mr. Watson suffered injuries, including his unlawful arrest and 1,273 days in detention, lost wages, loss of consortium, pain and suffering, as well as mental, emotional and psychological anguish.

## COUNT II

*Plaintiff v. Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8*
**(Violation of Procedural Due Process Under the Fifth Amendment Pursuant to *Bivens*)**

76.  The foregoing allegations are repeated and incorporated as if fully set forth herein.

77.  Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 failed to follow the applicable, governing laws, statutes, and regulations, as well as ICE's own controlling policies and deprived Mr. Watson of his liberty without affording him the procedural due process guarantees of the Fifth Amendment as follows:

    a.  Defendants detained Mr. Watson, or caused him to be detained, without probable cause to believe that he was a noncitizen or that he was otherwise in violation of the immigration laws and subject to detention;

    b.  Defendants detained Mr. Watson, or caused him to be detained, even though he was a United States Citizen, contrary to the four USC directives, 8 U.S.C. §§ 1226(a) and 1357(a)(2), and other clearly established laws and policies;

    c.  Defendants failed to reasonably investigate Mr. Watson's claim of U.S. citizenship contrary to the four USC directives, 8 U.S.C. §§ 1226(a) and 1357(a)(2), and other clearly established laws and policies;

78.  At all relevant times during Mr. Watson's arrest and detention, Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 were aware, or reasonably should have been aware, that they lacked the authority to arrest and detain a U.S. citizen under the governing laws and policies and that their conduct violated Mr. Watson's constitutional rights.

79.  As a proximate and reasonably foreseeable result of the actions of Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8, Mr. Watson suffered injuries, including his

unlawful arrest and 1,273 days in detention, lost wages, loss of consortium, pain and suffering, as well as mental, emotional and psychological anguish.

### COUNT III

*Plaintiff v. Defendant United States*
**(False Arrest / False Imprisonment Pursuant to
Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*)**

80.  The foregoing allegations are repeated and incorporated as if fully set forth herein.

81.  Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 intentionally caused Mr. Watson to be arrested and detained without legal justification to believe he was a noncitizen, or that he was otherwise in violation of the immigration laws and subject to arrest, detention, or removal.

82.  Mr. Watson was aware of his arrest and detention and did not consent to it.

83.  At all times during Mr. Watson's arrest and detention, Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 were aware, or reasonably should have been aware, that they lacked the authority to arrest and detain a U.S. citizen under the governing laws and policies, that their conduct was unlawful, and not otherwise privileged.

84.  As a proximate and reasonably foreseeable result of the actions of Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8, Mr. Watson suffered injuries, including his unlawful arrest and 1,273 days in detention, lost wages, loss of consortium, pain and suffering, as well as mental, emotional and psychological anguish.

85.  At all times during Mr. Watson's arrest and detention, Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 were employees of the United States acting within the scope and course of their employment.  Defendant United States, therefore, is liable for the actions of Defendants Estrada, Ortiz, Gunther, and John Does No. 1-8 under the FTCA for false arrest/false imprisonment.

22

## COUNT IV

### *Plaintiff v. Defendant United States*
### (Malicious Prosecution Pursuant to Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*)

86.  The foregoing allegations are repeated and incorporated as if fully set forth herein.

87. ICE and DHS officials commenced removal proceedings against Mr. Watson without probable cause to believe that he was a noncitizen or that he was otherwise in violation of the immigration laws and subject to arrest, detention, or removal.

88.  ICE and DHS officials continued removal proceedings against Mr. Watson even as new evidence further proved that the proceedings were without probable cause that he was a noncitizen, or that he was otherwise in violation of the immigration laws and subject to arrest, detention, or removal.  ICE and DHS officials blatantly disregarded four USC directives that required a thorough investigation and reporting of Plaintiff's claim to U.S. citizenship that would have demonstrated that they were without probable cause to continue removal proceedings.

89. The Board of Immigration Appeals terminated removal proceedings in Mr. Watson's favor on January 28, 2013, as there was no probable cause that Mr. Watson was a noncitizen.

90. ICE and DHS officials commenced and continued removal proceedings against Plaintiff with actual malice.  ICE and DHS officials commenced removal proceedings without probable cause of Plaintiff's alienage and continued removal proceedings for over 4.5 years in blatant disregard of their duty and obligation to thoroughly investigate his claim to U.S. citizenship under the four USC directives and other applicable laws and policies which would have revealed the lack of probable cause.

91.  As a proximate and reasonably foreseeable result of the actions of ICE and DHS officials, Mr. Watson suffered injuries, including his unlawful arrest and 1,273 days in detention, lost wages, loss of consortium, pain and suffering, as well as mental, emotional and psychological anguish.

92.  At all times during Mr. Watson's arrest, detention, and removal proceedings, ICE and DHS officials were employees of the United States acting within the scope and course of their employment.  Defendant United States, therefore, is liable for the actions of ICE and DHS officials under the FTCA for malicious prosecution.

