UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – –X

DAVINO WATSON,

                Plaintiff,                        Docket No. 14-CV-6459
                                                (Weinstein, J.)
     - against -                              (Pohorelsky, M.J.)

JUAN ESTRADA, MICHAEL ORTIZ, TIMOTHY
GUNTHER, JOHN DOES 1-8, and the UNITED
STATES,
                Defendants.

– – – – – – – – – – – – – – – – – –X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Joseph A. Marutollo
Assistant U.S. Attorney
     (Of Counsel)

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF THE CASE........................................................................................... 2

   A.  Statutory Background ............................................................................................ 2

   B.  Background ........................................................................................................... 3

        1.  Plaintiff's Background.............................................................................3

        2.  Plaintiff's Immigration Proceedings.......................................................3

        3.  Plaintiff's Complaint ...............................................................................4

STANDARD OF REVIEW ............................................................................................... 6

   A.  Fed. R. Civ. P. 12(b)(6) Standard ........................................................................ 6

   B.  Fed. R. Civ. P. 12(b)(1) Standard ........................................................................ 7

   C.  Summary Judgment Standard ............................................................................... 8

ARGUMENT.................................................................................................................... 9

        POINT I

        THE COMPLAINT IS TIME-BARRED AND SHOULD BE DISMISSED
           PURSUANT TO FED. R. CIV. P. 12(B)(6)......................................................... 9

   A.  Plaintiff's *Bivens* Claims Are Time-Barred .................................................... 9

   B.  Plaintiff's False Arrest, Negligence, and Malicious Prosecution Claims, Brought Pursuant
       to the FTCA, are Time-Barred ...................................................................... 10

        1.  FTCA Legal Standard ..........................................................................10

        2.  False Arrest .........................................................................................11

        3.  Malicious Prosecution..........................................................................12

           i.  *Heck v. Humphrey* is inapplicable to the case at bar.......................12

          ii.  Plaintiff's malicious prosecution claim is still time-barred. ...........13

i

    4.   Negligence ............................................................................................14

POINT II

PLAINTIFF'S MALICIOUS PROSECUTION AND NEGLIGENCE FTCA
    CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1)
    FOR LACK OF SUBJECT MATTER JURISDICTION .................................... 15

A.  Plaintiff's Malicious Prosecution Claim Must be Dismissed Under Fed. R. Civ. P.
    12(b)(1) ................................................................................................ 15

B.  Plaintiff's Negligence Claim Must be Dismissed Under Fed. R. Civ. P. 12(b)(1)…........ 18

POINT III

IN THE ALTERNATIVE, SUMMARY JUDGMENT MUST BE GRANTED ....... 20

A.  Plaintiff's FTCA False Arrest Claim Fails as a Matter of Law ........................................ 20

    1.   Plaintiff's Citizenship Status was an Open Question throughout the Entirety of his
        Detention.............................................................................................21

        i.   Plaintiff's Claims Fail under *Akran v. United States* ......................................21

        ii.  Plaintiff Did Not Meet His Burden to Prove U.S. Citizenship During the
            Removal Proceedings.......................................................................23

        iii.  The BIA's 2013 Decision Does Not Create a Cause of Action. .....................24

    2.   Probable Cause Existed for Plaintiff's Detention....................................................25

B.  Plaintiff's FTCA Malicious Prosecution Claim Fails as a Matter of Law…..................... 27

C.  Plaintiff's FTCA Negligence Claim Fails as a Matter of Law… .................................... 28

D.  Plaintiff's *Bivens* Claims Must be Dismissed ................................................................ 29

    1.   A *Bivens* Remedy is Not Appropriate in the Context of Removal Proceedings…29

        i.   There is a Special Factor Counseling Hesitation in the Instant Action ...........29

        ii.  There is an Alternative Remedial Scheme......................................................33

    2.   The Individual Defendants Are Entitled to Qualified Immunity… ......................34

CONCLUSION.......................................................................................................... 38

# PRELIMINARY STATEMENT

Plaintiff Davino Watson ("plaintiff") brings this action against defendants United States of America, Juan Estrada, Michael Ortiz, Timothy Gunther, and John Does Nos. 1-8. Plaintiff alleges that despite having derived U.S. citizenship from his father in accordance with Jamaican law, plaintiff was falsely imprisoned, wrongfully subjected to deportation proceedings, and improperly denied proof of U.S. citizenship by officials from Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS"), and United States Citizenship and Immigration Services ("USCIS"). Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. ("FTCA"), plaintiff brings claims of false imprisonment, malicious prosecution, and negligence against defendant United States. Pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), plaintiff alleges violations of his rights under the Fourth Amendment, as well as violations of his substantive and procedural due process rights under the Fifth Amendment, against individual defendants Juan Estrada, Michael Ortiz, Timothy Gunther and John Does Nos. 1-8.

Defendants United States of America, Juan Estrada, Michael Ortiz, and Timothy Gunther ("defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss the complaint, or in the alternative, for summary judgment, for the following reasons. First, plaintiff's claims are time-barred under Fed. R. Civ. P. 12(b)(6), because plaintiff's *Bivens* claims accrued on May 8, 2008, the date plaintiff entered into ICE custody, and plaintiff filed his complaint on October 31, 2014, well beyond the three-year statute of limitations; and further,

---

[1] The John Doe defendants have not yet been served with process in this matter and therefore, are not yet parties to this action. The claims brought against them, however, can be dismissed for the same reasons set forth in Points I, II, and III, *infra*. In the event proper service is effected, the named defendants reserve their right to move to dismiss the claims against the John Doe defendants as beyond the statute of limitations and for reasons including, but not limited to, failure to state a claim, lack of subject matter jurisdiction, insufficient service of process, and qualified immunity.

plaintiff untimely filed his administrative tort claim with the government, thereby barring his FTCA claims. Second, even assuming *arguendo*, that any of plaintiff's claims are timely, the Court lacks subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), with respect to plaintiff's FTCA malicious prosecution and negligence claims, as no private analogs exist for these claims. Finally, in the alternative, defendants are entitled to summary judgment with respect to both plaintiff's FTCA claims and *Bivens* claims. Plaintiff's FTCA claims fail because plaintiff's detention and prosecution were privileged and supported by probable cause, as plaintiff's citizenship claim was an open question throughout his detention; and additionally, the agency officials were not negligent under the circumstances. Plaintiff's *Bivens* claims fail because a *Bivens* remedy is not appropriate in the context of the instant action, and in any event, the individual defendants are entitled to qualified immunity.

## STATEMENT OF THE CASE[2]

### A.      Statutory Background

Section 320 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1431 provides that a child who was born outside of the United States becomes a citizen automatically when (1) at least one parent is a citizen of the United States; (2) the child is under 18 years old; and (3) the child resides in the United States and is in the legal and physical custody of the citizen parent. *See* 8 U.S.C. § 1431.

For purposes of section 320(a) of the Act, the term "child" means "an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in

---

[2] For a complete statement of the material undisputed facts and underlying evidentiary support, defendants respectfully refer the Court to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, dated April 29, 2015 ("56.1") and the declaration and accompanying exhibits submitted in support thereof.

the United States or elsewhere … if such legitimation … takes place before the child reaches the age of 16 years … and the child is in the legal custody of the legitimating ... parent or parents at the time of such legitimation ....” Section 10l(c)(l) of the Act, 8 U.S.C. § 1101(c)(1).

**B. Background**

### 1. Plaintiff's Background

Plaintiff Davino Watson (“Plaintiff”) was born in Jamaica in 1984. 56.1 ¶1. Plaintiff's biological parents, Hopeton Ulando Watson and Dorette McFarlane, were not married at the time of plaintiff's birth. 56.1 ¶2. Plaintiff entered the U.S. in 1998. 56.1 ¶7. Hopeton Ulando Watson became a U.S. citizen in 2002, when plaintiff was 17 years old. 56.1 ¶4. In 2004, plaintiff was convicted of attempted robbery. 56.1 ¶9. In 2007, plaintiff was convicted of attempted criminal sale of cocaine in the third degree, and incarcerated, with his release date from prison scheduled for May 8, 2008. 56.1 ¶12.

