**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DAVINO WATSON,** | **MEMORANDUM & ORDER** |
| **Plaintiff,** | 14-CV-6459 |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**Parties**                                   **Appearances**

**Davino Watson**

Christopher G. Kelly
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
Email: ckelly@hklaw.com

Mark Fleming
National Immigrant Justice Center
208 S Lasalle Street
Suite 1300
Chicago, IL 60604
(312) 660-1628
Email: mflemming@heartlandalliance.org

Tiana M. Stephens
31 West 52nd Street
New York, NY 10019
(212) 513-3480
Email: tiana.stephens@hklaw.com

Laura E. Atherstone
Holland & Knight LLP
131 S Dearborn St., 30th Floor
Chicago, IL 60603
(312) 263-3600
Email: laura.atherstone@hklaw.com

Lisa M. Brown
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
(312) 715-5881
Email: lisa.brown@hklaw.com

Mark A. Flessner
Holland & Knight LLP
131 S Dearborn St., 30th Floor
Chicago, IL 60603
(312) 715-5882
Email: mark.flessner@hklaw.com

Trisha M. Rich
Holland & Knight LLP
131 S Dearborn St., 30th Floor
Chicago, IL 60603
(312) 578-6666
Email: trisha.rich@hklaw.com

Robert J. Burns
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
Email: robert.burns@hklaw.com

**United States of America**

Joseph Anthony Marutollo
United States Attorney's Office, EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6288
Email: joseph.marutollo@usdoj.gov

Elliot M. Schachner
United States Attorney's Office, EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6053
Email: elliot.schachner@usdoj.gov

James R. Cho
United States Attorney's Office, EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6519
Email: james.cho@usdoj.gov

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.      Introduction ........................................................................................................ 1

II.     Procedural History ............................................................................................. 2

III.    Facts .................................................................................................................... 3

    A.   Basis for Citizenship ................................................................................ 3

    B.   Criminal Conviction: September 18, 2007 ............................................... 4

    C.   Immigration Detainer Issued: April 7, 2008 ............................................ 4

    D.   ICE Issues Notice to Appear: April 10, 2008 .......................................... 5

    E.   End of New York State Custody and Transfer to ICE Custody: May 8, 2008 ............ 5

    F.   Transfer to Buffalo Federal Detention Facility: June 23, 2008 ................. 6

    G.   Homeland Security Directives on Claims of United States Citizenship ...... 7

    1.   May 23, 2008 Directive ............................................................................ 7

    2.   July 18, 2008 Directive ............................................................................. 8

    3.   November 6, 2008 Directive ..................................................................... 8

    4.   November 19, 2009 Directive ................................................................... 8

    H.   Removal Proceedings ............................................................................. 10

    I.   Appeal to the Court of Appeals for the Second Circuit .......................... 20

    J.   Immigration and Customs Recommends Immediate Release ................... 22

    K.   Plaintiff Released from ICE Custody: November 2, 2011 ....................... 23

    L.   Plaintiff's Removal Proceedings Terminated: January 24, 2013 ............. 24

    M.   Depression and Drug Use ........................................................................ 25

    N.   Continued Litigation of Citizenship ....................................................... 25

IV.   Legal Standards of Review ............................................................................... 26

    A.   Federal Rule of Civil Procedure 12(b)(1) .............................................. 26

    B.   Federal Rule of Civil Procedure 12(b)(6) .............................................. 26

    C.   Federal Rule of Civil Procedure 56 ........................................................ 27

V.    Statute of Limitations Does Not Bar Plaintiff's FTCA Claims .......................... 27

    A.   *Heck v. Humphrey* ................................................................................ 28

    B.   Equitable Tolling of Accrual Date .......................................................... 30

VI.   Plaintiff's Malicious Prosecution Claim Is Barred By 28 U.S.C. § 2680(h) ...... 32

    A.   Malicious Prosecution ............................................................................ 32

    B.   False Imprisonment ................................................................................ 33

VII.  Plaintiff's Negligence Claim Has Private Analogue ......................................... 34

VIII. Summary Judgment Is Not Appropriate ........................................................... 37

IX.   Conclusion ....................................................................................................... 38

## I.     Introduction

Plaintiff has a basis for contending that, for lack of an attorney, and because of the negligent failure of the United States to protect him when he rightly claimed United States citizenship, he, a young citizen, son of a citizen, was unjustly incarcerated for years.  He has made out a *prima facie* case under the Federal Tort Claims Act against the United States. Defendant's motion for summary judgment is also denied.

Were it not for the *pro bono* attorney appointed by the Court of Appeals for the Second Circuit, plaintiff probably would have been declared a non-citizen and deported.  This case underlines the acute need for attorneys to represent immigrants and others engaged in disputes with United States immigration officials.  *See, e.g.*, *New York Immigrant Representation Study Report, Accessing Justice: The Availability and Adequacy of Counsel in Immigration Proceedings* (Pt. 1), 33 Cardozo L. Rev. 357 (Dec. 2011) (surveying lack of access to counsel in immigration cases).

Davino Watson, a 23 year old with an eleventh-grade education in May of 2008, had just successfully completed New York's "Shock Incarceration Program" after a conviction for the attempted sale of cocaine.  Born in Jamaica, he had become a United States citizen six years before, in 2002.  United States Immigration and Customs Enforcement ("ICE") detained him for almost two and a half years in the mistaken belief that he was not a citizen.  During this period, ICE transferred plaintiff among facilities in New York, Louisiana, and Alabama.  It subjected him to continuous removal proceedings.

When ICE finally realized its mistake in labeling plaintiff a non-citizen, it released him. But it continued to subject him to removal proceedings.  It also denied plaintiff a Certificate of Citizenship for another two years after his release.

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"), plaintiff alleges false imprisonment, malicious prosecution and negligence against the United States. The government moves to dismiss and for summary judgment. *See* Fed. R. of Civ. P. 12(b)(1), 12(b)(6), and 56. The government's motions are granted in part and denied in part.

## II.     Procedural History

Plaintiff filed his complaint on October 31, 2014. *See* Compl., filed Oct. 31, 2014 (ECF No. 1), at ¶¶ 80–104.

On April 29, 2015, the government moved to dismiss for lack of subject matter jurisdiction, for failure to state a claim, and for summary judgment. *See* Mot. to Dismiss, or in the Alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18). Argument was heard on June 29, 2015. *See* Minute Entry, June 29, 2015 (ECF No. 32). A supplemental briefing and an evidentiary hearing was ordered on whether equitable tolling applies. *See* Scheduling Order, June 30, 2015 (ECF No. 30); Hr'g Tr., June 29, 2015, at 27:9–29:12.

The hearing on equitable tolling was conducted on August 20, 2015. *See* Minute Entry, Aug. 20, 2015 (ECF No. 57); Hr'g Tr., Aug. 20, 2015 ("Aug. 20 Hr'g Tr."). The parties stipulated that all evidence presented at the hearing could be used at trial. Aug. 20 Hr'g Tr. at 27:16–21.

At the hearing, the court dismissed the complaint's causes of action claiming violations of plaintiff's Fourth and Fifth Amendment rights against individual defendants Juan Estrada, Michael Ortiz, Timothy Gunther and John Does 1–8. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); Aug. 20 Hr'g Tr. at 13:1–14:10; Order, Sept. 8, 2015 (ECF No. 59). Claims against the United States remained.

### III.    Facts

#### A.    Basis for Citizenship

Plaintiff was born on November 17, 1984 to two unmarried parents in Kingston, Jamaica. Pl.'s Answer to Local Rule 56.1(a)(3) Statement of Material Facts in Support of Def.'s Mot. for Summary Judgment, filed June 6, 2015 (ECF No. 27) ("Pl.'s Answer to Local Rule 56.1(a)(3)"), at 1–2.  His father was not originally listed on his birth registration form.  *Id.* at 2.

On April 19, 1991, plaintiff's biological father registered his name, as "father," on plaintiff's birth registration form.  *Id.* at 2–3.

On March 17, 1998, almost 14 years after plaintiff's birth, his father sought a visa for plaintiff to travel to the United States.  He submitted an affidavit in support of section 312A of the Immigration and Nationality Act ("INA") to Immigration and Naturalization Service.  *Id.* at 3.

