166

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
DAVINO WATSON,                    :
                                  :   14-CV-6459(JBW)
            Plaintiff,            :
                                  :
      -against-                   :
                                  :   United States Courthouse
                                  :   Brooklyn, New York
UNITED STATES OF AMERICA,         :
                                  :
            Defendant.            :
                                  :   Wednesday, September 30,
                                  :   2015
                                  :   10:00 a.m.
                                  :
                                  :
                                  :
                                  :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR BENCH TRIAL
BEFORE THE HONORABLE JACK B. WEINSTEIN
UNITED STATES SENIOR DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Plaintiffs:     HOLLAND & KNIGHT
                        BY: MARK. A. FLESSNER, **ESQ**.
                           ROBERT J. BURNS, **ESQ**.
                           MARK FLEMING, **ESQ**.

For the Defendants:     KELLY T. CURRIE, ESQ.
                        UNITED STATES ATTORNEY
                        BY:  JOSEPH A. MARUTOLLO, ESQ.
                            JAMES R. CHO, ESQ.

Court Reporter:   FREDERICK GUERINO, CSR
                  Official Court Reporter
                  Telephone: (718) 613-2503
                  E-mail: Frederick Guerino@aol.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

1            Case on trial:  Davino Watson v. United States of

2    America.

3            THE COURT:  Do we have the father's file in

4    evidence?

5            Doesn't he have a file?

6            MR. FLESSNER:  I don't think it's in evidence, not

7    the entire file.

8            THE COURT:  I would like to put it in evidence, if

9    I may.

10           MR. FLESSNER:  We'll get it together for you.

11           THE COURT:  Okay.  Do we have a witness?

12           MR. FLESSNER:  We have a couple of things that we

13   would like to talk about beforehand.

14           THE COURT:  Happy to.

15           MR. FLESSNER:  My colleague has a clarification

16   question about your order that you issued yesterday.

17           MR. FLEMING:  We were trying to seek clarification

18   with respect to the negligence claim.  It's our reading of

19   the opinion that the negligence claim as to ICE's actions has

20   been dismissed --

21           THE COURT:  As to what actions?

22           MR. FLESSNER:  As to ICE's actions.  So the

23   unlawful detention period that, as to our theory of

24   negligence, that has been dismissed because there being no

25   private analogue as to a reasonable investigation, and we

1    would respectfully submit that that was -- with respect to

2    our claim against ICE's negligence, that it was the

3    government's characterization of it being unreasonableness of

4    an investigation.

5              THE COURT:  Well, if you have anything that you

6    want to say about it, give me a brief or a letter.  I don't

7    want an oral presentation.

8              MR. FLEMING:  Okay, we can do that.

9              THE COURT:  Respectfully.

10             Anything else?

11             MR. FLESSNER:  Yes.  I will deal with the exhibits.

12             We want to admit all of our exhibits, and I don't

13   know how many the government is objecting to.

14             MR. FLEMING:  About six or seven.

15             MR. FLESSNER:  We move to admit all of our

16   exhibits.

17             THE COURT:  Let me see the list.

18             What are you objecting to?

19             MR. MARUTOLLO:  Your Honor, we are objecting to

20   Plaintiff's Exhibits 55 through 58.

21             THE COURT:  All right.

22             Why are you offering them?

23             MR. FLEMING:  These are the United States citizens

24   directives that your Honor cited to extensively within your

25   order with respect to a motion to dismiss in summary

1   judgment.  They remain highly relevant as to our false

2   imprisonment claim, as to whether defendant's actions were

3   privileged, and they continue to be very relevant as to the

4   negligence claim and the duty that ICE had with respect to

5   their requirement to follow those policies.

6              MR. MARUTOLLO:  And, your Honor, you already ruled

7   on Monday that these exhibits were not to be admitted for the

8   first witness, Officer Andren, because he had not dealt with

9   them.

10             Additionally, we would argue that the next two

11  witnesses the government will be calling, whose involvement

12  had nothing to do with these directives, predated these

13  directives, in other words, that these exhibits should not be

14  used for these officers when their involvement in the case

15  had -- you know, their involvement in the case ended prior to

16  these directives even being issued.

17             We also argued on the whole that the directives

18  should not be admitted into evidence for the reasons set

19  forth in our motion, namely that we think this creates a

20  false standard, when these are guidelines, not government

21  regulations, not statutes, and it creates a false standard

22  for which the government is being forced to raise of their

23  level of care.

24             MR. FLESSNER:  This whole motion has been briefed

25  by both sides, and you have those briefs.  There will be

1    witnesses who will testify extensively about these

2    directives.  Mr. Phillips will testify about them.

3    Mr. Newman will testify about them.

4            THE COURT:  All right.  They are admitted.

5            MR. MARUTOLLO:  We also object to Plaintiff's

6    Exhibit 63.

7            THE COURT:  What is the objection?

8            MR. MARUTOLLO:  The objection is, your Honor, that

9    this is not relevant and a waste of the Court's time, because

10   this e-mail addresses the internal ICE's database regarding

11   information that was placed into the database after the

12   plaintiff had already been issued his Certificate of

13   Citizenship, and, as the plaintiff testified on Monday, no

14   employers could access this database.  This database is

15   completely internal database, and having this exhibit in

16   evidence would only serve to again waste the Court's time and

17   would be prejudicial to the government, because it's

18   irrelevant to the case at hand.

19           MR. FLEMING:  Your Honor, we remain convinced that

20   this is very probative evidence with respect to USCI's

21   negligence in this case, that for a full year after they

22   issued the Certificates of Citizenship, that their database

23   didn't reflect that citizenship.

24           THE COURT:  I will take it.  Admitted.

25           (Whereupon, Plaintiff's Exhibit 63 is received and

1    marked into evidence, as of this date.)

2            MR. MARUTOLLO:  Your Honor, we would also

3    object to Plaintiff's Exhibit 61.

4            THE COURT:  On what ground?

5            MR. MARUTOLLO:  On the ground that -- and also on

6    Exhibit 65, based for the same reasons that these exhibits

7    are e-mailed between attorneys, and we believe that they are

8    subject to attorney/client privilege, that they are attorney

9    work product, and they should not be entered into evidence in

10   this case.

11           MR. FLEMING:  Your Honor, it's our position they

12   waived that privilege in producing them.  They also have been

13   redacted.  But what they do show with respect to Exhibit 61

14   is USCI's knowledge on November 22, 2011, and their

15   determination on that date that Mr. Watson was a citizen and

16   thus triggering their negligence.

17           THE COURT:  They are admitted.

18           MR. MARUTOLLO:  Your Honor, we would make the same

19   argument with respect to Exhibit 79, which is another e-mail.

20   These are attorney communications and prejudices the

21   government.

22           MR. FLEMING:  Your Honor, they did not raise that

23   objection.

24           THE COURT:  What is your substantive response?

25           MR. FLEMING:  It's the same that Exhibit 61 comes

172

1   from, and it shows knowledge on November 22, 2011, both as to

2   ICE and USCI's knowledge of their determination of him being

3   a citizen on that date.

4           THE COURT:  Admitted.

5           MR. MARUTOLLO:  We didn't raise the objection

6   because the defendant didn't file --

7           THE COURT:  I don't care whether you raised it

8   or not.

9           MR. MARUTOLLO:  We would also object to Plaintiff's

10  Trial Exhibits 93 through 100, and 102.  These are all

11  deposition transcripts of witnesses at trial -- I'm sorry,

12  during discovery.  We think this is in large part a lot of

13  this information is irrelevant, and these witnesses we intend

14  to call as witnesses at trial.  So it would be duplicative.

15          THE COURT:  Well, if all of these witnesses

16  are going to be called, I don't want the deposition

17  separately.  When the witness comes in, you can use them.  So

18  you are asking for what numbers?

19          MR. MARUTOLLO:  Numbers 93 through 100, and then

20  Exhibit 102.  Those are, I believe, all of the deposition

21  transcripts.

22          THE COURT:  All right.  Those are excluded, except

23  as I just noted.

24          MR. MARUTOLLO:  The last exhibit, your Honor, we

25  object to is Plaintiff's Exhibit 104, which is a production

1    cover letter that I wrote in July.

2          THE COURT:  I don't have 104 on the list.

3          (Whereupon, Judge is handed a document.)

4          MR. FLEMING:  Your Honor, we would just ask that

5    the government stipulate that the numbers dated there, the

6    Bates range there, is the full Plaintiff's alien file.

7          MR. MARUTOLLO:  That's fine, your Honor.  We would

8    just note that we had also produced the redacted version as

9    well with different Bates numbers.  Again, that is the A file

10   was produced Bates numbers US 219 through US 2534.

11         THE COURT:  Admitted only for that purpose.

12         MR. MARUTOLLO:  Your Honor --

13         MR. FLESSNER:  Are you done with the exhibits?

14         MR. MARUTOLLO:  Yes, we are done with the exhibits.

15         MR. FLESSNER:  The second thing or third thing, I

16   guess, your Honor, is we need to make, at the end of Monday

17   afternoon, you had suggested that we make more progress with

18   respect to stipulations.

19         THE COURT:  Yes.

20         MR. FLESSNER:  There are letters here that were

21   exchanged.  We have about ten of the Government's

22   stipulations that we are still objecting to for accuracy.

23   They objected to about two-thirds of our stipulations.  I

24   thought it would be useful for you to see the letters that

25   showed the objections and the reasons and basis for them.

174

1          THE COURT:  No, I'm not going to get involved.
2    Either you stipulate or you don't.  If you don't stipulate, I
3    will have to make a ruling on admissibility.
4          MR. FLESSNER:  Okay.
5          MR. MARUTOLLO:  We would note, your Honor, we did
6    stipulate to 85 faxes.
7          THE COURT:  Well, if you stipulated to them, give
8    me the stipulation.  If it's not we'll have to at trial.
9          MR. FLESSNER:  Finally, you were talking about the
10   advisory jury.  We did a little research on that, and there's
11   pretty clear Second Circuit law.  The Second Circuit has held
12   "where the jury has found a Constitutional violation, and
13   there's no genuine dispute that the violation resulted in
14   some injury to the plaintiff, the plaintiff is entitled to an
15   award of compensatory damages as a matter of law, which can
16   be determined by the judge."
17          And there's case law that says:  "Accepting
18   the jury's conclusion that Martinez was falsely arrested
19   during a typical morning commute and unlawfully held for a
20   period of time, the award of $160,000 is not inconsistent
21   with other false arrest awards."
22          So, in other words, there's case law that says
23   you should look at other awards in the region, and we have a
24   survey of awards given in the New York area, based on all of
25   that.

175

1          THE COURT:  All right.

2              MR. FLESSNER:  We can give you a letter on

3    that.

4              THE COURT:  I prefer a letter.

5              MR. FLESSNER:  Sure.

6          MR. MARUTOLLO:  And, your Honor, just to follow up

7    with that same issue.  We had asked the plaintiff's attorneys

8    last night regarding their position on whether they agreed to

9    an advisory jury.  I know we hadn't gotten a chance to speak

10   about it yet.  The government would like an opportunity to

11   also file a letter regarding our position opposing the

12   advisory jury.

13             THE COURT:  I will hear them both.  If I had a

14   jury, I wouldn't tell the jury what the other courts have

15   done.  They'll have to make their decision based on their own

16   conclusions.  But I will take all of this into account,

17   because I will make the decision.

18          MR. FLESSNER:  Okay.

19             THE COURT:  And I think all of those cases are

20   quite different from this one.

21          MR. MARUTOLLO:  Your Honor, we also have one point

22   to raise.

23             On Monday, during Monday's trial, your Honor

24   indicated that you are only to be trying this case on

25   negligence, and you said on page 129 of the transcript, again

1    you are only trying it on negligence.  We just want to be

2    clear, the false imprisonment claim has been dismissed from

3    this case, and the only claim remaining in this case is --

4               THE COURT:  If you want something more

5    direct -- I've written extensively.  Do you object to

6    anything in the memorandum that I issued yesterday?

7               MR. MARUTOLLO:  Well, your Honor, we were just

8    seeking clarification because --

9               THE COURT:  Then ask for it in a letter.  I'm

10   not going to give you off-the-top-of-my-head decisions that

11   are critical, if you don't mind.

12              MR. MARUTOLLO:  We'll issue a letter, your Honor.

13              THE COURT:  Okay.

14              Call your next witness, please.

15              MR. CHO:  We call Deportation Officer Juan Estrada.

16   J U A N     E S T R A D A,

17              called as a witness, having been first duly sworn,

18              testifies as follows:

19              THE LAW CLERK:  Please have a seat

20              State and spell your last name for the record.

21              THE WITNESS:  Juan Eastrada, E-s-t-r-a-d-a.

22   DIRECT EXAMINATION

23   BY MR. CHO:

24   Q    Good morning, Officer Estrada.

25   A    Good morning.

J Estrada - Direct/Cho                              177

1   Q     By whom are you employed?

2   A     Department of Homeland Security, Immigration and Customs

3   Enforcement.

4   Q     Is that also known ago ICE?

5   A     Yes.

6   Q     What is your current title?

7   A     Deportation Officer.

8   Q     How long have you worked as a deportation officer?

9   A     Since 2006.

10  Q     Okay.

11              How long have you worked in Immigration

12  Services?

13  A     Since 1997.

14  Q     Can you briefly describe your employment history?

15  A     Sure.

16              From 1997 to 2002, I was an immigration

17  inspector at John F. Kennedy Airport.

18              From 2002 until 2006, I was a criminal

19  investigator for Immigration.

20  Q     And after that position, what position did you hold?

21  A     From 2006 to the present, Deportation Officer.

22  Q     Now, in 2008, what was your position?

23  A     Deportation Officer.

24  Q     And in 2008, where were you based?

25  A     At the Castle Point, New York office.

1  Q    In 2008, who was your supervisor?

2  A    Michael Ortiz.

3  Q    As a deportation officer, what were your duties?

4  A    I worked for the Criminal Agent Program.  The duties of

5  the Criminal Agent Program is to identify, interview, and

6  investigate criminal aliens that are in the state prison

7  system, the federal prison system, and the county jails.

8  Q    Now, let's talk about your training.

9              Have you received legal training related to

10  your work in Immigration Services?

11  A    I went to the Academy, Immigration Officer's Academy.

12  Q    After you went to the Academy, what other legal training

13  did you receive?

14  A    I get on-the-job training, refresher training, Fourth

15  Amendment training.  We also do virtual university courses.

16  Q    Are you familiar with removal proceedings?

17  A    Yes.

18  Q    Are what are removal proceedings?

19  A    Removal proceedings are conducted in front of an

20  immigration judge to determine whether a foreign born

21  national will be deported from the U.S. or not.

22  Q    What is the role of the immigration judge in removal

23  proceedings?

24  A    They are the ones that make the decision whether a

25  person is going to get deported or not.

1    Q    What role does the Immigration judge have with respect

2    to an individual's detention?

3    A    They can decide whether a person stays detained or not.

4    Q    Now, are you familiar with Davino Watson?

5    A    Yes, I am.

6    Q    And you got Davino Watson's case after it was removed by

7    Eric Andren; is that right?

8    A    Yes.

9    Q    When you got the case.  What were you asked to do?

10   A    I was asked to write his case.

11   Q    Okay.

12              What does that mean, explain to the Court what

13   writing the case means?

14   A    Well, writing a case is issuing the charging document in

15   order to place Mr. Davino into removal proceedings.

16   Q    Now, when you go about writing the case, how do you

17   treat the case?

18   A    With a lot of care.

19   Q    Why is that?

20   A    These are people's lives you are talking about.

21   Q    Okay.

22              Now, with respect to Davino Watson, what did

23   you do with respect to Davino Watson's case?

24   A    When I was assigned signed that case by the supervisor,

25   I reviewed Mr. Davino Watson's file, I reviewed the file for

1  Hopeton Watson, and Clare Watson.

2  Q    Do you recall any other documents you reviewed?

3  A    Yes.  I reviewed the Certificate of Disposition, the rap

4  sheet, the Immigration database printouts, and his criminal

5  history.

6  Q    Okay.

7              Now, can you explain to the Court how you

8  looked at the files?

9  A    Basically you open the file and you go page by page.

10  Q    Okay.

11             Now, after you reviewed the files you just

12  described, what did you do?

13  A    After I determined that Mr. Davino Watson was a

14  deportable alien, I opened the case in our system in order to

15  create the charging document.

16  Q    You said you found him to be a deportable alien.

17             How did you come to that conclusion?

18  A    Well, Mr. Davino Watson is a foreign born national. He

19  was born in Jamaica.  He was also convicted of two deportable

20  offenses.  He was convicted of attempted criminal sale of

21  cocaine in the third degree, and attempted robbery in the

22  second degree.  Those are deportable offenses.  In his file,

23  there was no evidence that he was a U.S. citizen.

24  Q    What made you come to the conclusion that there was no

25  evidence that he was a U.S. citizen?

1  A    There was no Certificate of Citizenship for Mr. Davino
2  Watson.
3  Q    Now, is there any othe/OLTD reason why you determined
4  that he was not a U.S. citizen, other than looking at
5  Davino's file?
6  A    That's the main reason.  He didn't have a Certificate of
7  Citizenship.
8  Q    Okay.
9           Now, if you are aware that Davino Watson was
10 claiming that he was a U.S. citizen, what would you have
11 done?
12 A    I'd review his file, like I said, and found no evidence,
13 so.
14 Q    After you reached your determination, what did you do?
15 A    Like I said, I opened the case --
16      THE COURT:  Excuse me.  I don't think you answered
17 the question.
18           If he had claimed citizenship, and you were
19 aware of that claim, the question is, as I understood it,
20 would your determination have been the same at that point?
21      THE WITNESS:  Yes.
22      THE COURT:  You would have declared him
23 deportable?
24      THE WITNESS:  Yes, sir.
25 BY MR. Cho:

1  Q    Explain to the Court why that's the case?

2  A    When I reviewed his file, there was no evidence in that

3  file that he was a U.S. citizen.  And he was a deportable

4  alien, because he was a foreign born national, and he had

5  criminal convictions that make him deportable from the United

6  States.

7  Q    You mentioned that you also reviewed the file for

8  Hopeton Watson and Clare Watson.

9            What effect, if any, would that have had in

10 your determination?

11 A    I reviewed those files to see what the status was, and

12 there was no evidence in those files either that, you know,

13 that they were citizens.

14 Q    Okay.

15            You mentioned earlier that you prepared

16 charging documents; is that right?

17 A    Yes.

18 Q    And if you can turn to Plaintiff's Exhibit 70 in the

19 white binder.

20            (Pause)

21 Q    Are you at Plaintiff's Exhibit 70?

22 A    Yes.

23 Q    Okay.

24            Do you recognize Exhibit 70?

25 A    Yes, I do.

1  Q     Okay.

2  What is that?

3  A     That's Form I-213, Record of Deportable Inadmissible

4  Alien.

5  Q     Your signature appears at the bottom of the page?

6  A     Yes.

7           MR. CHO:  We offer Plaintiff's Exhibit 70 into

8  evidence at this time.

9           THE COURT:  Admitted.

10          (Whereupon, Plaintiff's Exhibit 70 is received and

11 marked into evidence, as of this date.)

12 BY MR. CHO:

13 Q     Now, what is the purpose of this I-213 form?

14 A     That form is created in order to give a narrative of the

15 case to the attorneys, the supervisor, and ultimately the

16 Immigration Judge.

17 Q     Okay.

18          Now, if you turn to the second page of that

19 same exhibit.  The last paragraph starting with alien and

20 deportability.

21          What is that section about?

22 A     It is about where he was born and what his current

23 status is.

24 Q     And you typed up that paragraph?

25 A     Yes, I did.

1   Q    What was the basis for the information that you typed up

2   in there?

3   A    It was based on the review that I conducted in Mr.

4   Davino's file, and Hopeton Watson's and Clare Watson's files.

5   Q    If you can turn to Government Exhibit WW in the black

6   binder.

7                    Showing you Government Exhibit WW.

8                    Do you recognize this document?

9   A    Yes, I do.

10  Q    What is this document?

11  A    This is Form I-265.  It is the Notice to Appear Bond,

12  and Custody Processing Sheet.

13  Q    And did you fill out part of this form?

14  A    Yes, I did.

15              MR. CHO:  We offer Government Exhibit WW into

16  evidence.

17              THE COURT:  What is blacked out here?

18              MR. CHO:  The name of the attorney is redacted.

19              THE COURT:  The name of whose attorney?

20              MR. CHO:  Well, perhaps the witness can explain.

21              THE COURT:  Yes.

22  Q    Sir, if you look at Section D of Exhibit WW.

23              THE COURT:  C and D.

24              THE WITNESS:  That would be the immigration

25  attorney's approval of the case.  They sign this form when

J Estrada - Direct/Cho                185

1    they approve a case for removal proceedings.

2              THE COURT:  Well, why is that redacted?

3              MR. CHO:  Well, at the time we redacted the name of

4    the attorney.

5              THE COURT:  Why?

6              MR. CHO:  On privilege grounds.

7              THE COURT:  On what?

8              MR. CHO:  On privilege grounds.

9              THE COURT:  Why is that privileged?

10             MR. CHO:  Well, we can substitute the name.

11             THE COURT:  Yes, substitute a redacted

12   document.  I don't see the privilege.

13   BY MR. CHO:

14   Q    Officer Estrada, can you explain why --

15             THE COURT:  As I see it, the attorney himself

16   may participate in the negligent decision.  He's part of the

17   bureaucracy, isn't he?

18             MR. CHO:  Your Honor, I think we have addressed the

19   issue.  I think in your decision as well, to the extent these

20   are law enforcement officials, they are privileged.

21             THE COURT:  Law enforcement officials are

22   privileged?

23             MR. CHO:  They are exempt, as you noted in your

24   decision on Monday.

25             THE COURT:  This was an attorney.

1          MR. CHO:  No, this isn't an attorney, the person

2     who signed that form.

3               THE COURT:  Yes.  Are you conceding that?

4          MR. MARUTOLLO:  No.  I mean, we've argued all along

5     that the name of these attorneys who are involved are not

6     privileged.  That's an absurdity.  But the government has

7     been very insistent about that.

8          MR. CHO:  Well, we unredacted --

9               THE COURT:  Well, either submit a brief or

10    unredact it, because on the face of it, I'm not accepting the

11    government's view, subject to seeing your brief.

12          MR. CHO:  Okay.

13    BY MR. CHO:

14    Q    Now, Officer Estrada, could you explain why the attorney

15    would have reviewed this form?

16    A    This form contains the allegations and charges against

17    Mr. Davino Watson.

18    Q    What was the role of the attorney in reviewing this

19    form?

20    A    They provide legal sufficiency for our cases.

21    Q    Could you explain what legal sufficiency means?

22    A    Legal sufficiency is their approval or the go-ahead to

23    proceed with the removal proceedings.

24    Q    What was the attorney's determination with respect to

25    this case?

1  A    Well, after the attorney reviewed all the files,

2  Mr. Davino's file, Hopeton Watson's file, and Clare Watson's

3  file, and all the supporting documentation, they approved the

4  case.

5  Q    Okay.

6           THE COURT:  They approved deportation?

7           THE WITNESS:  The deportation hearing, sir.

8           THE COURT:  A deportation hearing or deportation?

9           THE WITNESS:  No, deportation hearing, sir.

10          THE COURT:  So they sent it on for a hearing.

11          THE WITNESS:  They sent it on to the

12 Immigration judge.

13          THE COURT:  I see.  Thank you.

14 BY MR. CHO:

15 Q    All right.

16          Now, after the attorney made his

17 determination, what did you do with respect to the file?

18 A    I printed the Notice to Appear, which is the I-862; the

19 I-200, which is the Warrant of Arrest; the 286, which is the

20 Custody Determination; and the Immigration Detainer for the

21 facility, and I gave that, along with all the files, and the

22 supporting documentation to my supervisor for his signature.

23 Q    Who was your supervisor at that time?

24 A    Michael Ortiz.

25 Q    I will show you the documents you just referenced.

1              If you can turn to Government Exhibit X.

2              THE COURT:  You are offering WW?

3              MR. CHO:  Yes.

4              THE COURT:  Admitted.

5              (Whereupon, Government's Exhibit WW is

6    received and marked into evidence, as of this date.)

7    BY MR. CHO:

8    Q    Officer Estrada, I'm showing you what is marked as

9    Government Exhibit X.

10             Do you recognize this document?

11   A    Yes.

12   Q    Is this the Notice to Appear that you just referenced?

13   A    Yes, it is.

14   Q    Who filled out this form, I-862?

15   A    I did.

16   Q    What is the purpose of the Notice to Appear?

17   A    The Notice to Appear is the document that the

18   Immigration judge will use, you know, to get information

19   about the case, like the charges, the criminal conviction,

20   and the status of Mr. Davino Watson.

21             MR. CHO:  All right.

22             We move for the admission of Government

23   Exhibit X.

24             THE COURT:  Admitted.

25             (Whereupon, Government Exhibit X is received

1   and marked into evidence, as of this date.)

2           MR. BURNS:  Your Honor, if I may.  I'm not sure if

3   we are talking about the same document.

4           THE COURT:  You're not sure of what?

5           MR. BURNS:  I think we have different documents

6   that are designated as --

7           MR. CHO:  Government Exhibit X is the form I-862.

8               THE COURT:  It is a two-page document, Notice

9   to Appear.

10          MR. BURNS:  That's not what they gave us as

11  Government Exhibit X.

12              THE COURT:  Well, get it straighten out.  You

13  can use the Court's, if you want, for cross.

14          MR. FLESSNER:  Okay.  We'll figure it out.  They

15  displayed it wrong here.

16          THE COURT:  All right.  Proceed.

17  BY MR. CHO:

18  Q    Now, if you turn to Plaintiff's Exhibit 71.

19              Officer Estrada, do you recognize Plaintiff's

20  Exhibit 71?

21  A    Yes, I do.

22  Q    What is that?

23  A    This is the Warrant for Arrest of the alien, the I-200.

24  Q    Was it signed by your supervisor?

25  A    Yes.

J Estrada - Direct/Cho                    190

1   Q    What is the purpose of this form?

2   A    This is to inform in this case Mr. Davino Watson that he

3   can be taken into ICE custody.

4              MR. CHO:  We move for Plaintiff's Exhibit 71.

5                   THE COURT:  Admitted.

6                   (Whereupon, Plaintiff's Exhibit 71 is received

7   and marked into evidence, as of this date.)

8                   MR. FLESSNER:  Your Honor, subject to --

9   there's another redaction on this document that we'll ask you

10  to remove.

11                  THE COURT:  Remove it for redaction.

12             MR. CHO:  Okay.

13                  (Pause)

14  BY MR. CHO:

15  Q    Turning to Plaintiff's Exhibit 33.

16                  Do you recognize Plaintiff's Exhibit 33?

17  A    Yes, I do.

18  Q    Okay.

19                  What is Plaintiff's Exhibit 33?

20  A    This is the Form I-286, Notice of Custody Determination.

21  Q    Okay.

22                  Is this a document that you prepared?

23  A    Yes.

24             MR. CHO:  We move for the admission of

25  Plaintiff's Exhibit 33.

1          MR. FLESSNER:  No objection.

2          THE COURT:  Admitted.

3          (Whereupon, Plaintiff's Exhibit 33 is received and

4   marked into evidence, as of this date.)

5   BY MR. CHO:

6   Q    Now, turn to Plaintiff's Exhibit 54.

7          Officer Estrada, I'm showing you Plaintiff's

8   Exhibit 54 already in evidence.  If you turn to the first

9   page of this document, do you recognize the first page?

10  A    Yes.

11  Q    What is this?

12  A    This is the I-247, the Immigration Detainer.

13  Q    You testified that you printed off the charging

14  documents; is that right?

15  A    Yes.

16  Q    Now, after you printed those off, what did you do?

17  A    I gave them, along with all three files, Mr. Davino

18  Watson's file, Hopeton and Clare Watson's files, and all of

19  the supporting documentation to my supervisor, Michael Ortiz.

20  Q    What did Michael Ortiz do with the files?

21  A    After he reviewed them, he signed the I-862, the Notice

22  to Appear, the Warrant of Arrest, and the Custody

23  Determination Form, and he forwarded the documents and the

24  files to the Buffalo office?

25  Q    Okay.

J.  Estrada - Cross/Burns                    192

1          What determination did Mr. Ortiz make with respect
2    to Mr. Watson's case?
3               MR. BURNS:  Objection, your Honor, hearsay,
4               THE COURT:  Overruled.
5    A    He approved the Notice to Appear and forwarded it to the
6    Buffalo office.
7    Q    Okay.
8          What date was your last involvement in this case?
9    A    April 10, 2008.
10              THE COURT:  Will you unredact all of these
11   documents when you get a chance.
12              What was that date again, sir?
13              THE WITNESS:  April 10, 2008.
14              THE COURT:  Thank you.
15              MR. CHO:  No further questions, your Honor.
16              THE COURT:  Thank you.
17              Cross-examination.
18   CROSS-EXAMINATION
19   BY MR. BURNS:
20   Q    Good morning, Officer Estrada.
21   A    Good morning.
22   Q    Sir, are you familiar with a database called the Central
23   Index System?
24   A    Yes, I am.
25   Q    That's often shorten to CIS, correct?

1   A     Yes.

2   Q     CIS contains immigration status data for all individuals

3   with immigration records; is that correct?

4   A     Yes.

5   Q     And searching CIS is one of the things that ICE does as

6   a matter of course in investigating someone's citizenship,

7   correct?

8   A     Yes.

9   Q     And, specifically, whoever at ICE is conducting the

10  investigation runs a CIS search on the subject, correct?

11  A     Correct.

12  Q     And also on any relating persons, correct?

13  A     Yes.

14  Q     And relating persons could include in certain cases the

15  subject's parents, correct?

16  A     Yes.

17  Q     And that would be because of the possibility that a

18  subject derives citizenship through his parents, correct?

19  A     Yes.

20  Q     And, sir, there are multiple ways you can search CIS; is

21  that fair?

22  A     Yes.

23  Q     You can search under an individual's name?

24  A     Yes.

25  Q     You can also search first, middle, or last name in any

1   combination?

2   A    Yes.

3   Q    You can search by date of birth?

4   A    In conjunction with the name, yes.

5   Q    Date of birth only in conjunction with a name?

6   A    Yes.  You can't just put the date of birth by itself.

7   Q    You can search social security number; is that correct?

8   A    Yes.

9   Q    And if you have it, you can search an individual's alien

10  file number, correct?

11  A    Correct.

12  Q    So, if you have an individual's alien file number and

13  you plug it into CIS, the individual's CIS entry should just

14  pop right up, correct?

15  A    Yes.

16  Q    And that would tell you right away whether that person

17  is a citizen or not, correct?

18  A    If the system had been updated to show the citizenship

19  status, yes.

20  Q    It would tell you the current immigration status of that

21  individual as reflected in CIS, correct?

22  A    Correct.

23  Q    And if you don't have a person's alien file number, you

24  can search any of the CIS fields in conjunction, correct?

25  A    Yes.

J.  Estrada - Cross/Burns                    195

1   Q    So if you have an individual with a common name, you can

2   add some additional search fields to try to make sure you get

3   the correct one; is that correct?

4   A    Yes.

5   Q    And, sir, it is the responsibility of the person who

6   conducts the initial interview to run these CIS searches; is

7   that correct?

8   A    Yes.

9   Q    In this case it was Officer Andren?

10  A    Yes.

11  Q    And where a CIS search results in multiple hits, an

12  interviewer would be responsible for clearing that up; is

13  that correct?

14  A    Yes.

15  Q    And it's would be the interviewer's responsibility to

16  determine which of the multiple hits is the correct

17  individual, correct?

18  A    Yes.

19  Q    Sir, you testified that your involvement with Davino

20  Watson's case began when you were first asked to write up

21  this file, correct?

22  A    Yes.

23  Q    And by that point in time Officer Andren had already

24  interviewed Davino Watson, correct?

25  A    Correct.

J.  Estrada - Cross/Burns                    196

1    Q    And by the time you got the file, Officer Andren had

2    already run CIS database searches; is that correct?

3    A    Yes.

4    Q    And he had already obtained Mr. Watson's Presentence

5    Investigation Report, correct?

6    A    Yes.

7    Q    And by the time you got the file, Officer Andren had

8    already requested and obtained certain alien files, correct?

9    A    Yes.

10   Q    And, sir, alien files are the paper record of an

11   individual's immigration history, correct?

12   A    Yes.

13   Q    So documents that are relevant to a person's immigration

14   status in the U.S. are put in his A file; is that correct?

15   A    Yes.

16   Q    And Mr. Andren obtained the complete A file of Davino

17   Watson, correct?

18   A    Yes.

19   Q    And the A file of an individual named Hopeton Watson,

20   correct?