## COUNT V

### *Plaintiff v. Defendant United States*
**(Negligence Pursuant to Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*)**

93.  The foregoing allegations are repeated and incorporated as if fully set forth herein.

94.  DHS, ICE, and USCIS officials have a duty to act with reasonable care and not subject individuals to personal injury during the course of their duties.

95.  DHS, ICE, and USCIS officials have a duty not to subject individuals to unreasonable searches and seizures or deprive them of liberty without due process.

96.  DHS, ICE, and USCIS officials have a duty to adequately train and supervise their subordinates and to establish and enforce policies and practices to prevent the occurrence of unconstitutional and tortious actions by their subordinates.

97.  DHS and ICE officials have a duty to comply with the four USC directives and/or other governing laws and policies in order to:  (i) promptly and meaningfully evaluate claims of U.S. citizenship by an individual they seek to arrest; and (ii) not arrest the individual when there is evidence indicating the individual is a U.S. citizen.

98.   DHS and ICE officials officials have a duty to comply with the four USC directives and/or other governing laws and policies in order to: (i) promptly and meaningfully examine the merits of a claim of U.S. citizenship by an individual whom they have already have in custody; and (ii) not continue to detain that individual when there is evidence indicating the individual is a U.S. citizen.

99. USCIS officials have a duty to act with reasonable care in adjudicating N-600 applications of U.S. citizens and promptly correct USCIS errors in adjudicating N-600 applications.

100.   DHS and ICE officials breached their duties, as set forth in paragraphs 31-62, in the scope and course of their employment with the United States.

101.   USCIS officials breached their duties, as set forth in paragraphs 63-66, in the scope and course of their employment with the United States

102.   As a proximate and reasonably foreseeable result of DHS and ICE's negligence, Mr. Watson suffered injuries, including his unlawful arrest and 1,273 in detention, lost wages, loss of consortium, pain and suffering, as well as mental, emotional and psychological anguish, as well as 755 days of post-detention deprivation as result of being left destitute and without proof of legal status to work in the United States.

103.   As a proximate and reasonably foreseeable result of USCIS's negligence, Mr. Watson suffered injuries, including 755 days of post-detention deprivation as a result of being left destitute without proof of his U.S. citizenship, unable to work, or otherwise exercise his rights and privileges as a U.S. citizens, as well as pain and suffering, mental, emotional and psychological anguish.

104.   At all times during Mr. Watson's arrest, detention, removal proceedings, and application for a certificate of U.S. citizenship, DHS, ICE, and USCIS officials were employees of the United States acting within the scope and course of their employment. Defendant United States, therefore, is liable for the actions of DHS, ICE, and USCIS officials under the FTCA for negligence.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Watson demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Watson respectfully requests that the Court enter judgment:

A.     Declaring that Defendants Estrada, Ortiz, Gunther, and John Does Nos. 1-8 violated Mr. Watson's rights under the U.S. Constitution and federal law;

B.     Awarding compensatory and punitive damages to Mr. Watson against Defendants Estrada, Ortiz, Gunther, and John Does Nos. 1-8 in their individual capacities for the above violations;

C.     Declaring Defendant United States is liable for the tortious conduct of DHS, ICE, USCIS officials acting within the scope and course of their employment for the United States;

D.     Awarding compensatory damages to Mr. Watson against Defendant United States under the Federal Tort Claims Act (28 U.S.C. § 2674);

E.     Awarding prejudgment interest to Mr. Watson on any award of damages to the extent permitted by law;

F.     Awarding reasonable attorneys' fees to Mr. Watson pursuant to 42 U.S.C. § 1988, 28 U.S.C. §§ 2412(b) and 2412(d)(1)(A), and/or any applicable law; and

G.    Granting such other relief as they Court may deem just and proper under the

circumstances.

Dated: October 31, 2014                    HOLLAND & KNIGHT LLP

                                           By:    *s/ Robert J. Burns*

                                                  Mark A. Flessner
                                                  Holland & Knight LLP
                                                  131 S. Dearborn Street, 30th Floor
                                                  Chicago, IL 60603
                                                  Telephone: (312) 715-5882
                                                  Facsimile: (312) 578-6666
                                                  Mark.flessner@hklaw.com
                                                  (*pro hac vice* application forthcoming)

                                                  Christopher G. Kelly
                                                  Robert J. Burns
                                                  Holland & Knight LLP
                                                  31 West 52nd Street
                                                  New York, NY 10019
                                                  Telephone:  (212) 513-3200
                                                  Facsimile:  (212) 385-9010
                                                  Christopher.Kelly@hklaw.com
                                                  Robert.Burns@hklaw.com

                                                  Mark Fleming
                                                  NATIONAL IMMIGRANT JUSTICE CENTER
                                                  208 South LaSalle Street, Suite 1300
                                                  Chicago, Illinois 60604
                                                  Telephone: (312) 660-1328
                                                  Facsimile: (312) 660-1505
                                                  mfleming@heartlandalliance.org
                                                  (*pro hac vice* application forthcoming)

                                                  *Attorneys for Plaintiff Davino Watson*