### 2. Plaintiff's Immigration Proceedings

On April 10, 2008, ICE placed plaintiff in a removal proceeding in light of, *inter alia*, his criminal convictions. 56.1 ¶17. On May 8, 2008, after serving his sentence for the criminal conviction, plaintiff entered into ICE custody. 56.1 ¶18. Plaintiff opposed removal by claiming that he derived citizenship from his father under Jamaican law. 56.1 ¶¶ 20, 34. On November 13, 2008, an Immigration Judge (“IJ”) found that plaintiff did not meet his burden of showing derivative citizenship and ordered plaintiff removed, as plaintiff did not qualify as a “legitimated child” pursuant to section 101(c) of the INA, 8 U.S.C. § 1101(c). 56.1 ¶32. On February 5, 2009, the Board of Immigration Appeals (“BIA”) affirmed that removal, finding that plaintiff failed to establish that he had been legitimated by his father or that he was in his father's legal custody at the time of the alleged legitimation. 56.1 ¶34. BIA relied on *Matter of Hines*,

24 I&N Dec. 544 (BIA 2008), which held in a case involving former section 321(a)(3) of the INA, 8 U.S.C. § 1431, that a child born out of wedlock in Jamaica can be legitimated only upon the subsequent marriage of his biological parents, thereby overruling *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981). 56.1 ¶34. On July 9, 2009, the Second Circuit dismissed plaintiff's petition for review. 56.1 ¶41. On May 31, 2011, the Second Circuit remanded plaintiff's case to the BIA for clarification regarding its interpretation of the concept of "legitimation" under Jamaican law. 56.1 ¶45. On November 2, 2011, plaintiff was released from ICE custody. 56.1 ¶48. On January 24, 2013, BIA determined that *Matter of Hines* was inapplicable to plaintiff, and that plaintiff was determined to be legitimized by the Jamaican Status of Children Act of 1976. 56.1 ¶50.

### 3. Plaintiff's Complaint

In the Complaint filed with this Court on October 31, 2014, plaintiff sets forth five claims. Pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), plaintiff alleges a violation of his Fourth Amendment rights, as well as his procedural and substantive due process rights under the Fifth Amendment, against individual defendants Juan Estrada, an ICE deportation officer; Michael Ortiz, an ICE deportation supervisor; Timothy Gunther, an ICE deportation officer; and John Does Nos. 1-8, purported ICE employees. First, plaintiff alleges that his Fourth Amendment rights and Fifth Amendment substantive due process rights were violated because the individual defendants "failed to conduct a reasonable investigation into plaintiff's U.S. citizenship and accordingly failed to establish probable cause that he was a noncitizen," which caused plaintiff to be unlawfully detained by ICE officials, including defendants Estrada and Gunther; and unlawfully issued a Notice to Appear (Form I-862) and administrative arrest warrant, by defendant Ortiz.

Complaint, ¶¶ 12-13, 67-75.

Second, pursuant to *Bivens*, plaintiff alleges a violation of his procedural due process rights under the Fifth Amendment against the individual defendants, as plaintiff claims, *inter alia*, that the individual defendants failed to follow applicable laws, statutes, regulations, and ICE's own controlling policies. *See* Complaint, ¶¶ 76-79.

Third, pursuant to the FTCA, plaintiff alleges a claim of false arrest/false imprisonment against defendant United States. Plaintiff alleges, *inter alia*, that he was arrested and detained without legal justification. *See* Complaint, ¶¶ 80-85.

Fourth, pursuant to the FTCA, plaintiff raises a claim of malicious prosecution against defendant United States, alleging, *inter alia*, that ICE and DHS officials commenced and continued removal proceedings against plaintiff without probable cause, that ICE and DHS officials disregarded four USC directives that required a thorough investigation and reporting of plaintiff's claim of U.S. citizenship, and that ICE and DHS officials acted with actual malice. *See* Complaint, ¶¶ 86-92.

Finally, pursuant to the FTCA, plaintiff brings a claim of negligence against defendant United States, alleging, *inter alia*, that DHS, ICE, and USCIS officials breached their duty to act with reasonable care and not deprive individuals of liberty without due process, that said officials breached their duty to comply with four USC directives to determine that plaintiff is a U.S. citizen, and that USCIS officials breached their duty of reasonable care by not promptly correcting USCIS errors in adjudicating plaintiff's N-600 applications. *See* Complaint, ¶¶ 93-104.

<u>**STANDARD OF REVIEW**</u>

**A.      Fed. R. Civ. P. 12(b)(6) Standard**

With respect to a Fed. R. Civ. P. 12(b)(6) motion, the Court is required to accept the material facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (internal citations omitted). A motion to dismiss should be granted where a complaint fails to plead enough facts to state a claim that is *plausible* on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations of the complaint must be more than speculative, and show the grounds on which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In deciding such a motion, a Court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Under Fed. R. Evid. 201(b), a court may take judicial notice of documents filed in administrative and judicial proceedings to establish facts concerning those proceedings, but not for the truth of the matters asserted in the documents. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). "Agency determinations and administrative findings are public records of which a court may properly take judicial notice." *Lia v. Saporito*, 909 F. Supp.2d 149, 161 (E.D.N.Y. 2012); *see, e.g.*, *Akran v. United States*, 998 F. Supp.2d 197, 204,

fn. 5 (E.D.N.Y. 2014); *Rosario v. New York City*, No. 12-CV-4795 (PAE), 2013 WL 2099254, at *1 n.1 (S.D.N.Y. 2013) (noticing immigration court removal order).

"Although Rule 12(b) of the Federal Rules of Civil Procedure does not enumerate failure to comply with the statute of limitations as a ground for dismissal[,] [a] motion to dismiss on this ground generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to a Rule 12(b)(1) motion." *Adams v. Crystal City Marriott Hotel*, No. 02-CV-10258 (PKL), 2004 WL 744489, at *2 (S.D.N.Y. Apr. 6, 2004) (citing *Ghartey v. St. John's Queens Hospital,* 869 F.2d 160, 162 (2d Cir. 1989); *Rosario v. Local 1106 Transp. Works of Am.*, No. 13-CV-400 (PKC), 2014 WL 297246 (E.D.N.Y. Jan. 27, 2014) ("Where a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, such a motion "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.") (internal citations omitted).

## B.    Fed. R. Civ. P. 12(b)(1) Standard

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate where there is "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Fed. R. Civ. P. 12(b)(1), a "plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1), "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.* In deciding a motion pursuant to Fed. R. Civ. P. 12(b)(1), a district court may refer to evidence outside the pleadings, such as affidavits or documents, without converting the motion to one for summary judgment. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)

(citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)); *see also Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## C. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). In making this determination, "the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion." *Perkins v. Brown*, 285 F. Supp. 2d 279, 282 (E.D.N.Y. 2003); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (same). "[W]hile it is true that summary judgment is not often granted prior to discovery, there is nothing in the Federal Rules of Civil Procedure precluding summary judgment—in an appropriate case—prior to discovery…. To the contrary, Rule 56 makes clear that a defendant 'may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.'" *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 346 (S.D.N.Y. 2009) (internal citations omitted); *see also Natsource LLC. v. GFI Grp., Inc.,* 332 F. Supp. 2d 626, 637-38 (S.D.N.Y. 2004) ("[t]he absence of discovery alone does not necessarily bar summary judgment."); *Connecticut Nat'l Bank v. Trans World Airlines, Inc.*, 762 F.Supp. 76, 79 (S.D.N.Y.1991) (holding that the court was not precluded from entering summary judgment due to the fact that no discovery had been conducted).