Plaintiff gained the status of a lawful permanent resident of the United States on August 4, 1998, at the age of thirteen.  *Id.*

On September 17, 2002, plaintiff's father became a naturalized United States citizen while he had custody of plaintiff.  *Id.* at 2; Compl. at Ex. E (ECF No. 1-1).  Plaintiff, who had been lawfully admitted to the United States and who was then a minor in the custody of his father, simultaneously automatically became a citizen, *see* 8 U.S.C. § 1431(a) (2002) ("A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization[;] (2) The child is under the age of eighteen years[;] (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence."), although the matter would be litigated until early 2013—more than a decade later.  Compl. at Ex. A (ECF No. 1-1)

("Plaintiff's Certificate of Citizenship"); *see infra* Part III.N.  Plaintiff did not receive a

Certificate of Citizenship until November 26, 2013.  Compl. at Ex. A (ECF No. 1-1).

### B.    Criminal Conviction: September 18, 2007

On September 18, 2007, plaintiff was convicted of criminal sale of a controlled substance

(cocaine) in New York Supreme Court.  Pl's Answer to Local Rule 56.1(a)(3), at 4.  He was

sentenced to forty-two months incarceration.  *Id.*  This term was reduced after he was placed in

New York State's "Shock Incarceration Program," a military-based program at the Lakeview

Shock Incarceration Correctional Facility in Brocton, New York, for young, nonviolent

offenders.  Aug. 20 Hr'g Tr. at 22:2–16; Pl's Answer to Local Rule 56.1(a)(3) at Ex. B (ECF No.

27-2) ("Shock Incarceration Program Completion Certificate"); Decl. of Joseph A. Marutollo,

dated Aug. 10, 2015, at Ex. B (ECF No. 50-2) ("Deposition of Plaintiff"), at 22:2–5.  Plaintiff

successfully completed the eight-month Program.  *See* Shock Incarceration Program Completion

Certificate.  He testified that the program had a significant positive impact on his life, providing

physical and mental training, and enabling him to become a better person.  Aug. 20 Hr'g Tr. at

22:19–23:1.

### C.    Immigration Detainer Issued: April 7, 2008

On October 9, 2007, shortly after plaintiff entered state custody, ICE interviewed plaintiff

at the New York Downstate Correctional Facility located at Castle Point.  Compl. at Ex. B (ECF

No. 1-1) ("Record of Deportable Alien").  Plaintiff then possessed neither a United States

passport nor a birth certificate.  *Id.*  He provided the interviewing officer with his parents'

telephone number to confirm his citizenship status.  *Id.*

Officer Juan Estrada conducted an investigation of plaintiff's citizenship status.  He

found no records of plaintiff's father's naturalization, even though it is now conceded that

plaintiff's father was naturalized on September 17, 2002. On April 7, 2008, Officer Estrada

concluded in his investigative report:

> The subject is a national and citizen of Jamaica and a Lawful
> Permanent Resident of the United States. *His parents are
> nationals and citizens of Jamaica who have not naturalized.* No
> issue of derivation applies. Subject entered the United States on
> 08/04/1998 as a class F2-2 Immigrant.

Compl. at Ex. D (ECF No. 1-1) ("Record of Deportable/Inadmissible Alien") (emphasis added).

On April 7, 2008, while plaintiff remained in state custody, ICE issued an immigration

detainer, requesting custody of plaintiff upon completion of his state incarceration. Compl. at

Ex. F (ECF No. 1-1) ("Immigration Detainer – Notice of Action").

### D. ICE Issues Notice to Appear: April 10, 2008

On April 10, 2008, ICE issued a "Notice to Appear" to plaintiff. Compl. at Ex. G (ECF

No. 1-1) ("Notice to Appear"). The notice stated that plaintiff was subject to removal from the

United States pursuant to sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and

Nationality Act ("INA") because of his drug conviction. It declared that "[plaintiff is] not a

citizen or national of the United States" and that "[plaintiff is] a native of Jamaica and a citizen

of Jamaica." *Id.* The document was signed by defendant Michael Ortiz, who was then a

Supervisory Deportation Officer of ICE. *Id.*

### E. End of New York State Custody and Transfer to ICE Custody: May 8, 2008

As already noted, on May 8, 2008, plaintiff completed his "Shock Incarceration

Program" and was released to ICE from New York State custody. *See* Shock Incarceration

Completion Certificate. The same day ICE officers placed him in federal custody at the

Allegany County Jail in Buffalo, New York. Decl. of Joseph A. Marutollo, dated Aug. 10, 2015,

at Ex. A (ECF No. 50-1) ("Detention History"); Pl's Answer to Local Rule 56.1(a)(3) at Ex. C

(ECF No. 27-3) ("Detained Alien Review Routing Slip").

The ICE officers who took plaintiff into custody informed him that he was not a United States citizen. Plaintiff maintained that he was. ICE promised plaintiff that he would see an immigration judge within twenty-four hours. In fact, plaintiff did not see an immigration judge until over a month later on June 25, 2008. Aug. 20 Hr'g Tr. at 23:5–24:1.

During his detention at Allegany County Jail, plaintiff—not then represented by counsel—failed to file an administrative claim, an SF-95 claim or a petition for *habeas corpus*. Deposition of Plaintiff at 23:8–22, 25:23–26:19, 27:3–13, 36:23–38:21. He also neglected to make any requests for an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Deposition of Plaintiff at 27:18–28:10; *see also* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General . . . may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General[.]").

### F.     Transfer to Buffalo Federal Detention Facility: June 23, 2008

On June 23, 2008, Plaintiff was transferred to the Buffalo Federal Detention Facility. There he would be held for some three years. *See* Detention History. Again, he did not file an administrative claim, an SF-95 claim, a petition for writ of *habeas corpus*, or a request for an individualized bond hearing. Deposition of Plaintiff at 63:12–65:13. Instead he filed *pro se* motions and briefs in connection with the removal proceedings that were initiated against him.

Throughout his time in ICE custody, plaintiff repeatedly orally insisted that he was a United States citizen to various ICE officers. *Id.* at 19:6–11, 20:3–6, 20:16–17. He also obtained a copy of his father's naturalization certificate, which he showed to some of the officers. *Id.* at 34:7–8; Aug. 20 Hr'g Tr. at 24:8–13.

**G.    Homeland Security Directives on Claims of United States Citizenship**

Between May 23, 2008 and November 19, 2009, Department of Homeland Security promulgated four directives advising all Field Office Directors of Detention and Removal Operations of the necessary protective procedures to be followed when a detained individual claims United States citizenship.  *See generally* Compl. at Exs. J–M (ECF No. 1-1) ("The Directives").

**1.    May 23, 2008 Directive**

The May 23, 2008 Directive was titled "Reporting and Investigation of Claims to United States Citizenship."  It provided:

> . . .[O]ur officers are likely [to] contact individuals who either assert United States citizenship or are unsure of their citizenship. *It is imperative that [Detention and Removal Operations (DRO)] fully investigates all affirmative claims to United States citizenship before an individual is taken into custody or, if already in ICE custody, before final disposition of such individuals' case.* . . .
>
> Each [Field Office Director (FOD)] shall ensure that all claims to United States citizenship made by any detainees within their area of responsibility . . .  are appropriately reported and investigated.
>
> Interviews with detainees making such claims shall be conducted by at least a senior Immigration Enforcement Agent (IEA) . . . . Interviews will be recorded as a sworn statement and include . . . probative questions that will elicit sufficient information to allow ICE to conduct a thorough investigation.  This investigation may include vital records searches, family interviews, and other appropriate investigative measures.
>
> If an affirmative claim to United States citizenship is made by a detainee prior to the commencement of removal proceedings, the [Field Office Director will] . . .  determine whether sufficient evidence exists to place that individual into removal proceedings.

Compl. at Ex. J (ECF No. 1-1) ("May 23, 2008 Directive") (emphasis added).

### 2. July 18, 2008 Directive

The July 18, 2008 Directive was titled "Superseding Guidance on Reporting and

Investigation of Claims to United States Citizenship." The key modifications emphasized as

"imperative" the establishment of alienage before the individual is taken into custody:

> DRO officers are likely to encounter individuals who either assert claims to U.S. citizenship or are unsure of their citizenship. It is imperative that DRO officers *establish probable cause to believe that an individual is an alien before making an arrest for a charge of removability.* Further, DRO officers must fully investigate all claims to U.S. citizenship before an individual is taken into custody or, if already in ICE custody, immediately upon learning of the assertion of citizenship.