21   A    Yes.

22   Q    And Officer Andren pulled these materials together and

23   put them into what I believe you testified at your deposition

24   was a Phase 1 packet, correct?

25   A    Yes.

J.  Estrada - Cross/Burns                    197

1  Q    And the Phase I packet included all of the A files that

2  had been collected, correct?

3  A    Yes.

4  Q    And the Presentence Investigation Report?

5  A    Yes.

6  Q    And he delivered the Phase I packet to his supervisor?

7  A    Yes.

8  Q    Who then reviewed it and informed you that he had deemed

9  it ready to write, correct?

10 A    Yes.

11 Q    And told you to write it up?

12 A    Yes.

13 Q    And you did so?

14 A    Yes.

15 Q    You took the Phase 1 packet and you turned it to the

16 formal charging documents that you looked at on direct

17 examination?

18 A    Yes.

19 Q    And in doing this, you relied on the documents that were

20 included within the Phase 1 packet that Mr. Andren had

21 compiled, correct?

22 A    Yes.

23 Q    And this included Mr. Watson's A file?

24 A    Yes.

25 Q    You testified that you reviewed Mr. Watson's A file in

1  writing up the terms about him, correct?

2  A    Yes.

3  Q    You testified that you reviewed it page by page?

4  A    Yes.

5  Q    And you were also provided with an A file for an

6  individual named Hopeton Livingston Watson, correct?

7  A    Yes.

8  Q    You reviewed that document also in the course of writing

9  up the order charging documents, right?

10  A    Yes.

11  Q    And, sir, as part of the Phase I packet, you were also

12  provided with Mr. Watson's Presentence Investigation Report,

13  correct?

14  A    Yes.

15  Q    And if I could ask you to flip to Plaintiff's

16  Exhibit 101, which is already in evidence.

17              Sir, this is the Presentence Investigation

18  Report that were you provided with, correct?

19  A    Yes.

20  Q    And you reviewed this, in writing the charging

21  documents, correct?

22  A    Yes.

23  Q    And you see, sir, that this document identifies

24  Mr. Watson as a United States citizen, correct?

25  A    Yes.

J.  Estrada - Cross/Burns                    199

1   Q    And it states, doesn't it, that Mr. Watson, before he

2   was incarcerated, resided with his mother and father,

3   correct?

4              If I could draw your attention to the third

5   column, the final column on the right of Plaintiff's

6   Exhibit 101.

7   A    Yes, I see it.

8   Q    Okay.

9              So it does state that Mr. Watson was

10  identified as having lived with his mother and father,

11  correct?

12  A    Yes.

13  Q    And also on the document it gives an address in

14  Brooklyn?

15  A    Yes.

16  Q    And a phone number, correct?

17  A    Correct.

18  Q    (718) 377-7027, correct?

19  A    Correct.

20  Q    Sir, at no point in your process of drafting the

21  charging documents against Mr. Watson did you ever interview

22  Mr. Watson, did you?

23  A    No.

24  Q    You never contacted Mr. Watson's parents, did you?

25  A    No.

J.  Estrada - Cross/Burns                    200

1   Q    You didn't search for any documents that weren't already
2   in the Phase I packet, did you?
3   A    No.
4   Q    Sir, at the time that you were preparing the charging
5   documents, you had access to the CIS system, correct?
6   A    Yes.
7   Q    You could have run a search, if you had wanted to?
8   A    Yes.
9   Q    But you didn't do so, correct?
10  A    No.
11  Q    No, that's not correct, or, no, that is correct?
12  A    No, that's correct, I didn't do it.
13  Q    And, sir, you, yourself, didn't do anything to confirm
14  the accuracy of the information that was in the Phase I
15  packet, did you?
16  A    Well, I had all the evidence that I needed.  I had
17  Davino Watson's file, and Hopeton Watson and Clare Watson
18  file, which he indicated these were his parents.  So there
19  was no further need to do anymore check.
20  Q    You relied on the documents in the Phase 1 packet,
21  period, correct?
22  A    Yes.
23  Q    You didn't do anything further, correct?
24  A    Yes.
25  Q    You didn't ask Mr. Andren any questions about what he

1   had done either, did you?

2   A    No.

3   Q    You didn't ask him what searches he had run?

4   A    They were there, so, no.

5   Q    You didn't ask him how he identified which Hopeton

6   Watson, whether the Hopeton Watson was the correct Hopeton

7   Watson, you didn't ask him that question, did you?

8   A    No.

9   Q    There was nothing preventing you from asking him those

10  questions, correct?

11  A    No.

12  Q    You worked at the same office, correct?

13  A    Yes.

14  Q    Sir, you knew when you were preparing the charging

15  documents that Mr. Andren had the phone number for Davino

16  Watson's parents, correct?

17  A    Yes.

18  Q    And if I could draw your attention to Plaintiff's

19  Exhibit 73.

20             Are you there, sir?

21  A    Yes.

22  Q    You saw Plaintiff's Exhibit 71 as part of the Phase I

23  packet that you reviewed, correct?

24  A    71 or 73?

25  Q    I'm sorry if I misspoke.  73?

J.  Estrada - Cross/Burns                    202

1   A    Yes.

2   Q    So, let's try that again.

3             Sir, you saw Plaintiff's Exhibit 73 as part of

4   the Phase I packet that you reviewed, correct?

5   A    Yes.

6   Q    And, sir, Plaintiff's Exhibit 73 gives a phone number

7   for Davino Watson's parents, correct?

8   A    Correct.

9   Q    (718) 377-7027, correct?

10  A    Correct.

11  Q    Which is the same phone number we have already seen,

12  correct?

13  A    Yes.

14  Q    Which is also the number on the Presentence

15  Investigation Report, correct?

16  A    Yes.

17  Q    Which was also in the Phase 1 packet?

18  A    Yes.

19  Q    But when you were preparing the charging documents, you

20  had no idea one way or the other whether Mr. Andren contacted

21  Mr. Watson's parents to verify their information, did you?

22  A    No.

23  Q    There's nothing in the Phase I packet that you reviewed

24  to suggest that Mr. Andren had in fact contacted Mr. Watson's

25  parents, was there?

J.  Estrada - Cross/Burns                    203

1    A    Not that I can recall.

2    Q    You never asked Mr. Andren whether he had done so, did

3    you?

4    A    No.

5    Q    You, yourself, didn't make any attempt to call this

6    number, did you?

7    A    No.

8    Q    Sir, if I could ask you to flip to Plaintiff's

9    Exhibit 68.

10            THE COURT:  Now, this number (718) 377-7027,

11   was the one that turned out to be the number -- the correct

12   number for the mother and father?

13            MR. BURNS:  That's correct, your Honor.

14            THE COURT:  That's conceded?

15            MR. MARUTOLLO:  Yes, your Honor.  That appears to

16   be the number for the parents.

17            THE COURT:  Okay.  73 and 68 are in evidence.

18            (Whereupon, Plaintiff's Exhibits 73 and 68 are

19   received and marked into evidence, as of this date.)

20   BY MR. BURNS:

21   Q    Sir, are you at trial exhibit -- Plaintiff's Exhibit 68?

22   A    Yes.

23   Q    You prepared this document, correct?

24   A    The original one I did, yes.

25   Q    The original one meaning you input the data into the

J.  Estrada - Cross/Burns                    204

1    fields that then created this document; is that fair?

2    A    Yes.

3    Q    I believe Plaintiff's Exhibit 68 is already in evidence,

4    your Honor, then I move it in.

5                    THE COURT:  All right.

6    BY MR. BURNS:

7    Q    Specifically, sir, under the fields on the first page of

8    Plaintiff's Exhibit 68 that reads fathers's name, you

9    prepared the text in this box, correct?

10   A    Yes.

11   Q    And you identified Davino Watson's father as Hopeton

12   Livingston Watson, correct?

13   A    Yes.

14   Q    Because that was the name on the A file that Mr. Andren

15   had pulled for you, correct?

16   A    Yes.

17   Q    And on Plaintiff's Exhibit 68, you have an A file

18   number, alien file number, for Hopeton Livingston Watson,

19   correct?

20   A    Yes.

21   Q    And, again, that's because that was the number on the A

22   file that Mr. Andren had pulled for you, correct?

23   A    Yes.

24   Q    Flipping to the second page of Plaintiff's Exhibit 68,

25   under the heading Alienage Deportability.

1              Sir, you drafted the text in that section,
2   correct?
3   A    Yes.
4   Q    And, specifically, you drafted the sentence that reads
5   that Mr. Watson's parents "are nationals and citizens of
6   Jamaica who are not naturalized", you drafted that, correct?
7   A    Yes.
8   Q    And you based that conclusion solely on the A files that
9   were part of the packets that you reviewed for Mr. Andren,
10  correct?
11  A    Yes.
12  Q    That was because the Hopeton Livingston Watson, whose A
13  file you reviewed, wasn't a U.S. citizen, correct?
14  A    Yes.
15  Q    And the next sentence in the section reading Alienage
16  and Deportability -- the next sentence reading Alienage and
17  Deportability reads "no issue of derivation applies."
18              You wrote that sentence, correct?
19  A    Yes.
20  Q    And that sentence -- in that sentence you are referring
21  to derivative U.S. citizenship, correct?
22  A    Yes.
23  Q    And you base that sentence solely on your understanding
24  that Mr. Watson's parents weren't U.S. citizens, correct?
25  A    Correct.

1   Q    Because the individuals in the A files you had reviewed

2   weren't U.S. citizens, correct?

3   Q    Officer Estrada, you have since learned that in writing

4   up Mr. Watson's charging documents, you were looking at the

5   file for the wrong Hopeton Watson, correct?

6   A    Yes.

7   Q    And you since learned that Mr. Watson's father's name

8   was Hopeton Ulando Watson, not Hopeton Livingston Watson?

9   A    Yes.

10  Q    And that Mr. Watson's father had a different A file

11  number from the Hopeton Watson you were reviewing, correct?

12  A    Yes.

13  Q    You since learned that the Hopeton Watson, who is Davino

14  Watson's actual father, is a United States citizen, correct?

15  A    Yes.

16  Q    And that Mr. Watson's father was naturalized on

17  September 17, 2002, correct?

18  A    Yes.

19  Q    Which was several years before you were preparing the

20  charging documents for Mr. Watson, correct?

21  A    Yes.

22  Q    But you never saw the Naturalization Certificate of

23  Hopeton Ulando Watson, when you were drafting the charging

24  documents, did you?

25  A    No.

J.  Estrada - Cross/Burns                    207

1    Q    And you never knew, when you were drafting the charging

2    documents, that Mr. Watson's father had naturalized back in

3    2002, did you?

4    A    No.

5    Q    And if you had known these facts back in 2008, that

6    would have made a difference, wouldn't it have?

7    A    In what I wrote, yes, it would have made a difference.

8    Q    And it would have proven that Mr. Watson was a citizen,

9    correct?

10   A    Not that certificate by itself, no.

11   Q    Well, at the very least, sir, if you had known that

12   Davino Watson's father was a citizen back in 2008, you would

13   have had to inquire further, correct?

14   A    Well, I would have drafted the same forms that I

15   drafted, and consulted -- forwarded them to the attorneys for

16   legal sufficiency.

17   Q    Well, you certainly wouldn't have drafted, sir, on

18   Plaintiff's Exhibit 68 the sentence that reads Davino

19   Watson's "parents are nationals and citizens of Jamaica who

20   were not naturalized," you wouldn't have drafted that

21   sentence, correct?

22   A    No.

23   Q    And you wouldn't have drafted the following sentence

24   that reads "no issue of derivation applies," would you have?

25   A    No.

J.  Estrada - Cross/Burns                 208

1   Q    You would have had known more before you made a call one

2   way or the other, correct?

3   A    Yes.

4   Q    Sir, if I could ask to you flip to Plaintiff's

5   Exhibit 103.

6              Exhibit 103 is already in evidence, I believe.

7              THE COURT:  Yes.

8   BY MR. BURNS:

9   Q    And, sir, this document was produced to us as part of

10  what's now has been stipulated to be Plaintiff's alien file.

11             Have you seen this document before?

12  A    I saw it in the lawsuit paperwork, the package.

13  Q    Did you see this document in 2008?

14  A    No.

15             THE COURT:  I haven't located it in my file.

16             MR. BURNS:  I will pause, your Honor.

17             THE COURT:  If you have an extra copy of 103? Thank

18  you.

19             MR. BURNS:  Do you have it, your Honor?

20             THE COURT:  I do.

21  BY MR. BURNS:

22  Q    I'm sorry, sir, if I have already asked this question,

23  but I'm sorry that I didn't catch your answer.

24             Did you review this document back in 2008, when you

25  were drafting the charging document for Davino Watson?

J.  Estrada - Cross/Burns                209

1   A     I can't recall if I did or not.

2   Q     It was in the A file, correct?

3          MR. CHO:  Objection, your Honor.  He's already

4   answered the question.  He's never seen this document before.

5          THE COURT:  Who hasn't?

6          MR. CHO:  Officer Estrada.

7          THE COURT:  Yes.  So, what is the significance of

8   the objection?  I don't understand.

9          MR. CHO:  He testified that he saw the complaint.

10         THE COURT:  Yes.

11         MR. CHO:  Right, so.

12         MR. BURNS:  The testimony, your Honor, is he

13  reviewed the A file page by page.  This was in it.

14         MR. CHO:  Your Honor, if you look closely at the

15  document, this is for Hopeton Ulando Watson.  He said he

16  looked at Hopeton Livingston's file.

17         MR. BURNS:  No, your Honor.  This document was

18  stipulated to be part of the alien file for plaintiff Davino

19  Watson, that this witness testified that he reviewed page by

20  page.

21         MR. MARUTOLLO:  Your Honor, that's not accurate.

22  We stipulated that we produced the A file, which includes the

23  number of documents that are in the course of the plaintiff's

24  immigration detention.  So the A file would include things

25  that happened two years after Officer Estrada was involved in

1  the case.

2        Officer Estrada's testimony is he reviewed the A

3  file that was produced to him.  We never stipulated that the

4  A file was produced and included documents that post-dated

5  his review of it .

6        MR. BURNS:  Your Honor, it was a 1998 document.

7        MR. MARUTOLLO:  But there's no indication, and we

8  certainly didn't stipulate, that this document, which was

9  acquired in the course of the legal proceedings to figure out

10  whether or not Hopeton was in fact, you know, the biological

11  father, whether he had derivative citizenship, there's no

12  indication, and the government certainly does not stipulate

13  that this document was in the A file that was produced to

14  Officer Estrada.  This document was part of a number of other

15  documents in this thousand page A file that was accumulated

16  over the course that the plaintiff was in custody.

17        MR. BURNS:  Your Honor, if I may.

18        This document was produced to us.  The cover letter

19  that we were looking at earlier this morning, Plaintiff's

20  Exhibit 104, states:  A copy of plaintiff's A file bears

21  Bates stamp numbers US 298 to 2534.  This document is

22  squarely within that range.  It's in Plaintiff's A file.  The

23  witness can say --

24        THE COURT:  Excuse me.  The government is not

25  willing, as I understand it, stipulate that this document was

J.  Estrada - Cross/Burns                 211

1    in the A file that this witness saw.

2           MR. MARUTOLLO:  That's correct, your Honor.  That A

3    file also contains decisions from 2012 and 2013.

4           THE COURT:  Okay.

5           So, I don't understand your point.

6           MR. BURNS:  My point, your Honor, this document was

7    dated 1998.  It was an affidavit that was --

8           THE COURT:  It should have been, is your

9    contention, but if there's no indication that this witness,

10   when he called for -- did you call for an A file at any time?

11   Did you look at an A file?

12          THE WITNESS:  Yes, sir.

13          THE COURT:  Before you completed your report and

14   write-up, correct?

15          THE WITNESS:  Yes, sir.

16          THE COURT:  Was this document, so far as you can

17   tell, in any of the papers, that is 103, that you reviewed?

18          THE WITNESS:  Yes.

19          THE COURT:  Okay.  At that time.

20          So he saw it.  He says, now under oath.

21          MR. MARUTOLLO:  I mean, your Honor, correct me if

22   I'm wrong, he said a few moments ago he had not seen it.

23          THE COURT:  He just said "yes."

24          Think about it.  Look it over.

25          THE WITNESS:  To be honest, I don't recall.

J.   Estrada - Cross/Burns                    212

1          THE COURT:  You don't recall, okay.

2          Proceed.

3   BY MR. BURNS:

4   Q    Sir, a certain individual has only one A file, correct?

5   A    In most instances, yes.  They can have more than one.

6   Q    Do you recall Davino Watson having multiple A files?

7   A    No.

8   Q    So you had one A file for Davino Watson, correct?

9   A    Yes.

10  Q    And you reviewed that A file, whatever was in Davino

11  Watson's A file, you reviewed it,  correct, page by page?

12  A    Yes.

13         THE COURT:  PA-103, when it refers to Hopeton

14  Watson, is the correct Hopeton Watson?

15         MR. BURNS:  That's correct.

16         THE COURT:  The actual father.

17         MR. BURNS:  That's correct, your Honor.

18  BY MR. BURNS:

19  Q     And, sir, you don't know whether you saw this document

20  back in 2008, you can't recall, but this document appears to

21  be signed by Hopeton Ulando Watson on March 17, 1998?

22  A     Yes.

23  Q     And is it a fair reading of this document that this

24  document was sworn by Hopeton Watson in connection with

25  Davino Watson's immigration to the United States back in

1    1998?

2    A    Yes.

3    Q    So Hopeton Ulando Watson was saying he would provide

4    support for Davino Watson in connection with Davino's

5    application to immigrate to the United States, correct?

6    A    Yes.

7              (Continued on the next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ESTRADA - CROSS / BURNS                    214

1          THE COURT:  This document has the phone number

2    718-377-7027.  Is that the phone number on the documents that

3    were available to the witness?

4          MR. BURNS:  The Pre-sentence Investigation Report

5    and --

6          THE COURT:  The telephone number never changed.

7          MR. BURNS:  That's correct, Your Honor.  Same

8    number.

9          THE COURT:  Okay.  Yes.  Okay.  That's the number on

10   his Pre-sentence Report?

11         MR. BURNS:  That's correct, and on Officer Andren's

12   initial interview notes.

13         THE COURT:  Okay.

14   BY MR. BURNS:

15   Q    Officer Estrada, this document, Plaintiff's Exhibit 103,

16   identifies Hopeton Watson's middle name as Ulando, correct?

17   A    Yes.

18   Q    And it provides Hopeton Ulando Watson's date of birth,

19   correct?

20   A    (Perusing document.)  Yes.

21   Q    And Hopeton Ulando Watson's Social Security Number,

22   correct?

23   A    (Perusing document.)

24   Q    Well, it's a little tricky, sir, because for -- we've had

25   to redact the Social Security Number for purposes of the

ESTRADA - CROSS / BURNS                    215

1   filing with the court, but if I could draw your attention

2   halfway down.  It says "Social Security Number" and there's a

3   field that's blacked out.  Do you see that?

4   A    Yes.

5   Q    And that would have contained the Social Security Number

6   information, whatever was under the redaction, correct?

7   A    Correct.

8           THE COURT:  And it's stipulated, I take it, that

9   that's the correct Social Security Number for the person

10  stated?

11          MR. MARUTOLLO:  Your Honor, I'm not sure we can

12  stipulate that is Hopeton Ulando Watson's Social Security

13  Number.  I don't believe we have that information.

14          THE COURT:  Well, isn't that your contention?

15          MR. BURNS:  It is, Your Honor.  We can verify that.

16          THE COURT:  Well, verify it and stipulate.  I don't

17  think there's much doubt about it.

18          MR. FLESSNER:  We have to know what the number is

19  before we verify it.

20          MR. BURNS:  Well, we were the ones who redacted this

21  document, Your Honor, because of the filing with the court,

22  the Social Security Number.

23          THE COURT:  Then find out and stipulate.  There

24  should be no doubt about it.

25  BY MR. BURNS:

LISA SCHMID, CCR, RMR

ESTRADA - CROSS / BURNS                    216

1   Q    And, sir, Officer Andren (sic), Plaintiff's Exhibit 103

2   also includes a phone number, correct?

3   A    Yes.

4   Q    For Hopeton Ulando Watson?

5   A    Yes.

6   Q    And as the Judge just observed, this is the same phone

7   number that appears on the Pre-sentence Investigation Report,

8   correct?

9   A    Yes.

10  Q    And on Officer Andren's initial notes of his interview

11  with Davino Watson, correct?

12  A    Yes.

13  Q    Sir, if I can ask you to flip to the second page of this

14  document, Plaintiff's Exhibit 103.

15  A    (Complies.)

16  Q    Sir, this document -- this page of the document actually

17  includes Hopeton Ulando Watson's A Number, correct?

18  A    Yes.

19  Q    And that A number is A41458063, correct?

20  A    Yes.

21  Q    So sir, this document, Plaintiff's Exhibit 103, clearly

22  refers to a different Hopeton Watson than the Hopeton Watson

23  you had in your file in front of you, correct?

24  A    Yes.

25  Q    Middle names are different?

1   A    Yes.

2   Q    A-File numbers are different?

3   A    Yes.

4   Q    But you didn't make any effort to resolve this

5   discrepancy between these two Hopeton Watsons, did you?

6   A    Yeah.  I don't recall seeing this document, so --

7   Q    So the answer is no, sir?

8   A    No.

9   Q    You made no effort to resolve the discrepancy?

10  A    No.

11       MR. CHO:  Objection, Your Honor; asked and answered.

12  BY MR. BURNS:

13  Q    And you never called the phone number that's been

14  identified three places in Davino Watson's A-File, correct?

15  A    No.

16  Q    The number that appears for Davino Watson's parents three

17  times in Davino's A File.

18       MR. CHO:  Objection, Your Honor; asked and answered.

19       MR. BURNS:  I'll withdraw the question, Your Honor.

20  BY MR. BURNS:

21  Q    And you never, sir, ran a CIS search for the A File

22  Number that appears on second page of Plaintiff's Exhibit 103,

23  did you?

24  A    No.

25  Q    And you testified earlier that if you had put this A File

 1    Number into CIS, Hopeton Ulando Watson's CIS file would have

 2    popped up, correct?

 3              MR. CHO:  Objection, Your Honor.  That's not his

 4    prior testimony.

 5              MR. BURNS:  Well, I'll ask it a different way.

 6    BY MR. BURNS:

 7    Q    If you had typed this A File Number that appears on the

 8    second page of Plaintiff's Exhibit 103 in CIS, Hopeton Ulando

 9    Watson's immigration status would have popped right up,

10    correct?

11              MR. CHO:  Objection, Your Honor; calls for

12    speculation.

13              THE COURT:  I'll allow it.

14              THE WITNESS:  Yes.

15              THE COURT:  Where are the documents for the other

16    Hopeton Watson?  Do we have them?

17              MR. BURNS:  The Hopeton Livingston Watson, Your

18    Honor?

19              THE COURT:  Yes.

20              MR. BURNS:  We've never seen them.

21              THE COURT:  Did you look at those?

22              THE WITNESS:  Back in 2008, yes.

23              THE COURT:  You did look at them?

24              THE WITNESS:  Yes.

25              THE COURT:  Before you --

ESTRADA - CROSS / BURNS                        219

1          Well, I think we ought to look at them and see what
2     they say, because they may be useful.  Do we have them?
3          MR. MARUTOLLO:  Your Honor, there was no request
4     during discovery for Hopeton Livingston Watson's file.
5          THE COURT:  Well, he looked at it.
6          MR. MARUTOLLO:  That's true.
7          THE COURT:  So let's get them.  You can get them
8     quickly through your CIS machinery for picking up these A
9     Files.
10         MR. CHO:  Your Honor, but I think the facts relating
11    to Hopeton Livingston Watson are not in dispute.  It's
12    uncontested that Hopeton Livingston Watson's computer file is
13    for an individual who was a Legal Permanent Resident LPR, and
14    that's reflected in these documents.
15         THE COURT:  Yes, but there may have been people with
16    ages or background that were so apparently different or
17    congruent with what the plaintiff was claiming as to either,
18    if looked at, disabuse the investigator or confirmed the
19    investigator.  So I would like to see them.
20         You didn't -- did you look at them?  You looked at
21    them?
22         THE WITNESS:  Yes, sir.
23         THE COURT:  All right.  And he looked at them, so
24    I'd like to see them.  Go get them, please.
25    BY MR. BURNS:

LISA SCHMID, CCR, RMR

1  Q    Officer Estrada, if you had entered the A File Number

2  that appears on the second page of Plaintiff's Exhibit 103

3  into the CIS database in 2008, you would have confirmed that

4  the Hopeton Ulando Watson was a United States citizen,

5  correct?

6            MR. CHO:  Objection; calls for speculation.  How

7  would he know if he typed in the A Number what information he

8  would obtain.

9            THE COURT:  That wasn't the question.  If he typed

10  in the proper A Number, would he have gotten this information.

11            MR. BURNS:  Correct.

12            THE COURT:  The machine doesn't think.  It just

13  turns it out, right?

14            MR. CHO:  That's correct, Your Honor.  But again,

15  this is in 2008.  He didn't know if he typed in that number,

16  what the information was back in 2008 was going to come up at

17  that time.

18            THE COURT:  You may ask.

19  BY MR. BURNS:

20  Q    Officer Estrada, if you had typed in the A Number that

21  appears on the second page of Plaintiff's Exhibit 103 into the

22  CIS database in 2008, you would have learned, would you not

23  have, that Hopeton Ulando Watson was a United States citizen

24  on that date?

25  A    Only if the -- only if CIS had been updated with his

1    citizenship information.

2    Q    Well, Mr. Hopeton Ulando Watson became a citizen in 2002,

3    correct?

4    A    Yeah, but that system is not always updated with the

5    citizenship information.

6            THE COURT:  Eight years -- six years later, it

7    wouldn't be updated?

8            THE WITNESS:  They started doing it after certain

9    time.  I don't remember what year it was.

10           THE COURT:  I see.

11   BY MR. BURNS:

12   Q    Sir, if I could ask you to flip forward to Plaintiff's

13   Exhibit 92.

14   A    (Complies.)

15   Q    Do you that document in front of you?

16   A    Yes.

17   Q    This is a screen shot from CIS for Hopeton Ulando Watson,

18   correct?

19   A    Yes.

20   Q    And if I could I draw your attention to the upper right

21   hand corner of the document, it reads, "Nats date, 9-17-2002."

22   Do you see that?

23   A    Yes.

24   Q    So in fact, the CIS database in fact did have the correct

25   naturalization date for Hopeton Ulando Watson, correct?

ESTRADA - CROSS / BURNS                    222

1    A    Yes.

2    Q    So if you had in 2008 typed in the A File Number for

3    Hopeton Ulando Watson, you would have learned that Hopeton

4    Ulando was naturalized on 9-17-2002, correct?

5    A    Yes.

6    Q    Sir, if I could ask you to briefly flip back to a

7    document we were looking at earlier, which was Plaintiff's

8    Exhibit 68.  And specifically, the second page of that

9    document under the heading "Alienage and Deportability."

10   A    (Perusing document.)

11            MR. BURNS:  I'm sorry.  Strike this line of

12   questioning.  I'm sorry for the confusion.  No need to look at

13   document, sir.

14   BY MR. BURNS:

15   Q    Officer Estrada, after you wrote the charging documents,

16   you testified that you provided them to an ICE attorney,

17   correct --

18   A    Yes.

19   Q    -- for sign-off, correct?

20   A    Yes.

21   Q    And which ICE attorney did you provide Hopeton -- did you

22   provide Davino Watson's file to?

23   A    Her name?

24   Q    Yes, please.

25   A    Laura Michalec.

1   Q    And could you spell the last name, please?

2   A    M-I-C-H-A-L-E-C.

3   Q    And aside from Ms. Michalec, did any other ICE attorneys

4   review Mr. Watson's file?

5   A    Not that I can recall.

6   Q    And you provided Ms. Michalec with the documents you

7   drafted, correct?

8   A    Yes.

9   Q    And you also provided her with the underlying phase one

10  packet you received from Officer Andren, correct?

11  A    From his supervisor, yeah.

12  Q    So the entire phase one packet that you reviewed, you

13  passed along to Ms. Michalec, correct?

14  A    Yes.

15  Q    And that included Davino Watson's A File, correct?

16  A    Yes.

17  Q    And the A Files that you had for the individual named

18  Hopeton Livingston Watson, correct?

19  A    Yes.

20  Q    And did Ms. Michalec ever ask you any questions about

21  Davino Watson's file?

22  A    Not that I can recall.

23  Q    Did Ms. Michalec ever raise any concerns regarding the

24  correct Hopeton Watson had been identified as Davino Watson's

25  father?

1   A    No.

2   Q    Did Ms. Michalec ever question whether the right

3   conclusions of derivative citizenship had been reached in your

4   documents?

5   A    No, not that I can recall.

6   Q    So after, sir, Ms. Michalec signed off, you testified

7   that you passed the file along to your supervisor, Mr. Ortiz,

8   correct?

9   A    Yes.

10  Q    And along with the documents you drafted, you also

11  provided Mr. Ortiz with the whole phase one packet that you

12  received and you reviewed, correct?

13  A    Yes.

14  Q    And that included Davino Watson's A File?

15  A    Yes.

16  Q    And Hopeton Livingston Watson's A File?

17  A    Yes.

18  Q    And Mr. Ortiz never asked any questions about the Davino

19  Watson file, did he?

20  A    Not that I can recall.

21  Q    And he never raised any concerns regarding whether you

22  had identified the correct Hopeton Watson, did he?

23  A    Not that I can recall.

24  Q    And he never questioned whether you had reached the right

25  conclusions of derivative citizenship in your documents, did

1    he?

2    A    Not that I can recall.

3    Q    Sir, to your knowledge, Mr. Ortiz didn't do any

4    independent investigation of the files pertaining to

5    Mr. Watson that you provided him with, did he?

6    A    Not that I know.

7    Q    And he signed off on the charging documents as you had

8    drafted them, correct?

9    A    Yes.

10   Q    And after that, you took the file up to Buffalo?

11   A    Yes.

12   Q    And deportation proceedings began, correct?

13   A    Yes.

14           MR. BURNS:  No further questions.

15           MR. CHO:  Your Honor, could we ask for -- well, we'd

16   like to ask for a short adjournment, if we could obtain

17   Hopeton Livingston Watson's A File.

18           THE COURT:  How long do you think that would take to

19   obtain?

20           MR. CHO:  We can place a call to agency counsel and

21   see if we can get it immediately.

22           THE COURT:  I think that might be useful.

23           MR. BURNS:  Certainly, Your Honor.  I'm not sure how

24   long of an adjournment we're talking about.

25           MR. CHO:  We'd like to do it before we conclude

ESTRADA - CROSS / BURNS                    226

1    Mr. Estrada's testimony, please.

2              THE COURT:  I think that's reasonable.  All right.

3    Take a half-hour.  Will that do it for you?

4              MR. CHO:  Perhaps an hour.

5              THE COURT:  Well, we'll have an early lunch hour.

6    Have your lunch now and get back at 12:15, having fed

7    yourself.

8              MR. BURNS:  Your Honor, we would just request that

9    if the government's attorneys are successful locating this A

10   File that we have some opportunity to review it --

11             THE COURT:  Give it to them as soon as you can, and

12   I'll allow cross --

13             MR. BURNS:  -- that we have time to review it, as

14   well.

15             THE COURT:  -- on this as a new issue.

16             MR. FLESSNER:  Your Honor, may I just suggest we

17   just move on with other witnesses and they can get the A File

18   to us tonight.  We can review it tonight and they can bring

19   Mr. Estrada back tomorrow and we can do it that way.

20             THE COURT:  If they can, that would be best.

21             MR. CHO:  Your Honor, that's fine.  We have another

22   witness that's available.

23             THE COURT:  Okay.  We do that.  All right.

24             So we'll have to bring you back to go over this

25   issue, sir --

ESTRADA - CROSS / BURNS                    227

1              THE WITNESS:  Okay.

2              THE COURT:  -- tomorrow.  Okay?

3              MR. BURNS:  Thank you, Officer.

4              THE COURT:  So we'll have redirect now or do you

5    want to put off --

6              MR. CHO:  Could you give us five minutes or maybe

7    just two minutes.  We'll figure out which witness we'll call

8    next.

9              THE COURT:  What do you want to do about redirect?

10   Do you want to put off all of your redirect?

11             MR. CHO:  Yes.

12             THE COURT:  Okay.  That's fine.  What time?

13             Be here ten o'clock tomorrow, would you please?

14             THE WITNESS:  Yes, sir.

15             THE COURT:  Thank you.

16             MR. BURNS:  Thank you, Your Honor.

17             THE WITNESS:  I can go?

18             THE COURT:  Yes, you can go.

19             All right.  You want a ten-minute break?  Is that

20   it?