## ARGUMENT

## POINT I

## THE COMPLAINT IS TIME-BARRED AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6)

**A.**     **Plaintiff's *Bivens* Claims Are Time-Barred**

It is well-settled that "[t]he statute of limitations for *Bivens* actions arising in New York is three years." *Tapia–Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir.1999) (citing *Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)); *see also, Harrison v. Lutheran Med. Ctr.*, 05–CV–2059, 2007 U.S. Dist. LEXIS 76064, at *10 (E.D.N.Y. Oct 11, 2007). While state law supplies the statute of limitations for *Bivens* claims, federal law determines when a federal claim accrues. *Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir. 1998). Under federal law, a *Bivens* claim accrues at the point in time when the plaintiff knows or has reason to know of the constitutional injury that is the basis of his action. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir.1999); *Adeyi v. United States*, 2008 WL 793595, at *24 (E.D.N.Y. Mar. 25, 2008). A plaintiff's complaint must be filed no later than three years thereafter. *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).

Here, plaintiff was taken into ICE detention on May 8, 2008. 56.1 ¶18. There can be no dispute that on May 8, 2008, plaintiff was aware of his alleged unlawful detention and the facts underlying it. *See Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (dismissing Fourth Amendment *Bivens* claim as, "[u]nder federal law, a *Bivens* action accrues "when the plaintiff knows or has reason to know of the harm.") (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994). As such, May 8, 2008 is the date that plaintiff's *Bivens* claims began to

accrue, as that is the date that plaintiff knew of the alleged harm. Since the instant action was filed on October 31, 2014 (*see* Complaint, Docket Entry No. 1), plaintiff's *Bivens* claims are time-barred, as they are well in excess of three years after plaintiff suffered the alleged harm. *See, e.g., Barone v. United States,* No. 12-CV-4103 (LAK), 2014 WL 4467780, at *16 (S.D.N.Y. Sept. 10, 2014) (dismissing complaint where the statute of limitations on plaintiff's *Bivens* false arrest claim expired three years later after he became subject to legal process).

Moreover, there can be no dispute that the limitations period began to run when plaintiff was detained by ICE, not later, upon his release from ICE custody. *See Wallace v. Kato*, 549 U.S. 384, 389, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (rejecting "petitioner's contention that his false imprisonment ended upon his release from custody," and noting, "[w]ere it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.").

Accordingly, plaintiff's *Bivens* claims are time-barred.

## B. Plaintiff's False Arrest, Negligence, and Malicious Prosecution Claims, Brought Pursuant to the FTCA, are Time-Barred

### 1. FTCA Legal Standard

As the FTCA's time limits are not jurisdictional,[3] the Court must evaluate the complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Miller v. Potter*, No. 07–CV–1767 (JFB)(ETB), 2007 WL 4615611, at *1 n. 3 (E.D.N.Y. Nov. 29, 2007) (considering motion to

---

[3] The Supreme Court recently rejected the argument that the FTCA's time limits "are not subject to tolling because they are jurisdictional restrictions," and concluded that "courts may toll both of the FTCA's limitations periods." *United States v. Wong*, No. 13-1074, 2015 WL 1808750, at *3 (U.S. Apr. 22, 2015). As plaintiff has not set forth a tolling defense in the instant action, defendants do not address this issue herein, but reserve their right to oppose any tolling of the statute of limitations in their reply papers.

dismiss under Rule 12(b)(6) instead of Rule 12(b)(1), where failure to meet statutory deadline was not jurisdictional).

The FTCA provides a limited waiver of the United States' sovereign immunity for the negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2674; *FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994). Exhaustion of administrative remedies under the FTCA requires that an administrative tort claim be presented to the relevant agency within two years from the accrual of the claim, lest the claim be "forever barred," or within six months of when the agency has issued its final denial of an administrative remedy (or alternatively until six months have elapsed from the filing of the claim without a response from the agency). *See* 28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a). Thus, pursuant to 28 U.S.C. § 2675, an action is prohibited under the FTCA unless the claimant shall have first presented the claim to the appropriate federal agency within two years of the allegedly wrongful act or omission.

### 2. False Arrest

A false arrest or false imprisonment claim accrues once the plaintiff "becomes held pursuant to legal process." *See Wallace*, 549 U.S. at 388; *see, e.g.*, *Warren v. Altieri*, 59 F. App'x 426 (2d Cir. 2003) (holding that a detainee's claims accrued at the time of the alleged detention, not when the charges against him were dismissed).

Here, as noted *supra,* plaintiff was taken into ICE detention on May 8, 2008. 56.1 ¶18. Plaintiff was clearly aware of his detention on this date. *See Tourchin v. United States*, No. 07-CV-3458, 2009 WL 39007, at *1 (2d Cir. Jan. 8, 2009) ("[plaintiff's] claim therefore accrued when he became aware of the injury, the date on which he was detained, not when he

discovered that his detention was unlawful"). Like his *Bivens* claims, plaintiff's FTCA false arrest claim began to accrue on May 8, 2008.

Plaintiff, however, did not present his written administrative tort claim to ICE until October 30, 2013. 56.1 ¶52. This administrative claim, received by ICE over three years after plaintiff's detention commenced, was untimely under 28 U.S.C. § 2401(b). Because the prerequisites for seeking relief under the FTCA must be strictly construed in favor of the government, and as plaintiff has not met his burden of showing that his claim accrued later than May 8, 2008, or within two years of October 30, 2013, plaintiff's false arrest claim under the FTCA must be dismissed. *See, e.g., Wang v. United States*, No. 01-CV-1326, 2002 WL 441190 at * 2 (S.D.N.Y. Mar. 20, 2002) (administrative claim for false arrest was belatedly filed more than two years after the arrest of the plaintiff), *aff'd* 61 Fed. Appx. 757 (2d Cir. 2003); *Liles v. United States*, 638 F. Supp. 963, 967 (D.D.C. 1986) (administrative claim for false arrest and false imprisonment was belatedly filed two years and 84 days after the arrest of the plaintiff); *Hitchmon v. United States*, 585 F. Supp. 256, 260 (S.D. Fla. 1984) (administrative claim for false arrest and false imprisonment was belatedly filed nearly five years after the arrest of the plaintiff).

### 3. Malicious Prosecution

#### i. *Heck v. Humphrey* **is inapplicable to the case at bar**

In the criminal context, the statute of limitations for malicious prosecution claims typically begins to run on the date that the criminal proceedings terminate in plaintiff's favor. *See Heck v. Humphrey*, 512 U.S. 477 (1994). A favorable termination is one in which, *inter alia*, the plaintiff is acquitted, the charges are dismissed for lack of evidence, or, if already convicted, "the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-487.

Plaintiff appears to suggest that January 28, 2013, the date BIA terminated removal proceedings in plaintiff's favor, is the date upon which plaintiff's malicious prosecution claim began to accrue. *See* Complaint, ¶89. The "favorable termination" doctrine set forth in *Heck*, however, is inapposite to the circumstances of this case, in which the facts address removal in a civil immigration matter, not a criminal proceeding. As the Supreme Court based its ruling in *Heck* largely on the exhaustion requirements unique to criminal *habeas* proceedings, however, "[t]here is good reason to doubt that *Heck* is properly extended to civil immigration proceedings." *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 273 (D. Conn. 2008) (citing *Heck,* 512 U.S. at 480-82); *see also Avalos-Palma v. United States*, No. 13-CV-5481 FLW, 2014 WL 3524758, at *12-13 (D.N.J. July 16, 2014) (questioning *Heck*'s applicability in deportation context). Deportation proceedings are of a "civil nature" because "[t]he judge's sole power is to order deportation; the judge cannot adjudicate guilt or punish the respondent..." *I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (noting that "[c]onsistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing."). Thus, *Heck* does not apply to the present immigration matter.

### ii.  Plaintiff's malicious prosecution claim is still time-barred

Even assuming, *arguendo*, that *Heck* does apply to plaintiff's malicious prosecution claim, it would be unclear as to which of plaintiff's administrative and judicial proceedings would be applicable. Indeed, plaintiff was part of multiple removal proceedings with different outcomes. 56.1 ¶¶ 32, 34, 41, 42, 44, 45, 50.