Compl. at Ex. K (ECF No. 1-1) ("July 18, 2008 Directive") (emphasis added).

### 3. November 6, 2008 Directive

The November 6, 2008 Directive, "Superseding Guidance on Reporting and Investigating

Claims to United States Citizenship," included the following changes:

> DRO officers may encounter individuals who either assert claims to U.S. citizenship or are unsure of their citizenship. *Prior to making a warrantless arrest of such an individual, DRO officers must ensure that s/he has reason to believe that the individual to be arrested is in the United States in violation of a law or regulation governing the admission, exclusion, expulsion or removal of aliens.* Moreover, DRO officers must fully investigate all claims to U.S. citizenship immediately upon learning of the assertion of citizenship.

Compl. at Ex. L (ECF No. 1-1) ("November 6, 2008 Directive") (emphasis added).

### 4. November 19, 2009 Directive

The November 19, 2009 Directive, designed to supersede the November 6 directive,

contained even more in-depth protective modifications. It provided:

> [T]he Immigration and Nationality Act (INA) provides numerous avenues for a person to *derive or acquire* U.S. citizenship[.] ICE officers, agents and attorneys, should handle these matters with the

utmost care and highest priority. While some cases may be easily resolved, because of the complexity of citizenship and nationality law, many may require additional investigation and substantial legal analysis. As a matter of law, *ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a [United States citizen]*. Consequently, investigations into an individual's claims to U.S. citizenship should be prioritized[.] . . .

Where there is *some* probative evidence that the individual is a [United States citizen], officers and agents should consult with their local [Office of the Chief Counsel] as soon as practicable. After evaluating the claim, if the evidence of U.S. citizenship outweighs evidence to the contrary, the individual should not be taken into custody. The person may, however, still be placed in removal proceedings if there is reason to believe the individual is in the United States in violation of law. . . .

If [a detained] individual already in custody claims to be a [United States citizen], an officer must immediately examine the merits of the claim and notify and consult with his or her local [Office of Chief Counsel]. . . .

[Detention and Removal Operations] and [the Office of the Principal Legal Advisor] *must also jointly prepare and submit a memorandum examining the claim and recommending a course of action* to the [Headquarters for Detention and Removal Operations (HQDRO)] Assistant Director for Operations . . . and to the [Headquarters for Office of the Principal Legal Advisor (HQOPLA)] Director of Field Operations . . . Absent extraordinary circumstances, this memorandum should be submitted no more than 24 hours from the time the individual made the claim. HQDRO and HQOPLA will respond to the field with a decision on the recommendation within 24 hours. . . .

*If the individual's claim is credible on its face, or if the investigation results from probative evidence that the detained individual is a [United States citizen], the individual should be released from detention.*

Compl. at Ex. M (ECF No. 1-1) ("November 19, 2009 Directive") (emphasis added).

All these directives—which were intended to protect plaintiff's United States citizenship—were ignored in taking him into custody and maintaining his incarceration.

### H.    Removal Proceedings

On June 25, 2008, Plaintiff was placed in removal proceedings for violations of INA sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) in connection with his criminal sale conviction. Pl.'s Pre-Hr'g Br. on the Issue of Equitable Tolling, filed Aug. 10, 2015 (Pl.'s Pre-Hr'g Br."), at Ex. A (ECF No. 51-1) ("Removal Proceedings Tr."). He was 23 years old and had no attorney.

The proceedings were conducted before an immigration judge. Defendant appeared *pro se*. The immigration court noted its lack of authority to appoint counsel for defendant.

> Court: Now these are civil proceedings, they are not criminal. So I have no authority to appoint a lawyer to assist you. If you wish to have a lawyer it has to be a lawyer that you choose and that you pay for. If you wish a lawyer and you cannot afford to hire your own lawyer, the Government has also . . . a list of free legal services.
> . . .
>
> Court: [Y]ou do wish to get a lawyer?
>
> Plaintiff: Sir, yes, sir.

Removal Proceedings Tr. at 4:18–5:13.

During the proceedings, the government maintained that plaintiff's conviction for attempted criminal sale of cocaine in the third degree made him deportable for two reasons: (1) it was a drug offense, in violation of INA section 237(a)(2)(B)(i); and (2) it involved attempted sale of drugs, an aggravated felony drug trafficking crime, in violation of INA section 237(a)(2)(A)(iii).

The immigration court made note of plaintiff's claim of United States citizenship:

> Court: You had also mentioned you believe you may be a U.S. citizen.

> Plaintiff: Yes.
>
> Court: The Government's counsel is going to see to it that you are given the Form N-600 and instructions which is how you go about asking the Government to give you a certificate showing that you are a U.S. citizen.
>
> Plaintiff: Yes, sir.

*Id.* at 5:18–25.

The proceedings were adjourned to a future date so that plaintiff could try to obtain a lawyer. The immigration judge provided plaintiff with a list of legal services attorneys he could contact for representation. He tried to get an attorney but could not obtain one. Aug. 20 Hr'g Tr. at 27:2–15.

In the interim, on July 7, 2008 plaintiff submitted an N-600 application, a United States Citizen and Immigration Service's ("USCIS") form used to request a certificate of citizenship. *See* Compl. at Ex. S (ECF No. 1-1) ("N-600, Application for Certificate of Citizenship"). To support his N-600 application, plaintiff attached his father's certificate of naturalization, his stepmother's certificate of naturalization, and their marriage registration. Pl.'s Pre-Hr'g Br. at Ex. D (ECF No. 51-2) ("Documents Attached to N-600 Form"). Plaintiff also included a letter addressed to Officer Tim Gunther, an ICE deportation officer, stating "I would like you to send these documents with the N600 or send them to wherever you sent the N600 form because I think that it can help my argument about being a citizen and any help would be greatly appreciated[.]" *Id.* Plaintiff obtained no help in preparing his N-600 application. Deposition of Plaintiff at 133:9–11. No officer gave plaintiff assistance in filling out the form or in making his claim to citizenship.

On August 4, 2008, plaintiff's N-600 application was denied. Pl.'s Pre-Hr'g Br. at Ex. E (ECF No. 51-2) ("Denial of N-600 Application"). USCIS reviewed plaintiff's application under

both the law that was in effect at the time he was born and the law in effect in 2008. *Id.* Under

the law in effect at the time of plaintiff's birth, section 321 of the Immigration and Nationality

Act (INA),

> A child born outside of the United States of alien parents, or of an
> alien parent and a citizen parent who has subsequently lost
> citizenship of the United States, becomes a citizen of the United
> States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents
> is deceased; or
>
> (3) The naturalization of the parent having legal custody of the
> child when there has been a legal separation of the parents or the
> naturalization of the mother if the child was born out of wedlock
> and the paternity of the child has not been established by
> legitimation; and if
>
> (4) Such naturalization takes place while such child is under the
> age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful
> admission for permanent residence at the time of the naturalization
> of the parent last naturalized under clause (1) of this subsection, or
> the parent naturalized under clause (2) or (3) of this subsection, or
> thereafter begins to reside permanently in the United States while
> under the age of eighteen years.

8 U.S.C. § 1432(a) (1999) (repealed by Child Citizenship Act of 2000, Pub. L. 106-395, Title I, §

103(a), 114 Stat. 1632 (2000)). Section 321 of the INA was repealed by the Child Citizenship

Act of 2000. In its place, section 320 of the INA was simplified to read as follows:

> A child born outside of the United States automatically becomes a
> citizen of the United States when all of the following conditions
> have been fulfilled:
>
> (1) At least one parent of the child is a citizen of the United States,
> whether by birth or naturalization.
>
> (2) The child is under the age of eighteen years.

> (3) The child is residing in the United States in the legal and
> physical custody of the citizen parent pursuant to a lawful
> admission for permanent residence.

Child Citizenship Act of 2000, Pub. L. 106-395, Title I, § 101(a), 114 Stat. 1632 (2000) (codified

at 8 U.S.C. § 1431 (2000)).

USCIS went on to explain that the term "child" in the statutes "means a person who

meets the requirements of section 101(c)(1) of the [INA]." Denial of N-600 Application (citing

8 C.F.R. § 320.1). That section defines "child":

> The term "child" means an unmarried person under twenty-one
> years of age and includes a child legitimated under the law of the
> child's residence or domicile, or under the law of the father's
> residence or domicile, whether in the United States or elsewhere,
> and, except as otherwise provided in sections 1431 and 1432 of
> this title, a child adopted in the United States, if such legitimation
> or adoption takes place before the child reaches the age of 16 years
> (except to the extent that the child is described in subparagraph
> (E)(ii) or (F)(ii) of subsection (b)(1) of this section), and the child
> is in the legal custody of the legitimating or adopting parent or
> parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1) (2008).