21             MR. CHO:  Yes.

22             THE COURT:  All right.  Ten minute break.

23             (Recess.)

24             THE COURT:  I will have to break at ten to one.

25   Tomorrow, we can begin at nine if you'd like, if the reporter

ESTRADA - CROSS / BURNS                    228

1   is available, and we'll go again until ten to one and Friday,

2   if necessary, we will go from nine until five.

3           MR. MARUTOLLO:  Very well.

4           THE COURT:  I'm sorry to break it up, but that's the

5   nature of a bench trial.

6           MR. MARUTOLLO:  Your Honor, to expedite matters, as

7   well, we would seek admission of Defendant's Exhibits CC

8   through YY, which would essentially be all the defendants

9   exhibits because A through BB had already been admitted at the

10  hearing.  I don't believe there had been any objection.

11          THE COURT:  CC through what?

12          MR. MARUTOLLO:  CC through YY, Double Y.

13          THE COURT:  Okay.  No objection.  They're all

14  admitted.

15          So are all of your listed exhibits now admitted?

16          MR. MARUTOLLO:  Yes, Your Honor.

17          THE COURT:  From A to YY?

18          MR. MARUTOLLO:  A to Double Y.

19          THE COURT:  Okay.  Fine.

20          MR. MARUTOLLO:  Thank you, Your Honor.

21          THE COURT:  Would you stand please?

22          THE WITNESS:  Yes, Your Honor.

23          THE COURT:  You understand that you have to tell the

24  truth or you'll be subject to criminal penalties?

25          THE WITNESS:  Yes, I do.

SCHRADER - DIRECT / MARUTOLLO                 229

1          THE COURT:  Give your name, please.

2          THE WITNESS:  Scott Andrew Schrader.

3          THE COURT:  I'm sorry?

4          THE WITNESS:  Scott Andrew Schrader.

5          THE COURT:  Spell the last name.

6          THE WITNESS:  S-C-H-R-A-D-E-R.

7          THE COURT:  Okay.  Sit down.

8   DIRECT EXAMINATION

9   BY MR. MARUTOLLO:

10  Q    Good morning, officer Schrader, where are you currently

11  employed?

12  A    Currently employed with the Department of Homeland

13  Security, with Immigration and Customs Enforcement at the

14  Buffalo Federal Detention facility in Batavia, New York.

15  Q    What is your current title?

16  A    I am supervisory detention and deportation officer.

17  Q    And how long have you been employed by ICE or Legacy INS?

18  A    I have been employed since October of 1997.

19  Q    Have you received any legal training over the course of

20  your career?

21  A    Yes, I have received legal training through the academies

22  that I went to as a detention enforcement officer and a

23  deportation officer.  I received legal training in regards to

24  the INA and immigration procedures.

25  Q    Now, Officer Schrader, what was your job title between

1    the years 2009 to around May of 2011?

2    A    I was a deportation officer.

3    Q    And did you ever encounter an individual named Davino

4    Watson?

5    A    Yes, I did.

6    Q    What role did you play with respect to Mr. Watson's

7    detention?

8    A    I was Mr. Watson's deportation officer at certain times

9    during his case while he was at the Buffalo Federal Detention

10   Facility.

11   Q    And what time periods approximately were you assigned as

12   Mr. Watson's deportation officer?

13   A    I was assigned approximately from the end of February of

14   2009 to sometime during 2011 when -- the case, sometimes we go

15   back and forth from me to another -- to the docket, because I

16   was an ICE Area Coordinator at the facility.

17   Q    Was that after Mr. Watson was considered a final order?

18   A    Yes.  When his case came to me, he was already a final

19   order.

20   Q    So what is -- can you explain to the Court what is a

21   final order?

22   A    A final order is a case that has been gone before the

23   immigration judge and gone through hearings, and it has been

24   ordered removed by the immigration judge.

25   Q    Now, so we're clear, did you play any role with respect

1   to Mr. Watson's initial detention at ICE in May of 2008?

2   A    No, I did not.

3   Q    You've never worked with Officer Andren, Officer Estrada

4   or Agent Ortiz, is that right?

5   A    That's correct.

6   Q    So we're clear, your role in the present case is limited

7   to serving as Mr. Watson's deportation officer after the Board

8   of Immigration Appeals issued its final order on February 5th,

9   2009?

10  A    That is correct.

11  Q    Now, as Mr. Watson's deportation officer, what were your

12  duties and responsibilities?

13  A    My duties as Mr. Watson's deportation officer, he was a

14  final order of removal when his case came to me.  So my duty

15  was to obtain a travel document from the Consulate General of

16  Jamaica to facilitate his removal from the United States.

17  Q    And what is a travel document?

18  A    A travel document is basically almost like a passport,

19  that the country that the individual is being removed to will

20  issue, saying that they are permitting him to come back to

21  that country.

22  Q    And why were you seeking a travel document in this case?

23  A    Mr. Watson had been ordered removed to Jamaica, and I was

24  trying to get a travel document to facilitate his removal to

25  Jamaica from the United States.

SCHRADER - DIRECT / MARUTOLLO                    232

1   Q    So could Mr. Watson have left the Buffalo Detention

2   Facility and returned to Jamaica?

3   A    Yes.

4   Q    If he wanted?

5   A    Yes, there was a travel document that had been readily

6   approved by the Consulate General of Jamaica.  So when his

7   litigation was finished, they would have chosen to -- he could

8   have gone back to Jamaica at any time.

9   Q    Could Mr. Watson have chosen to go back to Jamaica even

10  before his litigation was finished?

11  A    Yes, he could have.  He could have notified the Consulate

12  that he was withdrawing his litigation and that he was

13  already -- wanted to go back to Jamaica.

14  Q    Did you make any arrangements to have Mr. Watson

15  interviewed by the Jamaican Consulate General to facilitate

16  his return to Jamaica?

17  A    I did.  In early March of 2009, I made arrangements for

18  him to be interviewed by the Consulate General of Jamaica.  I

19  believe he was interviewed on the 10th of March by the

20  Consulate General.

21  Q    Can you, Officer Schrader, can you turn your attention to

22  Plaintiff's Exhibit 41?  It's actually in this other binder.

23  Sorry.  Plaintiff's Exhibit 41, which I believe is in

24  evidence.

25  A    (Complies.)

LISA SCHMID, CCR, RMR

SCHRADER - DIRECT / MARUTOLLO                    233

1    Q    What is this document, Officer Schrader, in Plaintiff's

2    Exhibit 41?

3    A    This document is a form I-229(a).  This is a warning for

4    a failure to depart.  This is a form that is issued to an

5    individual who has become a final order of removal within 30

6    days after becoming a final order of removal.  And what it

7    does is, it notifies them of their obligation to assist ICE

8    with obtaining a travel document.

9    Q    Was this completed part of the procedural process?

10   A    Yes, it was.

11   Q    And if you'd turn to still in the same exhibit on the

12   bottom, it says US 898 to 899.  What is on those pages?

13   A    This is the list of obligations that the individual's

14   notified that they have to help with assisting ICE to obtain a

15   travel document.  They are supposed to have a passport, a

16   current one or expired one, they should submit that if it

17   hasn't already been turned into ICE.

18        It also advises them that when they're interviewed

19   by the consulate, they need to help by providing address and

20   names of family members or individuals that could help to

21   verify their identity.

22   Q    Now, we discussed your duties with respect to obtaining a

23   travel document.  Did you have any duties with respect to

24   Mr. Watson's Post Order Custody Review?

25   A    Yes, I did.  Mr. Watson -- the procedures of Immigration,

SCHRADER - DIRECT / MARUTOLLO                234

1   once an individual's been in custody for 90 days after they've

2   been a final order of removal, they have to have what's a

3   called a Post Order Custody Review conducted for them.

4   Q    And what is a Post Order Custody Review?

5   A    It's a review of the case that goes through it and it

6   will -- what it does is, it makes a determination whether the

7   individual should remain in custody after the ninety day

8   period.

9   Q    And what is the order referred to in the Post Order

10  Custody Review?

11  A    The Order is the final -- when they became a final Order

12  of Removal, in his case would have been with the BAI when they

13  ordered him removed or dismissed his case.

14  Q    So is a Post Order Custody Review another type of

15  investigation into whether the plaintiff should be in custody?

16  A    That is correct, yes.

17  Q    Can you turn, Officer Schrader, to Exhibit GG?  Again,

18  this is Defendant's Exhibit GG in the evidence.

19  A    (Complies.)  Yes.

20  Q    Turning your attention to Exhibit GG, what is this

21  document?

22  A    This is a Post Order Custody Review worksheet that would

23  have been completed by the deportation officer.

24  Q    And when is this document dated?

25  A    The review date was dated 4-30 of 2009.

SCHRADER - DIRECT / MARUTOLLO                235

1    Q     And do you know who completed this Post Order Custody
2    Review worksheet?
3    A     Yes, it does.  Deportation Officer Tracy.
4    Q     Can you turn to US 879, which is in Exhibit GG?
5    A     (Complies.)
6    Q     Can you read, Officer Schrader, into the record the brief
7    recommendation section that's in the middle of the page on
8    page 879?
9    A     Yes.  "The subject is a 24 year old male native
10   and citizen of Jamaica" --
11   Q     If you can just slow down a little bit if you can for the
12   court reporter.
13   A     Okay.
14   Q     Thank you.
15   A     "The subject is a 24 year old male, native and citizen of
16   Jamaica who last entered the United States as an immigrant
17   class of 2284, 1998, at New York -- NYC, New York.  On
18   11-23-2004, convicted of attempted robbery in the second
19   degree in Kings County Superior Court in New York, was
20   resentenced on 2-22-2006 to eight months.  On 8-27-2007,
21   convicted of criminal sale of a controlled substance in New
22   York County Superior Court, New York, and was sentenced to 42
23   months.  The subject was placed into removal proceedings on
24   4-10-2008, for INA violation of Sections 237(a)(2)(A)iii, and
25   237(a)(2)(B)i. The subject came into ICE custody on 5-8-2008

SCHRADER - DIRECT / MARUTOLLO                236

1    from New York State Corrections.  The subject was ordered

2    removed by the IJ on 11-13-2008.  The subject appeal to the

3    BIA was dismissed on 2-5-2009.  On 2-23-2009, the subject

4    filed a PFR, was a stay in the Second Circuit.  That PFR was

5    stayed, is still spending.  A present was sent on 2-20-2009.

6    An ETD was done on 2-20-2009.  The subject as provided a copy

7    of his birth certificate.  Based on the subject's criminal

8    history, he poses a threat to the community and is a flight

9    risk.  Should he lose his PFR, a TD will be issued by the

10   Jamaican Consulate to effect his removal to Jamaica.  Based

11   open all available information at this time, I recommend that

12   Mr. Watson continue in ICE custody pending his removal from

13   the United States."

14   Q    So thank you, Officer.

15        What is the PFR?

16   A    A PFR is a Petition for Review.

17   Q    And you also mentioned that a present was sent.  What is

18   a present, on 2-20-09?

19   A    A present is a package with a letter with information

20   regarding an individual that is sent to the consulate

21   requesting a travel document to facilitate their removal.  The

22   present would include copies of the immigration judge's

23   order, or in this case, the BIA order would have been with

24   that, dismissing his case.  There would be a copy of the birth

25   certificate on any other identification that we would have had

SCHRADER - DIRECT / MARUTOLLO                237

1   in the file.

2   Q     What does the ETD stand for?

3   A     The ETD is an Electronic Travel Document System that ICE

4   has, and this is a system that we have -- that we have to scan

5   everything into the system as far as the present letter, any

6   identification that would have gone into that.

7              There are -- a lot of the countries will issue a

8   travel document out of the ETD system.  It's something that

9   goes back and forth with ICE to the computer system, but

10  Jamaica does not do that.  Jamaica issues a handwritten travel

11  document they have on a certificate that they produce.

12  Q     Okay.  So Officer Schrader, this recommendation from the

13  first Post Order Custody Review was that Mr. Watson should

14  continue in ICE custody, correct?

15  A     That is correct.

16  Q     Can you turn your attention to Exhibit KK?

17  A     (Complies.)

18  Q     What is this document?

19  A     This is another Post Order Custody Review worksheet.

20  Q     And did you complete this second Post Order Custody

21  Review?

22  A     I did.  I completed -- the review date was 5-19-2010.

23  This is a Post Order Custody Review that was completed by

24  myself.

25  Q     And this is in the course of your duties as a deportation

SCHRADER - DIRECT / MARUTOLLO                    238

1   officer, right?

2   A     That is correct.

3   Q     Can you turn to US 1225 in that same exhibit?

4   A     (Complies.)

5   Q     Is there any indication on that exhibit that the

6   plaintiff was subject to any discipline while in ICE custody?

7   A     Yes.

8   Q     What discipline was indicated there?

9   A     On 12-29-2008, he was found guilty of a code violation of

10  305, possession of anything not authorized for retention.

11  Then on 11-17-2008, Code Violation 201, fighting, and 307,

12  refusing an order.

13  Q     So he had been disciplined for fighting?

14  A     That is correct, sir.

15  Q     Now, can you turn to US 1230?  Again, it's in the same

16  exhibit?

17  A     (Complies.)

18  Q     Now again, this is a another case analysis.  I don't know

19  want you to read the entire thing, but if you could read just

20  the very last paragraph on US 1230 into the record?

21  A     "Subject has convictions for attempted robbery, second

22  degree, and attempted criminal sale of a controlled substance

23  in the third degree.  Subject would pose a serious risk to the

24  safety and security of the community if he was to be released

25  from ICE custody pending the resolution of his Second Circuit

SCHRADER - DIRECT / MARUTOLLO                239

1    litigation and removal to Jamaica.  ICE has been notified by

2    the Consulate General of Jamaica in New York that a travel

3    document to facilitate the subject's removal was readily

4    available upon the resolution of his Second Circuit

5    litigation.  Therefore, continued detention is recommended

6    while awaiting the resolution of the subject's Second Circuit

7    litigation and removal from the United States to Jamaica."

8    Q    So why did you believe that Mr. Watson posed a serious

9    risk to the safety and security of the community if he were to

10   be released?

11   A    On the review, this one was based on whether the

12   individual's a flight risk or a threat to the community.  Due

13   to the fact of his criminal history and his disciplinary

14   instances while incarcerated -- while in ICE custody in

15   Batavia, that would indicate that he had been a threat to the

16   community.

17   Q    And you completed this document, right?

18   A    I did complete this document.

19   Q    And what was your recommendation?

20   A    My recommendation was that he continue in detention while

21   awaiting the resolution of his Second Circuit litigation and

22   removal from the United States to Jamaica.

23   Q    Okay.  Thank you.

24        Officer, can you turn to Exhibit JJ, which is in

25   evidence?

1    A    (Complies.)

2    Q    Officer Schrader, what is this document, Exhibit JJ?

3    A    This is a Claim of United States citizenship memorandum.

4    Q    And did you complete any part of this document?

5    A    I did.  I completed the statement of case and the facts

6    portion of this memorandum.

7    Q    Do you know why this document was created?

8    A    The document was created.  It's another layer of review

9    that we would have.  It was created at the request of the

10   Office of Chief Counsel.

11   Q    Did you submit your portion of this memoranda to the

12   Office of Chief Counsel?

13   A    I did.  After completing the statement of the case and

14   the facts, I submitted it to the Office of Chief Counsel.

15   Q    When you submitted this document, was the section that is

16   listed on DW 383, and -- through 385, that's under the title

17   "Legal Analysis," was that section filed out when you

18   submitted it to Chief Counsel?

19   A    No, it was not.  The legal analysis was done by the Chief

20   Counsel after submitting this.

21        MR. FLESSNER:  Your Honor, may I just ask that the

22   government produce an unredacted copy of this exhibit?

23        MR. MARUTOLLO:  Exhibit JJ?

24        THE COURT:  Mine is not redacted.

25        MR. FLESSNER:  If you look at 383, there's

SCHRADER - DIRECT / MARUTOLLO                241

1    redactions on DW 00383.

2              THE COURT:  All right.  Try to do that, please.

3              MR. FLESSNER:  They redacted the parents' names.

4              MR. MARUTOLLO:  This is from the FOIL request,

5    right?

6              MR. FLESSNER:  Yes.

7              MR. MARUTOLLO:  Okay.

8    BY MR. MARUTOLLO:

9    Q    Officer Schrader, can you turn to Exhibit LL?

10   A    (Complies.)

11   Q    What is Exhibit LL?

12   A    Exhibit LL is the Decision to Continue Detention letter.

13   Q    Okay.  And why was this completed?

14   A    At the end of his Post Order Custody Review, there's a

15   letter that is completed that is given to the subject to let

16   them know the result of the review.

17   Q    When was this letter served on the subject, Mr. Watson?

18   A    The service, I believe it's 5-30 of 2010.

19   Q    And what was the purpose of this document, Government's

20   Exhibit LL?

21   A    The purpose of the document is to let the subject know

22   that a review has been conducted and that he is going to stay

23   in custody.  That's what the recommendation was.

24             MR. MARUTOLLO:  No further questions, Your Honor.

25             THE COURT:  Thank you.

SCHRADER - CROSS / FLESSNER                242

1   CROSS-EXAMINATION

2   BY MR. FLESSNER:

3   Q    Good morning, Officer Schrader.

4   A    Good morning.

5   Q    Isn't it true that you did nothing to investigation

6   Mr. Watson's citizenship until May of 2010, more than two

7   years after his detention?

8   A    Mr. Watson's case came to me after it was a final Order

9   of Removal.  So his case had already been addressed, that he

10  had made a USC claim in court that was adjudicated by -- his

11  N-600 application was adjudicated by USCIS.

12  Q    Is that a yes or no?

13  A    (No response.)

14  Q    Isn't it true that you did nothing to investigate

15  Mr. Watson's claim of citizenship until May of 2010, more than

16  two years after his detention.

17  A    As far as USC memoranda, I completed one in 2010.

18  Q    So the answer is yes?

19  A    There was already -- his case had already been addressed

20  regarding the USC claim by USCIS.  So when he came to me, he

21  was already a Final Order of Removal.

22  Q    Is the answer yes?

23  A    (No response.)

24  Q    You did nothing to investigate his claim of citizenship

25  until May of 2010?

SCHRADER - CROSS / FLESSNER                    243

1          MR. MARUTOLLO:  Objection; asked and answered.

2          THE COURT:  He has never answered it.

3   A    Yes.  USC memorandum was completed in 2010.

4   BY MR. FLESSNER:

5   Q    Isn't it also true that Watson's claim of United States

6   citizenship should have been inputted in the case action and

7   decision, but it was not.  Isn't that true?

8   A    In the case action and decision?

9   Q    Yes.

10  A    No.  They're usually -- sometimes it would be in the case

11  comments, but that is not always done.

12  Q    So it wasn't put in the case comments, either?

13  A    It's not in the case comments.

14  Q    And it should have been in there?

15  A    Officers do things differently, each one.

16  Q    You would have put it in there?

17  A    Most likely, yes.

18  Q    And isn't it -- look -- do you have Plaintiff 55, 56, 57,

19  58 in front of you?

20  A    (Perusing documents.)

21  Q    Those are what -- have you found them yet?  I'm sorry.

22  A    No.

23  Q    Is that the plaintiff or defendant you're looking at?

24  A    This is plaintiff.

25  Q    Okay.  Good.

Case 1:14-cv-06459-JBW-PK   Document 89   Filed 11/04/15   Page 79 of 135 PageID #: 2017

1    A    Fifty-five, you said?

2    Q    Fifty-five, six, seven and eight.

3    A    (Perusing documents.)

4    Q    Those are what are commonly referred to as the United

5    States Citizen Directives, is that right?

6    A    That's correct.  That's correct.

7    Q    All right.  Isn't it true that you've never been trained

8    on the USC directives?

9    A    I don't know.  Actually, I have seen these directives

10   before, and I have probably had some form of training through

11   Virtual University or something like that.

12   Q    Okay.  Look at your -- look at what is not in evidence,

13   but is in the transcript of your deposition.  It's PX 95 back

14   there, and turn to page 26.

15   A    (Complies.)

16        MR. FLESSNER:  Wait a minute.  This is the wrong

17   one.  I think this is on your deposition. (Confers with

18   Ms. Stephens.) Okay.

19   BY MR. FLESSNER:

20   Q    Okay.  I'm sorry.  Look at 96, not 95.  I forget that you

21   had two depositions?

22   A    Ninety-six?

23   Q    Yeah.  Turn to page 26?

24        MR. MARUTOLLO:  Counsel, what deposition is this in?

25        MR. FLESSNER:  This is PX 96.

LISA SCHMID, CCR, RMR

1          MR. MARUTOLLO:  No --

2          MR. FLESSNER:  Date of 9-15.

3          MR. MARUTOLLO:  Okay.

4          THE COURT:  Page what again, please?

5          MR. FLESSNER:  Twenty-six, 26.

6          THE COURT:  Thank you.

7    BY MR. FLESSNER:

8    Q    All right.  And would is a deposition that was taken of

9    you by me on --

10         MR. MARUTOLLO:  Objection, Your Honor.  This is

11   improper impeachment.  He just gave essentially the same

12   answer under oath a minute ago and the answer here is the

13   same.

14         THE WITNESS:  You may continue.

15   BY MR. FLESSNER:

16   Q    All right.  Looking at lines nine through 11, I asked --

17   by the way, this is the deposition of you taken earlier this

18   month, correct?

19   A    Correct.

20   Q    And you were under oath during that deposition, correct?

21   A    I was, correct.

22   Q    Right.  And I took the deposition of you, correct?

23   A    That is correct.

24   Q    And looking at lines nine through 11, this is a question

25   I gave you and that's the answer you gave, correct?

SCHRADER - CROSS / FLESSNER                    246

1          "All right.  Did you receive training when those

2     claims for those directives came out?"

3          "I don't recall receiving training.  We might have

4     received something in Virtual University -- we might have

5     received something in Virtual University, but there is a

6     memorandum that was -- it was sent out and, you know, anything

7     regarding this.  I know there's been memos sent out regarding

8     USC claims and we have to follow those memos."

9               So isn't it true that you did not, in fact, receive

10    training?

11              MR. MARUTOLLO:   Objection.

12    A    I said I might have received training at Virtual

13    University.

14    BY MR. FLESSNER:

15    Q    All right.  Isn't it true that there's nothing in the

16    case comments or case action decision in Mr. Watson's file

17    that indicate that the protocol in May of 2008 directive

18    regarding USC was followed?

19    A    (No response.)

20    Q    There's nothing to indicate that the May 2008 USC

21    directive was followed in Mr. Watson's case, isn't that right?

22    A    That is correct.  There is nothing in the case comments.

23    Q    And had the protocol been followed, it would been input

24    into the case comments, isn't that right?

25    A    I can't speak for every officer, but most likely yes.

LISA SCHMID, CCR, RMR

1  Q    Had you followed it, you would have inputted it, correct?

2  A    I most likely, yes, would have input it into the case

3  comments.

4  Q    And it is also true that there nothing in the case

5  comments to show that the July 2008 United States citizen

6  directive was followed as well, isn't that right?

7  A    That is correct.

8  Q    In fact, there's nothing in any of the case comments to

9  show that any of the directives were followed, isn't that

10  right?

11  A    Well, there's case comments in there that say that his

12  case was -- his N-600 was given to him in court and that was

13  adjudicated by USCIS.  That's part of when someone makes a

14  claim of United States citizenship, that is the part of the

15  procedure that has to be done.  The N-600 needs to be given to

16  the individual and that has to be adjudicated by the United

17  States Citizenship and Immigration Services.

18  Q    Okay.  But my question was -- I understand that you've

19  given an N-600 in court.  My question was, there's nothing in

20  case comments to show that the directives had been followed,

21  isn't that right?

22  A    That is correct.

23  Q    And the requirements -- turn to 58, please.

24  A    Page 58?

25  Q    No, I'm sorry.  Plaintiff's Exhibit 58.  That's the

1  November 19, 2008 or 2009 directive.

2  A    (Complies.)

3  Q    And turn to DW 000576, and look under the paragraph

4  "Claims by Detained Individuals."  And under this directive,

5  it says that, if an individual, a detained individual claims

6  he is a United States citizen then an officer must, A,

7  immediately examine the merit of the claim, correct?

8  A    That's correct.

9  Q    He must notify and consult with the Office of Chief

10  Counsel, correct?

11  A    That's correct.

12  Q    He must provide detainee with a list of pro bono

13  attorneys, even if one has already been provided, correct?

14  A    Correct.

15  Q    And he must play a role in preparing and submitting to

16  headquarters by email a United States Citizenship Claim within

17  24 hours, isn't that right?

18  A    That is correct.

19  Q    And that did not happen in this case?

20  A    (No response.)

21  Q    Is that correct?

22  A    He did have his N-600 application.  He made a claim to

23  United States citizenship while he was in court, and the N-600

24  application given to him.

25          When this case came to me as a Final Order of

SCHRADER - CROSS / FLESSNER                    249

1    Removal, his USC claim had already been addressed by United

2    States Citizenship and Immigration Services.  It was

3    already -- the immigration judge proceeded and ordered him

4    removed from the United States.

5              The BIA -- and he made an appeal to the BIA.  The

6    BIA dismissed the case.  He also went to the Administrative

7    Appeals Office.  They also dismissed that.  So when his case

8    came to me, already his claim of United States citizenship

9    that he made in court had already been addressed.  He was

10   already a Final Order.

11   Q    Does it say in the directive that you can excused from

12   following the directive if someone else has made another

13   investigation?

14   A    No, it does not.

15   Q    And these steps were not followed?

16   A    Correct.

17   Q    Also, regarding the case comments, there is nothing in

18   Mr. Watson's case comments to show that the November 2009

19   directive was followed, either, was it?

20   A    No, there's not.

21   Q    So it is true that you did nothing to investigate

22   Mr. Watson's claim of being a United States citizen, isn't

23   that right?

24   A    When his case to me, he was already a Final Order of

25   Removal, and everything indicated that his United States claim

SCHRADER - CROSS / FLESSNER                250

1   to USC had been addressed.  His N-600 application was already

2   adjudicated and denied by USCIS.  He was ordered removed by

3   the immigration judge.

4          The immigration judge, if he had any doubt as to

5   whether he thought that a USC claim had been made, he would

6   not have proceeded with ordering him removed from the United

7   States.  Also, he appealed to the Board of Immigration

8   Appeals.  They dismissed the case.  He also appealed to the

9   Administrative Appeals Office, and they also dismissed that.

10  Q    So the answer to my question about what you did,

11  Mister -- Officer Schrader, is you did nothing to

12  investigate -- you, yourself, did nothing to investigate his

13  claim of citizenship?

14  A    I personally did not at that time, no.

15  Q    Okay.  Thank you.  There's also nothing in the case

16  comments to indicate there was a memo sent to headquarters or

17  the Field Office Director or to the Office of Chief Counsel,

18  isn't that right?

19  A    In the case comments?

20  Q    Yes.

21  A    There's a comment in there that says a USC memo was

22  completed in 2010 and forwarded to the Office of Chief

23  Counsel.

24  Q    Okay.  That was two years after he was detained?

25  A    That is correct.

SCHRADER - CROSS / FLESSNER                    251

1   Q    Isn't it true that between the time USCIS denied

2   Mr. Watson's N-600 and then when they granted it, there

3   were -- no new facts were added to its file?  The facts

4   remained essentially the same?

5   A    That is correct.

6   Q    Look at PX 64 and PX 65 for me, please.

7   A    (Complies.)

8   Q    What is PX 64?

9   A    PX 64 is a USC memorandum.

10  Q    All right.  And look at PX 60, which is another

11  memorandum.

12  A    (Complies.)

13  Q    PX 64 says that he's not a citizen and PX 60 says he is,

14  is that right?

15  A    PX 64 says that the conclusion was that he had not a

16  proper claim to U.S. citizenship.

17  Q    And PX 60 say -- that's the November 2nd memo that says

18  he is a U. S. Citizen, looking at the conclusion?

19           MR. MARUTOLLO:  Objection.  It doesn't state that in

20  the conclusion.

21           THE COURT:  Well, where is it?

22  BY MR. FLESSNER:

23  Q    Look at the conclusion, Mr. Schrader, on DW 000376.

24  A    (Complies.)  Yes?

25  Q    Okay.  Now, I want you to look at PX 65.

1    A    (Complies.)

2    Q    PX 65 is an email to the OPLA regarding the USC claims of

3    Mr. Watson, dated November 2nd of 2011, correct?

4    A    That's correct.

5    Q    That shows that the memo went up to the Office Field

6    Director, to the Legal Counsel and to all the right people in

7    the chain of command?

8    A    (Perusing document.)  I see where it went to Office of

9    Chief Counsel.

10   Q    Have you ever seen anything to demonstrate that the May

11   2010 memo went up the chain of command?  Is there any written

12   document as far as you're aware that shows that?

13   A    Well, when that memo was forwarded over to Office of

14   Chief Counsel, there wasn't a legal analysis that was done on

15   it at that time.  It was just the facts and the statement of

16   the case.  If you look at the memorandum, it shows that the

17   legal analysis was done by the Office of Chief Counsel, so

18   that would have been forwarded up.

19           THE COURT:  On 60, would you unredact that, please,

20   when you get a chance?

21           (Continued on the next page.)

22

23

24

25

SCHRADER - CROSS / FLESSNER                253

1    Q    Look at the 60 again, please.

2    A    Exhibit 60?

3    Q    Yes.

4    A    Okay.

5    Q    It's signed, is it not?

6    A    That is correct, it is signed.

7    Q    And look at 64.  It's not signed, isn't that correct?

8    A    That is correct.

9    Q    The BIA terminated Mr. Watson's removal proceedings

10   approximately 14 months after it was determined that he was a

11   United States citizen; isn't that right?

12   A    That is correct.

13   Q    And on November 2nd of 2011, the date that he was

14   released, that's when the government determined that Mr.

15   Watson is a U.S. citizen; isn't that correct?

16   A    They determined that he made a probable claim to United

17   States citizenship.  They decided that it was beneficial to

18   release him at that point in time.

19   Q    Look at your exhibit -- look at your deposition at page

20   47, please.

21        THE COURT:  Would you unredact all of these

22   documents.  Sixty-five is heavily redacted.  We will

23   substitute the full document throughout the case.

24        MR. FLESSNER:  That would be helpful for us, too.

25        MR. MARUTOLLO:  Your Honor, we would only note,

SCHRADER - CROSS / FLESSNER                254

1   though, that we can certainly unredact the names and those

2   issues, but we produced privilege logs for any attorney-client

3   communication for other redactions throughout the case.  So we

4   will certainly unredact the names, but --

5            THE COURT:  Well, try to get together.  If there's

6   any dispute, you'll have to come to me.  But I assume --

7            MR. MARUTOLLO:  We did have issues, Your Honor, and

8   we have already met and conferred about these issues

9   throughout the course of the litigation on a variety of issues

10  and with Judge Pohorelsky as well, and we produced our

11  privilege logs.

12           And I believe we have produced unredacted, updated

13  unredacted documents with the names unredacted of the

14  attorneys.  But we still stand by our objection with respect

15  to --

16           THE COURT:  Well, I'm overruling your objection and

17  I just want an unredacted file.  If you have any questions you

18  can't get together on, take it up with the magistrate judge.

19           MR. FLESSNER:  Your Honor, to be clear, the

20  government didn't produce any of these documents.  We got all

21  these documents that are redacted through the FOIA request.

22  The U.S. Attorney's Office refused to produce all of these

23  documents.

24           MR. MARUTOLLO:  That's totally inaccurate, Your

25  Honor.

SCHRADER - CROSS / FLESSNER                   255

1           THE COURT:  I don't really care about that.  Thank

2   you.

3   A    I'm sorry, what document did you want me to look at,

4   again?

5   Q    We got sidetracked.  Looking at 96, it's your deposition,

6   and I want you to turn to page 47 and look at lines --

7   starting at line 16.  Looking at your answer on line 13, "it

8   appears that" -- this is what you said after my question to

9   you about what happened on November 2nd, 2011.

10           "It appears that -- it appears that he was

11   granted -- there was a probative claim made of United States

12   citizenship and appears they were saying he was a citizen at

13   that point in time."

14           Isn't that what you said?

15   A    That is correct.

16   Q    Look at Defendant's Exhibit GG, would you please.  That's

17   a document that Mr. Marutollo showed you earlier in your

18   testimony.  And specifically look at U.S. 000878, and at the

19   very top you see an address and a telephone number.  Do you

20   see those?