Should the Court apply *Heck*, defendants respectfully submit that the date of his "favorable termination" would be May 31, 2011, the date the Second Circuit, on appeal, called into question BIA's decision denying plaintiff citizenship. 56.1 ¶45. *See Wallace*, 549 U.S. at 392-93 (noting that for a malicious prosecution claim arising out of a criminal proceeding, a plaintiff must prove that his conviction or sentence has been, *inter alia*, "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.") (citing to *Heck*). As plaintiff did not present his written administrative tort claim to ICE until October 30, 2013 (56.1 ¶52), plaintiff's action is untimely under 28 U.S.C. § 2401(b).

In any event, plaintiff still lacks subject matter jurisdiction on this tort claim, as discussed more fully in Point II.A, *infra.*

### 4. Negligence

For negligence, a cause of action "accrues from the date of the injury." *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 337 (E.D.N.Y. 2012) (citing *Brooklyn Union Gas Co. v. Hunter Turbo Corp.*, 241 A.D.2d 505, 660 N.Y.S.2d 877, 878 (2d Dep't 1997) ("It is well established that in any action to recover damages for negligence … the plaintiff's claim accrues upon the date of injury.").

Plaintiff alleges that DHS and ICE officials negligently detained plaintiff. As noted *supra*, the date of plaintiff's detention into ICE custody was May 8, 2008. 56.1 ¶18. Plaintiff's claim therefore accrued on that date. Since plaintiff did not file his administrative tort claim with ICE until October 30, 2013, plaintiff's negligence claim arising out of his detention is

time-barred.  *Sovulj v. United States*, No. 98-CV-5550(FB), 2003 WL 21524835, at *3 (E.D.N.Y. July 2, 2003) (dismissing FTCA negligence claim as time-barred).

Additionally, plaintiff alleges that "USCIS officials have a duty to act with reasonable care in adjudicating N-600 applications of U.S. citizens and promptly correct USCIS errors in adjudicating N-600 applications." *See* Complaint, ¶ 99.  Plaintiff's N-600 application, however, was filed on July 15, 2008, and denied on August 4, 2008.  56.1 ¶¶23, 25.   As such, plaintiff's October 30, 2013 administrative filing is clearly outside the FTCA statute of limitations period. Thus, plaintiff's negligence claims arising out of the alleged negligent adjudication of his N-600 application must also be dismissed as time-barred.

## POINT II

### PLAINTIFF'S MALICIOUS PROSECUTION AND NEGLIGENCE FTCA CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Assuming, *arguendo*, that the Court were to find that any of plaintiff's claims were timely, the Court still lacks subject matter jurisdiction over plaintiff's malicious prosecution and negligence FTCA claims.

**A.    Plaintiff's Malicious Prosecution Claim Must be Dismissed Under Fed. R. Civ. P. 12(b)(1)**

Plaintiff's malicious prosecution claim under the FTCA should be dismissed because there is no private analog for this claim.  *See Storms v. United States,* No. 13-CV-811 MKB, 2015 WL 1196592, at *18 (E.D.N.Y. Mar. 16, 2015) ("The Court dismisses Plaintiffs' tort claims for lack of subject matter jurisdiction because Plaintiffs' tort claims lack a private analogue.").

The FTCA provides a limited waiver of the United States' sovereign immunity for the negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2674. The FTCA's waiver of sovereign immunity is limited to acts committed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b)(1). The United States is liable for tort claims only "in the same manner and to the same extent as a private individual under *like circumstances*." 28 U.S.C. § 2674 (emphasis added).

As the Second Circuit has explained, the "'like circumstances' language in § 2674 sets forth that the liability assumed by the Government . . . is that created by all the circumstances, not that which a few of the circumstances might create." *Caban v. United States*, 728 F.2d 68, 73-74 (2d Cir. 1984). "Thus, notwithstanding any circumstances in which state law would hold a private person liable for his acts, if those circumstances are in any material respect not 'like' those in which the government's act occurred, there has been no FTCA waiver of sovereign immunity." *Id.* at 74. This is not to say that a plaintiff must establish that a private person would be liable under identical circumstances, but rather that a plaintiff must establish that a private person would be liable under similar, or analogous, circumstances. *See United States v. Olson*, 546 U.S. 43, 46-47 (2005) ("'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield") (citation omitted). Thus, the FTCA's waiver of sovereign immunity does not extend to conduct "'of a governmental nature or function,' . . . that has 'no analogous liability' in the law of torts." *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir.1988) (quoting *Dalehite v. United States*, 346 U.S. 15, 28, 44 (1953)). "[F]or liability to arise under the FTCA, [plaintiff's] cause of action must be

'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (citation omitted).

Here, plaintiff's malicious prosecution claim alleges that "ICE and DHS officials blatantly disregarded four USC directives that required a thorough investigation and reporting of Plaintiff's claim to U.S. citizenship that would have demonstrated that they were without probable cause to continue removal proceedings." *See* Complaint, ¶ 88. As plaintiff's malicious prosecution claim challenges actions that are essential federal functions by immigration officials, no private analog exists. In the same way that private citizens are not "empowered to certify the loss of nationality," *Akutowicz*, 859 F.2d at 1125, private citizens are also not empowered to detain purported criminal aliens in order to effect their removal from the United States, or to assess their claims to citizenship through the removal process.

Perhaps most importantly, abiding by the four USC directives cited by plaintiff is clearly a federal function, one in which private citizens clearly cannot engage. "By relying so completely on the violation of the regulation as the sole basis for the existence of a duty and its breach, plaintiff has run squarely into the bar of sovereign immunity." *McGowan v. United States*, No. 14-CV-494 (BMC), 2015 WL 1321673, at *11 (E.D.N.Y. Mar. 23, 2015) (finding that "[a] breach of government regulations cannot be the *sine qua non* of a negligence claim under the FTCA because there is no private analogue—private individuals have no regulations.").

Plaintiff's malicious prosecution claim should, therefore, be dismissed.

**B.**      **Plaintiff's Negligence Claim Must be Dismissed under Fed. R. Civ. P. 12(b)(1)**

Plaintiff's negligence claim under the FTCA should be dismissed because there is also no private analog for this claim. *See, e.g., United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) ("Whether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law....").

In *Akutowicz*, plaintiff sought to state an FTCA claim against the government for its allegedly negligent conduct in connection with the adjudicated loss of plaintiff's citizenship. *Akutowicz*, 859 F.2d at 1122-25. Because "no private citizen is empowered to certify the loss of American nationality," the Second Circuit held that there was no private analog to the negligent conduct alleged and the FTCA claim was dismissed. *Id.* at 1125.

Here, like in *Akutowicz*, there is no private analog for plaintiff's claim because plaintiff's immigration detention, including the quasi-adjudicative assessment of his claim to citizenship, is not analogous to any circumstance in which a private person would be held liable under New York State tort law. *See, e.g., Figueroa v. United States*, 739 F. Supp. 2d 138, 142 (E.D.N.Y. 2010) (finding that the negligent issuance of a passport lacks a private analog and therefore, cannot form the basis of a claim pursuant to the FTCA); *Omoniyi v. Dep't of Homeland Sec.*, No. 10–CV–1344, 2012 WL 892197, at *8–9 (S.D.N.Y. Mar. 13, 2012) (finding no private analog in denying naturalization application); *cf. Liranzo v. United States,* 690 F.3d 78, 96 (2d Cir. 2012) ("A private individual cannot, without subsequent government action, cause injury to another's citizenship. But a private person is of course capable of falsely arresting another.").

Importantly, one major element of plaintiff's negligence claim – failing to reasonably adjudicate N-600 applications (*see* Complaint, ¶ 99) – clearly lacks any private

analog. Simply put, "private citizens have no regulations." *McGowan*, No. 14-CV-4945 BMC, 2015 WL 1321673, at *11 (E.D.N.Y. Mar. 23, 2015). Any delay on the part of the USCIS in adjudicating the N-600 is not cognizable as a common law tort under the FTCA.