USCIS reasoned that because plaintiff's parents were not married, and under both New

York and Jamaican law marriage is required for legitimation, plaintiff was never legitimated.

Thus, it ruled that plaintiff did not qualify as a "child" for purposes of section 320 of the INA,

and could not obtain citizenship under that statute. *See* Denial of N-600 Application.

USCIS then explained that under section 321, because plaintiff was born out of wedlock,

he could only obtain citizenship if his mother was naturalized. Because his mother never became

a United States citizen, plaintiff could not, USCIS reasoned, obtain citizenship under section 321

either. Therefore, USCIS concluded that plaintiff had never derived United States citizenship

from the naturalization of his father. *Id.*

On August 14, 2008, removal proceedings continued.  Plaintiff again appeared *pro se*.
He explained that he could not afford an attorney and that none of the legal services attorneys he
spoke to offered to provide *pro bono* representation for him.  Individuals from the Volunteer
Lawyers' Project provided him with generalized advice but were unable to represent him.  Aug.
20 Hr'g Tr. at 27:22–28:4.

Plaintiff informed the immigration court that he had been told that his N-600 application
had been denied:

> Court: [H]as the N-600 been adjudicated?
>
> Plaintiff: Sir, yes, sir.  The decision has been made and it was
> denied, sir.  But you know, me and my family can't understand
> why could it be denied when, you know, Section 321 of the
> Immigration and Nationality Act was a law in [e]ffect at the time
> of my birth and it was [replaced] by the Child Citizenship Act of
> 2000, which became effective February 27, 2001.  You know, and
> the CCA applies only to those who are born on or after February
> 27th, 2001, are . . .  18 years of the age of that date.  Your Honor, I
> was 18 on that date.  When it went into effect, I was 16.  My father
> became a citizen on September 17, 2002.  I was 17 at the time.

Removal Proceedings Tr. at 7:24–8:10; *see also* Denial of N-600 Application.

He explained to the immigration court that he was told his application was denied
because his mother never became a citizen and that his father never had legal custody of him.
He vigorously maintained that his father had legal custody of him and that he was a citizen by
virtue of his father's citizenship.

> Plaintiff: [T]hey say the reason why they denied it was because my
> mother never became a United States citizen.  But I've been living
> here ten years with my father.  He has custody of me. . . . I'm in
> my father's care.
> . . .
>
> Plaintiff: [B]ecause my father told me when he went and [became
> a] citizen *they told him that I was a citizen.  And this is what I
> thought for the whole time*.

Removal Proceedings Tr. at 8:18–9:5, 10:22–24 (emphasis added).  Apparently no efforts were made by the hearing officer to contact a parent or to properly conduct an investigation.

The immigration court adjourned the proceedings to give plaintiff time to appeal his N-600 denial, and for the court itself to review the N-600 application and denial letter.  *Id.* at 16:3–14, 18:4–9.  On August 23, 2008, Plaintiff appealed the denial of his N-600 application to the Administrative Appeals Office of USCIS, attaching a letter in support.  Pl.'s Pre-Hr'g Br. at Ex. F (ECF No. 51-2) ("Form I-290B, Notice of Appeal").

Removal proceedings resumed on September 9, 2008.  The immigration court explained to plaintiff why it thought his original N-600 application was denied, noting that it believed case law required legitimation prior to the plaintiff's sixteenth birthday.  The administrative judge ruled that plaintiff was not a citizen because he was never legitimized by his father:

> Court: [I]t appears as though your application was denied because your father never showed or because *there was no showing that you were ever legitimated by your father*.
> …
>
> Court: The point that they are making doesn't really relate to custody.  What they are saying is if there has not been a marriage of the parents at the time you were born you are considered to be an illegitimate child and then you must show that you were legitimated by the person who became a naturalized citizen prior to your 16th birthday.
> . . .
>
> Court: *The only means of legitimation of a child is a marriage of the parents*.  So that they are saying your biological parents never married.
> . . .
>
> Court: *And as a result of that under the law you are not considered to be the child of your father*.  And since you are not considered to be his child because he didn't legitimate you, you couldn't derive citizenship through his naturalization.
> . . .

> Court: Looking at what they say in this and *they cite a case,*
> *apparently under Jamaican law the way to legitimate a child is to*
> *marry the mother.  And that is currently the only way.*  And I do
> know for a fact that that is what is provided in New York state law
> that you legitimate a child by a marriage of the biological parents .
> . . [T]hey didn't deny the citizenship application based on a
> question of custody or legal control, *they're saying that you were*
> *[not] legitimated before your 16th birthday and therefore you*
> *don't meet the definition of child of your father and you cannot*
> *derive citizenship from him.*

Removal Proceedings Tr. at 23:4–24:13 (emphasis added).

The immigration court adjourned the proceedings again to give plaintiff an opportunity to

consider contesting its argument about legitimation.  It suggested it would be beneficial for

plaintiff to bring in his father to testify.  *Id.* at 26:12–27:18.

The immigration court indicated it would review a Board of Immigration Appeals case

called *Matter of Hines*, a case dealing with legitimation in Jamaica cited in the denial letter.  *Id.*

at 28:1–7; *see also Matter of Hines*, 24 I. & N. Dec. 544 (BIA 2008).

In the interim, on September 17, 2008 the denial of plaintiff's N-600 application was

affirmed by the Administrative Appeals Office of USCIS.  Removal Proceedings Tr. at 31:3–5;

Pl.'s Answer to Local Rule 56.1(a)(3) at Ex. D (ECF No. 27-4) ("Appeal Denial Letter").

The proceedings continued on September 23, 2008.  Plaintiff moved to terminate the

proceedings on the grounds that the government did not carry its burden of proof in proving he

was an "alien."  Removal Proceedings Tr. 39:22–25.  *Pro se*, he submitted an eight-page brief in

support of his motion.  Pl's Pre-Hr'g Br. at Ex. G (ECF No. 51-2) ("Respondent's Motion to

Terminate Removal Proceedings").  Attached as exhibits in support were two Second Circuit

Court of Appeals cases.  *Id.*; Removal Proceedings Tr. at 40:14–18.  Plaintiff again vigorously

maintained that he was a citizen by virtue of his father's citizenship and noted that the INA does

not mention legitimation.  He told the immigration judge:

> Plaintiff: And when we [are] talking about the . . .  Immigration
> and Nationality Act, there was nothing about legitimization.  It's,
> it's just simple.  I think words should explain themselves as they
> are and not be screwed as something else . . . I sit in my cell and I
> read this 100 times, you know, and that's the only thing I
> understand . . . . *A child outside of the United States automatically*
> *becomes a citizen of the United States when all the following*
> *condition[s] have been fulfilled*.  At least one parent.  It never said
> mother or father, of the child is United States . . .  birth and
> naturalization.

Removal Proceedings Tr. at 42:8–23 (emphasis added).

The proceedings were adjourned to give the government an opportunity to respond to

plaintiff's motion.  The government submitted a response.  On October 9, 2008, plaintiff, *pro se*,

submitted a five-page reply brief.  Pl.'s Pre-Hr'g Br. at Ex. H (ECF No. 51-2) ("Respondent's

Reply to DHS Response").

In his reply brief, plaintiff wrote:

> [Plaintiff] respectfully requests that the Immigration Judge dismiss
> the Department of Homeland Security['s] ("DHS") response
> arguments as meritless and terminate the removal proceedings.
> . . .
>
> DHS has failed to provide sufficient evidence to rebut [plaintiff's]
> claim that under the Court of Appeals for the Second Circuit
> jurisdiction, [plaintiff] has carried his burden of prov[ing] that he
> was legitimated by his father pursuant to Jamaica Law, and as a
> result, he is a United States Citizen pursuant to § 320 of the [INA].
> . . .
>
> First, DHS['s] argument [relies] heavily on the Board's decision
> [*Matter of Hines*].  This decision which arose from a removal
> proceeding under the jurisdiction of the Court of Appeals for the
> Third Circuit is not binding on this present removal proceedings
> which is under the jurisdiction of the Court of Appeals for the
> Second Circuit.  The [Second Circuit] has already [dealt] with the
> issue of legitimation of [children] under Jamaica Law in a

precedent decision. *See Lewis v. Gonzalez*, 481 F.3d 125, 131 (2d Cir. 2007). Even though DHS has failed to address this case that was also cited in [plaintiff's] motion to terminate [removal proceedings], the *Lewis* court has recently observed that a Jamaica national whose father registered his name on the child's birth certificate "was legitimate" under Jamaica law.