21   A    Yes, I do.

22   Q    Read for the Court the telephone number that you have

23   there.

24   A    718-377-7027.

25   Q    Do you know whose telephone number that is?

1   A     No, I do not know.

2   Q     Did you ever call that number or make an inquiry about

3   that number?

4   A     No, I did not.

5   Q     Look at KK as well, and turn to 1227 of KK.  Do you see

6   an address and telephone number at the top of that document?

7   A     I do.

8   Q     Read the telephone number.

9   A     718-377-7027.

10  Q     Did you ever call that number?

11  A     No.  I did not have a need to call that number.

12  Q     Do you have any idea whose number that is?

13  A     No, I do not.

14  Q     What does it say about Davino Watson's educational level,

15  if you go three-quarters of the way down the page?

16  A     It says 11th grade.

17        MR. FLESSNER:  No further questions.

18        MR. MARUTOLLO:  No further questions, Your Honor.

19        THE COURT:  Thank you very much, sir.

20        MR. MARUTOLLO:  Your Honor, our next witness is

21  here.  He's from Buffalo.  But just so we're clear, I belive

22  Your Honor said we have to break at 10 to 1.  He's unavailable

23  to be here tomorrow.  He needs to be back in Buffalo.  I'll

24  try -- if possible, can we -- I'm not sure if Your Honor would

25  like to break for the day so we don't have to interrupt the

PROCEEDINGS                     257

1  testimony, because I don't know if he'll be available to

2  testify via phone or what time he will be available via phone

3  tomorrow.

4          THE COURT:  What's the application?

5          MR. MARUTOLLO:  I think -- unless we can agree to

6  have his testimony completed today, we would ask that we have

7  an adjournment so he can testify via phone either at some

8  point tomorrow or some point Friday.

9          THE COURT:  You want to break now, is that it?

10         MR. MARUTOLLO:  Yes, Your Honor.

11         MR. FLESSNER:  Why don't we just put him on, then if

12  we have to cross him on the phone we can do that.

13         THE COURT:  Okay.

14         MR. FLESSNER:  I mean, what --

15         MR. MARUTOLLO:  It's just not clear when he'll be

16  available via phone.

17         THE COURT:  We'll work that out.  Bring him in.

18  You're released.  Thank you.

19         THE WITNESS:  Thank you, Your Honor.

20         MR. MARUTOLLO:  Just to be clear, the government is

21  calling Michael Phillips, who's the Field Office Director from

22  Buffalo Field Office of ICE.

23         (Witness sworn.)

24         COURTROOM DEPUTY:  Please have a seat.  State your

25  name and spell your last name for the record.

1       THE WITNESS:  My name is Michael Phillips.  My last

2   name is spelled P-h-i-l-l-i-p-s.

3   MICHAEL PHILLIPS,

4   Called by the Defendant, having been first duly sworn, was

5   examined and testified as follows:

6   DIRECT EXAMINATION

7   BY MR. MARUTOLLO:

8   Q    Good afternoon, Mr. Phillips.  Where are you currently

9   employed?

10  A    With Immigration and Customs Enforcement in the Buffalo

11  Field Office, Enforcement and Removal Operations.

12  Q    And what is your current title?

13  A    I am the Field Office Director.

14  Q    How long have you been in that role?

15  A    Since July of 2008.

16  Q    What were your job -- I'm sorry, how long have you been

17  employed by ICE or legacy INS?

18  A    Since May of 1987.

19  Q    Can you provide a brief description of the jobs that you

20  had over the course of your career from 1987 through 2008?

21  A    Sure.  In May of 1987, I was hired as an immigration

22  inspector with legacy INS at the Peace Bridge in Buffalo.  And

23  in October of 1991, I was selected to be a supervisory

24  Detention Enforcement Officer with the deportation program

25  under legacy INS.

PHILLIPS - DIRECT / MARUTOLLO                    259

1          In 1996, I was promoted to supervisory Detention and
2     Deportation Officer.  In 2006, I was promoted to assistant
3     Field Office Director; and in July of 2008, I was promoted to
4     Field Office Director.
5     Q    And what are your general duties and responsibilities as
6     Field Office Director?
7     A    As Field Office Director, I manage all the personnel.  I
8     manage the operations.  Our mission is to identify, arrest and
9     remove those subjects that are in the United States that pose
10    a threat to public safety and national security as well as
11    those who enter the country illegally or otherwise defy our
12    nation's immigration laws.
13    Q    What was your role with respect to Mr. Watson's case that
14    we're here for today?
15    A    I was the Field Office Director while he was in our
16    custody.
17    Q    Did you have any personal interaction with Mr. Watson?
18    A    I did not.
19    Q    Did you have any role with respect to the initial
20    detention of Mr. Watson by Officer Estrada or Agent Ortiz or
21    Officer Andren?
22    A    I did not.
23    Q    So was your role limited to the Buffalo field -- the
24    Buffalo Federal Detention Facility?
25    A    That is correct.

1  Q    So as the Buffalo Field Office Director, do you have the
2  ability to release detainees from custody?
3  A    I do, yes.
4  Q    When can you release detainees from custody?
5  A    When they're no longer subject to mandatory detention or
6  there's probative evidence that they should no longer be
7  detained.
8  Q    And do you need to consult with any attorneys before
9  making this release of the detainees from custody?
10  A    Oftentimes I do to get a legal opinion from them, but the
11  decision is mine.
12  Q    So why did you release Mr. Watson from ICE custody on
13  November 2nd, 2011?
14  A    In December of 2011 --
15  Q    I'm sorry.  You can continue, but I said -- so I'm clear,
16  I said for the record, so why did you release Mr. Watson from
17  ICE custody on November 2nd, 2011?  But please continue.
18  A    I was advised by Chief Counsel's Office that there was a
19  change in the legal interpretation regarding his claim to U.S.
20  citizenship, and so we released him from custody.
21  Q    What's your understanding of that change in legal
22  interpretation?
23  A    My understanding of the change, originally, the first
24  legal interpretation was that Mr. Watson did not derive
25  citizenship because he did not meet the definition of child;

1   and it's my understanding that the changed legal

2   interpretation was that he did derive citizenship.

3   Q    Did any facts change that forced you to release the

4   plaintiff?

5   A    No.  The facts stayed the same.

6   Q    So what was the key that made you release the plaintiff?

7   A    As I said before, in consultation with Chief Counsel's

8   Office, due to the change in legal interpretation that

9   indicated that he may derive citizenship, with that probative

10  evidence, we released him from custody.

11  Q    Now, on November 2nd, 2011, when your facility released

12  the plaintiff, was he a U.S. citizen?

13  A    He was -- at that time?

14  Q    At that time.

15  A    To my knowledge, he was not a citizen.

16  Q    And why not?

17  A    His case was still pending.  He was still in proceedings.

18  I believe his appeal was pending with the Second Circuit, and

19  the Second Circuit remanded the case to the Board of

20  Immigration Appeals.  So we were awaiting the Board of

21  Immigration Appeals to make a ruling on the case.

22  Q    Now, Mr. Phillips, what's your understanding of the

23  purpose of the four internal ICE memoranda that are on

24  Exhibits Plaintiff's 55 through 58, the directives, what's

25  your understanding of the purpose of these memoranda?

1  A    The purpose of those memos is to ensure that when

2  Enforcement and Removal Operation officers encounter a subject

3  claiming to be a U.S. citizen that those claims are thoroughly

4  investigated.

5  Q    Are these internal ICE memoranda the same as government

6  regulations?

7  A    No.  They're internal guidance.

8  Q    Did these internal ICE memoranda apply to Mr. Watson's

9  case?

10  A    Yes.

11  Q    Do you believe that they applied to Mr. Watson's case,

12  these memoranda?

13          MR. FLESSNER:  Objection.  He just answered that

14  question.

15          THE COURT:  I'll allow it.

16  A    Well, no.  I mean, they don't apply because --

17          THE COURT:  Excuse me.

18          MR. FLESSNER:  Sorry.

19  A    -- his claim to citizenship was not made to an ERO

20  officer.  Those memos, as I've stated before, are when our

21  officers encounter a subject claiming to be a citizen.

22          His claim to citizenship was not made to our

23  officers.  His claim to citizenship was made before the

24  immigration judge in the court in the presence of our ICE

25  counsel.

1    Q    So I'm sorry, just to be clear for the record, did you

2    believe that these internal memoranda applied to Mr. Watson's

3    case?

4    A    No.

5    Q    But if, even if -- and let me back up.  What's the

6    principle behind these internal memoranda, these directives?

7    A    To ensure that those claims are thoroughly and completely

8    investigated.

9    Q    Now, even if these directives, these memoranda applied to

10   Mr. Watson's case, what steps, if any, were taken to make sure

11   that the principle behind these directives was met?

12   A    Well, I believe it was June 25th when he appeared, his

13   first appearance before the immigration judge when he made

14   that claim to U.S. citizenship.  And I think that triggered an

15   immediate reaction.  He was furnished with an N-600

16   application for certificate of citizenship and told to submit

17   that to Citizenship and Immigration Services.  Citizenship and

18   Immigration Services is the division of Homeland Security that

19   adjudicates claims to citizenship.  They're our experts.

20        So the application was submitted to CIS.  CIS

21   reviewed it.  They adjudicated it.  They denied the

22   application, made a determination that he did not derive

23   citizenship.

24        The subject appealed the CIS decision to the

25   Administrative Appeals Office.  The Administrative Appeals

PHILLIPS - DIRECT / MARUTOLLO                    264

1   Office agreed with CIS, determined that he did not derive

2   citizenship.

3          He then was ordered removed from the United States

4   by the immigration judge.  He as well determined that the

5   subject did not derive citizenship.

6          The subject then appealed the immigration judge's

7   decision to the Board of Immigration Appeals.  The Board of

8   Immigration Appeals dismissed the appeal, agreed with the

9   immigration judge, determined that he did not derive

10  citizenship.

11         The subject then filed an appeal, a petition for

12  review with the Second Circuit Court of Appeals.  And the

13  Second Circuit Court of Appeals eventually remanded the case

14  back to the Board of Immigration Appeals to decide on the

15  case.

16         So I think the case was thoroughly investigated.  A

17  lot of eyes were looking at the case.  While he was in our

18  custody during this process, we conducted two custody reviews.

19  Those custody reviews are an opportunity to review the case

20  and decide whether or not he should continue to be detained or

21  not.  So....

22  Q    And were consultations also made with the Office of Chief

23  Counsel, from ICE to the Office of Chief Counsel?

24  A    Yes.  I'm always in contact with Chief Counsel's Office.

25  They're right down the hall.  We speak daily.

PHILLIPS - CROSS / FLESSNER                    265

1  Q    So do you believe that the purpose of these ICE
2  directives was met with respect to plaintiff's claims to
3  citizenship?
4         MR. FLESSNER:  Objection.  His belief is irrelevant.
5         THE COURT:  I'll allow it.
6         THE WITNESS:  Answer the question?
7         THE COURT:  Yes, you may answer.
8  A    Yes.  You know, with all that, I believe that the case
9  was thoroughly investigated.
10        MR. MARUTOLLO:  I have no further questions, Your
11  Honor.
12  CROSS-EXAMINATION
13  BY MR. FLESSNER:
14  Q    Mr. Phillips, will you look at PX-31 in front of you.
15  Are you looking at PX-31?
16  A    I don't know what I'm looking at here.
17  Q    That's not it.  Try 31 there.  What is that document?
18  A    This is a certificate of citizenship for Davino Hopeton
19  Watson.
20  Q    And looking down, what date does it say Mr. Davino
21  Hopeton Watson became a United States citizen?
22  A    September 17th, 2002.
23  Q    So when you just testified that you didn't think he was a
24  citizen and you still don't think he was a citizen on November
25  2nd of 2011, you would agree with the United States

1    Government?

2           MR. MARUTOLLO:  Objection.  That misstates his prior

3    testimony.

4           THE COURT:  Sustained.  Argumentative.

5    Q    Was Mr. Watson a citizen on November 2nd, 2011?

6    A    According to this, yes.  We now know that he was.

7    Q    Right.  The mission of the Enforcement and Removal

8    Operation is to identify, locate and arrest aliens in the

9    United States; isn't that right?

10   A    That is correct.

11   Q    Those who pose public -- a threat to public safety,

12   national security, and who enter the country illegally; isn't

13   that correct?

14   A    That is correct.

15   Q    And ERO, by the way, is the same entity as its

16   predecessor DRO, Detention and Removal Operations; isn't that

17   right?

18   A    Yes.

19   Q    And it's not the mission of ERO to arrest United States

20   citizens, is it?

21   A    No.  We enforce the immigration laws.

22   Q    You're the highest ranking official in upstate New York,

23   DHS official in upstate New York; isn't that right?

24   A    For Enforcement and Removal Operations, yes.

25   Q    And you're in charge of the Batavia Federal Detention

1  Facility; correct?

2  A    Yes.

3  Q    And you're familiar with the United States directive --

4  United States citizen directives that Mr. Marutollo was

5  discussing earlier today; correct?

6  A    Yes.

7  Q    And the purpose of those directives is to establish a

8  protocol, is it not, to assist ERO officers and field office

9  directors like you when they encounter someone who claims to

10 be a United States citizen; isn't that right?

11 A    It's to provide guidance to ERO officers who encounter

12 subjects that claim to be U.S. citizens.

13 Q    And isn't it true that it's unlawful for your officers to

14 arrest and detain a United States citizen for civil

15 immigration enforcement even before the U.S. directives were

16 issued?

17 A    ICE officers cannot knowingly arrest -- they don't have

18 the authority to knowingly arrest U.S. citizens.

19 Q    And under the USC directives, it's your responsibility,

20 is it not, to ensure that the officers under your command

21 understood and adhered to these directives; isn't that right?

22 A    That is correct.

23 Q    And you have no idea, you personally have no idea whether

24 these -- whether your officers comply with these directives,

25 do you?

1  A    No, I -- I know that they comply.  There's several ways

2  that, you know, we ensure compliance.  I think just our

3  supervisory process ensures compliance with memos, guidance,

4  directives that come down.  You know, supervisors do spot

5  checks.  They do progress reviews.  They make rounds at the

6  facility.  They speak to detainees.  They do final ratings at

7  the end of the year.

8          So yeah, there's several layers of supervision and,

9  you know, we hold our employees accountable.  So I would say

10 that yes, there are mechanisms in place to ensure compliance.

11 Q    Okay.  Look at Exhibit 100 in front of you there, please.

12 It's not in evidence, but it's your transcript of your

13 deposition.

14 A    I have it.

15 Q    Turn to page 13, please.

16 A    I'm there.

17 Q    Looking at lines -- this is a transcript of your

18 deposition that was taken by me, correct, earlier in the

19 month?

20 A    Yes.

21 Q    And you were sworn to tell the truth like you are today

22 during that deposition; isn't that right?

23 A    Correct.

24 Q    Look at lines 6 to 10, and this is the question I asked

25 you and this is the answer that you gave me; isn't this

PHILLIPS - CROSS / FLESSNER                    269

1    correct?

2             "How was compliance ensured?

3             Well, I guess -- I don't know how we ensure

4    compliance.

5             Is it expected that the officers comply with the

6    directives?

7             I don't know how else to answer that."

8             So the answer to my question is, you don't know how

9    compliance is ensured in this case; isn't that right?

10   A    I just explained how we ensure compliance.

11   Q    And when I asked before, you didn't know the answer to

12   that question?

13   A    I had a chance to look at my deposition and --

14   Q    And to change your answer?

15             MR. MARUTOLLO:  Objection, Your Honor.

16             THE COURT:  Excuse me.  Don't interrupt.  Go ahead.

17   A    I think I could have expanded on my answer a little bit

18   better.

19   Q    Okay.

20   A    As the Field Office Director, to say I don't know, I have

21   no way of ensuring compliance of my employees, that's not an

22   accurate statement.

23   Q    But it was your statement.

24   A    Right.

25   Q    You personally have no formalized training in the

1   directives; isn't that right?

2   A    Formalized training in memos?

3   Q    In USC directives.

4   A    USC --

5   Q    United States citizen directives.

6   A    Okay.  The memos, the internal guidance that we receive

7   regarding citizenship, there were no classes.  It was pretty

8   clear what the guidance was.  And I don't believe that

9   headquarters felt that any additional training was necessary.

10  There was none provided.

11  Q    All right.  So the answer to my question is correct,

12  there was no formalized training?

13  A    Correct.

14  Q    Okay.  By the way, you referred to them on direct

15  examination as internal memos, but, in fact, they're on the

16  DHS website, are they not?

17  A    They are on the DHS, the Internet.

18  Q    Right, and they're available to the pubic.  I could go on

19  the web right now and download those directives, couldn't I?

20  A    If you say you can.

21  Q    Isn't it also true that there's no one that monitors to

22  ensure the directives are followed?

23  A    I think I just said that's the job of the supervisors,

24  first, second, third line levels of supervision where we all

25  hold people accountable.

PHILLIPS - CROSS / FLESSNER                271

1   Q     All right.  Turn to page 14 of your deposition, please,

2   and look at lines -- look at the bottom of 13, and these are

3   the questions I asked you and these are the answers you gave

4   me.

5           But the question then is:  "Do you or someone in

6   your staff do any monitoring to ensure that these directives

7   are, indeed, followed?"

8           And the answer is:  "No.  It is assumed that the

9   officers are professional, that they are law enforcement

10  officers, and when they are given directives they will adhere

11  to that."

12          Isn't that the answer you gave to my question?

13  A     I did.

14  Q     So, in fact, no one monitors them?

15  A     I would disagree with that.  People do monitor --

16  Q     So you're disagreeing with your testimony?

17          THE COURT:  Let him finish.  Did you finish your

18  answer?

19  A     I would just say that, you know, supervisors, I mean,

20  it's our jobs, all of our jobs to ensure that we comply with

21  memos and guidance that come from headquarters.  I don't want

22  to say that we don't do that.

23  Q     My question then is, Mr. Phillips, you testified earlier

24  that no one monitored and now you're changing that testimony;

25  isn't that right?

PHILLIPS - CROSS / FLESSNER                    272

1    A    Yes, I'm expanding on that answer.

2    Q    Isn't it true that if a deportation officer pulled the

3    wrong A-file for the father of Mr. Watson that he made a

4    mistake and he didn't do his job properly; isn't that correct?

5              MR. MARUTOLLO:  Objection.

6              THE COURT:  I'll allow it.

7    A    Can you repeat the question, please?

8    Q    Sure.  Isn't it true that if the deportation officer

9    investigating Mr. Watson's status pulled the wrong A-file for

10   Mr. Watson's father that he made a mistake and he didn't do

11   his job properly?

12   A    It's hard for me to sit here and say he made a mistake.

13   I don't know what information Mr. Watson provided to the

14   officer for the officer to continue his investigation.

15   Q    Are you testifying to the judge that it's okay for an

16   officer to pull the wrong A-file of a parent?

17             THE COURT:  Don't answer that.  That's not a fair

18   question.

19   Q    Is it a mistake if the officer pulls the wrong A-file?

20             THE COURT:  It may be or it may not be.  Don't

21   answer.

22   Q    Did your officers obtain judicial approval for the arrest

23   warrant of Mr. Watson?

24   A    Judicial approval?

25   Q    Yes.

1  A    No.

2  Q    Have you ever heard the case Gerstein versus Pugh?  It's

3  a United States Supreme Court case.  Are you familiar with

4  that?

5  A    No, sir.

6  Q    Do you know whether or not the Fourth Amendment under the

7  Supreme Court ruling requires that there be a prompt judicial

8  determination under the Fourth Amendment to detain an

9  individual?

10         MR. MARUTOLLO:  Objection, Your Honor.

11         THE COURT:  Sustained.

12  Q    Isn't it true that your officers did not bring Mr. Watson

13  before an immigration judge to get a probable cause

14  determination of his detention?

15  A    The first time he appeared before an immigration judge

16  was for his initial appearance for the removal proceedings.

17  Q    And that was approximately five weeks after his

18  detention?

19  A    June -- yes, sir.

20  Q    Isn't it also true that the officers placed Mr. Watson in

21  mandatory detention, such that the immigration judge could not

22  even review their custody decision?

23  A    The immigration judge can still review the custody

24  determination.

25  Q    Look at 33, please.  That's a notice of custody

1    determination for Mr. Watson?

2    A    Yes, sir.

3    Q    And look at the box checked.  "You may not request review

4    of this determination by an immigration judge because the

5    Immigration and Nationality Act prohibits your release from

6    custody."  Isn't that what it says?

7    A    Yes, sir.

8    Q    And that's what was given to Mr. Watson.  Are you

9    suggesting that's not true?

10   A    It's true here.  I've seen in my experience that the

11   immigration judge will still make a custody determination even

12   if that box is checked.

13   Q    So Mr. Watson was told that he couldn't ask the judge to

14   review it, but, in fact, that wasn't true?

15            MR. MARUTOLLO:  Objection, Your Honor.

16   A    I don't know what he was told.

17   Q    Well, you can see --

18   A    He was served with this paper.

19   Q    Right.  But you're suggesting to the Court that that's

20   not true.  Even though they told him the judge can't review

21   it, you're suggesting the judge can.

22            MR. MARUTOLLO:  Objection, Your Honor.

23            THE COURT:  Can he review it?

24            THE WITNESS:  Yes, the judge can.  I've seen the

25   judge --

PHILLIPS - CROSS / FLESSNER                     275

1   Q     So that document is false?

2              MR. MARUTOLLO:  Objection.

3              THE COURT:  No, don't characterize it.  Don't

4   answer.

5   Q     Is it true or not?

6              MR. MARUTOLLO:  Objection.

7              THE COURT:  He just said that he can review.

8              MR. FLESSNER:  And my question is, then that

9   document must be false, the document they gave Mr. Watson.

10             THE COURT:  That's a conclusion I'll draw.

11  Q     Isn't it true that foreign birth alone is not sufficient

12  to establish probable cause to -- of aliens to arrest an

13  individual?

14  A     Yes.  You have to ask more questions.  Foreign birth,

15  there's a lot of people that are legally in the United States

16  who were born overseas.

17  Q     And it's also true that ICE -- in order to arrest Mr.

18  Watson, ICE needed to establish probable cause to demonstrate

19  that he was a removable alien; isn't that right?

20  A     That is correct.

21  Q     And it's the government's burden to establish that

22  there's probable cause to detain the individual; isn't that

23  right?

24             MR. MARUTOLLO:  Objection; calls for a legal

25  conclusion.

SHERRY BRYANT, RMR, CRR

1              THE COURT:  Don't answer.

2    Q    Well, is it Mr. Watson's burden to prove that he's a U.S.

3    citizen?

4              MR. MARUTOLLO:  Objection.

5              THE COURT:  Don't answer.

6    Q    You're familiar with the case matter of Hines?

7    A    Yes, sir.

8    Q    And it was determined on June 4th of '08; correct?

9    A    Yes, sir.

10   Q    And that was more than five years after Mr. Watson became

11   a U.S. citizen; isn't that right?

12             MR. MARUTOLLO:  Objection.

13             THE COURT:  Sustained.

14   Q    Well, Mr. Watson became a U.S. citizen on September 17th

15   of 2002.

16             MR. MARUTOLLO:  Objection.

17             THE COURT:  Is that what your view is?

18             THE WITNESS:  Well, I think we have to look at the

19   time period.

20             THE COURT:  Or you can say, I am not in a position

21   to answer.

22             THE WITNESS:  I will just say that in January of

23   2013, when the Board of Immigration Appeals made their

24   decision, is when I realized that he derived citizenship in

25   2002.

1  Q    Okay.  So it is -- you now agree that he became a citizen

2  in 2002?

3  A    Based on the BIA decision.

4  Q    And that was more than five years prior to the matter of

5  Hines?

6            MR. MARUTOLLO:  Objection.

7            THE COURT:  Sustained.

8  Q    Do you currently have a protocol when a detainee makes a

9  claim of citizenship?

10            MR. MARUTOLLO:  Objection.

11            THE COURT:  Don't answer.

12            MR. FLESSNER:  I'm sorry?

13            THE COURT:  Don't answer.

14            MR. FLESSNER:  Okay.

15  Q    Is there supposed to be a memo prepared within 24 hours

16  of a detainee making a claim of U.S. citizenship?

17  A    I think the November 2009 memo instructs the field to

18  prepare a joint memo with Chief Counsel's Office for any

19  claims to U.S. citizenship.

20  Q    Is there anything in any of the directives, the United

21  States Citizen directives, that allows your officers to ignore

22  the memos even though another body is investigating the claim

23  of citizenship?

24  A    The memos are directed to ERO officers who encounter a

25  subject claiming to be a citizen.  And so in this case, as we

1    discussed during my deposition, I know we disagree, but it's

2    my belief, my interpretation of the guidance that those memos

3    didn't apply.

4         If I might just add, even if I agreed with your

5    interpretation, because you seem to believe that once ERO

6    officers heard that Mr. Watson was claiming to be a citizen in

7    court that they should have -- were required to comply with

8    this guidance, even if they did on June 25th or 26th, upon

9    hearing that we had a subject detained claiming to be a

10   citizen, they would have conducted an investigation that would

11   have yielded the exact same facts that were presented to

12   Citizenship and Immigration Services in July.  The facts

13   haven't changed.

14   Q    Right.

15   A    The legal interpretation was based on the facts provided.

16   So that's why I don't know if it's even relevant whether or

17   not our officers conducted the investigation.  The

18   investigation was already done and the right facts that we all

19   agree -- I think you pointed out CIS's denial of that N-600

20   where they list the seven or eight criteria.

21        Well, those are the facts of the case.  Whether they

22   were provided to CIS from us or through other means, CIS would

23   have made the same determination, their legal interpretation

24   that he did not derive citizenship.

25   Q    So --

PHILLIPS - CROSS / FLESSNER                    279

1          THE COURT:  Bring your cross to a close, please.

2          MR. FLESSNER:  Okay.  I am just about done, Your

3    Honor.

4    Q    It's your testimony then that the facts always remained

5    the same and had the correct legal analysis been applied

6    originally that Mr. Watson would have been released?

7          MR. MARUTOLLO:  Objection.

8          THE COURT:  Yes, sustained.  Don't answer.  Thank

9    you.  Any redirect?

10          MR. MARUTOLLO:  No, Your Honor.

11          THE COURT:  All right.  Thank you, sir.  So we'll

12    start 9:30 tomorrow.  You'll have witnesses?

13          MR. MARUTOLLO:  Yes, Your Honor.

14          MR. CHO:  Your Honor, we have some witnesses that

15    are out of state.  We would like to have them testify by

16    telephone.  Is that okay or do you prefer video?

17          THE COURT:  I'm perfectly happy to have them.  Work

18    it out.

19          MR. MARUTOLLO:  Your Honor, I believe you had

20    indicated earlier telephone was sufficient.  We've tried to

21    figure out the video capabilities for the courtroom, but if

22    telephone is --

23          THE COURT:  Check with our technical staff.  They're

24    very adept at doing this.  They'll help you.

25          MR. MARUTOLLO:  Thank you, Your Honor.

1          THE COURT:  I'd prefer video, but if we can't we'll

2     take telephone.

3          MR. CHO:  Thank you, Your Honor.

4          THE COURT:  Good night.

5          MR. MARUTOLLO:  Good night, Your Honor.

6          (Whereupon, the proceedings were adjourned until

7     October 1, 2015 at 9:30 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

281

1                          I N D E X

2                         WITNESS

3

4   J U A N   E S T R A D A                  176

5      DIRECT EXAMINATION                    176

6      BY MR. CHO

7      CROSS-EXAMINATION                     192

8      BY MR. BURNS

9   SCOTT ANDREW SCHRADER                    229

10      DIRECT EXAMINATION                   229

11      BY MR. MARUTOLLO

12      CROSS-EXAMINATION                    242

13      BY MR. FLESSNER

14   MICHAEL PHILLIPS                        258

15      DIRECT EXAMINATION                   258

16      BY MR. MARUTOLLO

17      CROSS-EXAMINATION                    265

18      BY MR. FLESSNER

19

20                        EXHIBITS

21   Plaintiff's Exhibit 63                  170

22   Plaintiff's Exhibit 70                  183

23   Government's Exhibit WW                  188

24   Government Exhibit X                     188

25   Plaintiff's Exhibit 71                  190

282

1    Plaintiff's Exhibit 33                      191

2    Plaintiff's Exhibits 73 and 68              203

3

4    Defendant's Exhibits CC through YY          228

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$160,000** [1] - 174:20

## '

**'08** [1] - 276:8

## 0

**000376** [1] - 251:23
**000576** [1] - 248:3
**000878** [1] - 255:18
**00383** [1] - 241:1

## 1

**1** [7] - 196:24, 197:15, 197:20, 200:20, 202:17, 256:22, 280:7
**10** [4] - 192:9, 192:13, 256:22, 268:24
**100** [3] - 172:10, 172:19, 268:11
**101** [2] - 198:16, 199:6
**102** [2] - 172:10, 172:20
**103** [12] - 208:5, 208:6, 208:17, 211:17, 214:15, 216:1, 216:14, 216:21, 217:22, 218:8, 220:2, 220:21
**104** [3] - 172:25, 173:2, 210:20
**10:00** [1] - 166:9
**10th** [1] - 232:19
**11** [2] - 245:16, 245:24
**11-13-2008** [1] - 236:2
**11-17-2008** [1] - 238:11
**11-23-2004** [1] - 235:18
**11th** [1] - 256:16
**12-29-2008** [1] - 238:9
**1225** [1] - 238:3
**1227** [1] - 256:5
**1230** [2] - 238:15, 238:20
**129** [1] - 175:25
**12:15** [1] - 226:6
**13** [3] - 255:7, 268:15, 271:2
**14** [2] - 253:10, 271:1
**14-CV-6459(JBW** [1] - 166:3
**16** [1] - 255:7
**17** [2] - 206:17, 212:21
**170** [1] - 281:21

**176** [2] - 281:4, 281:5
**17th** [2] - 265:22, 276:14
**183** [1] - 281:22
**188** [2] - 281:23, 281:24
**19** [1] - 248:1
**190** [1] - 281:25
**191** [1] - 282:1
**192** [1] - 281:7
**1987** [3] - 258:18, 258:20, 258:21
**1991** [1] - 258:23
**1996** [1] - 259:1
**1997** [3] - 177:13, 177:16, 229:18
**1998** [5] - 210:6, 211:7, 212:21, 213:1, 235:17

## 2

**2-20-09** [1] - 236:18
**2-20-2009** [2] - 236:5, 236:6
**2-22-2006** [1] - 235:20
**2-23-2009** [1] - 236:3
**2-5-2009** [1] - 236:3
**2002** [9] - 177:16, 177:18, 206:17, 207:3, 221:2, 265:22, 276:15, 276:25, 277:2
**2006** [4] - 177:9, 177:18, 177:21, 259:2
**2008** [24] - 177:22, 177:24, 178:1, 192:9, 192:13, 207:5, 207:12, 208:13, 208:24, 212:20, 218:22, 220:3, 220:15, 220:16, 220:22, 222:2, 231:1, 246:17, 246:20, 247:5, 248:1, 258:15, 258:20, 259:3
**2009** [8] - 230:1, 230:14, 231:9, 232:17, 234:25, 248:1, 249:18, 277:17
**201** [1] - 238:11
**2010** [8] - 241:18, 242:6, 242:15, 242:17, 242:25, 243:3, 250:22, 252:11

**2011** [13] - 171:14, 172:1, 230:1, 230:14, 252:3, 253:13, 255:9, 260:13, 260:14, 260:17, 261:11, 265:25, 266:5
**2012** [1] - 211:3
**2013** [2] - 211:3, 276:23
**2015** [2] - 166:8, 280:7
**203** [1] - 282:2
**219** [1] - 173:10
**22** [2] - 171:14, 172:1
**228** [1] - 282:4
**2284** [1] - 233:12
**229** [2] - 281:9, 281:10
**237(a)(2)(A)iii** [1] - 235:24
**237(a)(2)(B)i** [1] - 235:25
**24** [4] - 235:9, 235:15, 248:17, 277:15
**242** [1] - 281:12
**2534** [2] - 173:10, 210:21
**258** [2] - 281:14, 281:15
**25th** [2] - 263:12, 278:8
**26** [3] - 244:14, 244:23, 245:5
**265** [1] - 281:17
**26th** [1] - 278:8
**286** [1] - 187:19
**298** [1] - 210:21
**2nd** [5] - 251:17, 252:3, 253:13, 255:9, 260:13, 260:17, 261:11, 265:25, 266:5