Moreover, the Court also lacks subject matter jurisdiction with respect to plaintiff's negligence claim because "[s]ince plaintiff's FTCA claim for false arrest relies on a legal theory of negligence that New York tort law does not recognize, that claim is not subject to the FTCA's general waiver of immunity and, accordingly, this court lacks subject-matter jurisdiction to consider the claim in the form that it was pled." *Barone v. United States*, No. 12-CV-4103 LAK, 2014 WL 4467780, at *8 (S.D.N.Y. Sept. 10, 2014) (citing *Peker v. Steglich*, 324 F. App'x 38, 39 (2d Cir. 2009)). Under New York law "there is no cause of action for false arrest or false imprisonment sounding in negligence." *Swinton v. City of New York*, 61 A.D.3d 557, 558, 877 N.Y.S.2d 68, 70 (1st Dep't 2009); *see Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."); *Simon v. State of New York*, 12 A.D.3d 171, 783 N.Y.S.2d 463 (1st Dep't 2004); *Boose v. City of Rochester*, 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (4th Dep't 1979) ("Plaintiff may not recover under broad general principles of negligence, however, but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution."); *cf. Barr v. Albany Cnty.*, 69 A.D.2d 914, 915, 415 N.Y.S.2d 471, 473 (3d Dep't 1979), *aff'd*, 50 N.Y.2d 247, 428 N.Y.S.2d 665 (1980) ("Negligence is not an element of false arrest, since the act itself, if not justified, is tortious irrespective of negligence.").

Additionally, "[i]t is well settled that New York courts do not recognize claims for negligent or malicious investigation … and any claim for negligent training in investigative procedures is akin to a claim for negligent investigation or prosecution, which is not cognizable under New York law." *Ellis v. Gannon*, No. 10-CV-1373 SJF ETB, 2011 WL 5513184, at *6 (E.D.N.Y. Nov. 10, 2011) (citing *Baez v. Jetblue Airways Corp.*, 2009 WL 2447990, at * 5 n. 4 (E.D.N.Y. Aug.3, 2009)). As a result, no private analog could exist for any purported negligent investigation claim.

Ultimately, plaintiff's negligence claim, which relates to the violation of the federal government's duties under certain immigration regulations, "is an action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir.1988). The Court, therefore, lacks subject matter jurisdiction for plaintiff's negligence claim.

## POINT III

### IN THE ALTERNATIVE, SUMMARY
### JUDGMENT MUST BE GRANTED

Assuming, *arguendo*, that the Court finds that plaintiff's claims are not time-barred, and that plaintiff's malicious prosecution and negligence claims should not be dismissed for lack of subject matter jurisdiction, defendants are still entitled, in the alternative, to summary judgment on all of plaintiff's claims.

**A.     Plaintiff's FTCA False Arrest Claim Fails as a Matter of Law**

A false arrest claim rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). As set forth herein, plaintiff cannot establish a claim for false arrest, as probable cause existed to detain plaintiff.

To prove the elements of false arrest, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Here, there is no dispute that plaintiff was confined, conscious of the confinement, and did not consent. The only issue is whether plaintiff's detention was "otherwise privileged." The determination of whether the ICE agents' actions were otherwise privileged "is determined by consulting federal privileges applicable to federal immigration officers." *Polanco v. United States*, No. 10-CV-1705 (SJ) (RLM), 2014 WL 795659, at *4 (E.D.N.Y. Feb. 27, 2014) (citations omitted). "To be privileged, the actions of the immigration officer must be reasonable and the detention must be conducted in accordance with federal standards." *Id.* (citations omitted). "It is axiomatic … that no such claim will obtain if the plaintiff's confinement is 'otherwise privileged.'" *McGowan*, 2015 WL 1321673 *7 (citing *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)). Moreover, "[i]f an officer has probable cause to arrest, the confinement is privileged." *Nzegwu v. Friedman*, No. 14-CV-1481, 2015 WL 1449647, at *1 (2d Cir. Apr. 1, 2015).

Here, plaintiff's arrest was privileged because plaintiff's citizenship status was an open question throughout the entirety of his detention; and plaintiff's arrest was supported by probable cause.

1. **Plaintiff's Citizenship Status was an Open Question throughout the Entirety of his Detention**

   i. **Plaintiff's Claims Fail Under *Akran v. United States***

In *Akran v. United States*, 997 F.Supp.2d 197, 207 (E.D.N.Y.) *aff'd*, 581 F. App'x 46 (2d Cir. 2014), plaintiff, whose citizenship was derived from his mother's naturalization,

brought an action against the U.S. under the FTCA asserting claims, *inter alia*, of false imprisonment. The district court held that "at the time of his initial detention [plaintiff's] immigration records collectively did not establish his citizenship and that detention was not improper…in point of fact, whether [plaintiff's] father legitimated him or not remained an open question until CIS approved his N–600 application." *Akran v. United States*, 997 F. Supp. 2d 197, 206 (E.D.N.Y.). The Second Circuit affirmed, holding that plaintiff's contention that "immigration officials knew or should have known that he was a United States citizen is conclusory and implausible." *Akran v. United States*, 581 F. App'x 46, 47 (2d Cir. 2014); *see also Liranzo v. United States*, No. 08-CV-2940 (ARL), 2013 WL 1811338 (E.D.N.Y. April 29, 2013) (granting defendant's motion for a directed verdict because, *inter alia,* plaintiff's detention was otherwise privileged).

Here, like in *Akran*, plaintiff's derivative citizenship claim was an "open question" throughout his detention. As demonstrated by the record of the removal proceedings, whether plaintiff's father legitimated plaintiff was an open question until BIA terminated the removal proceedings against plaintiff in 2013. 56.1 ¶50. Between 2008 and 2011, the IJ, the AAO, and the BIA held that, in accordance with *Matter of Hines*, 24 I&N Dec. 544 (BIA 2008), plaintiff had not derived citizenship because as a child born out of wedlock in Jamaica, plaintiff could only be legitimated through the marriage of his biological parents, which had not occurred. 56.1 ¶¶ 30, 32, 34. Indeed, the law in New York, where plaintiff's father resided, also required the parents of a child born out of wedlock to marry in order for the child to become legitimated. 56.1 ¶30. In 2009, the Second Circuit dismissed plaintiff's petition for review regarding his derivative citizenship claim. 56.1 ¶41. In 2011, when the Second Circuit ultimately remanded the case to BIA, it acknowledged that BIA needed to review the open question of legitimation

under Jamaican law in the instant case, as the issue needed to be re-interpreted. *See Watson v. Holder*, 643 F.3d 367, 369-70 (2d Cir. 2011).

Moreover, even after the Second Circuit remanded the case, DHS filed a supplemental brief arguing, *inter alia*, that *Matter of Hines* applied prospectively, and therefore, not to plaintiff. 56.1 ¶49. Further, DHS argued that since the issue of whether plaintiff was legitimated under Jamaican law was a question of fact, BIA should remand the action to the IJ for further findings of fact in accordance with the Second Circuit's opinion. 56.1 ¶49. BIA only resolved the open question in 2013, when it ultimately determined that plaintiff was legitimated under Jamaican law, and decided not to remand the case further to the IJ. 56.1 ¶50.

At minimum, any delay in the BIA's deciding that difficult question of foreign law is surely not the fault of ICE, DHS, USCIS, or the individual officers.