Respondent's Reply to DHS Response.

On November 13, 2008, seven months into his detention, the immigration court, citing *Matter of Hines*, determined that plaintiff was not a citizen.

Court: [I]t is my belief that the [Board of Immigration Appeals'] most recent decision in *Matter of Hines* is controlling and that *you are not a U.S. citizen*.

Removal Proceedings Tr. at 47:7–9 (emphasis added).

Plaintiff indicated he would appeal the immigration court's decision to the Board of Immigration Appeals within 30 days. *Id.* at 47:21–23. On November 26, 2008, he filed his appeal. Pl.'s Pre-Hr'g Br. at Ex. I (ECF No. 51-3) ("Notice of Appeal from a Decision of an Immigration Judge").

On December 24, 2008, he submitted, *pro se*, a nine-page brief with a Second Circuit case attached in support of his appeal to the Board of Immigration Appeals. Pl.'s Pre-Hr'g Br. at Ex. J (ECF No. 51-3) ("Respondent's Appeal Brief").

Upon review of plaintiff's appeal, the Board of Immigration Appeals issued a February 5, 2009 order affirming the November 13, 2008 decision of the immigration court again denying citizenship. Pl.'s Pre-Hr'g Br. at Ex. K (ECF No. 51-3) ("Decision of the Board of Immigration Appeals"). The order again relied on *Matter of Hines*, taking the position that legitimation for purposes of citizenship required both biological parents to marry each other:

As the Immigration Judge determined, the respondent—who concedes that he was born out of wedlock in Jamaica—has not demonstrated that he was ever "legitimated" by his father. Under

18

> this Board's precedent, *a child born out of wedlock in Jamaica can be legitimated only upon the subsequent marriage of his biological parents*, *see Matter of Hines*, 24 I&N Dec. 544 (BIA 2008) (overruling *Matter of Clahar*, 18 I&N Dec. 1 (BIA 1981)), and it is undisputed that the respondent's parents never married.
> . . .
>
> [T]he respondent has not come forward with sufficient evidence to overcome the presumption of alienage that arises by virtue of his foreign birth. *Accordingly, he is properly subject to removal. The appeal is dismissed.*

Decision of the Board of Immigration Appeals (emphasis added).

Throughout removal proceedings, defendant remained *pro se* and detained by ICE pursuant to 8 U.S.C. § 1226(c). *See* 8 U.S.C. § 1226(c) ("The Attorney General shall take into custody any alien who . . . is deportable under [INA section 237(a)(2)(A)(iii) and (a)(2)(B)] of this title[.]"); *see also* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. *No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien* or the grant, revocation, or denial of bond or parole.") (emphasis added); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only in judicial review of a final order under this section*. Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision*, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.") (emphasis added).

During his detention in Buffalo and the removal proceedings, plaintiff's "sole concern" was proving his United States citizenship status and terminating the proceedings. Aug. 20 Hr'g Tr. at 30:11–16. He appeared *pro se* before the immigration court at all times. He had no knowledge of what an administrative claim, SF-95 claim, writ of *habeas corpus*, or an individualized bond hearing was. He had no knowledge about filing a lawsuit against the United States. Plaintiff at one point attended a "Know Your Rights" presentation put on by law students, but plaintiff still did not appreciate what his options were. Because he had lacked a working knowledge of these options, plaintiff had no reason to ask anybody at the detention facility how to file any of these claims. The detention officers there were not helpful to plaintiff because they could not give legal advice. Plaintiff, who only had an eleventh-grade education at the time, would visit the detention center's law library several times a week. Without an attorney, he used as best he could the library's resources, such as books and the LexisNexis program, to write his briefs and motions in connection with proving his citizenship. *See* Aug. 20 Hr'g Tr. at 25:25–40:16; Pl.'s Pre-Hr'g Br. at Ex. W (ECF No. 51-5) ("Access to Law Library and Legal Materials").

## I.      Appeal to the Court of Appeals for the Second Circuit

Plaintiff then petitioned the Court of Appeals for the Second Circuit. Pl.'s Pre-Hr'g Br. at Ex. M (ECF No. 51-3) ("Petition for Review"). The Court of Appeals initially denied plaintiff's petition because of his "failure to adduce evidence showing that his biological father had legal custody of him after his admission as a lawful permanent resident." *Watson v. Holder*, No. 09-AG-0657 (2d Cir. July 9, 2009) (Mandate). On October 8, 2009 it granted plaintiff's *pro se* motion to recall its mandate, and reinstate his petition for review. *Watson v. Holder*, No. 09-AG-0657 (2d Cir. Oct. 8, 2009) (Order).

*Sua sponte*, on July 23, 2010, the Court of Appeals appointed counsel from Orrick, Herrington & Sutcliffe LLP to represent plaintiff in the matter. Pl.'s Pre-Hr'g Br. at Ex. R. (ECF No. 51-5) ("Order Appointing Counsel for Second Circuit") (appointed counsel later moved to a new firm, Gibson Dunn & Crutcher, but remained plaintiff's counsel). Counsel indicated in its retention letter that its representation of plaintiff was limited solely to the petition for review to the Second Circuit. *Id.* at Ex. V. (ECF No. 51-5) ("Retention Letter") ("You are retaining us to provide legal services to you in connection with your petition for review . . . from a Board of Immigration Appeals' February 5, 2009 ordered removal[.] This will confirm that our engagement is limited to the matter just described and that we have not been retained generally, or for other matters.").

In its decision of May 31, 2011, the Court of Appeals ruled that the November 13, 2008 decision of the immigration court was predicated on two separate holdings:

> (1) [T]he burden is on [plaintiff] to establish that he is indeed an American citizen, and (2) previous precedent of the BIA, specifically *Matter of Hines*, 24 I. & N. Dec. 544, 547 (BIA 2008), establishes that children born out of wedlock—as [plaintiff] concedes he was—are generally not treated as "legitimate" under Jamaican law, meaning that [plaintiff] cannot be considered the "child" of his American father for purposes of [8 U.S.C. § 1101(c)(1)].

*Watson v. Holder*, 643 F.3d 367, 368–69 (2d Cir. 2011); *see also* 8 U.S.C. § 1101(c)(1) (defining "child" as: "an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere . . . if such legitimation . . . takes place before the child reaches the age of 16 years . . . and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.").

The Court of Appeals remanded the case, directing the Board of Immigration Appeals to "(1) clarify precisely how it interprets the concept of 'legitimation' as it is used in § 1101(c)(1) and (2) justify how it arrived at that particular interpretation." *Watson*, 643 F.3d at 370.

In May of 2010, while the Second Circuit decision was pending, ICE issued a memorandum regarding plaintiff's detention as required under the Department of Homeland Security's November 19 Directive. *See* Compl. at Ex. O (ECF No. 1-1) ("ICE's Memorandum Re Plaintiff"); *see also* November 19, 2008 Directive.

ICE's memorandum again indicated that plaintiff was not a citizen of the United States under *Matter of Hines*. *See* ICE's Memorandum Re Plaintiff. It concluded and recommended:

> Pursuant to the definition of "child" as found in INA Section 101(c)(1), INA Sections 320 and 321 provide for derivation of United States citizenship through naturalization of the father of a child born out of wedlock if the child has been legitimated before age sixteen under the law of the child's or father's residence or domicile. Both New York and Jamaican law require marriage of the parents for legitimation (see *Matter of Hines* 24 I & N Dec. 544 (BIA 2008)). There is no evidence that [plaintiff's] parents were ever married, as such [plaintiff] does not meet the definition of "child" as described in INA Section 101(c)(1) for purposes of derivative United States citizenship.
> . . .
>
> [Plaintiff] is subject to an order of removal entered by the Immigration Court and affirmed by the Board of Immigration Appeals. It is recommended that [plaintiff] be held in immigration custody pending a decision by the Second Circuit in this case.

*Id.* (emphasis added).