## 3

**30** [2] - 166:8, 233:5
**305** [1] - 238:10
**307** [1] - 238:11
**31** [1] - 265:17
**33** [7] - 190:15, 190:16, 190:19, 190:25, 191:3, 273:25, 282:1
**377-7027** [3] - 199:18, 202:9, 203:10
**383** [2] - 240:16, 240:25
**385** [1] - 240:16

## 4

**4-10-2008** [1] - 235:24
**4-30** [1] - 234:25
**41** [3] - 232:22, 232:23, 233:2
**42** [1] - 235:22
**47** [2] - 253:20, 255:6
**4th** [1] - 276:8

## 5

**5-19-2010** [1] - 237:22
**5-30** [1] - 241:18
**5-8-2008** [1] - 235:25
**54** [2] - 191:6, 191:8
**55** [3] - 168:20, 243:18, 261:24
**56** [1] - 243:18
**57** [1] - 243:18
**58** [6] - 168:20, 243:19, 247:23, 247:24, 247:25, 261:24
**5th** [1] - 231:8

## 6

**6** [1] - 268:24
**60** [6] - 251:10, 251:13, 251:17, 252:19, 253:1, 253:2
**61** [3] - 171:3, 171:13, 171:25
**613-2503** [1] - 166:22
**63** [3] - 170:6, 170:25, 281:21
**64** [6] - 251:6, 251:8, 251:9, 251:13, 251:15, 253:7
**65** [4] - 171:6, 251:6, 251:25, 252:2
**68** [11] - 203:9, 203:17, 203:18, 203:21, 204:3, 204:8, 204:17, 204:24, 207:18, 222:8, 282:2

## 7

**70** [6] - 182:18, 182:21, 182:24, 183:7, 183:10, 281:22
**71** [7] - 189:18, 189:20, 190:4, 190:6, 201:22, 201:24, 281:25
**718** [4] - 166:22, 199:18, 202:9,

**203**:10
**718-377-7027** [3] - 214:2, 255:24, 256:9
**73** [8] - 201:19, 201:24, 201:25, 202:3, 202:6, 203:17, 203:18, 282:2
**79** [1] - 171:19

## 8

**8-27-2007** [1] - 235:20
**85** [1] - 174:6
**879** [2] - 235:4, 235:8
**898** [1] - 233:12
**899** [1] - 233:12

## 9

**9-15** [1] - 245:2
**9-17-2002** [2] - 221:21, 222:4
**90** [1] - 234:1
**92** [1] - 221:13
**93** [2] - 172:10, 172:19
**95** [2] - 244:13, 244:20
**96** [3] - 244:20, 244:25, 255:5
**9:30** [2] - 279:12, 280:7

## A

**A-file** [6] - 217:2, 217:14, 272:3, 272:9, 272:16, 272:19
**a.m** [2] - 166:9, 280:7
**A41458063** [1] - 216:19
**ability** [1] - 260:2
**absurdity** [1] - 186:6
**academies** [1] - 229:21
**Academy** [3] - 178:11, 178:12
**accepting** [2] - 174:17, 186:10
**access** [2] - 170:14, 200:5
**according** [1] - 266:6
**account** [1] - 175:16
**accountable** [2] - 268:9, 270:25
**accumulated** [1] - 210:15
**accuracy** [2] - 173:22, 200:14
**accurate** [2] - 209:21,

269:22
**acquired** [1] - 210:9
**Act** [1] - 274:5
**action** [3] - 243:6, 243:8, 246:16
**actions** [4] - 167:19, 167:21, 167:22, 169:2
**actual** [2] - 206:14, 212:16
**add** [2] - 195:2, 278:4
**added** [1] - 251:3
**additional** [2] - 195:2, 270:9
**additionally** [1] - 169:10
**address** [4] - 199:13, 233:19, 255:19, 256:6
**addressed** [6] - 185:18, 242:9, 242:19, 249:1, 249:9, 250:1
**addresses** [1] - 170:10
**adept** [1] - 279:24
**adhere** [1] - 271:10
**adhered** [1] - 267:21
**adjourned** [1] - 280:6
**adjournment** [3] - 225:16, 225:24, 257:7
**adjudicated** [6] - 242:10, 242:11, 247:13, 247:16, 250:2, 263:21
**adjudicates** [1] - 263:19
**Administrative** [4] - 249:6, 250:9, 263:25
**admissibility** [1] - 174:3
**admission** [3] - 188:22, 190:24, 228:7
**admit** [2] - 168:12, 168:15
**admitted** [15] - 169:7, 169:18, 170:4, 170:24, 171:17, 172:4, 173:11, 183:9, 188:4, 188:24, 190:5, 191:2, 228:9, 228:14, 228:15
**advised** [1] - 260:18
**advises** [1] - 233:18
**advisory** [3] - 174:10, 175:9, 175:12
**affidavit** [1] - 211:7

**afternoon** [2] - 173:17, 258:8
**agency** [1] - 225:20
**Agent** [4] - 178:4, 178:5, 231:4, 259:20
**ages** [1] - 219:16
**ago** [3] - 177:4, 211:22, 245:12
**agree** [4] - 257:5, 265:25, 277:1, 279:8
**agreed** [4] - 175:8, 264:1, 264:8, 278:4
**ahead** [2] - 186:22, 269:16
**aided** [1] - 166:25
**Airport** [1] - 177:17
**alien** [5] - 173:6, 180:14, 180:16, 182:4, 183:19, 189:23, 194:9, 194:12, 194:23, 196:8, 196:10, 204:18, 208:10, 209:18, 275:19
**Alien** [1] - 183:4
**Alienage** [4] - 204:25, 205:15, 205:16, 222:9
**aliens** [3] - 178:6, 266:8, 275:12
**allegations** [1] - 186:16
**allow** [5] - 218:13, 226:12, 262:15, 265:5, 272:6
**allows** [1] - 277:21
**almost** [1] - 231:18
**alone** [1] - 275:11
**Amendment** [3] - 178:15, 273:6, 273:8
**America** [1] - 167:2
**AMERICA** [1] - 166:6
**analogue** [1] - 167:25
**Analysis** [1] - 240:17
**analysis** [5] - 238:18, 240:19, 252:14, 252:17, 279:5
**Andren** [1] - 169:8, 179:7, 195:9, 195:23, 196:1, 196:7, 196:22, 216:1, 223:10, 231:3, 259:21
**andren** [10] - 196:16, 197:20, 200:25, 201:15, 202:20, 202:24, 203:2, 204:14, 204:22, 205:9

**Andren's** [2] - 214:11, 216:10
**Andrew** [2] - 229:2, 229:4
**ANDREW** [1] - 281:9
**answer** [31] - 200:23, 217:7, 242:18, 242:22, 245:12, 245:25, 250:10, 255:7, 265:6, 265:7, 268:25, 269:7, 269:8, 269:11, 269:14, 269:17, 270:11, 271:8, 271:12, 271:18, 272:1, 272:17, 272:21, 275:4, 276:1, 276:5, 276:21, 277:11, 277:13, 279:8
**answered** [7] - 181:16, 209:4, 217:11, 217:18, 243:1, 243:2, 262:13
**answers** [1] - 271:3
**appeal** [3] - 236:2, 249:5, 261:18, 264:8, 264:11
**appealed** [4] - 250:7, 250:8, 263:24, 264:6
**Appeals** [4] - 231:8, 249:7, 250:8, 250:9, 261:20, 261:21, 263:25, 264:7, 264:8, 264:12, 264:13, 264:14, 276:23
**Appear** [4] - 184:11, 187:18, 188:12, 188:16, 188:17, 189:9, 191:22, 192:5
**appearance** [2] - 263:13, 273:16
**appeared** [2] - 263:12, 273:15
**application** [9] - 213:5, 242:11, 248:22, 248:24, 250:1, 257:4, 263:16, 263:20, 263:22
**applied** [4] - 262:11, 263:2, 263:9, 279:5
**applies** [2] - 205:17, 207:24
**apply** [3] - 262:8, 262:16, 278:3
**approval** [4] - 184:25, 186:22, 272:22, 272:24

**approve** [1] - 185:1
**approved** [4] - 187:3, 187:6, 192:5, 232:6
**April** [2] - 192:9, 192:13
**area** [1] - 174:24
**Area** [1] - 230:16
**argue** [1] - 169:10
**argued** [2] - 169:17, 186:4
**argument** [1] - 171:19
**argumentative** [1] - 266:4
**arrangements** [2] - 232:14, 232:17
**arrest** [10] - 174:21, 259:8, 266:8, 266:19, 267:14, 267:17, 267:18, 272:22, 275:12, 275:17
**Arrest** [3] - 187:19, 189:23, 191:22
**arrested** [1] - 174:18
**aside** [1] - 223:3
**assigned** [3] - 179:24, 230:11, 230:13
**assist** [2] - 233:7, 267:8
**assistant** [1] - 259:2
**assisting** [1] - 233:14
**assume** [1] - 254:6
**assumed** [1] - 271:8
**attempt** [1] - 203:5
**attempted** [5] - 180:20, 180:21, 235:18, 238:21, 238:22
**attention** [7] - 199:4, 201:18, 215:1, 221:20, 232:21, 234:20, 237:16
**attorney** [15] - 171:8, 171:20, 184:18, 184:19, 185:4, 185:15, 185:25, 186:1, 186:14, 186:18, 187:1, 187:16, 222:16, 222:21, 254:2
**ATTORNEY** [1] - 166:18
**attorney's** [2] - 184:25, 186:24
**Attorney's** [1] - 254:22
**attorney-client** [1] - 254:2
**attorney/client** [1] - 171:8
**attorneys** [10] - 171:7,

175:7, 183:15, 186:5, 207:15, 223:3, 226:9, 248:13, 254:14, 260:8
**authority** [1] - 267:18
**authorized** [1] - 238:10
**available** [9] - 214:3, 226:22, 228:1, 236:11, 239:4, 257:1, 257:2, 257:16, 270:18
**awaiting** [1] - 239:6, 239:21, 261:20
**award** [2] - 174:15, 174:20
**awards** [3] - 174:21, 174:23, 174:24
**aware** [3] - 181:9, 181:19, 252:12

**B**

**background** [1] - 219:16
**BAI** [1] - 234:12
**base** [1] - 205:23
**based** [9] - 171:6, 174:24, 175:15, 177:24, 184:3, 205:8, 239:11, 277:3, 278:15
**Based** [2] - 236:7, 236:10
**basis** [2] - 173:25, 184:1
**Batavia** [3] - 229:14, 239:15, 266:25
**Bates** [1] - 173:6, 173:9, 173:10, 210:21
**BB** [1] - 228:9
**bears** [1] - 210:20
**became** [6] - 221:2, 234:11, 265:21, 276:10, 276:14, 277:1
**become** [1] - 233:5
**becoming** [1] - 233:6
**BEFORE** [1] - 166:12
**beforehand** [1] - 167:13
**began** [2] - 195:20, 225:12
**begin** [1] - 227:25
**behind** [2] - 263:6, 263:11
**belief** [2] - 265:4, 278:2

belive [1] - 256:21
bench [1] - 228:5
BENCH [1] - 166:12
beneficial [1] - 253:17
best [1] - 226:20
better [1] - 269:18
between [4] - 171:7,
217:5, 229:25, 251:1
BIA [7] - 236:3,
236:23, 249:5,
249:6, 253:9, 277:3
binder [3] - 182:19,
184:6, 232:22
biological [1] - 210:10
birth [8] - 194:3,
194:5, 194:6,
214:18, 236:7,
236:24, 275:11,
275:14
bit [2] - 235:11, 269:17
black [1] - 184:5
blacked [2] - 184:17,
215:3
Board [8] - 231:7,
250:7, 261:19,
261:20, 264:7,
264:14, 276:23
body [1] - 277:22
Bond [1] - 184:11
bono [1] - 248:12
born [6] - 178:20,
180:18, 180:19,
182:4, 183:22,
275:16
bottom [3] - 183:5,
233:12, 271:2
box [3] - 204:9, 274:3,
274:12
break [7] - 227:19,
227:22, 227:24,
228:4, 256:22,
256:25, 257:9
Bridge [1] - 258:22
brief [5] - 168:6,
186:9, 186:11,
235:6, 258:19
briefed [1] - 169:24
briefly [1] - 177:14,
222:6
briefs [1] - 169:25
bring [5] - 226:18,
226:24, 257:17,
273:12, 279:1
Brooklyn [2] - 166:6,
199:14
Buffalo [14] - 191:24,
192:6, 225:10,
229:14, 230:9,
232:1, 256:21,
256:23, 257:22,

258:10, 258:22,
259:23, 259:24,
260:1
burden [2] - 275:21,
276:2
bureaucracy [1] -
185:17
BURNS [49] - 166:16,
189:2, 189:5,
189:10, 192:3,
192:19, 203:13,
203:20, 204:6,
208:8, 208:16,
208:19, 208:21,
209:12, 209:17,
210:6, 210:17,
211:6, 212:3,
212:15, 212:17,
212:18, 214:4,
214:7, 214:11,
214:14, 215:15,
215:20, 215:25,
217:12, 217:19,
217:20, 218:5,
218:6, 218:17,
218:20, 219:25,
220:11, 220:19,
221:11, 222:11,
222:14, 225:14,
225:23, 226:8,
226:13, 227:3,
227:16, 281:8
BY [45] - 166:15,
166:18, 176:23,
181:25, 183:12,
185:13, 186:13,
187:14, 188:7,
189:17, 190:14,
191:5, 192:19,
203:20, 204:6,
208:8, 208:21,
212:3, 212:18,
214:14, 215:25,
217:12, 217:20,
218:6, 219:25,
220:19, 221:11,
222:14, 229:9,
241:8, 242:2, 243:4,
244:19, 245:7,
245:15, 246:14,
251:22, 258:7,
265:13, 281:6,
281:8, 281:11,
281:13, 281:16,
281:18

## C

cannot [1] - 267:17
capabilities [1] -
279:21

care [4] - 169:23,
172:7, 179:18, 255:1
career [2] - 229:20,
258:20
Case [1] - 167:1
case [101] - 169:14,
169:15, 170:18,
170:21, 171:10,
174:17, 174:22,
175:24, 176:3,
179:6, 179:9,
179:10, 179:13,
179:14, 179:16,
179:17, 179:23,
179:24, 180:14,
181:15, 182:1,
183:15, 184:25,
185:1, 186:25,
187:4, 188:19,
190:2, 192:2, 192:8,
195:9, 195:20,
210:1, 230:9,
230:14, 230:18,
230:22, 231:6,
231:14, 231:22,
234:5, 234:12,
234:13, 236:23,
236:24, 238:18,
240:5, 240:13,
242:8, 242:9,
242:19, 243:6,
243:8, 243:10,
243:12, 243:13,
246:16, 246:21,
246:22, 246:24,
247:2, 247:4, 247:8,
247:11, 247:12,
247:20, 248:19,
248:25, 249:6,
249:7, 249:17,
249:18, 249:24,
250:8, 250:15,
250:19, 252:16,
253:23, 254:3,
259:13, 261:17,
261:19, 261:21,
262:9, 262:11,
263:3, 263:10,
263:13, 264:15,
264:16, 264:17,
264:19, 265:8,
269:9, 273:2, 273:3,
276:6, 277:25,
278:21
cases [3] - 175:19,
186:20, 193:14
Castle [1] - 177:25
catch [1] - 208:23
CAUSE [1] - 166:12
CC [4] - 228:7, 228:11,

228:12, 282:4
Central [1] - 192:22
certain [5] - 193:14,
196:8, 212:4, 221:8,
230:8
Certainly [1] - 225:23
certainly [5] - 207:17,
210:8, 210:12,
254:1, 254:4
Certificate [5] -
170:12, 180:3,
181:1, 181:6, 206:22
certificate [6] -
207:10, 236:7,
236:25, 237:11,
263:16, 265:18
Certificates [1] -
170:22
chain [2] - 252:7,
252:11
chance [4] - 175:9,
192:11, 252:20,
269:13
change [6] - 260:19,
260:21, 260:23,
261:3, 261:8, 269:14
changed [3] - 214:6,
261:1, 278:13
changing [1] - 271:24
characterization [1] -
168:3
characterize [1] -
275:3
charge [1] - 266:25
charges [2] - 186:16,
188:19
charging [18] -
179:14, 180:15,
182:16, 191:13,
197:16, 198:9,
198:20, 199:21,
200:4, 201:14,
202:19, 206:4,
206:20, 206:23,
207:1, 208:25,
222:15, 225:7
check [2] - 200:19,
279:23
checked [2] - 274:3,
274:12
checks [1] - 268:5
Chief [17] - 240:10,
240:12, 240:14,
240:18, 240:19,
248:9, 250:17,
250:22, 252:9,
252:14, 252:17,
260:18, 261:7,
264:22, 264:23,
264:24, 277:18

child [1] - 260:25
CHO [54] - 166:19,
176:15, 176:23,
183:7, 183:12,
184:15, 184:18,
184:20, 185:3,
185:6, 185:8,
185:10, 185:13,
185:18, 185:23,
186:1, 186:8,
186:12, 186:13,
187:14, 188:3,
188:7, 188:21,
189:7, 189:17,
190:4, 190:12,
190:14, 190:24,
191:5, 192:15,
209:3, 209:6, 209:9,
209:11, 209:14,
217:11, 217:18,
218:3, 218:11,
219:10, 220:6,
220:14, 225:15,
225:20, 225:25,
226:4, 226:21,
227:6, 227:11,
227:21, 279:14,
280:3, 281:6
cho [1] - 181:25
chosen [2] - 232:7,
232:9
Circuit [11] - 174:11,
236:4, 238:25,
239:4, 239:6,
239:21, 261:18,
261:19, 264:12,
264:13
CIS [29] - 192:25,
193:2, 193:5,
193:10, 193:20,
194:13, 194:21,
194:24, 195:6,
195:11, 196:2,
200:5, 217:21,
218:1, 218:8, 219:8,
220:3, 220:22,
220:25, 221:17,
221:24, 263:20,
263:24, 264:1,
278:22
CIS's [1] - 278:19
cited [1] - 168:24
Citizen [2] - 244:5,
277:21
citizen [45] - 171:15,
172:3, 180:23,
180:25, 181:4,
181:10, 182:3,
194:17, 198:24,
205:13, 206:14,

207:8, 207:12,
220:4, 220:23,
221:2, 235:10,
235:15, 247:5,
248:6, 249:22,
251:13, 251:18,
253:11, 253:15,
255:12, 261:12,
261:15, 262:3,
262:21, 265:21,
265:24, 266:5,
267:4, 267:10,
267:14, 270:5,
276:3, 276:11,
276:14, 277:1,
277:25, 278:6,
278:10
**citizens** [9] - 168:23,
182:13, 205:5,
205:24, 206:2,
207:19, 266:20,
267:12, 267:18
**Citizenship** [10] -
170:13, 170:22,
181:1, 181:7,
247:17, 248:16,
249:2, 263:17,
278:12
**citizenship** [46] -
170:23, 181:18,
193:6, 193:18,
194:18, 205:21,
210:11, 221:1,
221:5, 224:3,
224:25, 240:3,
242:6, 242:15,
242:24, 243:6,
247:14, 248:23,
249:8, 250:13,
251:16, 253:17,
255:12, 260:20,
260:25, 261:2,
261:9, 262:19,
262:22, 262:23,
263:14, 263:16,
263:19, 263:23,
264:2, 264:5,
264:10, 265:3,
265:18, 270:7,
276:24, 277:9,
277:16, 277:19,
277:23, 278:24
**civil** [1] - 267:14
**CIVIL** [1] - 166:12
**Claim** [2] - 240:3,
248:16
**claim** [34] - 167:18,
167:19, 168:2,
169:2, 169:4, 176:2,
176:3, 181:19,

242:10, 242:15,
242:20, 242:24,
243:5, 247:14,
248:7, 248:22,
249:1, 249:8,
249:22, 249:25,
250:5, 250:13,
251:16, 253:16,
255:11, 260:19,
262:19, 262:22,
262:23, 263:14,
267:12, 277:9,
277:16, 277:22
**claimed** [1] - 181:18
**claiming** [7] - 181:10,
219:17, 262:3,
262:21, 277:25,
278:6, 278:9
**claims** [10] - 246:2,
246:8, 248:5, 252:2,
262:3, 263:7,
263:19, 265:2,
267:9, 277:19
**Claims** [1] - 248:4
**Clare** [6] - 180:1,
182:8, 184:4, 187:2,
191:18, 200:17
**clarification** [3] -
167:15, 167:17,
176:8
**class** [1] - 235:17
**classes** [1] - 270:7
**clear** [11] - 174:11,
176:2, 230:25,
231:6, 254:19,
256:21, 257:15,
257:20, 260:15,
263:1, 270:8
**clearing** [1] - 195:12
**clearly** [1] - 216:21
**CLERK** [1] - 176:19
**client** [1] - 254:2
**close** [1] - 279:1
**closely** [1] - 209:14
**cocaine** [1] - 180:21
**code** [1] - 238:9
**Code** [1] - 238:11
**colleague** [1] - 167:15
**collected** [1] - 197:2
**column** [2] - 199:5
**combination** [1] -
194:1
**command** [3] - 252:7,
252:11, 267:20
**comment** [1] - 250:21
**comments** [6] -
243:11, 243:12,
243:13, 246:16,
246:22, 246:24,
247:3, 247:5, 247:8,

247:11, 247:20,
249:17, 249:18,
250:16, 250:19
**common** [1] - 195:1
**commonly** [1] - 244:4
**communication** [1] -
254:3
**communications** [1] -
171:20
**community** [5] -
236:8, 238:24,
239:9, 239:12,
239:16
**commute** [1] - 174:19
**compensatory** [1] -
174:15
**compiled** [1] - 197:21
**complaint** [1] - 209:9
**complete** [4] - 196:16,
237:20, 239:18,
240:4
**completed** [14] -
211:13, 233:9,
234:23, 235:1,
237:22, 237:23,
239:17, 240:5,
241:13, 241:15,
242:17, 243:3,
250:22, 257:6
**completely** [2] -
170:15, 263:7
**completing** [1] -
240:13
**compliance** [8] -
268:2, 268:3,
268:10, 269:2,
269:4, 269:9,
269:10, 269:21
**Complies** [16] -
216:15, 221:14,
232:25, 234:19,
235:5, 237:17,
238:4, 238:17,
240:1, 241:10,
244:15, 248:2,
251:7, 251:12,
251:24, 252:1
**comply** [5] - 267:24,
268:1, 269:5,
271:20, 278:7
**computer** [2] - 219:12,
237:9
**Computer** [1] - 166:25
**Computer-aided** [1] -
166:25
**computerized** [1] -
166:24
**conceded** [1] - 203:14
**conceding** [1] - 186:3
**concerns** [2] - 223:23,

224:21
**conclude** [1] - 225:25
**conclusion** [10] -
174:18, 180:17,
180:24, 205:8,
251:15, 251:18,
251:20, 251:23,
275:10, 275:25
**conclusions** [3] -
175:16, 224:3,
224:25
**conducted** [7] -
178:19, 184:3,
234:3, 241:22,
264:18, 278:10,
278:17
**conducting** [1] - 193:9
**conducts** [1] - 195:6
**conferred** [1] - 254:8
**Confers** [1] - 244:17
**confirm** [1] - 200:13
**confirmed** [2] -
219:18, 220:3
**confusion** [1] - 222:12
**congruent** [1] -
219:17
**conjunction** [3] -
194:4, 194:5, 194:24
**connection** [2] -
212:24, 213:4
**considered** [1] -
230:17
**Constitutional** [1] -
174:12
**Consulate** [8] -
231:15, 232:6,
232:11, 232:15,
232:18, 232:20,
236:10, 239:2
**consulate** [2] -
233:19, 236:20
**consult** [2] - 248:9,
260:8
**consultation** [1] -
261:7
**consultations** [1] -
264:22
**consulted** [1] - 207:15
**contact** [1] - 264:24
**contacted** [3] -
199:24, 202:20,
202:24
**contained** [1] - 215:5
**contains** [3] - 186:16,
193:2, 211:3
**contention** [2] - 211:9,
215:14
**continue** [9] - 169:3,
236:12, 237:14,
239:20, 245:14,

260:15, 260:17,
264:20, 272:14
**Continue** [1] - 241:12
**continued** [1] - 239:5
**Continued** [2] - 213:7,
252:21
**controlled** [2] -
235:21, 238:22
**convicted** [4] -
180:19, 180:20,
235:18, 235:21
**conviction** [1] -
188:19
**convictions** [2] -
182:5, 238:21
**convinced** [1] -
170:19
**Coordinator** [1] -
230:16
**copies** [1] - 236:22
**copy** [5] - 208:17,
210:20, 236:6,
236:24, 240:22
**corner** [1] - 221:21
**Correct** [5] - 215:7,
220:11, 245:19,
248:14, 249:16
**correct** [192] - 192:25,
193:3, 193:7,
193:10, 193:11,
193:12, 193:15,
193:18, 194:7,
194:10, 194:11,
194:14, 194:17,
194:21, 194:22,
194:24, 195:3,
195:7, 195:13,
195:16, 195:17,
195:21, 195:24,
195:25, 196:2,
196:5, 196:8,
196:11, 196:14,
196:17, 196:20,
196:24, 197:2,
197:9, 197:21,
198:1, 198:6,
198:13, 198:18,
198:21, 198:24,
199:3, 199:11,
199:16, 199:17,
199:18, 199:19,
200:5, 200:9,
200:11, 200:12,
200:21, 200:23,
201:6, 201:10,
201:12, 201:16,
201:23, 202:4,
202:7, 202:8, 202:9,
202:10, 202:12,
202:15, 203:11,

203:13, 203:23,
204:9, 204:12,
204:15, 204:19,
204:22, 205:2,
205:6, 205:10,
205:13, 205:18,
205:21, 205:24,
205:25, 206:2,
206:5, 206:11,
206:14, 206:17,
206:20, 207:9,
207:13, 207:21,
208:2, 209:2, 211:2,
211:14, 211:21,
212:4, 212:8,
212:11, 212:14,
212:15, 212:17,
213:5, 214:7,
214:11, 214:16,
214:19, 214:22,
215:6, 215:9, 216:2,
216:8, 216:11,
216:17, 216:19,
216:23, 217:14,
218:2, 218:10,
220:5, 220:14,
221:3, 221:18,
221:24, 221:25,
222:4, 222:17,
222:19, 223:7,
223:10, 223:13,
223:15, 223:18,
223:24, 224:8,
224:12, 224:22,
225:8, 225:12,
231:5, 231:10,
234:16, 237:14,
237:15, 238:2,
238:14, 244:6,
245:18, 245:20,
245:21, 245:22,
245:23, 245:25,
246:22, 247:1,
247:7, 247:22,
248:7, 248:8,
248:10, 248:11,
248:13, 248:18,
248:21, 250:25,
251:5, 252:3, 252:4,
253:6, 253:7, 253:8,
253:12, 253:15,
255:15, 259:25,
266:10, 266:13,
266:14, 267:1,
267:5, 267:22,
268:18, 268:23,
269:1, 270:11,
270:13, 272:4,
275:20, 276:8, 279:5
**Corrections** [1] -
236:1

**Counsel** [15] - 240:10,
240:12, 240:14,
240:18, 240:20,
244:24, 248:10,
250:17, 250:23,
252:6, 252:9,
252:14, 252:17,
264:23
**counsel** [2] - 225:20,
262:25
**Counsel's** [4] -
260:18, 261:7,
264:24, 277:18
**countries** [1] - 237:7
**country** [4] - 231:19,
231:21, 259:11,
266:12
**county** [1] - 178:7
**County** [2] - 235:19,
235:22
**couple** [1] - 167:12
**course** [9] - 193:6,
198:8, 209:23,
210:9, 210:16,
229:19, 237:25,
254:9, 258:20
**courses** [1] - 178:15
**COURT** [186] - 166:1,
166:13, 167:3,
167:8, 167:11,
167:14, 167:21,
168:5, 168:9,
168:17, 168:21,
170:4, 170:7,
170:24, 171:4,
171:17, 171:24,
172:4, 172:7,
172:15, 172:22,
173:2, 173:11,
173:19, 174:1,
174:7, 175:1, 175:4,
175:13, 175:19,
176:4, 176:9,
176:13, 181:16,
181:22, 183:9,
184:17, 184:19,
184:21, 184:23,
185:2, 185:5, 185:7,
185:9, 185:11,
185:15, 185:21,
185:25, 186:3,
186:9, 187:6, 187:8,
187:10, 187:13,
188:2, 188:4,
188:24, 189:4,
189:8, 189:12,
189:16, 190:5,
190:11, 191:2,
192:4, 192:10,
192:14, 192:16,

203:10, 203:14,
203:17, 204:5,
208:7, 208:15,
208:17, 208:20,
209:5, 209:7,
209:10, 210:24,
211:4, 211:8,
211:13, 211:16,
211:19, 211:23,
212:1, 212:13,
212:16, 214:1,
214:6, 214:9,
214:13, 215:8,
215:14, 215:16,
215:23, 218:13,
218:15, 218:19,
218:21, 218:23,
218:25, 219:5,
219:7, 219:15,
219:23, 220:9,
220:12, 220:18,
221:6, 221:10,
225:18, 225:22,
226:2, 226:5,
226:11, 226:15,
226:20, 226:23,
227:2, 227:4, 227:9,
227:12, 227:15,
227:18, 227:22,
227:24, 228:4,
228:11, 228:13,
228:17, 228:19,
229:1, 229:3, 229:5,
229:7, 240:24,
241:2, 241:25,
243:2, 245:4, 245:6,
251:21, 252:19,
253:21, 254:5,
254:16, 255:1,
256:19, 257:4,
257:9, 257:13,
257:17, 262:15,
262:17, 265:5,
265:7, 266:4,
269:16, 271:17,
272:6, 272:17,
272:20, 273:11,
274:23, 275:3,
275:7, 275:10,
276:1, 276:5,
276:13, 276:17,
276:20, 277:7,
277:11, 277:13,
279:1, 279:8,
279:11, 279:17,
279:23, 280:1, 280:4
**court** [10] - 215:1,
215:21, 235:12,
242:10, 247:12,
247:19, 248:23,

249:9, 262:24, 278:7
**Court** [14] - 166:21,
166:22, 179:12,
180:7, 182:1,
230:20, 235:19,
235:22, 255:22,
264:12, 264:13,
273:3, 273:7, 274:19
**Court's** [3] - 170:9,
170:16, 189:13
**Courthouse** [1] -
166:5
**courtroom** [1] -
279:21
**COURTROOM** [1] -
257:24
**courts** [1] - 175:14
**cover** [2] - 173:1,
210:18
**create** [1] - 180:15
**created** [5] - 183:14,
204:1, 240:7, 240:8,
240:9
**creates** [2] - 169:19,
169:21
**criminal** [11] - 177:18,
178:6, 180:4,
180:20, 182:5,
188:19, 228:24,
235:21, 236:7,
238:22, 239:13
**Criminal** [2] - 178:4,
178:5
**criteria** [1] - 278:20
**critical** [1] - 176:11
**cross** [5] - 189:13,
192:17, 226:12,
257:12, 279:1
**CROSS** [6] - 192:18,
242:1, 265:12,
281:7, 281:12,
281:17
**cross-examination** [1]
- 192:17
**CROSS-**
**EXAMINATION** [6] -
192:18, 242:1,
265:12, 281:7,
281:12, 281:17
**CSR** [1] - 166:21
**current** [6] - 177:6,
183:22, 194:20,
229:15, 233:16,
258:12
**CURRIE** [1] - 166:17
**custody** [28] - 190:3,
210:16, 234:1,
234:7, 234:15,
235:25, 236:12,
237:14, 238:6,

238:25, 239:14,
241:23, 259:16,
260:2, 260:4, 260:9,
260:12, 260:17,
260:20, 261:10,
264:18, 264:19,
273:22, 273:23,
273:25, 274:6,
274:11
**Custody** [16] - 184:12,
187:20, 190:20,
191:22, 233:24,
234:3, 234:4,
234:10, 234:14,
234:22, 235:1,
237:13, 237:19,
237:20, 237:23,
241:14
**Customs** [3] - 177:2,
229:13, 258:10

**D**

**daily** [1] - 264:25
**damages** [1] - 174:15
**data** [2] - 193:2,
203:25
**database** [12] -
170:10, 170:11,
170:14, 170:15,
170:22, 180:4,
192:22, 196:2,
220:3, 220:22,
221:24
**Date** [1] - 245:2
**date** [22] - 171:1,
171:15, 172:3,
183:11, 188:6,
189:1, 190:7, 191:4,
192:8, 192:12,
194:3, 194:5, 194:6,
203:19, 214:18,
220:24, 221:21,
221:25, 234:25,
237:22, 253:13,
265:20
**dated** [6] - 173:5,
210:4, 211:7,
234:24, 234:25,
252:3
**Davino** [45] - 167:1,
179:4, 179:6,
179:15, 179:22,
179:23, 179:25,
180:13, 180:18,
181:1, 181:9,
186:17, 188:20,
190:2, 191:17,
195:19, 195:24,
196:16, 200:17,