### ii.  Plaintiff Did Not Meet His Burden to Prove U.S. Citizenship During the Removal Proceedings

As a general rule, in removal proceedings, the "government bears the burden of proving removability by clear and convincing evidence." *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006) (citing *Woodby v. INS*, 385 U.S. 276, 286 (1966)). There is, however, an exception to that rule: "[o]nce birth in a foreign country is established, there is a presumption of alienage." *Matter of Leyva*, 16 I. & N. Dec. 118, 119 (BIA 1977). Thus, once DHS shows that the person sought to be removed was born in a foreign country, he bears "the burden of going forward with the evidence to establish a claim to United States citizenship." *Leyva*, 16 I. & N. Dec. at 119; *accord Shepherd v. Holder*, 678 F.3d 1171, 1175 n.1 (10th Cir. 2012); *Martinez-Madera v. Holder*, 559 F.3d 937, 940 (9th Cir. 2009). In order to meet that burden, a person opposing removal by claiming derivative citizenship must show, by a preponderance of the evidence, that he derived citizenship. *Leyva*, 16 I. & N. Dec. at 119; *Ayton v. Holder*, 686 F.3d

331, 335 (5th Cir. 2012); *Leal Santos v. Mukasey*, 516 F.3d 1, 4 (1st Cir. 2008); *United States v. Scott*, 919 F. Supp. 2d 423, 428 (S.D.N.Y. 2013); *Bonsu v. Holder*, 646 F. Supp. 2d 273, 275 & n.1 (D. Conn. 2009).  In deciding a claim of derivative citizenship, "any doubts . . . should be resolved in favor of the United States," because citizenship, "once granted, cannot lightly be taken away."  *Walker v. Holder*, 589 F.3d 12, 18-19 (1st Cir. 2009) (quoting *Berenyi v. INS*, 385 U.S. 630, 637 (1967)).

It is undisputed that plaintiff was born in Jamaica.  *See* Complaint, ¶ 2.  Thus, it was plaintiff who bore the burden of coming forward with evidence to establish his claim of derivative citizenship by a preponderance of the evidence.  *Leyva*, 16 I. & N. Dec. at 119; *Ayton*, 686 F.3d at 335; *Leal Santos*, 516 F.3d at 4; *Scott*, 919 Supp. 2d at 428.  The IJ, AAO, and BIA all initially found that he had not met his burden.  56.1 ¶¶ 30, 32, 34.   Further, the BIA held that plaintiff failed to establish that his father, who became a U.S. citizen, was in sole legal custody of plaintiff when the alleged act of legitimation (amending his birth certificate) occurred.  56.1 ¶34. Therefore, the ICE employees involved in the removal proceedings properly did not assume that plaintiff had derived citizenship from his father.  Rather, they were authorized by federal law to commence the removal proceedings, so that plaintiff could present to the IJ legally sufficient evidence to support his claim of derived citizenship, and to detain plaintiff during the course of the removal proceedings, as mandated by 8 U.S.C. § 1226(c)(1)(B).

### iii.     The BIA's 2013 Decision Does Not Create a Cause of Action

Plaintiff's claim of citizenship, although later found to be valid in the BIA's 2013 decision, was adjudicated through standard procedures established by DHS and, therefore, DHS's conduct in detaining plaintiff was legally privileged.  56.1 ¶17.  An erroneous ruling that is later overturned does not create a cause of action if the ruling was made pursuant to standard

process that has jurisdiction over the claim. *See Houghtaling v. State*, 175 N. Y.S.2d 659, 668 (N.Y. Ct. Cl. 1958). Plaintiff's citizenship status was only an issue *because* of his own prior criminal convictions. 56.1 ¶¶9-14. In light of these criminal convictions, DHS and ICE were required to place plaintiff in the removal proceedings. Plaintiff's detention during the course of those proceedings was mandatory pursuant to 8 U.S.C. § 1226(c)(1)(B), which requires that DHS detain an alien who is in § 1227(a)(2)(A)(iii) removal proceedings. *Demore v. Kim*, 538 U.S. 510, 513, n. 1 (2003). Since federal law mandated the detention of plaintiff, the detention was "privileged," and hence cannot give rise to a claim for false imprisonment under New York law. *See Liranzo*, 690 F.3d at 95.

Consequently, there was clearly an open question as to whether plaintiff derived citizenship from his father, and therefore, his detention is privileged.

### 2. Probable Cause Existed for Plaintiff's Detention

Probable cause exists when the arresting individual has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks v. Tavernier*, 316 F. 3d 128, 135 (2d Cir. 2003) (citation omitted). Thus, the existence of probable cause is a complete defense to an action for false arrest. Moreover, the burden of establishing the absence of probable cause rests on the plaintiff. *See Nelson v. Hernandez*, 524 F. Supp.2d 212, 220 (E.D.N.Y. 2007). The question of whether or not probable cause exists is determinable as a matter of law if there is no dispute as to the pertinent events which provided the reason for the arrest. *See, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995).

In the immigration context, in order to arrest a suspect, an officer is required to have "reason to believe" that the suspect is an alien unlawfully in the United States. 8 U.S.C. § 1357(a) (2); 8 C.F.R. § 287.8(c)(2)(i). Reason to believe has been defined as requiring probable cause. *Avila–Gallegos v. INS*, 525 F.2d 666, 667 (2d Cir. 1975); *Ojeda Vinales v. INS*, 523 F.2d 286, 288 (2d Cir. 1975). "[A]n 'arrestable offense' includes a violation of immigration law, because federal immigration officers have authority to arrest where they have probable cause to believe 'that the alien so arrested is in the United States in violation of any [law or regulation regarding the admission, exclusion, expulsion, or removal of aliens].' *El Badrawi v. United States*, 787 F. Supp. 2d 204, 212 (D. Conn. 2011) (citing 8 U.S.C. § 1357(a)(2); *see United States v. Sanchez*, 635 F.2d 47, 62-63 (2d Cir.1980) ("Section 287(a) of the Immigration and Nationality Act, 8 U.S.C. s 1357(a), gives an INS agent authority to arrest an alien without a warrant if the agent has reason to believe that the alien is in the United States in violation of the immigration laws and is likely to escape before a warrant can be obtained.") (internal citations omitted).

In a typical FTCA false arrest action, which arises in the context of an arrest on criminal charges, it is the responsibility of the United States to obtain evidence sufficient to constitute probable cause for the arrest of a suspect. *See United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) ("The Government bears the burden of proof as to establishing probable cause for an arrest"). In the context of removal proceedings, however, it is the foreign-born person who, as noted *supra*, bears the burden of proving derivative citizenship. *Leyva*, 16 I. & N. Dec. at 119.

Here, the documentary evidence reveals that there was probable cause for the arrest. First, probable cause existed to place plaintiff into removal proceedings. Pursuant to the

NTA, plaintiff was placed into removal proceedings for violating sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the INA, as plaintiff had (1) been convicted of a drug offense; (2) his conviction involved the attempted sale of drugs under the definitions of the immigration laws; and (3) the crimes for which he was convicted involve moral turpitude. 56.1 ¶20.

Second, probable cause existed to arrest and detain plaintiff because applying Jamaican law, ICE, DHS, and USCIS officials had reasonable grounds to believe that plaintiff should be removed. The records indicated that plaintiff's parents had not married, that plaintiff's birth certificate had been amended 7 years after his birth, and that there was no order or separation agreement giving sole legal custody of plaintiff to his father. 56.1 ¶¶1-14. Indeed, plaintiff failed to meet his burden to show that he actually was the legitimate child of Hopeton Watson. There had been no paternity tests or substantiating information presented to the IJ to establish plaintiff's parentage, and no documentation was offered to show that plaintiff was in the legal custody of his father. Failing to meet his burden to establish his parentage and custody, ICE had the statutory responsibility to detain plaintiff until he was removed from the U.S. or a court ordered his release from ICE's custody.

**B.    Plaintiff's FTCA Malicious Prosecution Claim Fails as a Matter of Law**

The elements of a malicious prosecution claim under New York law are: (1) defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) defendant initiated the criminal proceeding out of actual malice. *See Collom v. Incorporated Village of Freeport*, 691 F.Supp. 637, 640 (E.D.N.Y.1988)

As noted *supra,* probable cause existed for plaintiff's detention. Moreover, plaintiff has failed to set forth any plausible allegations that ICE or DHS officials were acting with actual malice.