### J.    Immigration and Customs Recommends Immediate Release

On November 2, 2011, ICE issued a revised memorandum. *See* Compl. at Ex. P (ECF No. 1-1) ("ICE's Revised Memorandum Re Plaintiff, Nov. 2, 2011"). For the first time, this revised memorandum questioned whether *Hines*—the case it had insisted was binding authority

—was applicable to plaintiff's situation, and concluded that under previous authority plaintiff

had met his burden of establishing citizenship:

> Both New York and Jamaican law require marriage of the parents for legitimation (see *Matter of Hines* 24 I. & N. Dec. 544 (BIA 2008)).
>
> However, the issue remains as to whether *Hines* is to be applied purely prospectively or whether it has a retroactive effect. If *Hines* is purely prospective interpretation of the law, Watson would be a derivative of United States citizen pursuant to *Matter of Clahar*, 18 I. & N. Dec. 1 (BIA 1981). *Clahar* held that all children born in Jamaica were legitimate at birth.
>
> Pursuant to *Clahar*, at the time of his father's naturalization, Watson would have met the definition of child at [8 U.S.C. § 1101(c)(1)] and would have fulfilled the conditions for derivative United States citizenship at [8 U.S.C. § 1431(a)].
>
> *It is, therefore, possible that Watson is a derivative United States citizen.*
> . . .
>
> *[I]t is concluded that Watson has provided probative evidence of United States citizenship based on Clahar. It is recommended that he be immediately released from DHS custody.*

*Id.* (emphasis added); *see also Matter of Clahar*, 18 I. & N. Dec. 1, 3 (BIA 1981), *overruled by*

*Matter of Hines*, 24 I. & N. Dec. 544 (BIA 2008), *reinstated by Matter of Cross*, 26 I. & N. Dec.

485 (BIA 2015) ("a child within the scope of the Jamaican Status of Children Act may be

included within the definition of a legitimate or legitimated 'child' set forth in section 101(b)(1)

of the Immigration and Nationality Act so long as the familial tie or ties are established by the

requisite degree of proof and the status arose within the time requirements set forth in section

101(b)(1)").

### K.     Plaintiff Released from ICE Custody: November 2, 2011

On November 2, 2011, the same day ICE issued its revised memorandum, plaintiff was

released from ICE custody in Alabama. He was, in his words, "pushed out the door" by ICE

officers, who provided him with no explanation of what was happening.  Aug. 20 Hr'g Tr. at

42:4–15.  Plaintiff was confused.  With no contacts in Alabama and no phone, he was left

wandering until he found a gas station.  He called his family, who arranged a hotel where he

could stay overnight and obtained a bus ride to New York the next day.  *Id.* at 42:16–43:3.

Plaintiff was not provided any legal paperwork or work authorization, leaving him unable

to work for another 755 days, approximately two years.  The government took no actions to

correct its error in improperly denying for years plaintiff's N-600 application.

### L.      Plaintiff's Removal Proceedings Terminated: January 24, 2013

Plaintiff's removal proceedings were not terminated until January 24, 2013,

approximately fourteen months after his release from custody.  Pl.'s Pre-Hr'g Br. at Ex. B (ECF

No. 51-2) ("Decision of the Board of Immigration Appeals").  Reviewing its prior conclusion

pursuant to the Court of Appeal's directive, the Board of Immigration Appeals concluded that it

"erroneously relied on *Hines*."  *Id.*  *Hines*, the Board now explained, did not govern plaintiff's

case because "[t]he issue in *Hines* was whether the respondent had established 'paternity by

legitimation' under former section 321(a)(3) of the Act, not whether the alien was a 'legitimated'

child under section 101(c) of the Act."  *Id.*  The Board held that it was "not bound to interpret the

term 'legitimated' in the same way throughout the Act," limiting *Hines*' holding "to derivation of

citizenship under former section 321(a)(3) of the Act."  *Id.*  "'[L]egitimation by itself in both

section 101(b)(1) and 101(c) of the Act," the Board now reasoned, "is not as restrictive as

'paternity by legitimation,' in former section 341(a)(3) and former section 309 of the Act . . .

[and the Jamaican Status of Children Act of 1976] legitimated all children born in Jamaica."  *Id.*

The Board agreed with the Department of Homeland Security—which now conceded

"that [plaintiff] has met the requirements of section 320(a) of the Act and that he was legitimated

by his father's acknowledgment"—and concluded that plaintiff had, in fact, "derived citizenship through his father's naturalization pursuant to section 320(a) of the Act." *Id.*

### M.      Depression and Drug Use

Plaintiff suffered from depression throughout his ICE detention.  After completion of the Shock Incarceration Program on May 8, 2008, he was ready to begin a new life.  Release without assistance was devastating.  He had been constantly in a state of confusion, affirmatively believing in his United States citizenship, but being repeatedly told by USCIS, an immigration judge, and later the Board of Immigration Appeals, that he was not.  Plaintiff never received treatment for this depression during his detention.  Aug. 20 Hr'g Tr. at 25:15–16.

Plaintiff's depression continued *after* he was released from ICE custody on November 2, 2011.  Provided with no legal documents and no work authorization, he was unable to support himself.  Still confused over his status, he did not understand that he had a right to file claims for his illegal detention and long incarceration.  He began using drugs one month after his release.  He suffered periods of homelessness.  *Id.* at 75:10–21.

### N.      Continued Litigation of Citizenship

On February 11, 2013, plaintiff, then represented by counsel, filed a motion to reconsider the denial of his original N-600 application for certificate of United States citizenship.  Pl.'s Answer to Local Rule 56.1(a)(3) at Ex. D (ECF No. 27-4) ("Form I-290B, Notice of Motion").

On October 30, 2013, plaintiff filed an SF-95 administrative tort claim.  Deposition of Plaintiff at 26:14–16; Aug. 20 Hr'g Tr. at 72:7–14; Pl.'s Pre-Hr'g Br. at Ex. C (ECF No. 51-2) ("Excerpt from SF-95 Form Complaint").  One month later, after years of confusion and doubt over his citizenship status, plaintiff was issued a Certificate of United States Citizenship.  *See* Plaintiff's Certificate of Citizenship; Aug. 20 Hr'g Tr. at 80:9–17 (parties stipulating that this was the day plaintiff received his certificate of citizenship).

Plaintiff did not know he had a right to sue the United States until approximately July 31, 2014, when his Gibson Dunn *pro bono* attorney, with whom he had remained in contact, informed plaintiff of this right.  Aug. 20 Hr'g Tr. at 78:25–79:17.  Plaintiff filed his complaint three months later on October 31, 2014.  Complaint (ECF No. 1).

## IV.     Legal Standards of Review

### A.     Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Cunningham v. Bank of New York Mellon N.A.*, No. 14-CV-7040, 2015 WL 4104839, at *1 (E.D.N.Y. 2015). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional questions."  *Id.* (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

### B.     Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation omitted).

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor."  *Friedman v. Maspeth Fed. Loan & Sav. Ass'n.*, 30 F. Supp. 3d 183, 188–89 (E.D.N.Y. 2014) (citation omitted).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583 (2007) (citation omitted).  It is the "legal feasibility of the complaint," and not the weight of the evidence, that must be assessed.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

## C.     Federal Rule of Civil Procedure 56

"Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law." *Figueroa v. City of New York*, No. 06-CV-6277, 2015 WL 1298502, at *3 (E.D.N.Y. Mar. 23, 2015) (citations omitted). "In ruling on a summary judgment motion, the district court must first determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *Sheet Metal Workers Nat. Pension Fund v. Coverex Corporate Risk Solutions*, No. 09-CV-0121, 2015 WL 3444896, at *2 (E.D.N.Y. May 28, 2015) (citation omitted). "[T]he court must 'construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Mehmeti v. Jofaz Transp., Inc.*, No. 12-CV-5880, 2015 WL 2453499, at *2 (E.D.N.Y. May 22, 2015).

## V.     Statute of Limitations Does Not Bar Plaintiff's FTCA Claims

The FTCA provides that:

> A tort claim against the United States shall be *forever barred* unless it is presented in writing to the appropriate Federal agency *within two years after such claim* accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final decision of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

The government first argues that plaintiff's claims are time barred because the statute of limitations began to run when he was first detained on May 8, 2008. Mem. of Law in support of Def.'s Mot. to Dismiss, or in the alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18), at 9–15.