201:15, 202:7,
204:11, 206:13,
207:12, 207:18,
208:25, 209:18,
212:6, 212:8,
212:10, 212:25,
213:4, 216:11,
217:14, 217:16,
222:22, 223:15,
223:21, 223:24,
224:14, 224:18,
230:3, 256:14,
265:18, 265:20
**DAVINO** [1] - 166:3
**Davino's** [5] - 181:5,
184:4, 187:2, 213:4,
217:17
**days** [2] - 233:6, 234:1
**deal** [1] - 168:11
**dealt** [1] - 169:8
**December** [1] - 260:14
**decide** [3] - 179:3,
264:14, 264:20
**decided** [1] - 253:17
**decision** [15] - 175:15,
175:17, 178:24,
185:16, 185:19,
185:24, 243:7,
243:8, 246:16,
260:11, 263:24,
264:7, 273:22,
276:24, 277:3
**Decision** [1] - 241:12
**decisions** [2] -
176:10, 211:3
**declared** [1] - 181:22
**deemed** [1] - 197:8
**Defendant** [1] - 258:4
**defendant** [3] - 166:7,
172:6, 243:23
**defendant's** [1] -
169:2
**Defendant's** [4] -
228:7, 234:18,
255:16, 282:4
**Defendants** [1] -
166:17
**defendants** [1] - 228:8
**definition** [1] - 260:25
**defy** [1] - 259:11
**degree** [5] - 180:21,
180:22, 235:19,
238:22, 238:23
**delivered** [1] - 197:6
**demonstrate** [2] -
252:10, 275:18
**denial** [1] - 278:19
**denied** [3] - 250:2,
251:1, 263:21
**depart** [1] - 233:4

**Department** [1] -
229:12
**department** [1] - 177:2
**Deportability** [4] -
204:25, 205:16,
205:17, 222:9
**deportability** [1] -
183:20
**deportable** [7] -
180:14, 180:16,
180:19, 180:22,
181:23, 182:3, 182:5
**Deportable** [1] - 183:3
**deportation** [23] -
177:7, 177:8,
177:23, 178:3,
187:6, 187:7, 187:8,
187:9, 225:12,
229:16, 229:23,
230:2, 230:8,
230:12, 231:7,
231:11, 231:13,
234:23, 237:25,
258:24, 272:2, 272:8
**Deportation** [4] -
176:15, 177:21,
235:3, 259:2
**deported** [2] - 178:21,
178:25
**deposition** [19] -
172:11, 172:16,
172:20, 196:23,
244:13, 244:17,
244:24, 245:8,
245:17, 245:20,
245:22, 253:19,
255:5, 268:13,
268:18, 268:22,
269:13, 271:1, 278:1
**depositions** [1] -
244:21
**DEPUTY** [1] - 257:24
**derivation** [2] -
205:17, 207:24
**derivative** [4] -
205:21, 210:11,
224:3, 224:25
**derive** [8] - 260:24,
261:2, 261:9,
263:22, 264:1,
264:5, 264:9, 278:24
**derived** [1] - 276:24
**derives** [1] - 193:18
**describe** [1] - 177:14
**described** [1] - 180:12
**description** [1] -
258:19
**designated** [1] - 189:6
**detain** [3] - 267:14,
273:8, 275:22

**detained** [6] - 179:3,
248:5, 250:24,
260:7, 264:20, 278:3
**Detained** [1] - 248:4
**detainee** [3] - 248:12,
277:8, 277:16
**detainees** [4] - 260:2,
260:4, 260:9, 268:6
**Detainer** [2] - 187:20,
191:12
**detention** [16] -
167:23, 179:2,
209:24, 229:16,
229:22, 230:7,
231:1, 239:5,
239:20, 242:7,
242:16, 259:20,
260:5, 273:14,
273:18, 273:21
**Detention** [9] -
229:14, 230:9,
232:1, 241:12,
258:24, 259:1,
259:24, 266:16,
266:25
**Determination** [3] -
187:20, 190:20,
191:23
**determination** [17] -
171:15, 172:2,
181:14, 181:20,
182:10, 186:24,
187:17, 192:1,
234:6, 263:22,
273:8, 273:14,
273:24, 274:1,
274:4, 274:11,
278:23
**determine** [2] -
178:20, 195:16
**determined** [10] -
174:16, 180:13,
181:3, 253:10,
253:14, 253:16,
264:1, 264:4, 264:9,
276:8
**DHS** [3] - 266:23,
270:16, 270:17
**difference** [2] - 207:6,
207:7
**different** [9] - 173:9,
175:20, 189:5,
206:10, 216:22,
216:25, 217:2,
218:5, 219:16
**differently** [1] - 243:15
**direct** [3] - 176:5,
197:16, 270:14
**DIRECT** [6] - 176:22,
229:8, 258:6, 281:5,

281:10, 281:15
**directed** [1] - 277:24
**directive** [9] - 246:17,
246:21, 247:6,
248:1, 248:4,
249:11, 249:12,
249:19, 267:3
**Directives** [1] - 244:5
**directives** [33] -
168:24, 169:12,
169:13, 169:16,
169:17, 170:2,
244:8, 244:9, 246:2,
247:9, 247:20,
261:24, 263:6,
263:9, 263:11,
265:2, 267:4, 267:7,
267:15, 267:19,
267:21, 267:24,
268:4, 269:6, 270:1,
270:3, 270:5,
270:19, 270:22,
271:6, 271:10,
277:20, 277:21
**Director** [11] - 250:17,
252:6, 257:21,
258:13, 259:3,
259:4, 259:6, 259:7,
259:15, 260:1,
269:20
**directors** [1] - 267:9
**disabuse** [1] - 219:18
**disagree** [2] - 271:15,
278:1
**disagreeing** [1] -
271:16
**disciplinary** [1] -
239:13
**discipline** [2] - 238:6,
238:8
**disciplined** [1] -
238:13
**discovery** [2] -
172:12, 219:4
**discrepancy** [2] -
217:5, 217:9
**discussed** [2] -
233:22, 278:1
**discussing** [1] - 267:5
**dismiss** [1] - 168:25
**dismissed** [10] -
167:20, 167:24,
176:2, 234:13,
236:3, 249:6, 249:7,
250:8, 250:9, 264:8
**dismissing** [1] -
236:24
**displayed** [1] - 189:15
**Disposition** [1] -
180:3

**dispute** [3] - 174:13,
219:11, 254:6
**DISTRICT** [3] - 166:1,
166:1, 166:13
**division** [1] - 263:18
**docket** [1] - 230:15
**document** [92] -
173:3, 179:14,
180:15, 184:8,
184:10, 185:12,
188:10, 188:17,
189:3, 189:8, 190:9,
190:22, 191:9,
198:8, 198:23,
199:13, 203:23,
204:1, 208:9,
208:11, 208:13,
208:24, 208:25,
209:4, 209:15,
209:17, 210:6,
210:8, 210:13,
210:14, 210:18,
210:21, 210:25,
211:6, 211:16,
212:19, 212:20,
212:23, 212:24,
214:1, 214:15,
214:20, 214:23,
215:21, 216:14,
216:16, 216:21,
217:6, 221:15,
221:21, 222:7,
222:9, 222:10,
222:13, 231:15,
231:17, 231:18,
231:22, 231:24,
232:5, 233:1, 233:3,
233:8, 233:15,
233:23, 234:21,
234:24, 236:21,
237:8, 237:11,
237:18, 239:3,
239:17, 239:18,
240:2, 240:4, 240:7,
240:8, 240:15,
241:19, 241:21,
252:8, 252:12,
253:23, 255:3,
255:17, 256:6,
265:17, 275:1, 275:9
**Document** [1] - 237:3
**documentation** [3] -
187:3, 187:22,
191:19
**documents** [41] -
180:2, 182:16,
187:25, 189:5,
191:14, 191:23,
192:11, 196:13,
197:16, 197:19,

198:9, 198:21,
199:21, 200:1,
200:5, 200:20,
201:15, 202:19,
206:4, 206:20,
206:24, 207:2,
209:23, 210:4,
210:15, 214:2,
218:15, 219:14,
222:15, 223:6,
224:4, 224:10,
224:25, 225:7,
243:20, 244:3,
253:22, 254:13,
254:20, 254:21,
254:23
**done** [14] - 173:13,
173:14, 175:15,
181:11, 201:1,
203:2, 236:6,
240:19, 243:11,
247:15, 252:14,
252:17, 278:18,
279:2
**Double** [2] - 228:12,
228:18
**doubt** [3] - 215:17,
215:24, 250:4
**down** [7] - 215:2,
229:7, 235:11,
256:15, 264:25,
265:20, 268:4
**download** [1] - 270:19
**drafted** [11] - 205:1,
205:4, 205:6,
207:14, 207:15,
207:17, 207:20,
207:23, 223:7,
224:10, 225:8
**drafting** [4] - 199:20,
206:23, 207:1,
208:25
**draw** [5] - 199:4,
201:18, 215:1,
221:20, 275:10
**DRO** [1] - 266:16
**Due** [1] - 239:12
**due** [1] - 261:8
**duly** [2] - 176:17,
258:4
**duplicative** [1] -
172:14
**during** [10] - 172:12,
174:19, 175:23,
219:4, 230:9,
230:14, 245:20,
264:18, 268:22,
278:1
**duties** [8] - 178:3,
178:4, 231:12,

231:13, 233:22,
233:23, 237:25,
259:5
**duty** [2] - 169:4,
231:14
**DW** [4] - 240:16,
241:1, 248:3, 251:23

# E

**e-mail** [2] - 170:10,
171:19
**E-mail** [1] - 166:23
**e-mailed** [1] - 171:7
**E-s-t-r-a-d-a** [1] -
176:21
**early** [2] - 226:5,
232:17
**EASTERN** [1] - 166:1
**Eastrada** [1] - 176:21
**educational** [1] -
256:14
**effect** [2] - 182:9,
236:10
**effort** [2] - 217:4,
217:9
**eight** [3] - 235:20,
244:2, 278:20
**Eight** [1] - 221:6
**either** [8] - 174:2,
182:12, 186:9,
201:1, 219:17,
243:12, 249:19,
257:7
**Electronic** [1] - 237:3
**email** [2] - 248:16,
252:2
**employed** [7] - 177:1,
229:11, 229:12,
229:17, 229:18,
258:9, 258:17
**employees** [2] - 268:9,
269:21
**employers** [1] -
170:14
**employment** [1] -
177:14
**encounter** [6] - 230:3,
262:2, 262:21,
267:9, 267:11,
277:24
**end** [4] - 173:16,
230:13, 241:14,
268:7
**ended** [1] - 169:15
**enforce** [1] - 266:21
**enforcement** [5] -
185:20, 185:21,
229:22, 267:15,
271:9

**Enforcement** [8] -
177:3, 229:13,
258:10, 258:11,
258:24, 262:2,
266:7, 266:24
**ensure** [10] - 262:1,
263:7, 267:20,
268:2, 268:10,
269:3, 269:10,
270:22, 271:6,
271:20
**ensured** [2] - 269:2,
269:9
**ensures** [1] - 268:3
**ensuring** [1] - 269:21
**enter** [2] - 259:11,
266:12
**entered** [3] - 171:9,
220:1, 235:16
**entire** [3] - 167:7,
223:12, 238:19
**entitled** [1] - 174:14
**entity** [1] - 266:15
**entry** [1] - 194:13
**Eric** [1] - 179:7
**ERO** [7] - 262:19,
266:15, 266:19,
267:8, 267:11,
277:24, 278:5
**ESQ** [6] - 166:15,
166:16, 166:16,
166:17, 166:18,
166:19
**essentially** [3] - 228:8,
245:11, 251:4
**establish** [4] - 267:7,
275:12, 275:18,
275:21
**Estrada** [19] - 176:15,
176:24, 185:14,
186:14, 188:8,
189:19, 191:7,
192:20, 206:3,
209:6, 209:25,
210:14, 214:15,
220:1, 220:20,
222:15, 226:19,
231:3, 259:20
**Estrada's** [2] - 210:2,
226:1
**ETD** [4] - 236:6, 237:2,
237:3, 237:8
**eventually** [1] - 264:13
**evidence** [34] - 167:4,
167:6, 167:8,
169:18, 170:16,
170:20, 171:1,
171:9, 180:23,
180:25, 181:12,
182:2, 182:12,

183:8, 183:11,
184:16, 188:6,
189:1, 190:7, 191:4,
191:8, 198:16,
200:16, 203:17,
203:19, 204:3,
208:6, 232:24,
234:18, 239:25,
244:12, 260:6,
261:10, 268:12
**exact** [1] - 278:11
**examination** [3] -
192:17, 197:17,
270:15
**EXAMINATION** [12] -
176:22, 192:18,
229:8, 242:1, 258:6,
265:12, 281:5,
281:7, 281:10,
281:12, 281:15,
281:17
**examine** [1] - 248:7
**examined** [1] - 258:5
**except** [1] - 172:22
**exchanged** [1] -
173:21
**excluded** [1] - 172:22
**excuse** [4] - 181:16,
210:24, 262:17,
269:16
**excused** [1] - 249:11
**exempt** [1] - 185:23
**Exhibit** [87] - 170:6,
170:25, 171:3,
171:6, 171:13,
171:19, 171:25,
172:20, 172:25,
182:18, 182:21,
182:24, 183:7,
183:10, 184:5,
184:7, 184:15,
184:22, 188:1,
188:5, 188:9,
188:23, 188:25,
189:7, 189:11,
189:18, 189:20,
190:4, 190:6,
190:15, 190:16,
190:19, 190:25,
191:3, 191:6, 191:8,
198:16, 199:6,
201:19, 201:22,
202:3, 202:6, 203:9,
203:21, 204:3,
204:8, 204:17,
204:24, 207:18,
208:5, 208:6,
210:20, 214:15,
216:1, 216:14,
216:21, 217:22,

218:8, 220:2,
220:21, 221:13,
222:8, 232:22,
232:23, 233:2,
234:17, 234:18,
234:20, 235:4,
237:16, 239:24,
240:2, 240:23,
241:9, 241:11,
241:12, 241:20,
247:25, 253:2,
255:16, 268:11,
281:21, 281:22,
281:23, 281:24,
281:25, 282:1
**exhibit** [10] - 170:15,
172:24, 183:19,
203:21, 233:11,
238:3, 238:5,
238:16, 240:22,
253:19
**exhibits** [10] - 168:11,
168:12, 168:16,
169:7, 169:13,
171:6, 173:13,
173:14, 228:9,
228:15
**EXHIBITS** [1] - 281:20
**Exhibits** [7] - 168:20,
172:10, 203:18,
228:7, 261:24,
282:2, 282:4
**expanded** [1] - 269:17
**expanding** [1] - 272:1
**expected** [1] - 269:5
**expedite** [1] - 228:6
**experience** [1] -
274:10
**experts** [1] - 263:19
**expired** [1] - 233:16
**explain** [8] - 179:12,
180:7, 182:1,
184:20, 185:14,
186:14, 186:21,
230:20
**explained** [1] - 269:10
**extensively** [3] -
168:24, 170:1, 176:5
**extent** [1] - 185:19
**extra** [1] - 208:17
**eyes** [1] - 264:17

# F

**face** [1] - 186:10
**facilitate** [5] - 231:16,
231:24, 232:15,
236:21, 239:3
**facility** [5] - 187:21,
229:14, 230:16,

261:11, 268:6
**Facility** [4] - 230:10, 232:2, 259:24, 267:1
**fact** [10] - 202:24, 210:10, 221:24, 239:13, 246:9, 247:8, 270:15, 271:14, 274:14
**facts** [15] - 207:5, 219:10, 240:5, 240:14, 251:3, 252:15, 261:3, 261:5, 278:11, 278:12, 278:15, 278:18, 278:21, 279:4
**failure** [1] - 233:4
**fair** [4] - 193:21, 204:1, 212:23, 272:17
**false** [7] - 169:1, 169:20, 169:21, 174:21, 176:2, 275:1, 275:9
**falsely** [1] - 174:18
**familiar** [6] - 178:16, 179:4, 192:22, 267:3, 273:3, 276:6
**family** [1] - 233:20
**far** [4] - 211:16, 237:5, 242:17, 252:12
**father** [14] - 199:2, 199:10, 203:12, 204:11, 206:10, 206:14, 206:16, 207:2, 207:12, 210:11, 212:16, 223:25, 272:3, 272:10
**father's** [2] - 167:3, 206:7
**fathers's** [1] - 204:8
**faxes** [1] - 174:6
**February** [2] - 230:13, 231:8
**fed** [1] - 226:6
**federal** [1] - 178:7
**Federal** [4] - 229:14, 230:9, 259:24, 266:25
**felt** [1] - 270:9
**few** [1] - 211:22
**Field** [13] - 250:17, 252:5, 257:21, 257:22, 258:11, 258:13, 259:3, 259:4, 259:6, 259:7, 259:15, 260:1, 269:20
**field** [4] - 215:3,

259:23, 267:8, 277:17
**fields** [4] - 194:24, 195:2, 204:1, 204:7
**Fifty** [2] - 244:1, 244:2
**Fifty-five** [2] - 244:1, 244:2
**fighting** [2] - 238:11, 238:13
**figure** [4] - 189:14, 210:9, 227:7, 279:21
**file** [83] - 167:3, 167:5, 167:7, 172:6, 173:6, 173:9, 175:11, 179:25, 180:9, 180:22, 181:5, 181:12, 182:2, 182:3, 182:7, 184:4, 187:2, 187:3, 187:17, 191:18, 194:10, 194:12, 194:23, 195:21, 196:1, 196:7, 196:14, 196:16, 196:19, 197:23, 197:25, 198:5, 200:17, 200:18, 204:14, 204:17, 204:18, 204:22, 205:13, 206:5, 206:10, 208:10, 208:15, 209:2, 209:13, 209:16, 209:18, 209:22, 209:24, 210:3, 210:4, 210:13, 210:15, 210:20, 210:22, 211:1, 211:3, 211:10, 211:11, 212:4, 212:8, 212:10, 212:11, 216:23, 218:11, 219:4, 219:12, 222:22, 223:4, 223:21, 224:7, 224:19, 225:10, 237:1, 246:16, 251:3, 254:17, 272:3, 272:9, 272:16, 272:19
**File** [14] - 217:2, 217:14, 217:17, 217:21, 217:25, 218:7, 220:1, 222:2, 223:15, 224:14, 224:16, 225:17, 226:10, 226:17
**filed** [3] - 236:4, 240:17, 264:11

**files** [18] - 180:8, 180:11, 182:11, 182:12, 184:4, 187:1, 187:21, 191:17, 191:18, 191:20, 191:24, 196:8, 196:10, 197:1, 205:8, 206:1, 212:6, 225:4
**Files** [2] - 219:9, 223:17
**filing** [2] - 215:1, 215:21
**fill** [1] - 184:13
**filled** [1] - 188:14
**Final** [2] - 242:21, 248:25, 249:10, 249:24
**final** [14] - 199:5, 230:17, 230:18, 230:21, 230:22, 231:8, 231:14, 233:5, 233:6, 234:2, 234:11, 242:8, 268:6
**finally** [1] - 174:9
**Fine** [1] - 228:19
**fine** [3] - 173:7, 226:21, 227:12
**finish** [2] - 271:17
**finished** [2] - 232:7, 232:10
**first** [13] - 169:8, 176:17, 191:8, 191:9, 193:25, 195:20, 204:7, 237:13, 258:4, 260:23, 263:13, 270:24, 273:15
**five** [8] - 227:6, 228:2, 244:1, 244:2, 253:22, 273:17, 276:10, 277:4
**FLEMING** [10] - 166:16, 167:17, 168:8, 168:14, 168:23, 170:19, 171:11, 171:22, 171:25, 173:4
**FLESSNER** [52] - 166:15, 167:6, 167:10, 167:12, 167:15, 167:22, 168:11, 168:15, 169:24, 173:13, 173:15, 173:20, 174:4, 174:9, 175:2, 175:5, 175:18, 189:14, 190:8, 191:1, 215:18, 226:16, 240:21,
**formal** [1] - 197:16
**formalized** [2] - 269:25, 270:2, 270:12
**forms** [1] - 207:14
**forth** [3] - 169:19, 230:15, 237:9
**forward** [1] - 221:12
**forwarded** [6] -

240:25, 241:3, 241:6, 242:2, 243:4, 244:16, 244:19, 244:25, 245:2, 245:5, 245:7, 245:15, 246:14, 251:22, 253:24, 254:19, 256:17, 257:11, 257:14, 262:13, 262:18, 265:4, 265:13, 275:8, 277:12, 277:14, 279:2, 281:13, 281:18
**flight** [2] - 236:8, 239:12
**flip** [6] - 198:15, 203:8, 208:4, 216:13, 221:12, 222:6
**flipping** [1] - 204:24
**FOIA** [1] - 254:21
**FOIL** [1] - 241:4
**follow** [3] - 169:5, 175:6, 246:8
**followed** [11] - 246:18, 246:21, 246:23, 247:1, 247:6, 247:9, 247:20, 249:15, 249:19, 270:22, 271:7
**following** [2] - 207:23, 249:12
**follows** [2] - 176:18, 258:5
**FOR** [1] - 166:12
**forced** [2] - 169:22, 261:3
**foreign** [5] - 178:20, 180:18, 182:4, 275:11, 275:14
**forget** [1] - 244:20
**Form** [4] - 183:3, 184:11, 190:20, 191:23
**form** [14] - 183:13, 183:14, 184:13, 184:25, 186:2, 186:15, 186:16, 186:19, 188:14, 189:7, 190:1, 233:3, 233:4, 244:10

191:23, 192:5, 207:15, 250:22, 252:13, 252:18
**four** [1] - 261:23
**Fourth** [3] - 178:14, 273:6, 273:8
**FREDERICK** [1] - 166:21
**Frederick** [1] - 166:23
**Friday** [2] - 228:1, 257:8
**front** [6] - 178:19, 216:23, 221:15, 243:19, 265:14, 268:11
**full** [3] - 170:21, 173:6, 253:23
**furnished** [1] - 263:15

## G

**General** [6] - 231:15, 232:6, 232:15, 232:18, 232:20, 239:2
**general** [1] - 259:5
**genuine** [1] - 174:13
**Gerstein** [1] - 273:2
**GG** [5] - 234:17, 234:18, 234:20, 235:4, 255:16
**given** [8] - 174:24, 241:15, 247:12, 247:15, 247:19, 248:24, 271:10, 274:8
**go-ahead** [1] - 186:22
**government** [17] - 168:13, 169:11, 169:20, 169:22, 170:17, 171:21, 173:5, 175:10, 186:6, 189:7, 210:12, 210:24, 240:22, 253:14, 254:20, 257:20, 262:5
**Government** [10] - 184:5, 184:7, 184:15, 188:1, 188:9, 188:22, 188:25, 189:11, 266:1, 281:24
**government's** [4] - 168:3, 186:11, 226:9, 275:21
**Government's** [4] - 173:21, 188:5, 241:19, 281:23
**grade** [1] - 256:16

**granted** [2] - 251:2, 255:11
**ground** [2] - 171:4, 171:5
**grounds** [2] - 185:6, 185:8
**GUERINO** [1] - 166:21
**Guerino@aol.com** [1] - 166:23
**guess** [2] - 173:16, 269:3
**guidance** [8] - 262:7, 267:11, 268:3, 270:6, 270:8, 271:21, 278:2, 278:8
**guidelines** [1] - 169:20
**guilty** [1] - 238:9

## H

**half** [1] - 226:3
**half-hour** [1] - 226:3
**halfway** [1] - 215:2
**hall** [1] - 264:25
**hand** [2] - 170:18, 221:21
**handed** [1] - 173:3
**handwritten** [1] - 237:10
**happy** [2] - 167:14, 279:17
**hard** [1] - 272:12
**head** [1] - 176:10
**heading** [1] - 204:25, 222:9
**headquarters** [4] - 248:16, 250:16, 270:9, 271:21
**hear** [1] - 175:13
**heard** [2] - 273:2, 278:6
**hearing** [6] - 187:7, 187:8, 187:9, 187:10, 228:10, 278:9
**hearings** [1] - 230:23
**hearsay** [1] - 192:3
**heavily** [1] - 253:22
**held** [2] - 174:11, 174:19
**help** [4] - 233:14, 233:19, 233:20, 279:24
**helpful** [1] - 253:24
**highest** [1] - 266:22
**highly** [1] - 169:1
**himself** [1] - 185:15
**Hines** [2] - 276:6, 277:5

**hired** [1] - 258:21
**history** [5] - 177:14, 180:5, 196:11, 236:8, 239:13
**hits** [2] - 195:11, 195:16
**hold** [3] - 177:20, 268:9, 270:25
**HOLLAND** [1] - 166:15
**Homeland** [3] - 177:2, 229:12, 263:18
**honest** [1] - 211:25
**Honor** [90] - 168:19, 168:24, 169:6, 170:8, 170:19, 171:2, 171:11, 171:18, 171:22, 172:24, 173:4, 173:7, 173:12, 173:16, 174:5, 175:6, 175:21, 175:23, 176:7, 176:12, 185:18, 189:2, 190:8, 192:3, 192:15, 203:13, 203:15, 204:4, 208:16, 208:19, 209:3, 209:12, 209:14, 209:17, 209:21, 210:6, 210:17, 211:2, 211:6, 211:21, 212:17, 214:7, 215:11, 215:15, 215:21, 217:11, 217:18, 217:19, 218:3, 218:11, 218:18, 219:3, 219:10, 220:14, 225:15, 225:23, 226:8, 226:16, 226:21, 227:16, 228:6, 228:16, 228:20, 228:22, 240:21, 241:24, 245:10, 253:25, 254:7, 254:19, 254:25, 256:18, 256:20, 256:22, 256:24, 257:10, 257:19, 265:11, 269:15, 273:10, 274:15, 274:22, 279:3, 279:10, 279:13, 279:14, 279:19, 279:25, 280:3, 280:5
**HONORABLE** [1] - 166:12
**Hopeton** [59] - 180:1,

182:8, 184:4, 187:2, 191:18, 196:19, 198:6, 200:17, 201:5, 201:6, 204:11, 204:18, 205:12, 206:5, 206:8, 206:11, 206:13, 206:23, 209:15, 209:16, 210:10, 212:13, 212:14, 212:21, 212:24, 213:3, 214:16, 214:18, 214:21, 215:12, 216:4, 216:17, 216:22, 217:5, 218:1, 218:8, 218:16, 218:17, 219:4, 219:11, 219:12, 220:4, 220:23, 221:2, 221:17, 221:25, 222:3, 222:21, 223:18, 223:24, 224:16, 224:22, 225:17, 265:18, 265:21
**hour** [3] - 226:3, 226:4, 226:5
**hours** [2] - 248:17, 277:15

## I

**I-200** [2] - 187:19, 189:23
**I-213** [2] - 183:3, 183:13
**I-229(a)** [1] - 233:3
**I-247** [1] - 191:12
**I-265** [1] - 184:11
**I-286** [1] - 190:20
**I-862** [4] - 187:18, 188:14, 189:7, 191:21
**ICE** [37] - 169:4, 172:2, 177:4, 190:3, 193:5, 193:9, 222:16, 222:21, 223:3, 229:17, 230:16, 231:1, 233:7, 233:14, 233:17, 235:25, 236:12, 237:3, 237:9, 237:14, 238:6, 238:25, 239:1, 239:14, 257:22, 258:17, 260:12, 260:17, 261:23, 262:5, 262:8,

262:24, 264:23, 265:1, 267:17, 275:17, 275:18
**ICE's** [4] - 167:19, 167:22, 168:2, 170:10
**idea** [4] - 202:20, 256:12, 267:23
**identification** [2] - 236:25, 237:6
**identified** [6] - 199:10, 201:5, 204:11, 217:14, 223:24, 224:22
**identifies** [2] - 198:23, 214:16
**identify** [3] - 178:5, 259:8, 266:8
**identity** [1] - 233:21
**ignore** [1] - 277:21
**IJ** [1] - 236:2
**illegally** [2] - 259:11, 266:12
**immediate** [1] - 263:15
**immediately** [2] - 225:21, 248:7
**immigrant** [1] - 235:16
**immigrate** [1] - 213:5
**immigration** [34] - 177:16, 178:20, 178:22, 184:24, 193:2, 193:3, 194:20, 196:11, 196:13, 209:24, 212:25, 218:9, 229:24, 230:23, 230:24, 236:22, 249:3, 250:3, 250:4, 258:21, 259:12, 262:24, 263:13, 264:4, 264:6, 264:9, 266:21, 267:15, 273:13, 273:15, 273:21, 273:23, 274:4, 274:11
**Immigration** [29] - 177:2, 177:11, 177:19, 178:10, 178:11, 179:1, 180:4, 183:16, 187:12, 187:20, 188:18, 191:12, 229:13, 231:8, 233:25, 247:17, 249:2, 250:7, 258:10, 261:20, 261:21, 263:17, 263:18, 264:7, 264:8, 264:14,

274:5, 276:23, 278:12
**impeachment** [1] - 245:11
**imprisonment** [2] - 169:2, 176:2
**improper** [1] - 245:11
**INA** [2] - 229:24, 235:24
**inaccurate** [1] - 254:24
**Inadmissible** [1] - 183:3
**incarcerated** [2] - 199:2, 239:14
**include** [3] - 193:14, 209:24, 236:22
**included** [6] - 197:1, 197:20, 197:23, 210:4, 223:15, 224:14
**includes** [3] - 209:22, 216:2, 216:17
**inconsistent** [1] - 174:20
**indeed** [1] - 271:7
**independent** [1] - 225:4
**Index** [1] - 192:23
**indicate** [4] - 239:15, 246:17, 246:20, 250:16
**indicated** [6] - 175:24, 200:18, 238:8, 249:25, 261:9, 279:20
**indication** [4] - 210:7, 210:12, 211:9, 238:5
**individual** [19] - 194:21, 195:1, 195:17, 196:19, 198:6, 212:4, 219:13, 223:17, 230:3, 231:19, 233:5, 234:7, 236:20, 247:16, 248:5, 273:9, 275:13, 275:22
**individual's** [9] - 179:2, 193:23, 194:9, 194:12, 194:13, 196:11, 233:13, 234:1, 239:12
**individuals** [3] - 193:2, 206:1, 233:20
**Individuals** [1] - 248:4
**inform** [1] - 190:2
**information** [16] - 170:11, 172:13,

184:1, 188:18,
200:14, 202:21,
215:6, 215:13,
220:7, 220:10,
220:16, 221:1,
221:5, 236:11,
236:19, 272:13
**informed** [1] - 197:8
**initial** [6] - 195:6,
214:12, 216:10,
231:1, 259:19,
273:16
**injury** [1] - 174:14
**input** [3] - 203:25,
246:23, 247:2
**inputted** [2] - 243:6,
247:1
**inquire** [1] - 207:13
**inquiry** [1] - 256:2
**INS** [4] - 229:17,
258:17, 258:22,
258:25
**insistent** [1] - 186:7
**inspector** [2] - 177:17,
258:22
**instances** [2] - 212:5,
239:14
**instructs** [1] - 277:17
**intend** [1] - 172:13
**interaction** [1] -
259:17
**internal** [10] - 170:10,
170:15, 261:23,
262:5, 262:7, 262:8,
263:2, 263:6, 270:6,
270:15
**Internet** [1] - 270:17
**interpretation** [9] -
260:19, 260:22,
260:24, 261:2,
261:8, 278:2, 278:5,
278:15, 278:23
**interrupt** [2] - 256:25,
269:16
**interview** [5] - 178:5,
195:6, 199:21,
214:12, 216:10
**interviewed** [5] -
195:24, 232:15,
232:18, 232:19,
233:18
**interviewer** [1] -
195:12
**interviewer's** [1] -
195:15
**investigate** [6] -
178:6, 242:14,
242:24, 249:21,
250:12
**investigated** [4] -