**C.  Plaintiff's FTCA Negligence Claim Fails as a Matter of Law**

To establish negligence under New York law, a plaintiff must show that: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of the breach." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330 (E.D.N.Y.1998) (quoting *Solomon v. City of N.Y.*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (N.Y.1985)).

Plaintiff attempts to argue that DHS and ICE officials were negligent in evaluating plaintiff's claim of citizenship. The determination of whether a foreign-born person has derived citizenship involves complex legal and factual issues, and often requires consideration of foreign law and events that occurred outside the United States. Prior decisions by in the Second Circuit demonstrate the legal and factual complexities involved in determining claims of derivative citizenship. *See, e.g., Garcia v. USICE (Dept. of Homeland Sec.)*, 669 F.3d 91, 94-99 (2d Cir. 2011); *Lewis*, 481 F.3d at 128-32; *Bonsu*, 646 F. Supp. 2d at 276-84 (before determining that the Ghanaian-born petitioner had derived citizenship from his mother, the court heard testimony from four witnesses, reviewed Ghanaian birth records, and considered two opinions from the Ghanaian High Court, articles from American and Ghanaian legal journals, two legal memoranda from a Ghanaian law firm, and a research memorandum from the Library of Congress).

As set forth further, *supra*, the actions of the ICE, DHS, and USCIS officials were reasonable under the circumstances, particularly in light of the findings of the administrative and judicial bodies – namely, the fact that the IJ, AAO, BIA, and, initially, the Second Circuit, all

determined that plaintiff did not derive citizenship from his father. 56.1 ¶¶ 30, 32, 34, 41. *See, e.g., Ramirez v. United States*, 81 F. Supp. 2d 532, 540-41 (D.N.J. 2000) (dismissing plaintiff's FTCA claims for negligence against the U.S. where the individual INS defendants were immune from suit because their actions were reasonable).

**D.     Plaintiff's *Bivens* Claims Must be Dismissed**

**1.     A *Bivens* Remedy is Not Appropriate in the Context of Removal Proceedings**

Should the Court conclude that plaintiff's *Bivens* claims are not time-barred, such claims should still be dismissed as they are inappropriate in this context.

The Supreme Court has held that a decision to recognize a *Bivens* remedy in a particular case must "represent a judgment about the best way to implement a constitutional guarantee." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Thus, a plaintiff alleging a constitutional violation is not "automatic[ally] entitle[d]" to a Bivens remedy "no matter what other means there may be to vindicate a protected interest." *Id. See also Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) ("A *Bivens* action is a blunt and powerful instrument for correcting constitutional violations and not an 'automatic entitlement' associated with every governmental infraction") (quoting *Wilkie*, 551 U.S. at 550).

In *Bivens*, the Supreme Court created a cause of action for violations of the Constitution by persons acting under the color of federal law. *See Iqbal*, 556 U.S. at 675 ("In *Bivens*—proceeding on the theory that a right suggests a remedy—this Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" (citations omitted)). The purpose of providing a remedy under Bivens is to "deter individual federal officers from committing constitutional violations." *Arar v.*

*Ashcroft*, 585 F.3d 559, 571 (2d. Cir.2009) (citing *Corr. Servs. Corp. v. Malesko*, 535 U.S. 61, 66 (2001)).

"[T]he Bivens remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Arar*, 585 F.3d at 571 (citing *Corr. Servs. Corp.*, 534 U.S. at 69); *see Hernandez v. United States*, 757 F.3d 249, 272 (5th Cir.) (noting that courts do not extend *Bivens* "amendment-by-amendment"); *Wilson v. Libby*, 498 F.Supp.2d 74, 86 (D.D.C.2007) ("*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion. Rather, they are context-specific."). The Supreme Court has held that a court should not recognize a *Bivens* remedy in a new context if (1) there are "'special factors counseling hesitation before authorizing'" the remedy or (2) there is an "'alternative, existing process for protecting'" the constitutional right asserted by the plaintiff. *Wilkie*, 551 U.S. at 550 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)); *Arar*, 585 F. 3d at 572. Thus, if even one of these circumstances is present in a new context, a *Bivens* remedy is inappropriate. *Wilkie*, 551 U.S. at 550 (*Bivens* remedy unavailable due to "special factor"); *Arar*, 585 F.3d at 574-580 (same).

To date, the Supreme Court has extended this remedy in only three contexts: (1) unreasonable search and seizure in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) employment discrimination in violation of the Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 234, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and (3) Eighth Amendment violation by prison officials, *Carlson v. Green*, 446 U.S. 14, 21, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). *See Arar*, 585 F.3d at 571 ("In the 38 years since *Bivens*, the Supreme Court has extended it twice only.").

This action presents the question of whether a *Bivens* remedy should be recognized in the context of a removal proceeding. *See Arar*, 585 F. 3d at 572 (defining

"context" as "a potentially recurring scenario that has similar legal and factual components;" classifying extraordinary rendition as a "context"). In *Wilkie*, the Court distilled the issue of whether to imply a *Bivens* action into two steps:

> In the first place, there is the question whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.... But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

551 U.S. at 550, 127 S.Ct. at 2598. Here, the Court should not recognize a removal proceeding as a new context for recognizing a *Bivens* remedy, as there are special factors counseling hesitation in the instant action, and an alternative remedial scheme existed for plaintiff's claims. *See Arar*, 585 F. 3d at 571-72.

### i. There is a Special Factor Counseling Hesitation in the Instant Action

The Second Circuit has held, in an *en banc* decision, that there is a "remarkably low" threshold for concluding that a "special factor" "counsels hesitation" for *Bivens* purposes. *Arar*, 585 F.3d at 574. A factor meets this threshold even if the factor does no more than give a court pause as to whether recognizing a *Bivens* remedy would be appropriate. *See Arar*, 585 F.3d at 574 ("[h]esitation is a pause, not a full stop, or an abstention; and to counsel is not to require. 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider.").

Here, among the "special factors" that "counsel hesitation" is the existence of a comprehensive statutory remedial scheme concerning the subject matter of the action. *Schweiker v. Chilicky*, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); 487 U.S. at 423; *Arar*,

585 F.3d at 573 (citing *Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005)).  The INA contains a comprehensive scheme concerning removal proceedings.  As the Second Circuit has noted, "Congress has established a substantial, comprehensive and intricate remedial scheme" in the field of immigration.  *Arar*, 585 F.3d at 572.  The INA serves as the "general remedial scheme" in this field by, *inter alia*, "provid[ing] for review of final orders of removal."  *Id.*[4]  The INA sets forth different judicial review procedures for each of the three types of removal: regular, expedited, and administrative.  *See, e.g.,* 8 U.S.C. § 1252(a)(2)(D); 1252(e)(2)(A)-(C); 1225(b)(1).

With respect to regular removal, a purported alien in regular removal proceedings may not seek judicial review of the initial removal order, which is issued by an IJ.  *See Grullon v. Mukasey,* 509 F. 3d 107, 112 (2d Cir. 2007).  Instead, the purported alien must file an administrative appeal with the BIA.  *Id.*  If, on the administrative appeal, the BIA issues a final order of removal, the purported alien may seek judicial review by filing a petition for review in the court of appeals for the circuit in which the IJ completed removal proceedings.  *Id.; see also* 8 U.S.C. § 1252(b)(2).  With respect to expedited approval, a purported alien subject to a removal order may seek habeas corpus review in a district court under 8 U.S.C. § 1252(e)(2).  With respect to administrative approval, a purported alien in an administrative removal

---

[4] *Arar* did not decide whether the INA's comprehensive remedial scheme for removal proceedings constitutes a "special factor" for *Bivens* purposes, because the Second Circuit held that there were other "special factors" present there, i.e., national security and foreign policy considerations.  *Arar*, 585 F.3d at 574. The above quoted statements concerning the INA's remedial scheme appear in *Arar*'s discussion of whether the INA provides an "alternative remedial scheme" for *Bivens* purposes. These statements apply equally to the issue of whether the INA's comprehensive remedial scheme for removal proceedings constitutes a "special factor." *See Libas v. Carillo*, 329 F.3d 1128, 1129, 1130-31 (9th Cir. 2003) ("alternative remedial scheme" for incorrect assessments of import duties by Customs officers held to be a "special factor" precluding *Bivens* liability); *Mest v. Naguib*, No. 08-CV-416, 2010 WL 1644189 *7-8 (W.D.N.Y. March 30, 2010) ("alternative remedial scheme" for improper inspections carried out by U.S. Department of Agriculture employees held to be a "special factor" precluding *Bivens* liability) (Report and Recommendation), adopted 2010 WL 1644180 (W.D.N.Y. April 22, 2010).

proceeding may seek judicial review of a final administrative removal order by filing a petition for review in the appropriate court of appeals under 8 U.S.C. § 1228(b)(3).