For the reasons below, the court finds that plaintiff's claims are not time barred.  The statute of limitations did not begin to run until plaintiff received his Certificate of Citizenship on November 26, 2013, after which he could seek a job as a citizen of the United States.

Alternatively, the court finds that plaintiff is entitled to benefit from the equitable tolling of the statute of limitations until he was informed of his right to bring an FTCA claim on July 31, 2014.

### A.    *Heck v. Humphrey*

Generally, under federal law, a "claim accrues, and the limitations period begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Walters v. City Dep't of Correction*, 517 F. App'x 41 (2d Cir. 2013) (quoting *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)).  In *Heck v. Humphrey*, the United States Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence *does not accrue until the conviction or sentence has been invalidated.*"  *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994) (emphasis added).  The Court reasoned that because one of the elements required for a § 1983 cause of action was a finding that the plaintiff's conviction or sentence was improper, the cause of action could not exist until such a finding was made.  And since the cause of action could not exist until that time, the statute of limitations on the cause of action could not begin to run before then.  *Id.* (comparing a § 1983 claim to a malicious prosecution claim which "does not accrue until the criminal proceedings have terminated in the plaintiff's favor").

The Court of Appeals for the Second Circuit has not yet decided whether *Heck* applies to FTCA claims in the immigration context.  At least two District Courts in the Second Circuit and several Courts of Appeals have concluded or assumed that *Heck* does apply.  *See Scott v. City of*

*White Plains*, No. 10-CV-1887, 2012 WL 1267873, at *4, n.5 (S.D.N.Y. Apr. 10, 2012)

(assuming that *Heck* applies to FTCA claims in the immigration context and noting that Second

Circuit has yet to address question); *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249,

273 n. 24 (D. Conn. 2008) (assuming but not deciding that *Heck* applies to the civil immigration

context); *Dare v. United States*, 264 F. App'x 183, 185 (3d Cir. 2008) (applying *Heck* to action

under FTCA for negligent miscalculation of prison term, finding that claim did not accrue

without establishment of plaintiff's entitlement to release); *Erlin v. United States*, 364 F.3d 1127,

1132 (9th Cir. 2004) (applying *Heck* to FTCA claim arising from negligence in miscalculating

prison release date and finding that the accrual period had not expired); *Dalis v. United States*,

210 F.3d 389 (10th Cir. 2000) ("*Heck* applies to actions brought under the FTCA").

 Applying the *Heck*'s reasoning and its holding to the FTCA claims in this case makes

sense.  Plaintiff's claims are premised on the fact that he was and is a United States citizen, and

that his detention was improper because of that fact.  If plaintiff had ultimately been found to not

be a United States citizen, then he would not have the claims he now brings.  Thus, it was not

until his citizenship was definitively established that his FTCA causes of action arose.

 As *Heck* teaches, it was not until this date that the statute of limitations began to run.  Put

differently, the statute of limitations for a cause of action cannot begin to run before the cause of

action exists.  This did not occur until plaintiff received his Certificate of Citizenship on

November 26, 2013.  *See* Plaintiff's Certificate of Citizenship; *see* Aug. 20 Hr'g Tr. at 80:9–17

(stipulation).

 Because plaintiff commenced his written tort claim to ICE within two years of his receipt

of his Certificate of Citizenship, and commenced this action within six months of ICE's final

decision, his FTCA causes of action are timely.  28 U.S.C. § 2401(b).

### B. Equitable Tolling of Accrual Date

In the alternative, the court finds that if the statute of limitations on plaintiff's FTCA claims began to run earlier than November 26, 2013, the statute was equitably tolled until July 31, 2014, when plaintiff was informed of his right to sue the United States.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (citations omitted); *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) ("To qualify for [equitable tolling,] the [plaintiff] must establish that extraordinary circumstances prevented him from filing his [claim] on time, and that he acted with reasonable diligence throughout the period he seeks to toll.") (citations omitted). The statute of limitations for the FTCA is subject to equitable tolling. *See United States v. Wong*, 135 S Ct. 1625, 1633 (2015).

There are several reasons it is appropriate to apply equitable tolling in this case. First, plaintiff diligently attempted to pursue his rights by establishing the fact that he was a United States citizen. He promptly and continuously asserted his citizenship, and took every action he knew of—or could reasonably be expected to know of—to demonstrate that he was a citizen. As explained above, absent the establishment of this fact he would not have been able to bring the FTCA claims he now asserts. Thus, although plaintiff's focus was on terminating his removal proceedings and securing his release, his actions also satisfy the requirement that he act diligently throughout the tolled period.

Second, there are several extraordinary circumstances. Plaintiff has only an eleventh-grade education with no legal training, and was unaware that he could bring an FTCA action

against the United States until he learned of it from his counsel around July 31, 2014. Aug. 20 Hr'g Tr. at 20:4–5, 30:17–31:10, 79:12–17.

Plaintiff's ability to commence an action was severely limited by his constrained circumstances, many of which were caused by the government. Twenty-four years old, he had only a partial high school education and had just completed a Shock Incarceration Program. He was promptly detained by ICE officers and placed in federal custody with intentions to deport him even though he had good reason to believe he was a United States citizen. His arrest and detention without counsel caused plaintiff to suffer from depression, a condition which went untreated until his release from detention in November 2011. *Id.* at 21:21–25:18. Following his release from detention, plaintiff was unable to work owing to his lack of a Certificate of Citizenship. He was destitute and began using drugs. He also was homeless at least some of the time. *Id.* at 75:5–15.

Until the Court of Appeals for the Second Circuit appointed counsel to assist him in April of 2011, he had no help from legal professionals. Even then he only had help with respect to one proceeding. *Id.* at 26:22–33:4. Plaintiff's abilities were also limited by the resources available in the library of the detention facility at which he was held, and by restrictions on use of those facilities. *Id.* at 33:8–40:16 (describing limited time plaintiff had in the law library and the limited resources available there).

Finally, and most significantly, plaintiff was repeatedly told by government officials— including an immigration judge—that he was not a United States citizen. Plaintiff was understandably confused by such statements and had no reason to believe that he had a cause of action against the United States.

These facts are extraordinary circumstances that warrant the tolling of the statute of limitations from the time plaintiff was detained until he was told by legal counsel that he had a cause of action.  The statute of limitations was equitably tolled until July 31, 2014.

## VI.  Plaintiff's Malicious Prosecution Claim Is Barred By 28 U.S.C. § 2680(h)

The government contends that plaintiff's malicious prosecution and negligence claims must be dismissed because they lack private analogues under New York law.  Mem. of Law in support of Def.'s Mot. to Dismiss, or in the alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18), at 15–20.  The government is correct that the malicious prosecution claim must be dismissed, but not for the reason it sets forth.  The government is incorrect about the negligence claim requiring dismissal.

### A.  Malicious Prosecution

Plaintiff alleges that the government's continuation of the removal proceedings after plaintiff received his Certificate of Citizenship constitutes malicious prosecution.  Aug. 20 Hr'g Tr. at 99:21–100:2.  The government contends that this claim must be dismissed because no private analogue exists.  The government is correct that the claim must be dismissed, but not for lack of a private analogue.

It is well settled that the United States may be sued only where it has elected to waive its sovereign immunity.  The Federal Tort Claims Act—under which plaintiff asserts his claims—is one such waiver.  *Rhodes v. United States*, 519 F. App'x 703, 705 (2d Cir. 2013).  Congress has, however, specifically carved out of the Federal Tort Claims Act waiver "any claim arising out of false imprisonment, false arrest, [and] malicious prosecution."  28 U.S.C. § 2680(h); *see also Wong*, 135 S. Ct. at 1639 (discussing exceptions to FTCA's immunity waiver, including claims for malicious prosecution).

Although § 2680(h) does not apply to "acts or omissions of investigative or law enforcement officers of the United States Government," 28 U.S.C. § 2680(h), the prosecution about which plaintiff complains was not carried out by such officers. *See Cao v. United States*, 156 F. App'x 48, 50 (9th Cir. 2005) (dismissing malicious prosecution claim because neither INS attorneys nor immigration judge involved in removal proceedings were investigative or law enforcement officers within the meaning of § 2680(h)); *Garcia-Valasquez v. United States*, No. 13-CV-1038, 2014 WL 3756378, at *4 (W.D. Tex. July 29, 2014) (attorneys prosecuting removal action were not investigative or law enforcement officers, requiring dismissal of malicious prosecution claim). Plaintiff's malicious prosecution cause of action is not saved by the § 2680(h) exception.