262:4, 263:8,
264:16, 265:9
**investigating** [3] -
193:6, 272:9, 277:22
**investigation** [11] -
167:25, 168:4,
193:10, 225:4,
234:15, 242:5,
249:13, 272:14,
278:10, 278:17,
278:18
**Investigation** [7] -
196:5, 197:4,
198:12, 198:17,
202:15, 214:4, 216:7
**investigator** [3] -
177:19, 219:18,
219:19
**involved** [3] - 174:1,
186:5, 209:25
**involvement** [5] -
169:11, 169:14,
169:15, 192:8,
195:19
**irrelevant** [3] - 170:18,
172:13, 265:4
**issue** [9] - 175:7,
176:12, 185:19,
205:17, 207:24,
226:15, 226:25,
231:20, 237:7
**issued** [9] - 167:16,
169:16, 170:12,
170:22, 176:6,
231:8, 233:4, 236:9,
267:16
**issues** [5] - 237:10,
254:2, 254:7, 254:8,
254:9
**issuing** [1] - 179:14
**itself** [2] - 194:6,
207:10

## J

**JACK** [1] - 166:12
**jails** [1] - 178:7
**Jamaica** [22] - 180:19,
205:6, 207:19,
231:16, 231:23,
231:25, 232:2,
232:6, 232:8, 232:9,
232:13, 232:16,
232:18, 235:10,
235:16, 236:10,
237:10, 239:1,
239:2, 239:7, 239:22
**Jamaican** [2] - 232:15,
236:10
**JAMES** [1] - 166:19

**January** [1] - 276:22
**JJ** [3] - 239:24, 240:2,
240:23
**job** [6] - 178:14,
229:25, 258:16,
270:23, 272:4,
272:11
**jobs** [3] - 258:19,
271:20
**John** [1] - 177:17
**joint** [1] - 277:18
**JOSEPH** [1] - 166:18
**Juan** [2] - 176:15,
176:21
**judge** [28] - 174:16,
178:20, 178:22,
179:1, 187:12,
188:18, 230:23,
230:24, 249:3,
250:3, 250:4,
254:18, 262:24,
263:13, 264:4,
264:9, 272:15,
273:13, 273:15,
273:21, 273:23,
274:4, 274:11,
274:13, 274:20,
274:21, 274:24,
274:25
**JUDGE** [1] - 166:13
**Judge** [4] - 173:3,
183:16, 216:6,
254:10
**judge's** [2] - 236:22,
264:6
**judgment** [1] - 169:1
**judicial** [3] - 272:22,
272:24, 273:7
**July** [5] - 173:1, 247:5,
258:15, 259:3,
278:12
**June** [4] - 263:12,
273:19, 276:8, 278:8
**jury** [6] - 174:10,
174:12, 175:9,
175:12, 175:14
**jury's** [1] - 174:18

## K

**KELLY** [1] - 166:17
**Kennedy** [1] - 177:17
**key** [1] - 261:6
**Kings** [1] - 235:19
**KK** [3] - 237:16, 256:5
**KNIGHT** [1] - 166:15
**knowingly** [2] -
267:17, 267:18
**knowledge** [5] -
171:14, 172:1,

172:2, 225:3, 261:15
**known** [4] - 177:4,
207:5, 207:11, 208:1

## L

**large** [1] - 172:12
**last** [12] - 172:24,
175:8, 176:20,
183:19, 192:8,
193:25, 223:1,
229:5, 235:16,
238:20, 257:25,
258:1
**Laura** [1] - 222:25
**LAW** [1] - 176:19
**law** [7] - 174:11,
174:15, 174:17,
174:22, 185:20,
185:21, 271:9
**laws** [2] - 259:12,
266:21
**lawsuit** [1] - 208:12
**layer** [1] - 240:8
**layers** [1] - 268:8
**learned** [5] - 206:3,
206:7, 206:13,
220:22, 222:3
**least** [1] - 207:11
**left** [1] - 232:1
**legacy** [3] - 258:17,
258:22, 258:25
**Legacy** [1] - 229:17
**legal** [23] - 178:9,
178:12, 186:20,
186:21, 186:22,
207:16, 210:9,
229:19, 229:21,
229:23, 240:19,
252:14, 252:17,
260:10, 260:19,
260:21, 260:24,
261:1, 261:8,
275:24, 278:15,
278:23, 279:5
**Legal** [3] - 219:13,
240:17, 252:6
**legally** [1] - 275:15
**letter** [13] - 168:6,
173:1, 175:2, 175:4,
175:11, 176:9,
176:12, 210:18,
236:19, 237:5,
241:12, 241:15,
241:17
**letters** [2] - 173:20,
173:24
**level** [2] - 169:23,
256:14
**levels** [1] - 270:24

**likely** [3] - 243:17,
246:25, 247:2
**limited** [2] - 231:6,
259:23
**line** [4] - 222:11,
255:7, 270:24
**lines** [6] - 245:16,
245:24, 255:6,
268:17, 268:24,
271:2
**list** [5] - 168:17, 173:2,
233:13, 248:12,
278:20
**listed** [2] - 228:15,
240:16
**litigation** [8] - 232:7,
232:10, 232:12,
239:1, 239:5, 239:7,
239:21, 254:9
**lived** [1] - 199:10
**lives** [1] - 179:20
**Livingston** [12] -
198:6, 204:12,
204:18, 205:12,
206:8, 218:17,
219:4, 219:11,
219:12, 223:18,
224:16, 225:17
**Livingston's** [1] -
209:16
**LL** [4] - 241:9, 241:11,
241:12, 241:20
**locate** [1] - 266:8
**located** [1] - 208:15
**locating** [1] - 226:9
**logs** [2] - 254:2,
254:11
**look** [35] - 174:23,
184:22, 209:14,
211:11, 211:24,
218:21, 218:23,
219:1, 219:20,
222:12, 240:25,
243:18, 244:12,
248:3, 251:10,
251:25, 252:16,
253:1, 253:7,
253:19, 253:3,
255:6, 255:16,
255:18, 256:5,
265:14, 268:11,
268:24, 269:13,
271:2, 273:25,
274:3, 276:18
**Look** [4] - 244:12,
244:20, 251:6,
251:23
**looked** [7] - 180:8,
197:16, 209:16,
219:5, 219:18,

219:20, 219:23
**Looking** [1] - 245:16
**looking** [14] - 181:4,
206:4, 210:19,
222:7, 243:23,
245:24, 251:18,
255:5, 255:7,
264:17, 265:15,
265:16, 265:20,
268:17
**lose** [1] - 236:9
**LPR** [1] - 219:13
**lunch** [2] - 226:5,
226:6

## M

**M-I-C-H-A-L-E-C** [1] -
223:2
**machine** [1] - 220:12
**machinery** [1] - 219:8
**magistrate** [1] -
254:18
**mail** [3] - 166:23,
170:10, 171:19
**mailed** [1] - 171:7
**main** [1] - 181:6
**male** [2] - 235:9,
235:15
**manage** [2] - 259:7,
259:8
**mandatory** [2] - 260:5,
273:21
**March** [3] - 212:21,
232:17, 232:19
**MARK** [2] - 166:15,
166:16
**marked** [8] - 171:1,
183:11, 188:6,
188:8, 189:1, 190:7,
191:4, 203:19
**Martinez** [1] - 174:18
**MARUTOLLO** [81] -
166:18, 168:19,
169:6, 170:5, 170:8,
171:2, 171:5,
171:18, 172:5,
172:9, 172:19,
172:24, 173:7,
173:12, 173:14,
174:5, 175:6,
175:21, 176:7,
176:12, 186:4,
203:15, 209:21,
210:7, 211:2,
211:21, 215:11,
219:3, 219:6, 228:3,
228:6, 228:12,
228:16, 228:18,
228:20, 229:9,

240:23, 241:4,
241:7, 241:8,
241:24, 243:1,
244:24, 245:1,
245:3, 245:10,
246:11, 251:19,
253:25, 254:7,
254:24, 256:18,
256:20, 257:5,
257:10, 257:15,
257:20, 258:7,
265:10, 266:2,
269:15, 272:5,
273:10, 274:15,
274:22, 275:2,
275:6, 275:24,
276:4, 276:12,
276:16, 277:6,
277:10, 279:7,
279:10, 279:13,
279:19, 279:25,
280:5, 281:11,
281:16
**Marutollo** [2] - 255:17,
267:4
**materials** [1] - 196:22
**matter** [4] - 174:15,
193:6, 276:6, 277:4
**matters** [1] - 228:6
**mean** [6] - 179:12,
186:4, 211:21,
257:14, 262:16,
271:19
**meaning** [1] - 203:25
**means** [3] - 179:13,
186:21, 278:22
**mechanisms** [1] -
268:10
**meet** [1] - 260:25
**members** [1] - 233:20
**memo** [9] - 250:16,
250:21, 251:17,
252:5, 252:11,
252:13, 277:15,
277:17, 277:18
**memoranda** [10] -
240:11, 242:17,
261:23, 261:25,
262:5, 262:8,
262:12, 263:2,
263:6, 263:9
**memorandum** [8] -
176:6, 240:3, 240:6,
243:3, 246:6, 251:9,
251:11, 252:16
**memos** [12] - 246:7,
246:8, 262:1,
262:20, 268:3,
270:2, 270:6,
270:15, 271:21,

277:22, 277:24,
278:2
**mentioned** [3] - 182:7,
182:15, 236:17
**merit** [1] - 248:7
**met** [3] - 254:8,
263:11, 265:2
**Michael** [6] - 178:2,
187:24, 191:19,
191:20, 257:21,
258:1
**MICHAEL** [2] - 258:3,
281:14
**Michalec** [8] - 222:25,
223:3, 223:6,
223:13, 223:20,
223:23, 224:2, 224:6
**middle** [3] - 193:25,
214:16, 235:7
**Middle** [1] - 216:25
**might** [5] - 225:22,
246:3, 246:4,
246:12, 278:4
**mind** [1] - 176:11
**mine** [1] - 260:11
**Mine** [1] - 240:24
**minute** [4] - 227:19,
227:22, 244:16,
245:12
**minutes** [2] - 227:6,
227:7
**mission** [3] - 259:8,
266:7, 266:19
**misspoke** [1] - 201:25
**misstates** [1] - 266:2
**mistake** [4] - 272:4,
272:10, 272:12,
272:19
**Mister** [1] - 250:11
**moments** [1] - 211:22
**Monday** [5] - 169:7,
170:13, 173:16,
175:23, 185:24
**Monday's** [1] - 175:23
**monitor** [1] - 271:15
**monitored** [1] -
271:24
**monitoring** [1] - 271:6
**monitors** [2] - 270:21,
271:14
**month** [2] - 245:18,
268:19
**months** [3] - 235:20,
235:23, 253:10
**morning** [9] - 174:19,
176:24, 176:25,
192:20, 192:21,
210:19, 229:10,
242:3, 242:4
**most** [3] - 212:5,

246:25, 247:2
**Most** [1] - 243:17
**mother** [3] - 199:2,
199:10, 203:12
**motion** [3] - 168:25,
169:19, 169:24
**move** [6] - 168:15,
188:22, 190:4,
190:24, 204:4,
226:17
**MR** [242] - 167:6,
167:10, 167:12,
167:15, 167:17,
167:22, 168:8,
168:11, 168:14,
168:15, 168:19,
168:23, 169:6,
169:24, 170:5,
170:8, 170:19,
171:2, 171:5,
171:11, 171:18,
171:22, 171:25,
172:5, 172:9,
172:19, 172:24,
173:4, 173:7,
173:12, 173:13,
173:14, 173:15,
173:20, 174:4,
174:5, 174:9, 175:2,
175:5, 175:6,
175:18, 175:21,
176:7, 176:12,
176:15, 176:23,
181:25, 183:7,
183:12, 184:15,
184:18, 184:20,
185:3, 185:6, 185:8,
185:10, 185:13,
185:18, 185:23,
186:1, 186:4, 186:8,
186:12, 186:13,
187:14, 188:3,
188:7, 188:21,
189:2, 189:5, 189:7,
189:10, 189:14,
189:17, 190:4,
190:8, 190:12,
190:14, 190:24,
191:1, 191:5, 192:3,
192:15, 192:19,
203:13, 203:15,
203:20, 204:6,
208:8, 208:16,
208:19, 208:21,
209:3, 209:6, 209:9,
209:11, 209:12,
209:14, 209:17,
209:21, 210:6,
210:7, 210:17,
211:2, 211:6,

211:21, 212:3,
212:15, 212:17,
212:18, 214:4,
214:7, 214:11,
214:14, 215:11,
215:15, 215:18,
215:20, 215:25,
217:11, 217:12,
217:18, 217:19,
217:20, 218:3,
218:5, 218:6,
218:11, 218:17,
218:20, 219:3,
219:6, 219:10,
219:25, 220:6,
220:11, 220:14,
220:19, 221:11,
222:11, 222:14,
225:14, 225:15,
225:20, 225:23,
225:25, 226:4,
226:8, 226:13,
226:16, 226:21,
227:3, 227:6,
227:11, 227:16,
227:21, 228:3,
228:6, 228:12,
228:16, 228:18,
228:20, 229:9,
240:21, 240:23,
240:25, 241:3,
241:4, 241:6, 241:7,
241:8, 241:24,
242:2, 243:1, 243:4,
244:16, 244:19,
244:24, 244:25,
245:1, 245:2, 245:3,
245:5, 245:7,
245:10, 245:15,
246:11, 246:14,
251:19, 251:22,
253:24, 253:25,
254:7, 254:19,
254:24, 256:17,
256:18, 256:20,
257:5, 257:10,
257:11, 257:14,
257:15, 257:20,
258:7, 262:13,
262:18, 265:4,
265:10, 265:13,
266:2, 269:15,
272:5, 273:10,
274:15, 274:22,
275:2, 275:6, 275:8,
275:24, 276:4,
276:12, 276:16,
277:6, 277:10,
277:12, 277:14,
279:2, 279:7,
279:10, 279:13,

279:14, 279:19, 279:25, 280:3, 280:5, 281:6, 281:8, 281:11, 281:13, 281:16, 281:18
**multiple** [4] - 193:20, 195:11, 195:16, 212:6
**must** [5] - 248:6, 248:9, 248:12, 248:15, 275:9

## N

**N-600** [10] - 242:11, 247:12, 247:15, 247:19, 248:22, 248:23, 250:1, 251:2, 263:15, 278:19
**name** [23] - 176:20, 184:18, 184:19, 185:3, 185:10, 186:5, 193:23, 193:25, 194:4, 194:5, 195:1, 204:8, 204:14, 206:7, 214:16, 222:23, 223:1, 229:1, 229:5, 257:25, 258:1, 258:2
**named** [4] - 196:19, 198:6, 223:17, 230:3
**namely** [1] - 169:19
**names** [6] - 216:25, 233:20, 241:3, 254:1, 254:4, 254:13
**narrative** [1] - 183:14
**nation's** [1] - 259:12
**national** [5] - 178:21, 180:18, 182:4, 259:10, 266:12
**Nationality** [1] - 274:5
**nationals** [2] - 205:5, 207:19
**native** [2] - 235:9, 235:15
**Nats** [1] - 221:21
**Naturalization** [1] - 206:22
**naturalization** [1] - 221:25
**naturalized** [5] - 205:6, 206:16, 207:2, 207:20, 224:4
**nature** [1] - 228:5
**necessary** [2] - 228:2, 270:9
**need** [6] - 173:16, 200:19, 222:12, 233:19, 256:11,

260:8
**needed** [2] - 200:16, 275:18
**needs** [2] - 247:15, 256:23
**negligence** [9] - 167:18, 167:19, 167:24, 168:2, 169:4, 170:21, 171:16, 175:25, 176:1
**negligent** [1] - 185:16
**never** [16] - 199:24, 203:2, 206:22, 207:1, 209:4, 210:3, 214:6, 217:13, 217:21, 218:20, 224:18, 224:21, 224:24, 231:3, 243:2, 244:7
**new** [2] - 226:15, 251:3
**NEW** [1] - 166:1
**New** [13] - 166:6, 174:24, 177:25, 229:14, 235:17, 235:19, 235:21, 235:22, 236:1, 239:2, 266:22, 266:23
**Newman** [1] - 170:3
**next** [8] - 169:10, 176:14, 205:15, 205:16, 213:7, 227:8, 252:21, 256:20
**night** [3] - 175:8, 280:4, 280:5
**nine** [4] - 227:25, 228:2, 245:16, 245:24
**ninety** [1] - 234:7
**Ninety** [1] - 244:22
**Ninety-six** [1] - 244:22
**none** [1] - 270:10
**note** [3] - 173:8, 174:5, 253:25
**noted** [2] - 172:23, 185:23
**notes** [2] - 214:12, 216:10
**nothing** [17] - 169:12, 201:9, 202:23, 242:5, 242:14, 242:24, 246:15, 246:20, 246:22, 247:4, 247:8, 247:19, 249:17, 249:21, 250:11, 250:12, 250:15

**notice** [1] - 273:25
**Notice** [9] - 184:11, 187:18, 188:12, 188:16, 188:17, 189:8, 190:20, 191:21, 192:5
**notified** [3] - 232:11, 233:14, 239:1
**notifies** [1] - 233:7
**notify** [1] - 248:9
**November** [14] - 171:14, 172:1, 248:1, 249:18, 251:17, 252:3, 253:13, 255:9, 260:13, 260:17, 261:11, 265:24, 266:5, 277:17
**Number** [16] - 214:21, 214:25, 215:2, 215:5, 215:9, 215:13, 215:22, 216:17, 217:22, 218:1, 218:7, 220:1, 220:7, 220:10, 220:20, 222:2
**number** [42] - 194:7, 194:10, 194:12, 194:23, 199:16, 201:15, 202:6, 202:11, 202:14, 203:6, 203:10, 203:11, 203:12, 203:16, 204:18, 204:21, 206:11, 209:23, 210:14, 214:1, 214:2, 214:6, 214:8, 214:9, 215:18, 216:2, 216:7, 216:16, 217:13, 217:16, 220:15, 255:19, 255:22, 255:25, 256:2, 256:3, 256:6, 256:8, 256:10, 256:11, 256:12
**numbers** [7] - 172:18, 172:19, 173:5, 173:9, 173:10, 210:21, 217:2
**NYC** [1] - 235:17

## O

**o'clock** [1] - 227:13
**oath** [3] - 211:20, 245:12, 245:20
**object** [5] - 170:5, 171:3, 172:9, 172:25, 176:5

**objected** [1] - 173:23
**objecting** [4] - 168:13, 168:18, 168:19, 173:22
**objection** [29] - 170:7, 170:8, 171:23, 172:5, 191:1, 192:3, 209:3, 209:8, 228:10, 228:13, 254:14, 254:16, 262:13, 265:4, 266:2, 269:15, 272:5, 273:10, 274:15, 274:22, 275:2, 275:6, 275:24, 276:4, 276:12, 276:16, 277:6, 277:10, 279:7
**Objection** [9] - 217:11, 217:18, 218:3, 218:11, 220:6, 243:1, 245:10, 246:11, 251:19
**objections** [1] - 173:25
**obligation** [1] - 233:7
**obligations** [1] - 233:13
**observed** [1] - 216:6
**obtain** [6] - 220:8, 225:16, 225:19, 231:15, 233:14, 272:22
**obtained** [3] - 196:4, 196:8, 196:16
**obtaining** [2] - 233:8, 233:22
**October** [3] - 229:18, 258:23, 280:7
**OF** [3] - 166:1, 166:6, 166:12
**off-the-top-of-my-head** [1] - 176:10
**offenses** [2] - 180:20, 180:22
**offer** [2] - 183:7, 184:15
**offering** [2] - 168:22, 188:2
**office** [5] - 177:25, 191:24, 192:6, 201:12, 267:8
**Office** [33] - 240:10, 240:12, 240:14, 248:9, 249:7, 250:9, 250:17, 250:22, 252:5, 252:8, 252:13, 252:17, 254:22, 257:21,

257:22, 258:11, 258:13, 259:3, 259:4, 259:6, 259:7, 259:15, 260:1, 260:18, 261:8, 263:25, 264:1, 264:22, 264:23, 264:24, 269:20, 277:18
**Officer** [48] - 169:8, 176:15, 176:24, 177:7, 177:21, 177:23, 186:14, 188:8, 189:19, 191:7, 192:20, 195:9, 195:23, 196:1, 196:7, 196:22, 206:3, 209:25, 210:2, 210:14, 214:11, 214:15, 216:1, 216:10, 220:1, 220:20, 222:15, 223:10, 227:3, 229:25, 231:3, 232:21, 233:1, 234:17, 235:3, 235:6, 236:14, 237:12, 239:24, 240:2, 241:9, 242:3, 250:11, 258:24, 259:2, 259:20, 259:21
**officer** [25] - 177:8, 178:3, 185:14, 209:6, 229:10, 229:16, 229:22, 229:23, 230:2, 230:8, 230:12, 231:7, 231:11, 231:13, 234:23, 238:1, 246:25, 248:6, 262:20, 272:2, 272:8, 272:14, 272:16, 272:19
**Officer's** [1] - 178:11
**Officers** [1] - 243:15
**officers** [20] - 169:14, 262:2, 262:21, 262:23, 267:8, 267:11, 267:13, 267:17, 267:20, 267:24, 269:5, 271:9, 271:10, 272:22, 273:12, 273:20, 277:21, 277:24, 278:6, 278:17
**official** [2] - 266:22,

266:23
**Official** [1] - 166:22
**officials** [2] - 185:20, 185:21
**often** [1] - 192:25
**oftentimes** [1] - 260:10
**old** [2] - 235:9, 235:15
**on-the-job** [1] - 178:14
**once** [2] - 234:1, 278:5
**one** [27] - 175:20, 175:21, 193:5, 195:3, 202:20, 203:11, 203:24, 203:25, 208:1, 212:4, 212:5, 212:8, 223:9, 223:12, 224:11, 227:24, 228:1, 233:16, 239:11, 242:17, 243:15, 244:17, 248:13, 270:21, 271:14, 271:24
**ones** [2] - 178:24, 215:20
**open** [2] - 180:9, 236:11
**opened** [2] - 180:14, 181:15
**Operation** [2] - 262:2, 266:8
**Operations** [3] - 258:11, 266:16, 266:24
**operations** [1] - 259:8
**opinion** [2] - 167:19, 260:10
**OPLA** [1] - 252:2
**opportunity** [3] - 175:10, 226:10, 264:19
**opposing** [1] - 175:11
**oral** [1] - 168:7
**Order** [19] - 233:24, 234:3, 234:4, 234:9, 234:11, 234:14, 234:22, 235:1, 237:13, 237:19, 237:20, 237:23, 241:14, 242:8, 242:21, 248:25, 249:10, 249:24
**order** [20] - 167:16, 168:25, 179:15, 180:14, 183:14, 198:9, 230:17, 230:19, 230:21, 230:22, 231:8, 231:14, 233:5,

233:6, 234:2, 234:9, 236:23, 238:12, 275:17
**ordered** [7] - 230:24, 231:23, 234:13, 236:1, 249:3, 250:2, 264:3
**ordering** [1] - 250:6
**original** [2] - 203:24, 203:25
**originally** [2] - 260:23, 279:6
**Ortiz** [11] - 178:2, 187:24, 191:19, 191:20, 192:1, 224:7, 224:11, 224:18, 225:3, 231:4, 259:20
**othe/OLTD** [1] - 181:3
**otherwise** [1] - 259:11
**ought** [1] - 219:1
**overruled** [1] - 192:4
**overruling** [1] - 254:16
**overseas** [1] - 275:16
**own** [1] - 175:15

**P**

**P-h-i-l-l-i-p-s** [1] - 258:2
**PA-103** [1] - 212:13
**package** [2] - 208:12, 236:19
**packet** [16] - 196:24, 197:1, 197:6, 197:15, 197:20, 198:11, 200:2, 200:15, 200:20, 201:23, 202:4, 202:17, 202:23, 223:10, 223:12, 224:11
**packets** [1] - 205:9
**Page** [2] - 245:4, 247:24
**page** [37] - 175:25, 180:9, 183:5, 183:18, 189:8, 191:9, 198:3, 204:7, 204:24, 209:13, 209:19, 209:20, 210:15, 212:11, 213:7, 216:13, 216:16, 217:22, 218:8, 220:2, 220:21, 222:8, 235:7, 235:8, 244:14, 244:23, 252:21, 253:19, 255:6, 256:15,

268:15, 271:1
**pages** [1] - 233:12
**paper** [2] - 196:10, 274:18
**papers** [1] - 211:17
**paperwork** [1] - 208:12
**paragraph** [4] - 183:19, 183:24, 238:20, 248:3
**parent** [1] - 272:16
**parents** [13] - 193:15, 193:18, 199:24, 200:18, 201:16, 202:7, 202:21, 202:25, 203:16, 205:5, 205:24, 207:19, 217:16
**parents'** [1] - 241:3
**part** [14] - 172:12, 184:13, 185:16, 198:11, 201:22, 202:3, 205:9, 208:9, 209:18, 210:14, 233:9, 240:4, 247:13, 247:14
**participate** [1] - 185:16
**passed** [2] - 223:13, 224:7
**passport** [2] - 231:18, 233:15
**pause** [2] - 190:13, 208:16
**Pause** [1] - 182:20
**Peace** [1] - 258:22
**penalties** [1] - 228:24
**pending** [4] - 236:12, 238:25, 261:17, 261:18
**people** [5] - 219:15, 252:6, 270:25, 271:15, 275:15
**people's** [1] - 179:20
**perfectly** [1] - 279:17
**perhaps** [1] - 184:20
**Perhaps** [1] - 226:4
**period** [5] - 167:23, 174:20, 200:21, 234:8, 276:19
**periods** [1] - 230:11
**Permanent** [1] - 219:13
**permitting** [1] - 231:20
**person** [6] - 178:25, 179:3, 186:1, 194:16, 195:5, 215:9
**person's** [2] - 194:23, 196:13

**personal** [1] - 259:17
**personally** [3] - 250:14, 267:23, 269:25
**personnel** [1] - 259:7
**persons** [2] - 193:12, 193:14
**pertaining** [1] - 225:4
**Perusing** [6] - 214:20, 214:23, 222:10, 243:20, 244:3, 252:8
**petition** [1] - 264:11
**Petition** [1] - 236:16
**PFR** [5] - 236:4, 236:9, 236:15, 236:16
**phase** [3] - 223:9, 223:12, 224:11
**Phase** [13] - 196:24, 197:1, 197:6, 197:15, 197:20, 198:11, 200:2, 200:14, 200:20, 201:22, 202:4, 202:17, 202:23
**PHILLIPS** [2] - 258:3, 281:14
**Phillips** [7] - 170:2, 257:21, 258:1, 258:8, 261:22, 265:14, 271:23
**phone** [14] - 199:16, 201:15, 202:6, 202:11, 214:1, 214:2, 216:2, 216:6, 217:13, 257:2, 257:7, 257:12, 257:16
**picking** [1] - 219:8
**place** [3] - 179:15, 225:20, 268:10
**placed** [3] - 170:11, 235:23, 273:20
**places** [1] - 217:14
**Plaintiff** [2] - 166:4, 243:18
**plaintiff** [14] - 170:12, 170:13, 174:14, 209:18, 210:16, 219:17, 234:15, 238:6, 243:23, 243:24, 261:4, 261:6, 261:12
**plaintiff's** [4] - 175:7, 209:23, 210:20, 265:2
**Plaintiff's** [60] - 168:20, 170:5, 170:25, 171:3, 172:9, 172:25, 173:6, 182:18,

182:21, 183:7, 183:10, 189:18, 189:19, 190:4, 190:6, 190:15, 190:16, 190:19, 190:25, 191:3, 191:6, 191:7, 198:15, 199:5, 201:18, 201:22, 202:3, 202:6, 203:8, 203:18, 203:21, 204:3, 204:8, 204:17, 204:24, 207:18, 208:4, 208:10, 210:19, 210:22, 214:15, 216:1, 216:14, 216:21, 217:22, 218:8, 220:2, 220:21, 221:12, 222:7, 232:22, 232:23, 233:1, 247:25, 261:24, 281:21, 281:22, 281:25, 282:1, 282:2
**Plaintiffs** [1] - 166:15
**play** [3] - 230:6, 230:25, 248:15
**plug** [1] - 194:13
**Pohorelsky** [1] - 254:10
**Point** [1] - 177:25
**point** [10] - 175:21, 181:20, 195:23, 199:20, 211:5, 211:6, 253:18, 255:13, 257:8
**pointed** [1] - 278:19
**policies** [1] - 169:5
**pop** [1] - 194:14
**popped** [2] - 218:2, 218:9
**portion** [2] - 240:6, 240:11
**pose** [3] - 238:23, 259:9, 266:11
**posed** [1] - 239:8
**poses** [1] - 236:8
**position** [7] - 171:11, 175:8, 175:11, 177:20, 177:22, 276:20
**possession** [1] - 238:10
**possibility** [1] - 193:17
**possible** [1] - 256:24
**post** [1] - 210:4
**Post** [12] - 233:24, 234:3, 234:4, 234:9,

234:14, 234:22, 235:1, 237:13, 237:19, 237:20, 237:23, 241:14
**post-dated** [1] - 210:4
**Pre** [3] - 214:4, 214:10, 216:7
**Pre-sentence** [3] - 214:4, 214:10, 216:7
**predated** [1] - 169:12
**predecessor** [1] - 266:16
**prefer** [3] - 175:4, 279:16, 280:1
**prejudices** [1] - 171:20
**prejudicial** [1] - 170:17
**prepare** [1] - 277:18
**prepared** [5] - 182:15, 190:22, 203:23, 204:9, 277:15
**preparing** [5] - 200:4, 201:14, 202:19, 206:19, 248:15
**presence** [1] - 262:24
**present** [8] - 177:21, 231:6, 236:5, 236:17, 236:18, 236:19, 236:22, 237:5
**presentation** [1] - 168:7
**presented** [1] - 278:11
**Presentence** [5] - 196:4, 197:4, 198:12, 198:17, 202:14
**pretty** [2] - 174:11, 270:7
**preventing** [1] - 201:9
**principle** [2] - 263:6, 263:11
**printed** [3] - 187:18, 191:13, 191:16
**printouts** [1] - 180:4
**prison** [2] - 178:6, 178:7
**private** [1] - 167:25
**privilege** [7] - 171:8, 171:12, 185:6, 185:8, 185:12, 254:2, 254:11
**privileged** [5] - 169:3, 185:9, 185:20, 185:22, 186:6
**pro** [1] - 248:12
**probable** [5] - 253:16, 273:13, 275:12, 275:18, 275:22

**probative** [4] - 170:20, 255:11, 260:6, 261:9
**procedural** [1] - 233:9
**procedure** [1] - 247:15
**procedures** [2] - 229:24, 233:25
**proceed** [3] - 186:23, 189:16, 212:2
**proceeded** [2] - 249:3, 250:6
**proceedings** [14] - 178:16, 178:18, 178:19, 178:23, 179:15, 185:1, 186:23, 210:9, 225:12, 235:23, 253:9, 261:17, 273:16, 280:6
**Proceedings** [1] - 166:24
**process** [4] - 199:20, 233:9, 264:18, 268:3
**Processing** [1] - 184:12
**produce** [4] - 237:11, 240:22, 254:20, 254:22
**produced** [12] - 166:25, 173:8, 173:10, 208:9, 209:22, 210:3, 210:4, 210:13, 210:18, 254:2, 254:10, 254:12
**producing** [1] - 171:12
**product** [1] - 171:9
**production** [1] - 172:25
**professional** [1] - 271:9
**program** [1] - 258:24
**Program** [2] - 178:4, 178:5
**progress** [2] - 173:17, 268:5
**prohibits** [1] - 274:5
**promoted** [3] - 259:1, 259:2, 259:3
**prompt** [1] - 273:7
**proper** [2] - 220:10, 251:16
**properly** [2] - 272:4, 272:11
**protocol** [4] - 246:17, 246:23, 267:8, 277:8
**prove** [1] - 276:2
**proven** [1] - 207:8
**provide** [7] - 186:20, 213:3, 222:21,

222:22, 248:12, 258:19, 267:11
**provided** [14] - 198:5, 198:12, 198:18, 222:16, 223:6, 223:9, 224:11, 225:5, 236:6, 248:13, 270:10, 272:13, 278:15, 278:22
**provides** [1] - 214:18
**providing** [1] - 233:19
**pubic** [1] - 270:18
**public** [3] - 259:10, 266:11
**Pugh** [1] - 273:2
**pull** [1] - 272:16
**pulled** [5] - 196:2, 204:15, 204:22, 272:2, 272:9
**pulls** [1] - 272:19
**purpose** [11] - 173:11, 183:13, 188:16, 190:1, 241:19, 241:21, 261:23, 261:25, 262:1, 265:1, 267:7
**purposes** [1] - 214:25
**put** [10] - 167:8, 194:6, 196:14, 196:23, 217:25, 227:5, 227:10, 243:12, 243:16, 257:11
**PX** [13] - 244:13, 244:25, 251:6, 251:8, 251:9, 251:10, 251:13, 251:15, 251:17, 251:25, 252:2
**PX-31** [2] - 265:14, 265:15