Here, plaintiff was subject to regular removal, and engaged in the appropriate adjudicative process. Plaintiff does not argue that anyone prevented him from utilizing INA administrative remedies. To the contrary, Plaintiff admits in the Complaint that he was placed in removal proceedings and appeared for a hearing before an IJ in the course of that proceeding. It is undisputed that plaintiff utilized the administrative remedies available to him, which ultimately led to his release on personal recognizance. 56.1 ¶48.

Accordingly, the administrative remedies available to plaintiff should give this Court hesitation to apply *Bivens* to this context.

ii.      **There is an Alternative Remedial Scheme**

As plaintiff was not prevented from utilizing administrative remedies, and in fact was afforded an administrative remedy, the Court should also conclude, as explained *supra*, that the INA provides an alternative remedial scheme that precludes *Bivens* liability for the constitutional violations alleged by plaintiff, and dismiss the *Bivens* claim in its entirety. *See Arar*, 585 F. 3d at 572-73; *McGowan v. United States*, 2015 WL 1321673, at *4 (declining to extend *Bivens* remedy) (noting that there are "administrative and judicial alternatives for vindicating plaintiff's rights.").

Moreover, two other remedies were available to plaintiff: first, seeking a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241; or second, seeking an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). For instance, after his Petition for Review was denied by the Second Circuit, plaintiff had the option of seeking *habeas* relief – and he failed to do so. While plaintiff may contend that these remedies do not result in money damages to him, "a

monetary recovery has not been a factor at all in the more recent *Bivens* jurisprudence…[t]he emphasis, rather, is on the existence of an avenue to protect the right, not the method of protection that Congress or the Executive has chosen." *McGowan*, 2015 WL 1321673, at *5. As such, the Court should not extend *Bivens* protection to this context. *M.E.S., Inc. v. Snell*, 712 F.3d 666 (2d Cir. 2013) ("in the face of a comprehensive scheme, federal courts will decline to infer new substantive legal liability without legislative aid, mindful that Congress is in a better position to decide whether or not the public interest would be served by creating it.") (internal citations omitted).

Additionally, plaintiff's *Bivens* Fifth Amendment claim also fails as a matter of law. The Fifth Amendment's Due Process Clause requires that a person placed in a removal proceeding be given notice of the charges against him and a meaningful opportunity to contest the charges. *Brown v. Ashcroft,* 360 F.3d 346, 350 (2d Cir. 2006); *Fuentas-Argueta v. INS*, 101 F.3d 867, 872 (2d Cir. 1996). Plaintiff has not alleged that any of the individual defendants failed to give him notice of the charge against him or failed to give him an opportunity to be heard. In fact, the Complaint actually makes it clear that plaintiff's due process rights were respected. The Complaint acknowledges that plaintiff was made aware of the charge against him, as plaintiff was given a Notice to Appear (Form I-862). *See* Complaint, ¶ 38; *see also* 56.1 ¶17. Accordingly, and for the reasons set forth in Point II.A.1. *supra*, this claim is without merit.

### 2. The Individual Defendants are Entitled to Qualified Immunity

The individually named defendants, Estrada, Ortiz, and Gunther, are protected from *Bivens* liability by the defense of qualified immunity, which "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir.2007) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) ("[a] public official is entitled to qualified immunity if his actions do not violate clearly established rights of which a reasonable person, at the time, would have known, or if it was objectively reasonable for the public official to believe that his actions were lawful.").

Qualified immunity is "*an immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly [take actions that are later found to be unlawful]; in such cases those officials . . . who act in ways they reasonably believe to be lawful, should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994) (*cert. denied*, 513 U.S. 1076 (1995); *see also Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009) (the plaintiff "cannot recover for false arrest if [the deputy sheriff] had probable cause to arrest her"); *Maxwell v. City of New York*, 102 F.3d 664 (2d Cir. 1996), *cert. denied*, 522 U.S. 813 (1997) (granting qualified immunity where the establishment of vehicle checkpoint did not violate the plaintiff's Fourth Amendment rights).

The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Courts must determine, "though not necessarily in this order, whether the facts alleged by a plaintiff make out a violation of a constitutional right, and whether that right was clearly established at the time of

the defendant's alleged misconduct." *Giraldo v. City of New York*, No. 10-CV-5754 (JG)(ALC), 2011 U.S. Dist. LEXIS 58282, *24 (E.D.N.Y. 2011)(citing *Pearson*, 553 U.S. at 232).   The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular . . . conduct."   *Saucier v. Katz*, 533 U.S. 194, 205 (2001).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

First, as noted *supra*, plaintiff's constitutional rights were not violated in this matter.  Even if the Court assumes, *arguendo*, that plaintiff's rights were violated, the individual defendants are still entitled to qualified immunity.   It was objectively reasonable for the individual defendants to believe that their actions were lawful, particularly in light of the fact that there were at least three administrative or judicial determinations that plaintiff should be removed.  56.1 ¶¶ 30, 32, 34, 41.

Moreover, the law was not clearly established at the time of the alleged violation. In assessing "whether the alleged action violated clearly established law," the "'inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Dumpson v. McGinnis*, 348 Fed. Appx. 658, 659, 2009 WL 329419, at *1 (2d Cir. Oct.13, 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "A right may be clearly established through Supreme Court precedent or the case law of this circuit."   *Dumpson*, 348 Fed. Appx. at 659 (citing *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990).

Here, when reviewing plaintiff's underlying immigration appeal, the Second Circuit "remain[ed] unsure as to the precise definition the BIA has adopted for determining whether a 'child' has been 'legitimated' under the law of a particular jurisdiction for purposes of

8 U.S.C. § 1101(c)(1)." *Watson v. Holder*, 643 F.3d 367, 370 (2d Cir. 2011) (discussing BIA's application of *Matter of Clahar*, 18 I. & N. Dec. 1 (BIA 1981) rather than *Matter of Hines*, 24 I. & N. Dec. 544 (BIA 2008)). Upon remand, the BIA held that *Matter of Hines* is limited to derivation claims under the former Section 320(a) of the Act, 8 U.S.C. 1431(a). 56.1 ¶50. In light of the fact that there is no reason for the individual defendants to have believed that the BIA's analysis was inaccurate, the individual defendants are entitled to qualified immunity.

At the very least, arguable probable cause existed for plaintiff's arrest. "Arguable probable cause exists when 'a reasonable [] officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.'" *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997) (emphasis in original) (internal citations omitted)). In light of the circumstances, arguable probable cause existed to detain and prosecute plaintiff, in light of the controlling federal laws, as discussed *supra*.

Accordingly, plaintiff's *Bivens* claims fail against the individual defendants because they are entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, this action must be dismissed or, in the alternative, summary judgment must be granted to the United States.

Dated:     Brooklyn, New York
          April 29, 2015

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney
Eastern District of New York
Attorney for Plaintiff
271 Cadman Plaza East
Brooklyn, New York 11201

By:    /s/ Joseph A. Marutollo
      Joseph A. Marutollo
      Assistant United States Attorney
      (718) 254-6288