The complaint's fourth cause of action for malicious prosecution is dismissed pursuant to 28 U.S.C. § 2680(h). The government's other arguments for why plaintiff's malicious prosecution claim fails as a matter of law need not be addressed. *See* Mem. of Law in support of Def.'s Mot. to Dismiss, or in the alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18), at 27–28.

### B.    False Imprisonment

28 U.S.C. § 2680(h) is also applicable to "any claim arising out of . . . false imprisonment [or] false arrest . . . ." 28 U.S.C. § 2680(h). Although the government did not seek dismissal of plaintiff's false imprisonment claim on this ground, because the issue is one that impacts the court's subject matter jurisdiction, the court must evaluate it *sua sponte*. *Fracasse v. People's United Bank*, 747 F.3d 141, 143 (2d Cir. 2014) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*.") (citation omitted).

As noted above, § 2680(h) does not apply to "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). This exception encompasses the ICE officers who arrested and detained plaintiff. *Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984) (holding "INS agents are 'investigative or law enforcement officers' within the meaning of this section). Section 2680(h) does not require the dismissal of plaintiff's false imprisonment claim.

## VII. Plaintiff's Negligence Claim Has Private Analogue

One of the FTCA's requirements is that a plaintiff's claim have a 'private analogue.' *See* 28 U.S.C. § 1346(b)(1) ("the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred*") (emphasis added). The government argues that plaintiff's FTCA negligence claim must be dismissed because it lacks this private analogue. Mem. of Law in support of Def.'s Mot. to Dismiss, or in the alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18), at 18–20.

Plaintiff responds by arguing that the government misconstrues his claim, and that New York law imposes liability for both negligent investigations and for failing to correct a known defect which poses a known risk. Pl's Mem. of Law in Opp. to Defs.' Mot. to Dismiss, or in the Alternative, for Summary Judgment, filed June 10, 2015 (ECF No. 28), at 24–26. Plaintiff is correct on his second theory, but not on his first.

The private analogue requirement does not mandate the existence of liability for the exact same act by a private actor. Rather, the court is "'require[d] . . . to look further afield' for a private analogue when the government in fact is the only entity that performs the actions complained of." *Liranzo v. U.S.*, 690 F.3d 78, 94 (2d Cir. 2012) (quoting *U.S. v. Olson*, 546 U.S. 43, 46 (2005)). The Supreme Court's decision in *Indian Towing Co. v. U.S.*, 350 U.S. 61 (1955), is illustrative of this directive. In *Indian Towing* plaintiffs brought a negligence action under the FTCA against the United States for injuries allegedly sustained as a result of the Coast Guard's operation of a light house. At the time, all light houses were operated by the government, making the activity uniquely governmental. The Court concluded that the relevant consideration was not the exact act implicated but the nature of the claim. The Court compared the lighthouse operation to one who takes on the task of providing a warning to the public, and held "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." 350 U.S. at 64–65.

Plaintiff characterizes his negligence claim in two ways. First, he analogizes DHS's and ICE's failure to investigate his United States citizenship to the duty imposed on private security contractors. Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss, or in the Alternative, for Summary Judgment, filed June 10, 2015 (ECF No. 28), at 24–25. New York law, however, does not recognize a cause of action for negligence based on investigations conducted by private security contractors. *Grennan v. Nassau Cnty.*, No. 04-CV-2158, 2007 WL 952067, at *22 (E.D.N.Y. Mar. 29, 2007) (citing *Coleman v. Corporate Loss Prevention Associates, Inc.*, 282 A.D.2d 703, 724 N.Y.S.2d 321, 322 (2001)).

Second, plaintiff analogizes USCIS's failure to correct its error and issue a Certificate of Citizenship once it discovered that he was a United States citizen to situations in which private

actors have a duty to act to correct a known defect. Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss, or in the Alternative, for Summary Judgment, filed June 10, 2015 (ECF No. 28), at 25–26. This argument is more persuasive.

New York law recognizes 'failure to act' negligence claims. *See Bernstein v. Crazy Eddie, Inc.*, 702 F. Supp. 962, 986 (E.D.N.Y. 1988) *order vacated in part sub nom. In re Crazy Eddie Sec. Litig.*, 714 F. Supp. 1285 (E.D.N.Y. 1989) ("Where the wrongful act is a failure to perform a duty and performance of the duty would have prevented the harm, causation is established, at least where the harm was reasonably foreseeable in the event of a dereliction."); *Van Hove v. Baker Commodities, Inc.*, 732 N.Y.S.2d 803, 804 (2001) ("A defendant who voluntarily assumes a duty to act with reasonable care toward others may be held liable for breach of that duty if the plaintiff relied on the defendant's undertaking and if the defendant's act or failure to act placed the plaintiff in a more vulnerable position than if the obligation had not been assumed."); 14 N.Y. Prac., New York Law of Torts § 6:3.

If the USCIS were a private entity and had knowledge of a condition which it could eliminate and which would foreseeably cause harm to a specific individual, then its failure to avoid the harm by reasonable means would be actionable negligence. *See Morrow v. Ashley*, , 770 N.Y.S.2d 760, 761 (3d Dep't 2004) ("A landowner who has actual or constructive knowledge of an unsafe condition that causes an accident may be liable under common-law negligence."); *Slavinskas v. Clinton Warehouse, Inc.*, 337 N.Y.S.2d 337, 338 (2d Dep't 1972) (truck driver with knowledge of defective brakes was negligent as a matter of law); *Singleton v. Bishop*, 240 N.Y.S.2d 384, 384–85 (1st Dep't 1963) ("If the accident was caused by defective brake repair and the operator-defendant had knowledge of the defect, he would be primarily (actively) negligent.").

Because a private analogue to plaintiff's claim for negligence exists, the claim survives the government's motion to dismiss.

## VIII.  Summary Judgment Is Not Appropriate

The government also moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Its argument for why plaintiff's FTCA claims must be dismissed boils down to two contentions: first, that plaintiff's initial detention was privileged because probable cause existed; and second, that plaintiff failed to satisfy his burden to prove his United States citizenship during the removal proceedings.  Mem. of Law in support of Def.'s Mot. to Dismiss, or in the alternative, for Summary Judgment, filed Apr. 29, 2015 (ECF No. 18), at 20–29; Reply Mem. of Law in further support of Defs.' Mot. to Dismiss or, in the alternative, for Summary Judgment, filed June 24, 2015 (ECF No. 29), at 17–18.  Neither of these arguments warrants summary judgment.

The government has not satisfied its summary judgment burden to show that plaintiff's initial detention was privileged.  The two sections of the INA to which the government points are applicable to aliens, not to citizens.  *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i). Plaintiff was a citizen when he was initially detained.  Nor has the government shown that there is no genuine issue of material fact as to whether the facts it had in its possession in 2008 were sufficient to create the necessary probable cause.  Rather, in light of the government's *sua sponte* release of plaintiff in 2011, a reasonable person could conclude that the opposite is true, that the material for prompt release was always available had the government made reasonable attempts to obtain it.

The government has not presented sufficient evidence demonstrating that plaintiff failed to satisfy his burden in the removal proceedings.  Plaintiff did everything reasonably within his

limited power, including obtaining and presenting his father's naturalization certificate, to attempt to establish his derivative citizenship. *See* Aug. 20, 2015 Hr'g Tr. at 45:15–46:20. The facts of this case are complex, as the history at the Second Circuit shows. Whether plaintiff's actions were sufficient raises an issue of fact that will be resolved at trial where the evidence will be better developed as to liability and damages.

## IX. Conclusion

For reasons stated orally on the record at the August 20, 2015 hearing, the complaint's first and second causes of action, and the individual and John Doe defendants, are dismissed. *See* Scheduling Order, Sept. 9, 2015 (ECF No. 59).

The government's motion to dismiss the remaining claims as time barred is denied. Applying the holding of *Heck*, the statute of limitations for the complaint's FTCA claims accrued on November 26, 2013, the day plaintiff received his Certificate of Citizenship. Alternatively, plaintiff is entitled to equitable tolling until July 31, 2014, when he learned he had a right to sue the United States.

The complaint's fourth cause of action for malicious prosecution is dismissed pursuant to 28 U.S.C. § 2680(h). The government's motion to dismiss and for summary judgment is otherwise denied.

A bench trial shall proceed.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: September 29, 2015
Brooklyn, New York