## Q

**quarters** [1] - 256:15
**questioned** [1] - 224:24
**questioning** [1] - 222:12
**questions** [13] - 192:15, 200:25, 201:10, 223:20, 224:18, 225:14, 241:24, 254:17, 256:17, 256:18, 265:10, 271:3, 275:14
**quickly** [1] - 219:8
**quite** [1] - 175:20

## R

**raise** [5] - 169:22, 171:22, 172:5, 175:22, 223:23
**raised** [2] - 172:7, 224:21
**ran** [1] - 217:21
**range** [2] - 173:6, 210:22
**ranking** [1] - 266:22
**rap** [1] - 180:3
**ratings** [1] - 268:6
**reached** [3] - 181:14, 224:3, 224:24
**reaction** [1] - 263:15
**read** [5] - 235:6, 238:19, 255:22, 256:8
**readily** [2] - 232:5, 239:3
**reading** [4] - 167:18, 205:15, 205:16, 212:23
**reads** [6] - 204:8, 205:4, 205:17, 207:18, 207:24, 221:21
**ready** [1] - 197:9
**realized** [1] - 276:24
**really** [1] - 255:1
**reason** [2] - 181:3, 181:6
**reasonable** [2] - 167:25, 226:2
**reasons** [3] - 169:18, 171:6, 173:25
**receive** [4] - 178:13, 246:1, 246:9, 270:6
**received** [16] - 170:25, 178:9, 183:10, 188:6, 188:25, 190:6, 191:3, 203:19, 223:10, 224:12, 229:19, 229:21, 229:23, 246:4, 246:5, 246:12
**receiving** [1] - 246:3
**Recess** [1] - 227:23
**recognize** [6] - 182:24, 184:8, 188:10, 189:19, 190:16, 191:9
**recommend** [1] - 236:11
**recommendation** [5] - 235:7, 237:12, 239:19, 239:20, 241:23
**recommended** [1] -

239:5
**record** [7] - 176:20, 196:10, 235:6, 238:20, 257:25, 260:16, 263:1
**Record** [1] - 183:3
**recorded** [1] - 166:24
**records** [1] - 193:3
**redact** [1] - 214:25
**redacted** [11] - 171:13, 173:8, 184:18, 185:2, 185:3, 185:11, 215:20, 240:24, 241:3, 253:22, 254:21
**redaction** [2] - 190:9, 190:11, 215:6
**redactions** [2] - 241:1, 254:3
**redirect** [4] - 227:4, 227:9, 227:10, 279:9
**referenced** [2] - 187:25, 188:12
**referred** [3] - 234:9, 244:4, 270:14
**referring** [1] - 205:20
**refers** [2] - 212:13, 216:22
**reflect** [1] - 170:23
**reflected** [2] - 194:21, 219:14
**refresher** [1] - 178:14
**refused** [1] - 254:22
**refusing** [1] - 238:12
**regarding** [14] - 170:10, 175:8, 175:11, 223:23, 224:21, 236:20, 242:20, 246:7, 246:18, 249:17, 252:2, 260:19, 270:7
**regards** [1] - 229:23
**region** [1] - 174:23
**regulations** [2] - 169:21, 262:6
**related** [1] - 178:9
**relating** [3] - 193:12, 193:14, 219:10
**release** [9] - 253:18, 260:2, 260:4, 260:9, 260:12, 260:16, 261:3, 261:6, 274:5
**released** [8] - 238:24, 239:10, 253:14, 257:18, 260:20, 261:10, 261:11, 279:6
**relevant** [5] - 169:1, 169:3, 170:9, 196:13, 278:16

**relied** [2] - 197:19, 200:20
**remain** [1] - 169:1, 170:19, 234:7
**remained** [2] - 251:4, 279:4
**remaining** [1] - 176:3
**remanded** [2] - 261:19, 264:13
**remember** [1] - 221:9
**removable** [1] - 275:19
**removal** [23] - 178:16, 178:18, 178:19, 178:22, 179:15, 185:1, 186:23, 231:14, 231:16, 231:24, 233:5, 233:6, 234:2, 235:23, 236:10, 236:12, 236:21, 239:1, 239:3, 239:7, 239:22, 253:9, 273:16
**Removal** [10] - 234:12, 242:9, 242:21, 249:1, 249:25, 258:11, 262:2, 266:7, 266:16, 266:24
**remove** [3] - 190:10, 190:11, 259:9
**removed** [10] - 179:6, 230:24, 231:19, 231:23, 234:13, 236:2, 249:4, 250:2, 250:6, 264:3
**repeat** [1] - 272:7
**report** [1] - 211:13
**Report** [8] - 196:5, 197:4, 198:12, 198:18, 202:15, 214:4, 214:10, 216:7
**Reporter** [2] - 166:21, 166:22
**reporter** [2] - 227:25, 235:12
**request** [6] - 219:3, 226:8, 240:9, 241:4, 254:21, 274:3
**requested** [1] - 196:8
**requesting** [1] - 236:21
**required** [1] - 278:7
**requirement** [1] - 169:5
**requirements** [1] - 247:23
**requires** [1] - 273:7
**research** [1] - 174:10

**resentenced** [1] - 235:20
**resided** [1] - 199:2
**Resident** [1] - 219:13
**resolution** [4] - 238:25, 239:4, 239:6, 239:21
**resolve** [2] - 217:4, 217:9
**respect** [22] - 167:18, 168:1, 168:25, 169:4, 170:20, 171:13, 171:19, 173:18, 179:1, 179:22, 179:23, 186:24, 187:17, 192:1, 230:6, 230:25, 233:22, 233:23, 254:14, 259:13, 259:19, 265:2
**respectfully** [2] - 168:1, 168:9
**response** [5] - 171:24, 242:13, 242:23, 246:19, 248:20
**responsibilities** [2] - 231:12, 259:5
**responsibility** [3] - 195:5, 195:15, 267:19
**responsible** [1] - 195:12
**result** [1] - 241:16
**resulted** [1] - 174:13
**results** [1] - 195:11
**retention** [1] - 238:10
**return** [1] - 232:16
**returned** [1] - 232:2
**review** [24] - 181:12, 184:3, 208:24, 210:5, 223:4, 226:10, 226:13, 226:18, 234:5, 234:25, 237:22, 239:11, 240:8, 241:16, 241:22, 264:12, 264:19, 273:22, 273:23, 274:3, 274:14, 274:20, 274:23, 275:7
**Review** [13] - 233:24, 234:3, 234:4, 234:10, 234:14, 234:22, 235:2, 236:16, 237:13, 237:19, 237:21, 237:23, 241:14
**reviewed** [31] -

179:25, 180:2, 180:3, 180:11, 182:2, 182:7, 182:11, 186:15, 187:1, 191:21, 197:8, 197:25, 198:3, 198:8, 198:20, 201:23, 202:4, 202:23, 205:9, 205:13, 206:1, 209:13, 209:19, 210:2, 211:17, 212:10, 212:11, 223:12, 224:12, 263:21
**reviewing** [2] - 186:18, 206:11
**reviews** [3] - 264:18, 264:19, 268:5
**risk** [4] - 236:9, 238:23, 239:9, 239:12
**robbery** [3] - 180:21, 235:18, 238:21
**ROBERT** [1] - 166:16
**role** [11] - 178:22, 179:1, 186:18, 230:6, 230:25, 231:6, 248:15, 258:14, 259:13, 259:19, 259:23
**rounds** [1] - 268:5
**ruled** [1] - 169:6
**ruling** [3] - 174:3, 261:21, 273:7
**run** [4] - 195:6, 196:2, 200:7, 201:3
**runs** [1] - 193:10

## S

**S-C-H-R-A-D-E-R** [1] - 229:6
**safety** [4] - 238:24, 239:9, 259:10, 266:11
**sale** [3] - 180:20, 235:21, 238:22
**saw** [8] - 201:22, 202:3, 206:22, 208:12, 209:9, 211:1, 211:20, 212:19
**scan** [1] - 237:4
**SCHRADER** [1] - 281:9
**Schrader** [14] - 229:2, 229:4, 229:10, 229:25, 232:21, 233:1, 234:17,

235:6, 237:12, 240:2, 241:9, 242:3, 250:11, 251:23
**SCOTT** [1] - 281:9
**Scott** [2] - 229:2, 229:4
**screen** [1] - 221:17
**search** [13] - 193:10, 193:20, 193:23, 193:25, 194:3, 194:7, 194:9, 194:24, 195:2, 195:11, 200:1, 200:7, 217:21
**searches** [3] - 195:6, 196:2, 201:3
**searching** [1] - 193:5
**seat** [2] - 176:19, 257:24
**Second** [11] - 174:11, 236:4, 238:25, 239:4, 239:6, 239:21, 261:18, 261:19, 264:12, 264:13
**second** [14] - 173:15, 180:22, 183:18, 204:24, 216:13, 217:22, 218:8, 220:2, 220:21, 222:8, 235:18, 237:20, 238:21, 270:24
**section** [6] - 183:21, 205:1, 205:15, 235:7, 240:15, 240:17
**Section** [1] - 184:22
**Sections** [1] - 235:24
**Security** [17] - 177:2, 214:21, 214:25, 215:2, 215:5, 215:9, 215:12, 215:22, 229:13, 263:18
**security** [5] - 194:7, 238:24, 239:9, 259:10, 266:12
**see** [21] - 168:17, 173:24, 182:11, 185:12, 185:15, 187:13, 198:23, 199:7, 208:13, 215:3, 219:1, 219:19, 219:24, 221:10, 221:22, 225:21, 252:8, 255:19, 255:20, 256:5, 274:17
**seeing** [2] - 186:11, 217:6

**seek** [2] - 167:13, 228:7
**seeking** [2] - 176:8, 231:22
**seem** [1] - 278:5
**selected** [1] - 258:23
**SENIOR** [1] - 166:13
**sent** [8] - 187:10, 187:11, 236:5, 236:17, 236:20, 246:6, 246:7, 250:16
**sentence** [13] - 205:4, 205:15, 205:16, 205:18, 205:20, 205:23, 207:18, 207:21, 207:23, 214:4, 214:10, 216:7
**sentenced** [1] - 235:22
**separately** [1] - 172:17
**September** [4] - 166:8, 206:17, 265:22, 276:14
**serious** [2] - 238:23, 239:8
**serve** [1] - 170:16
**served** [2] - 241:17, 274:18
**service** [1] - 241:18
**Services** [7] - 177:12, 178:10, 247:17, 249:2, 263:17, 263:18, 278:12
**serving** [1] - 231:7
**set** [1] - 169:18
**seven** [3] - 168:14, 244:2, 278:20
**several** [3] - 206:19, 268:1, 268:8
**sheet** [1] - 180:4
**Sheet** [1] - 184:12
**short** [1] - 225:16
**shorten** [1] - 192:25
**shot** [1] - 221:17
**show** [7] - 171:13, 187:25, 194:18, 247:5, 247:9, 247:20, 249:18
**showed** [2] - 173:25, 255:17
**showing** [3] - 184:7, 188:8, 191:7
**shows** [4] - 172:1, 252:5, 252:12, 252:16
**sic** [1] - 216:1
**sides** [1] - 169:25
**sidetracked** [1] - 255:5

**sign** [2] - 184:25, 222:19
**sign-off** [1] - 222:19
**signature** [2] - 183:5, 187:22
**signed** [10] - 179:24, 186:2, 189:24, 191:21, 212:21, 224:6, 225:7, 253:5, 253:6, 253:7
**significance** [1] - 209:7
**Sit** [1] - 229:7
**sit** [1] - 272:12
**six** [5] - 168:14, 221:6, 244:2, 244:22, 245:5
**sixty** [1] - 253:22
**sixty-five** [1] - 253:22
**slow** [1] - 235:11
**so...** [1] - 264:21
**Social** [7] - 214:21, 214:25, 215:2, 215:5, 215:9, 215:12, 215:22
**social** [1] - 194:7
**solely** [2] - 205:8, 205:23
**someone** [4] - 247:13, 249:12, 267:9, 271:5
**sometime** [1] - 230:14
**sometimes** [2] - 230:14, 243:10
**soon** [1] - 226:11
**sorry** [17] - 172:11, 201:25, 208:22, 208:23, 222:11, 222:12, 228:4, 229:3, 243:21, 244:20, 247:25, 255:3, 258:16, 260:15, 262:18, 263:1, 277:12
**Sorry** [1] - 232:23
**specifically** [5] - 193:9, 204:7, 205:4, 222:8, 255:18
**speculation** [2] - 218:12, 220:6
**spell** [3] - 176:20, 223:1, 257:25
**Spell** [1] - 229:5
**spelled** [1] - 258:2
**spending** [1] - 236:5
**spot** [1] - 268:4
**squarely** [1] - 210:22
**staff** [2] - 271:6, 279:23
**stamp** [1] - 210:21
**stand** [3] - 228:21, 237:2, 254:14

**standard** [2] - 169:20, 169:21
**start** [1] - 279:12
**started** [1] - 221:8
**starting** [2] - 183:19, 255:7
**State** [1] - 236:1
**state** [6] - 176:20, 178:6, 199:9, 251:19, 257:24, 279:15
**statement** [5] - 240:5, 240:13, 252:15, 269:22, 269:23
**STATES** [4] - 166:1, 166:6, 166:13, 166:18
**states** [2] - 199:1, 210:20
**States** [48] - 166:5, 167:1, 168:23, 182:6, 198:24, 206:14, 212:25, 213:5, 220:4, 220:23, 231:16, 231:25, 235:16, 236:13, 239:7, 239:22, 240:3, 243:5, 244:5, 247:5, 247:14, 247:17, 248:6, 248:16, 248:23, 249:2, 249:4, 249:8, 249:22, 249:25, 250:7, 253:11, 253:17, 255:11, 259:9, 264:3, 265:21, 265:25, 266:9, 266:19, 267:3, 267:4, 267:10, 267:14, 270:5, 273:3, 275:15, 277:21
**status** [9] - 182:11, 183:23, 188:20, 193:2, 194:19, 194:20, 196:14, 218:9, 272:9
**statutes** [1] - 169:21
**stay** [2] - 236:4, 241:22
**stayed** [2] - 236:5, 261:5
**stays** [1] - 179:3
**stenography** [1] - 166:24
**Stephens** [1] - 244:18
**steps** [2] - 249:15, 263:10
**still** [9] - 173:22,

233:11, 236:5, 254:14, 261:17, 265:24, 273:23, 274:11
**stipulate** [10] - 173:5, 174:2, 174:6, 210:8, 210:12, 210:25, 215:12, 215:16, 215:23
**stipulated** [6] - 174:7, 208:10, 209:18, 209:22, 210:3, 215:8
**stipulation** [1] - 174:8
**stipulations** [3] - 173:18, 173:22, 173:23
**straighten** [1] - 189:12
**Strike** [1] - 222:11
**Subject** [2] - 238:21, 238:23
**subject** [27] - 171:8, 186:11, 190:8, 193:10, 193:18, 228:24, 235:9, 235:15, 235:23, 235:25, 236:1, 236:2, 236:3, 236:6, 236:8, 241:15, 241:17, 241:21, 260:5, 262:2, 262:21, 263:24, 264:5, 264:6, 264:11, 277:25, 278:9
**subject's** [4] - 193:15, 236:7, 239:3, 239:6
**subjects** [2] - 259:9, 267:12
**submit** [5] - 168:1, 186:9, 233:16, 240:11, 263:16
**submitted** [4] - 240:14, 240:15, 240:18, 263:20
**submitting** [2] - 240:20, 248:15
**substance** [2] - 235:21, 238:22
**substantive** [1] - 171:24
**substitute** [3] - 185:10, 185:11, 253:23
**successful** [1] - 226:9
**sufficiency** [4] - 186:20, 186:21, 186:22, 207:16
**sufficient** [2] - 275:11, 279:20
**suggest** [2] - 202:24,

226:16
**suggested** [1] - 173:17
**suggesting** [3] - 274:9, 274:19, 274:21
**summary** [1] - 168:25
**Superior** [3] - 235:19, 235:22
**supervision** [2] - 268:8, 270:24
**supervisor** [10] - 178:1, 179:24, 183:15, 187:22, 187:23, 189:24, 191:19, 197:6, 223:11, 224:7
**supervisors** [3] - 268:4, 270:23, 271:19
**supervisory** [4] - 229:16, 258:23, 259:1, 268:3
**support** [1] - 213:4
**supporting** [3] - 187:3, 187:22, 191:19
**supposed** [2] - 233:15, 277:15
**Supreme** [2] - 273:3, 273:7
**survey** [1] - 174:24
**sustained** [5] - 266:4, 273:11, 276:13, 277:7, 278:9
**sworn** [5] - 176:17, 212:24, 257:23, 258:4, 268:21
**system** [10] - 178:7, 180:14, 194:18, 200:5, 221:4, 237:4, 237:5, 237:8, 237:9
**System** [2] - 192:23, 237:3

## T

**TD** [1] - 236:9
**technical** [1] - 279:23
**Telephone** [1] - 166:22
**telephone** [10] - 214:6, 255:19, 255:22, 255:25, 256:6, 256:8, 279:16, 279:20, 279:22, 280:2
**ten** [5] - 173:21, 227:13, 227:19, 227:24, 228:1

**Ten** [1] - 227:22
**ten-minute** [1] - 227:19
**terminated** [1] - 253:9
**terms** [1] - 198:1
**testified** [14] - 170:13, 191:13, 195:19, 196:23, 197:25, 198:3, 209:9, 209:19, 217:25, 222:16, 224:6, 258:5, 265:23, 271:23
**testifies** [1] - 176:18
**testify** [6] - 170:1, 170:2, 170:3, 257:2, 257:7, 279:15
**testifying** [1] - 272:15
**testimony** [11] - 209:12, 210:2, 218:4, 226:1, 255:18, 257:1, 257:6, 266:3, 271:16, 271:24, 279:4
**text** [2] - 204:9, 205:1
**THE** [218] - 166:12, 167:3, 167:8, 167:11, 167:14, 167:21, 168:5, 168:9, 168:17, 168:21, 170:4, 170:7, 170:24, 171:4, 171:17, 171:24, 172:4, 172:7, 172:15, 172:22, 173:2, 173:11, 173:19, 174:1, 174:7, 175:1, 175:4, 175:13, 175:19, 176:4, 176:9, 176:13, 176:19, 176:21, 181:16, 181:21, 181:22, 181:24, 183:9, 184:17, 184:19, 184:21, 184:23, 184:24, 185:2, 185:5, 185:7, 185:9, 185:11, 185:15, 185:21, 185:25, 186:3, 186:9, 187:6, 187:7, 187:8, 187:9, 187:10, 187:11, 187:13, 188:2, 188:4, 188:24, 189:4, 189:8, 189:12, 189:16, 190:5, 190:11,

191:2, 192:4, 192:10, 192:13, 192:14, 192:16, 203:10, 203:14, 203:17, 204:5, 208:7, 208:15, 208:17, 208:20, 209:5, 209:7, 209:10, 210:24, 211:4, 211:8, 211:12, 211:13, 211:15, 211:16, 211:18, 211:19, 211:23, 211:25, 212:1, 212:13, 212:16, 214:1, 214:6, 214:9, 214:13, 215:8, 215:14, 215:16, 215:23, 218:13, 218:14, 218:15, 218:19, 218:21, 218:22, 218:23, 218:24, 218:25, 219:5, 219:7, 219:15, 219:22, 219:23, 220:9, 220:12, 220:18, 221:6, 221:8, 221:10, 225:18, 225:22, 226:2, 226:5, 226:11, 226:15, 226:20, 226:23, 227:1, 227:2, 227:4, 227:9, 227:12, 227:14, 227:15, 227:17, 227:18, 227:22, 227:24, 228:4, 228:11, 228:13, 228:17, 228:19, 228:21, 228:22, 228:23, 228:25, 229:1, 229:2, 229:3, 229:4, 229:5, 229:6, 229:7, 240:24, 241:2, 241:25, 243:2, 245:4, 245:6, 245:14, 251:21, 252:19, 253:21, 254:5, 254:16, 255:1, 256:19, 257:4, 257:9, 257:13, 257:17, 257:19, 258:1, 262:15, 262:17, 265:5, 265:6, 265:7, 266:4, 269:16, 271:17, 272:6, 272:17, 272:20, 273:11, 274:23,

274:24, 275:3, 275:7, 275:10, 276:1, 276:5, 276:13, 276:17, 276:18, 276:20, 276:22, 277:7, 277:11, 277:13, 279:1, 279:8, 279:11, 279:17, 279:23, 280:1, 280:4
**theory** [1] - 167:23
**Therefore** [1] - 239:5
**they've** [1] - 234:1
**third** [5] - 173:15, 180:21, 199:4, 238:23, 270:24
**thirds** [1] - 173:23
**thoroughly** [4] - 262:3, 263:7, 264:16, 265:9
**thousand** [1] - 210:15
**threat** [5] - 236:8, 239:12, 239:15, 259:10, 266:11
**three** [4] - 191:17, 217:14, 217:16, 256:15
**three-quarters** [1] - 256:15
**throughout** [3] - 253:23, 254:3, 254:9
**title** [5] - 177:6, 229:15, 229:25, 240:16, 258:12
**today** [4] - 257:6, 259:14, 267:5, 268:21
**together** [4] - 167:10, 196:22, 254:5, 254:18
**tomorrow** [7] - 226:19, 227:2, 227:13, 256:23, 257:3, 257:8, 279:12
**Tomorrow** [1] - 227:25
**tonight** [2] - 226:18
**took** [3] - 197:15, 225:10, 245:22
**top** [3] - 176:10, 255:19, 256:6
**totally** [1] - 254:24
**Tracy** [1] - 235:3
**trained** [1] - 244:7
**training** [18] - 178:8, 178:9, 178:12, 178:14, 178:15, 229:19, 229:21, 229:23, 244:10, 246:1, 246:3, 246:10, 246:12,

269:25, 270:2, 270:9, 270:12
**TRANSCRIPT** [1] - 166:12
**transcript** [4] - 175:25, 244:13, 268:12, 268:17
**Transcript** [1] - 166:24
**Transcription** [1] - 166:25
**transcripts** [2] - 172:11, 172:21
**Travel** [1] - 237:3
**travel** [13] - 231:15, 231:17, 231:18, 231:22, 231:24, 232:5, 233:8, 233:15, 233:23, 236:21, 237:8, 237:10, 239:2
**treat** [1] - 179:17
**TRIAL** [1] - 166:12
**trial** [7] - 167:1, 172:11, 172:14, 174:8, 175:23, 203:21, 228:5
**Trial** [1] - 172:10
**tricky** [1] - 214:24
**tried** [1] - 279:20
**triggered** [1] - 263:14
**triggering** [1] - 171:16
**true** [24] - 219:6, 242:5, 242:14, 243:5, 243:7, 244:7, 246:9, 246:15, 247:4, 249:21, 251:1, 267:13, 270:21, 272:2, 272:8, 273:12, 273:20, 274:9, 274:10, 274:14, 274:20, 275:5, 275:11, 275:17
**truth** [2] - 228:24, 268:21
**Try** [1] - 241:2
**try** [5] - 195:2, 202:2, 254:5, 256:24, 265:17
**trying** [4] - 167:17, 175:24, 176:1, 231:24
**turn** [23] - 182:18, 183:18, 184:5, 188:1, 189:18, 191:6, 191:8, 232:21, 233:11, 234:17, 235:4, 237:16, 238:3, 238:15, 239:24,

241:9, 244:14, 247:23, 248:3, 255:6, 256:5, 268:15, 271:1
**Turn** [1] - 244:23
**turned** [3] - 197:15, 203:11, 233:17
**turning** [1] - 190:15
**Turning** [1] - 234:20
**turns** [1] - 220:13
**Twenty** [1] - 245:5
**Twenty-six** [1] - 245:5
**two** [12] - 169:10, 173:23, 180:19, 189:8, 209:25, 217:5, 227:7, 242:6, 242:16, 244:21, 250:24, 264:18
**two-page** [1] - 189:8
**two-thirds** [1] - 173:23
**type** [1] - 234:14
**typed** [8] - 183:24, 184:1, 218:7, 220:7, 220:9, 220:15, 220:20, 222:2
**typical** [1] - 174:19

## U

**U.S** [27] - 178:21, 180:23, 180:25, 181:4, 181:10, 182:3, 196:14, 205:13, 205:21, 205:24, 206:2, 251:16, 253:15, 254:22, 255:18, 260:19, 261:12, 262:3, 263:14, 267:12, 267:15, 267:18, 276:2, 276:11, 276:14, 277:16, 277:19
**Ulando** [20] - 206:8, 206:23, 209:15, 212:21, 213:3, 214:16, 214:18, 214:21, 215:12, 216:4, 216:17, 218:1, 218:8, 220:4, 220:23, 221:2, 221:17, 221:25, 222:3, 222:4
**ultimately** [1] - 183:15
**unavailable** [1] - 256:22
**uncontested** [1] - 219:12
**under** [16] - 193:23, 204:7, 204:25,

211:20, 215:6, 222:9, 240:16, 245:12, 245:20, 248:3, 248:4, 258:25, 267:19, 267:20, 273:6, 273:8
**underlying** [1] - 223:9
**understood** [2] - 181:19, 267:21
**UNITED** [4] - 166:1, 166:6, 166:13, 166:18
**United** [48] - 166:5, 167:1, 168:23, 182:5, 198:24, 206:14, 212:25, 213:5, 220:4, 220:23, 231:16, 231:25, 235:16, 236:13, 239:7, 239:22, 240:3, 243:5, 244:4, 247:5, 247:14, 247:16, 248:6, 248:16, 248:23, 249:1, 249:4, 249:8, 249:22, 249:25, 250:6, 253:11, 253:16, 255:11, 259:9, 264:3, 265:21, 265:25, 266:9, 266:19, 267:3, 267:4, 267:10, 267:14, 270:5, 273:3, 275:15, 277:20
**university** [1] - 178:15
**University** [4] - 244:11, 246:4, 246:5, 246:13
**unlawful** [2] - 167:23, 267:13
**unlawfully** [1] - 174:19
**unless** [1] - 257:5
**unreasonableness** [1] - 168:3
**unredact** [6] - 186:10, 192:10, 252:19, 253:21, 254:1, 254:4
**unredacted** [6] - 186:8, 240:22, 254:12, 254:13, 254:17
**up** [22] - 175:6, 183:24, 184:1, 194:14, 195:12, 195:20, 197:11, 198:1, 198:9, 206:4, 211:14, 218:2,

218:9, 219:8,
220:16, 225:10,
228:4, 252:5,
252:11, 252:18,
254:18, 263:5
**updated** [5] - 194:18,
220:25, 221:4,
221:7, 254:12
**upper** [1] - 221:20
**upstate** [2] - 266:22,
266:23
**US** [8] - 173:10,
210:21, 233:12,
235:4, 238:3,
238:15, 238:20
**USC** [17] - 242:10,
242:17, 242:20,
243:3, 244:8, 246:8,
246:18, 246:20,
249:1, 250:1, 250:5,
250:21, 251:9,
252:2, 267:19,
270:3, 270:4
**USCI's** [3] - 170:20,
171:14, 172:2
**USCIS** [5] - 242:11,
242:20, 247:13,
250:2, 251:1
**useful** [3] - 173:24,
219:2, 225:22

---

**V**

**variety** [1] - 254:9
**verify** [5] - 202:21,
215:15, 215:16,
215:19, 233:21
**version** [1] - 173:8
**versus** [1] - 273:2
**via** [4] - 257:2, 257:7,
257:16
**video** [3] - 279:16,
279:21, 280:1
**view** [2] - 186:11,
276:17
**violation** [4] - 174:12,
174:13, 235:24,
238:9
**Violation** [1] - 238:11
**Virtual** [4] - 244:11,
246:4, 246:5, 246:12
**virtual** [1] - 178:15

---

**W**

**Wait** [1] - 244:16
**waived** [1] - 171:12
**warning** [1] - 233:3
**warrant** [1] - 272:23
**Warrant** [3] - 187:19,

---

189:23, 191:22
**waste** [2] - 170:9,
170:16
**Watson** [104] - 167:1,
171:15, 179:4,
179:22, 180:1,
180:13, 180:18,
181:2, 181:9, 182:8,
186:17, 188:20,
190:2, 195:24,
196:17, 196:19,
198:6, 198:24,
199:1, 199:9,
199:21, 199:22,
200:17, 201:6,
201:7, 204:12,
204:18, 205:12,
206:5, 206:8,
206:11, 206:13,
206:20, 206:23,
207:8, 208:25,
209:15, 209:19,
212:6, 212:8,
212:14, 212:21,
212:24, 213:3,
213:4, 216:4,
216:11, 216:22,
218:16, 218:17,
219:11, 220:4,
220:23, 221:2,
221:17, 221:25,
222:3, 223:18,
223:24, 224:19,
224:22, 225:5,
230:4, 230:17,
231:23, 232:1,
232:9, 232:14,
233:25, 236:12,
237:13, 239:8,
241:17, 252:3,
253:15, 259:17,
259:20, 260:12,
260:16, 260:24,
265:19, 265:21,
266:5, 272:3,
272:13, 272:23,
273:12, 273:20,
274:1, 274:8,
274:13, 275:9,
275:18, 276:10,
276:14, 278:6, 279:6
**WATSON** [1] - 166:3
**Watson's** [80] - 179:6,
179:23, 179:25,
184:4, 187:2,
191:18, 192:2,
195:20, 196:4,
197:23, 197:25,
198:12, 199:24,
200:17, 201:16,
202:7, 202:21,

---

202:24, 204:11,
205:5, 205:24,
206:4, 206:7,
206:10, 206:14,
206:16, 207:2,
207:12, 207:19,
212:11, 212:25,
214:16, 214:18,
214:21, 215:12,
216:17, 217:14,
217:16, 218:1,
218:9, 219:4,
219:12, 222:22,
223:4, 223:15,
223:21, 223:24,
224:14, 224:16,
225:17, 230:6,
230:8, 230:12,
231:1, 231:7,
231:11, 231:13,
233:24, 242:6,
242:8, 242:15,
243:5, 246:16,
246:21, 249:18,
249:22, 251:2,
253:9, 256:14,
259:13, 262:8,
262:11, 263:2,
263:10, 272:9,
272:10, 276:2
**Watsons** [1] - 217:5
**ways** [2] - 193:20,
268:1
**web** [1] - 270:19
**website** [1] - 270:16
**Wednesday** [1] -
166:8
**weeks** [1] - 273:17
**WEINSTEIN** [1] -
166:12
**white** [1] - 182:19
**whole** [3] - 169:17,
169:24, 224:11
**willing** [1] - 210:25
**withdraw** [1] - 217:19
**withdrawing** [1] -
232:12
**witness** [15] - 167:11,
169:8, 172:17,
176:14, 176:17,
184:20, 209:19,
210:23, 211:1,
211:9, 214:3,
226:22, 227:7,
256:20, 257:23
**WITNESS** [33] -
176:21, 181:21,
181:24, 184:24,
187:7, 187:9,
187:11, 192:13,

---

211:12, 211:15,
211:18, 211:25,
218:14, 218:22,
218:24, 219:22,
221:8, 227:1,
227:14, 227:17,
228:22, 228:25,
229:2, 229:4, 229:6,
245:14, 257:19,
258:1, 265:6,
274:24, 276:18,
276:22, 281:2
**witnesses** [9] -
169:11, 170:1,
172:11, 172:13,
172:14, 172:15,
226:17, 279:12,
279:14
**words** [2] - 169:13,
174:22
**worksheet** [3] -
234:22, 235:2,
237:19
**write** [5] - 179:10,
195:20, 197:9,
197:11, 211:14
**write-up** [1] - 211:14
**writing** [7] - 179:13,
179:14, 179:16,
198:1, 198:8,
198:20, 206:3
**written** [2] - 176:5,
252:11
**wrote** [4] - 173:1,
205:18, 207:7,
222:15
**WW** [7] - 184:5, 184:7,
184:15, 184:22,
188:2, 188:5, 281:23

---

**Y**

**year** [5] - 170:21,
221:9, 235:9,
235:15, 268:7
**years** [10] - 206:19,
209:25, 221:6,
230:1, 242:7,
242:16, 250:24,
276:10, 277:4
**yesterday** [2] -
167:16, 176:6
**yielded** [1] - 278:11
**YORK** [1] - 166:1
**York** [13] - 166:6,
174:24, 177:25,
229:14, 235:17,
235:19, 235:22,
236:1, 239:2,
266:22, 266:23

---

**yourself** [4] - 200:13,
203:5, 226:7, 250:12
**YY** [4] - 228:8, 228:12,
228:17, 282:4